IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MATTHEW R. GRANT, et al. | ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) ) |
| BRUCE F. HILTON, et al., | ) No. 4:25-CV-01203-JMD ) |
| *Defendant.* | ) ) ) ) |

## MEMORANDUM OPINION AND SHOW-CAUSE ORDER

In response to losing a custody dispute in family court, Plaintiff Matthew Grant (a local attorney) has sued the judge who ruled against him along with more than 100 other defendants, asserting that he has uncovered the "largest criminal courthouse *corruption* scheme in the history of the State of Missouri" (his emphasis) and that everyone from the state judge in his case to the State of Missouri is liable under the Racketeer Influenced and Corrupt Organizations Act. Despite Grant's professed expertise in litigation, his complaint is plainly deficient many times over, raising concern that he has filed it for an unlawful purpose. Grant is ordered to show cause why his case should not be dismissed and why he should not be sanctioned under Federal Rule of Civil Procedure 11.

Grant, a "courtroom lawyer, who practiced for 21 years at a huge law firm that [is] one of the 100 largest in the United States" filed a 170-page complaint listing 16 named defendants, including the judge in his custody case and the State of Missouri, as well as 100 unnamed "co-conspirators." Grant begins his complaint with 47 pages of unnumbered, difficult-to-follow narrative, asserting (his emphasis) that "shadow networks of *Republican*

1

politics" have conspired statewide to deprive him of custody of his children, that the alleged cabal did so in retaliation for him "exposing" systemic court corruption (although the "corruption" was already "well-known"), and that to rectify this "injustice," this Court should forcibly remove sitting state court judges from the bench and disbar them.

Numbered allegations do not begin until page 49, and do not stop any time soon. Grant includes 790 allegations in the remaining pages, along with 21 different prayers for relief. For a litigator who says in his complaint that he has "spent his career in state and federal court," who "knows precisely how [to] pursue [sic] them because he has successfully defeated them," and for a litigator who "has defeated a multi-hundred million dollar class action case on behalf of huge local corporation" in "*this very courthouse*" (his emphasis), Grant shows little regard for the Federal Rules of Civil Procedure or for his fellow attorneys.

First is Grant's apparent violation of Rule 8, which instructs litigants to include, among other things, a "short and plain statement" of the grounds for the court's jurisdiction and a "short and plain statement of the claim." Fed. R. Civ. P. 8(a). "The primary purpose of Rule 8 is to allow the Court and the opposing party to understand whether a valid claim is alleged and, if so, what it is. The complaint must be sufficiently clear so the Court or opposing party is not required to keep sifting through it in search of what it is that plaintiff asserts." *Lewis v. City of St. Louis*, No. 4:13-CV-1165 CAS, 2014 WL 241526, at *2 (E.D. Mo. Jan. 22, 2014) (citations omitted). Grant's complaint is neither 'short' nor 'plain'; it is scattershot. It involves 48 pages of difficult-to-follow introductory material followed by 790 numbered allegations, clocking in at 170 pages. And while a complaint does not necessarily violate Rule 8 for including more than a short, plain statement, a complaint does violate Rule 8 if it is strewn with voluminous extraneous matter that shrouds the necessary elements. By no

2

definition is the complaint sufficiently clear or short for any of the more than 100 defendants to readily understand the matter.

Also problematic is Grant's apparent violation of Rule 10(b), which provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Plaintiff enumerates his allegations in 790 numbered paragraphs—but only after 47 pages of non-numbered introductory material. These 47 pages of non-numbered paragraphs fail to conform with Rule 10(b), and they put respondent parties in an awkward position. How is a respondent to answer? Seek to respond to each point in the 47 pages? Fail to answer and risk that a court deem those assertions admitted? This is unlike a party's inclusion of a small introductory paragraph or a small amount of noncompliant matter. Here, the plainly noncompliant allegations span nearly 50 pages.

Other issues are apparent. The complaint, for example, sues the State of Missouri, which enjoys sovereign immunity—the "privilege . . . not to be sued without its consent." *Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). Grant tries to dispense with this issue by noting that he seeks only injunctive relief against the State, not damages. But the typical way to do that (and thus evade sovereign immunity) is to sue a state *official*, not the State itself. The *Ex parte Young* exception to sovereign immunity "does not extend" to actions against "states or state agencies." *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). The complaint also seeks unprecedented relief—removing state judges from the bench and disbarring them—yet makes no attempt to explain how this Court has authority to issue such an extraordinary order. Similarly, the complaint appears to include a collateral attack against a state-court judgment. But federal courts generally are prohibited from

3

hearing cases "brought by state-court losers complaining of injuries caused by state-court judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Grant offers no affirmative argument for why this doctrine should not apply. And while he recognizes that the doctrine of judicial immunity bars lawsuits against judicial officers exercising their authority, he offers only threadbare (and insufficient) allegations to explain why the judge who ruled against him is not immune. "Allegations of malice or corruption do not defeat judicial immunity." *Hamilton v. City of Hayti, Missouri*, 948 F.3d 921, 925 (8th Cir. 2020).

All this leads to Rule 11. When Grant filed the complaint, he "certifie[d] that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," his claims were "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). It is not readily apparent how responding to a custody ruling with a 170-page complaint directed at more than 100 defendants, including Plaintiff's ex-wife, the State of Missouri, a judge who ruled against him, and several other government employees—all while flouting court rules—could be presented for a proper purpose. The nature of this complaint—from a seasoned attorney—causes serious concern that Grant has filed it for the vindictive purpose of harassing others. This Court reserves the right to sanction Grant for presenting a pleading to the court for an improper purpose. *See* Fed. R. Civ. P. 11(c)(3).

The Court finally notes that Grant is an attorney and will not be given the leniency afforded *pro se* plaintiffs. As stated in his complaint, Grant is "a Missouri licensed attorney and litigation specialist who worked at one of the 100 largest firms in the country," and he repeatedly touts his legal credentials not just in court but in *this* Court. Grant, more than

most, is expected to comply with the rules. And he, more than most, is expected to show higher regard for the 16 named defendants (including the mother of his children) who would be required, at serious cost, to respond to each paragraph of his 790-count charge. Grant's actions do not appear "reasonable under the circumstances." Fed. R. Civ. P. 11(b). To the contrary, his expertise and experience as a lawyer aggravate the deficiencies in the complaint.

**IT IS HEREBY ORDERED** that, no later than Monday, September 15, 2025, Grant must show cause, in 10 pages or less, as to why this action should not be dismissed for failure to comply with the Federal Rules of Civil Procedure and why he should not be sanctioned under Rule 11. In the alternative, he may, as a matter of right under Rule 15(a)(1)(A), file an amended complaint that rectifies all these issues and any other apparent issues. Finally, he may voluntarily dismiss the case. Any filing must strictly conform not only to the Federal Rules of Civil Procedure and to the local rules of the Eastern District of Missouri, but also to the judge's local rules, as explained in Docket Entry 9 (August 21, 2025). Failure to do so may lead to sanctions or dismissal. *E.g.*, Fed. R. Civ. P. 83(a)–(b).

Dated this 3rd day of September, 2025.

_____
JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE