UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW R. GRANT, individually, as *Next Friend* to C.L.G. and as *Next Friend* to C.M.G., and on behalf of all others similarly situated, | ) ) ) ) | |
| and | ) ) | |
| STOP MISSOURI CORRUPTION, LLC, dba www.StopMissouriCorruption.com | ) ) ) ) | Case No.  25-CV-1203-JMD |
| *Plaintiffs*, | ) ) | JURY TRIAL DEMANDED |
| vs. | ) ) | |
| BRUCE F. HILTON,  in his individual and official capacity of Presiding Circuit Judge the 21st Circuit Court of the State of Missouri, MARY W. GREAVES, in her official capacity of Commissioner within the the 21st Circuit Court of the State of Missouri, JOHN FENLEY, in his personal capacity and in his official capacity of *Guardian Ad Litem,* RIENKER, HAMILTON & FENLEY, LLC, MAIA BRODIE, individually and d/b/a BRODIE LAW, LAWRENCE GILLESPIE, GILLESPIE HETLAGE & COUGHLIN LLC, REBECCA A. COPELAND, STACI THOMAS, SARAH M. GRANT, MATHEW G. EILERTS, GROWE EISEN KARLEN EILERTS, LLC, CON CURRAN COULTER, THE COULTER LAW GROUP, LLC d/b/a COULTER GOLDBERGER, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Defendants*. | ) | |

1

4921-3441-1030, v. 1

**FIRST AMENDED INDIVIDUAL,**
**CLASS ACTION,**
**CIVIL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS**
**(RICO) ACT (18 U.S.C. § 1964),**
**CIVIL RIGHTS ACT (18 U.S.C. § 1983), AND**
**OTHER CAUSES OF ACTION**
**COMPLAINT**

Plaintiff Matthew R. Grant ("Plaintiff" or "Plaintiff MRG" or "Father"), individually, and on behalf of, and as proposed *Next Friend* for his minor child C.L.G. ("Plaintiff C.L.G.), and on behalf of, and as proposed *Next Friend* for his minor child C.M.G. ("Plaintiff C.M.G.) (collectively the "Children"), and on behalf of all others similarly situated (the "Comprehensive Class" or "Class" including "subclasses"), and Plaintiff Stop Missouri Corruption, LLC ("Plaintiff LLC") (collectively "Plaintiffs"), pursuant to FED. R. CIV. P. 15(a), for their First Amended Individual, Class Action, Civil Racketeer Influenced and Corrupt Organizations (RICO) Act (18 U.S.C. § 1964), Civil Rights Act (18 U.S.C. § 1983), and Other Causes of Action Complaint ("Complaint") against the named Defendants and those to be added in the future, allege as follows:

**THE PARTIES**

**Plaintiffs:**

1. Plaintiff Matthew R. Grant ("Plaintiff" or "Plaintiff MRG") is citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

2. Plaintiff is proposed as *Next Friend* of Plaintiff C.L.G. who is a minor child that is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

3. Plaintiff C.L.G. is one of the two minor children at issue in the St. Louis Family Court Case with Case No. 12SL-DR03959-02.  Plaintiff C.L.G. is 16 years old at the time of this filing.

4. Plaintiff is proposed as *Next Friend* of Plaintiff C.M.G. who is a minor child that is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

2

4921-3441-1030, v. 1

5. Plaintiff C.M.G. is one of the two minor children at issue in the St. Louis Family Court Case with Case No. 12SL-DR03959-02.  Plaintiff C.M.G. is 14 years old at the time of this filing.

6. Plaintiff intends to move for appointment as *Next Friend* for C.L.G. and C.M.G. after the defendants have all been served in this case or waived service of process.

7. Plaintiff Stop Missouri Corruption, LLC ("Plaintiff LLC") is a Missouri Limited Liability Company registered within the State of Missouri.  Plaintiff is the sole member of Plaintiff LLC.

8. Plaintiff created Plaintiff LLC in April 2025 to pursue and expose the corruption detailed herein both now and in the future.  *See* www.StopMissouriCorruption.com.

9. Plaintiff also created Plaintiff LLC in order to facilitate the protection of other victims of the criminal enterprise at issue in this litigation and others, both now and in the future.

10. Stop Missouri Corruption, LLC is an advocacy group with Article III associational and other standing to protect the interests of its member and Missourians impacted by the RICO criminal conduct and Civil Rights Act violations at issue in this case.

**RICO/Civil Rights/Intentional Tort Defendants:**

11. Defendant Bruce Hilton ("Defendant Hilton") is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.  Defendant Hilton is the Presiding Judge of the 21st Circuit Court of the State of Missouri, is currently assigned to Division 13, and is currently, administratively assigned Case No.  12SL-DR03959-02 which has no final judgment.

12. Defendant Bruce Hilton is being sued in both his individual and official capacity as a Circuit Judge acting under color of law within the 21st Circuit of the State of Missouri.

4921-3441-1030, v. 1

13. Defendant Hilton is not immune from liability relating to his participation in a criminal enterprise and/or his violations of Title IX of the Organized Crime Control Act of 1970 otherwise known as the Racketeer Influenced and Corrupt Organizations Act ("RICO") as his actions at issue were taken in a complete absence of jurisdiction.

14. Plaintiffs seek an award of treble damages, attorneys' fees and costs from Defendant Hilton for his RICO violations taken in complete absence of jurisdiction.

15. Defendant Hilton is not immune from liability for non-monetary relief in his official capacity as a state court judge relating to his violations of the Constitutions of the United States of America and the State of Missouri, and his violations of the Civil Rights Act.

16. Plaintiffs do *not* seek and award of damages, attorneys' fees or costs from Defendant Hilton in any capacity relating to their Civil Rights Act claims against him.

17. Plaintiffs do *not* seek a stay of state court proceedings and, therefore, the Anti-Injunction Act (28 U.S.C. § 2283) is inapplicable.

18. Instead, Plaintiffs seek *prospective* injunctive relief against Defendant Hilton as effective declaratory relief is unavailable.

19. If this Court holds that declaratory relief is effectively and functionally available, Plaintiffs seek leave to amend this Complaint to seek such relief regarding Defendant Hilton under the Declaratory Judgment Act.  28 U.S.C. §§ 2201-2202.

20. Defendant Hilton is an active member of the RICO conspiracy and enterprise alleged herein.

21. Defendant Mary W. Greaves is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

4

22. Defendant Mary Greaves is a Family Court Commissioner within the 21st Circuit Court of the State of Missouri.  Defendant Greaves is currently assigned to Division 65 of St. Louis County's Family Court and was previously assigned Case No. 12SL-DR03959-02 until her own Order of Recusal dated January 13, 2025, that she entered in response to Plaintiff's Motion to Disqualify her for Cause in which Plaintiff alleged bias, prejudice and *ex parte* judicial communications.

23. Defendant Mary W. Greaves is being sued only in her official capacity as a commissioner acting under of color of law within the 21st Circuit of the State of Missouri.

24. Defendant Greaves is an active member of the RICO conspiracy and enterprise alleged herein.  However, Plaintiffs, at this time, do not assert a RICO claim against her.

25. Defendant Greaves is not immune in her official capacity as a state court Commissioner from claims for injunctive relief relating to her violations of the Constitutions of the United States of America and the State of Missouri, and her violations of the Civil Rights Act.

26. Plaintiffs do not seek an award of damages, attorneys' fees or costs from Defendant Greaves.

27. Plaintiffs do *not* seek a stay of state court proceedings and, therefore, the Anti-Injunction Act (28 U.S.C. § 2283) is inapplicable.

28. Plaintiffs are entitled to *prospective* injunctive relief against Defendant Greaves as declaratory relief is unavailable.

29. If this Court holds that declaratory relief is effectively and functionally available, Plaintiffs seek leave to amend this Complaint to seek such relief regarding Defendant Greaves under the Declaratory Judgment Act.  28 U.S.C. §§ 2201-2202.

4921-3441-1030, v. 1

30. Defendant John R. Fenley is a citizen of the State of Missouri.  Upon information and belief, Defendant Fenley is a resident of St. County, Missouri.

31. Defendant John Fenley is the Guardian *Ad Litem* in 21st Circuit Court Case No. 12SL-DR03959-02.

32. Defendant Fenley is being sued in both his individual capacity and in his capacity as a Guardian *Ad Litem* acting under color of law within the 21st Circuit Court of the State of Missouri.

33. Defendant Fenley is not immune from his personal and individual liability for his participation in a criminal enterprise and/or his violations of Title IX of the Organized Crime Control Act of 1970 otherwise known as the Racketeer Influenced and Corrupt Organizations Act ("RICO") as his actions are outside the very limited scope of his qualified immunity.

34. Defendant Fenley is not immune, via his limited qualified immunity, in his official capacity as a Guardian *Ad Litem* acting under color of law from claims for both damages and injunctive relief relating to his specific violations of the Constitutions of the United States of America and the State of Missouri, and his violations of the Civil Rights Act.

35. Defendant Fenley is an active member of the RICO conspiracy and enterprise alleged herein.

36. Defendant Reinker, Hamilton & Fenley, LLC ("Defendant RHF") is a limited liability company organized under the laws of the State of Missouri.

37. Defendant RHF is a law firm, and its members are Randall J. Reinker, Robert N. Hamilton and John R. Fenley.

4921-3441-1030, v. 1

38. Defendant RHF is vicariously liable for the actions of Defendant Fenley as they were conducted within the scope of Defendant Fenley's duties with Defendant RHF.

39. Plaintiffs specifically allege that Defendant Fenley's intentional actions were within the scope of his duties with Defendant RHF.

40. Defendant Maia Brodie ("Defendant Brodie") is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

41. Defendant Brodie practices law as a sole proprietor and doing business as Brodie Law.

42. Defendant Brodie is a Special Representative for the Missouri Supreme Court's Office of Chief Disciplinary Counsel ("OCDC").

43. While extremely relevant, Ms. Brodie is only being sued in her personal and individual capacity and not in relation to her position as Special Representative for the OCDC.

44. Defendant Brodie is an active member of the RICO conspiracy and enterprise alleged herein.

45. Defendant Rebecca A. Copeland ("Defendant Copeland") is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

46. Defendant Copeland is an active member of the RICO conspiracy and enterprise alleged herein.

47. Defendant Staci Thomas ("Defendant S. Thomas") is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

48. Defendant S. Thomas is an active member of the RICO conspiracy and enterprise alleged herein.

49. Defendant Sarah M. Grant ("Defendant S. Grant") is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

7

4921-3441-1030, v. 1

50. Defendant S. Grant is an active member of the RICO conspiracy and enterprise alleged herein.

51. Defendant Lawrence G. Gillespie ("Defendant Gillespie") is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

52. Defendant Gillespie is the former law partner of Defendant Hilton.

53. Defendant Gillespie is an active member of the RICO conspiracy and enterprise alleged herein and his involvement in the RICO conspiracy dates back to his joint involvement with Defendant Hilton in his private practice before being appointed a circuit judge.

54. Defendant Gillespie, Hetlage & Coughlin, LLC ("Defendant GHC") is a limited liability company organized under the laws of the State of Missouri.

55. Upon information and belief, the members of Gillespie Hetlage & Coughlin, LLC are Lawrence G. Gillespie, W. Laird Hetlage and Richard Coughlin.

56. Defendant GHC is vicariously liable for the actions of Defendant Gillespie as they were conducted within the scope of Defendant Gillespie's duties with Defendant GHC.

57. Plaintiffs specifically allege that Defendant Gillespie's intentional actions were within the scope of his duties with Defendant GHC.

58. Plaintiffs' estimation of many additional co-conspirators is not speculative, but rather, is based upon statements made by a named defendant in this case.

59. However, Plaintiffs have omitted any express reference to the possibility of adding additional co-defendants in the future.

**Negligence/Professional Malpractice Defendants:**

60. Defendant Mathew G. Eilerts ("Defendant Eilerts") is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

4921-3441-1030, v. 1

61. Defendant Growe Eisen Karlen Eilerts LLC ("Defendant Growe Eisen Firm") is a limited liability company organized under the laws of the State of Missouri.

62. Defendant Growe Eisen Firm's members are Gary A. Growe, Richard Eisen, Christopher Karlen and Mathew Eilerts.

63. Defendant Eilerts and Defendant Growe Eisen Firm were retained as counsel by Plaintiff to represent him in the 21st Circuit Court Case No. 12SL-DR03959-02.

64. Defendant Eilerts and Defendant Growe Eisen Firm's representation of Plaintiff ceased on January 21, 2025.

65. Defendant Growe Eisen Firm is vicariously liable for the actions of Defendant Eilerts as they were conducted within the scope of Defendant Eilerts' duties with Defendant Growe Eisen Firm.

66. Defendant Con Curran Coulter ("Defendant Coulter") is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

67. Defendant The Coulter Law Group LLC d/b/a Coulter Goldberger LLC ("Defendant Coulter Law Group") is a limited liability company organized under the laws of the State of Missouri.

68. Defendant Coulter Law Group's sole member is Con Curran Coulter.

69. Defendant Coulter and Defendant Coulter Law Group were retained as counsel by Plaintiff to represent him in the 21st Circuit Court Case No. 12SL-DR03959-02.

70. Defendant Coulter and Defendant Coulter Law Group's representation of Plaintiff ceased on January 7, 2025.

4921-3441-1030, v. 1

71. Defendant Coulter Law Group is liable for the actions of Defendant Coulter as they were conducted within the scope of Defendant Coulter's duties with Defendant Coulter Law Group.

## JURISDICTION AND VENUE

72. This Court has original subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331, in that, Plaintiffs' claims and civil actions arise under the Constitution and laws of the United States of America.

73. This Court has original subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1964(a), in that, some or all of Plaintiffs' claims and civil actions arise under RICO Act.

74. This Court has original subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1983, in that, some or all of Plaintiffs' claims allege that Defendants have deprived Plaintiffs of rights, privileges, and immunities secured by the Constitution of the United States of American and the laws of the United States as codified by the United States Congress.

75. Plaintiffs seek *no relief* in this case that would impact the full and final resolution of Case No. 12SL-DR03959-02 now pending in the 21st Circuit Court for the State of Missouri, including any appellate actions.

76. Plaintiffs note that Case No. 12SL-DR03959-02 *lacks* a final judgment.

77. Plaintiffs note that this case relates, in large part, to protecting minor children that are *not* parties in Case No. 12SL-DR03959-02.

4921-3441-1030, v. 1

78. Plaintiffs have not filed this case to be vindictive, but rather, to provide the constitutional protection to Missouri's most vulnerable citizens, minor children, that has been disallowed in the Family Court of the 21st Circuit Court for the State of Missouri.

79. Plaintiff reported Defendant Hilton to the United States Department of Justice (DOJ) on February 3, 2025, *more than 6 months before* this litigation was commenced and before Defendant Hilton entered a single ruling adverse to Plaintiff.

80. Plaintiff has presented the issues of corruption and constitutional violations within the 21st Circuit Court to the Missouri Court of Appeals and the Missouri Supreme Court.

81. Neither the Missouri Court of Appeals nor the Missouri Supreme Court has elected to address the issues of corruption and constitutional violations in the 21st Circuit Court of the State of Missouri.

82. Additionally, this case presents evidence of bad faith and harassment resulting from Plaintiff's exposure of corruption within the 21st Circuit Court for the State of Missouri.

83. This case also presents the extraordinary issue of ongoing federal constitutional violations impacting *minor children* and the harm being done to them is irreparable.

84. Plaintiffs do *not* seek a stay of state court proceedings and, therefore, the Anti-Injunction Act (28 U.S.C. § 2283) is inapplicable.

85. Because the state courts of Missouri have not afforded adequate protection and because this case presents extraordinary circumstances, this court should *not* abstain from immediately hearing this matter.

86. This Court has jurisdiction over Plaintiffs' claims as detailed in the second clause of Article VI of the Constitution of the United States:

11

**This Constitution**, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, **shall be the supreme Law of the Land**; **and the Judges in every State shall be bound thereby**, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. Art. VI, Clause II (emphasis added).

87. The Supremacy Clause of United States Constitution and the protection of citizens' civil rights override all concerns of federalism and comity in this case.

88. Where state courts are presented and elect to leave constitutional violations by state court judges unaddressed, the federal courts of the United States are obligated to exercise jurisdiction and ensure the protections of the United States Constitution are afforded to citizens of the individual States.

89. The Court has supplemental jurisdiction over Plaintiffs' other claims, not included in the original subject matter jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), as they are so related to the existing claims in this action that they form part of the same case or controversy.

90. Venue for the initial filing of this matter is proper in this Court pursuant to 28 U.S.C. § 1391 and 31 U.S.C. § 3732, as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## CLASS ACTION DEFENDANTS AND
## CLASS AND SUBCLASS DEFINITIONS

*(Defendant Bruce Hilton, Defendant Mary Greaves,*
*Defendant John Fenley, Defendant RHF, Defendant Maia Brodie,*
*Defendant Gillespie, Defendant GHC, Defendant Growe Eisen, Defendant Mat Eilerts,*
*Defendant C. Curran Coulter, and Defendant Coulter Family Law Group)*

91. Plaintiff, in addition to himself as an individual, as the sole member of Plaintiff LLC, and as proposed *Next Friend* to Plaintiffs C.M.G. and C.L.G., also brings this Complaint as a

4921-3441-1030, v. 1

putative class representative, and on behalf of a class of similarly situated individuals that have been involved in any matter involving Child Custody in St. Louis County Family Court within the 21st Circuit Court of the State of Missouri and that have been a victim of the RICO enterprise and its violations of the RICO Act and/or Civil Rights Act (the "Comprehensive Class" as defined in more detail herein).

92. The putative Comprehensive Class expressly includes putative class members that are citizens of states other than Missouri.

93. The putative Comprehensive Class expressly includes *minor children* class members that are citizens of the State of Missouri and citizens of states other than Missouri.

94. Plaintiff's request for alternative and/or subclass wide relief, for now, is directed at the following Defendants only: Defendant Bruce Hilton, Defendant Mary Greaves, Defendant Maia Brodie, Defendant John Fenley, Defendant RHF, Defendant Gillespie, Defendant GHC, Defendant Growe Eisen Firm, Defendant Mat Eilerts, Defendant C. Curran Coulter, and Defendant Coulter Family Law Group ("the Class Defendants").

95. Due to the nature of the almost identical St. Louis Family Court liability and negligence issues implicated in this matter, a class action is appropriate in this matter because:

- The class is so numerous that joinder of all members is impracticable.

- There are questions or law or fact common to the class.

- Plaintiff's claims are typical of the claims of the class.

- Plaintiff will fairly and adequately protect the interests of the class.

96. Additionally, certification of this matter as a class action is superior and appropriate because:

4921-3441-1030, v. 1

- Prosecuting separate actions by individual class members would create a risk of:

  - Inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; and

  - Adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

97. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff requests that this Court certify an "opt-in" class of similarly situated individuals for the Comprehensive Class and all Subclasses.

98. Pursuant to Rule 23(b)(3), Plaintiff additionally and, in the alternative, requests that this Court certify an "injunctive relief only" Comprehensive Class and Subclasses.

99. Class injunctive relief in this matter is appropriate because the Class Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class(es) as a whole.

100.    Pursuant to Rule 23, Plaintiff intends to move this Court to certify the putative Comprehensive Class and Subclass(es) to address the issue of civil liability only, expressly excluding damages.

14

101.    Plaintiff requests that, following any verdict or other finding in favor of the opt-in Comprehensive Class or any opt-in Subclass(es) on the issue of liability, this Court order damages-only trials for each Class or Subclass member(s).

102.    The scope and time for all Class or Subclass members shall be "within the last 4 years."

103.    Plaintiff requests that this Court determine the tolling impact of this filing, the date of class notice, and the specific date that begins the 4-year period for class membership.

104.    Plaintiff seeks certification of an opt-in "Comprehensive Class" as follows:

> All individuals over the age of 18 that were parties in a St. Louis Family Court matter filed in the 21st Circuit Court of the State of Missouri and in which the individuals were adversely impacted by the RICO enterprise alleged in this case.  This definition excludes all judges, commissioners, or other court personnel.

105.    Additionally, and in the alternative, Plaintiff seeks certification of the following putative opt-in subclasses:

Motion for Change of Judge for Cause Subclass:

> All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which he/she filed a Motion for Change of Judge of *for Cause* pursuant to RSMo. § 508.090 et seq. and that were adversely impacted by the RICO enterprise alleged in this case.  This subclass excludes all judges, commissioners, or other court personnel.

Bruce Hilton Subclass:

> All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue and in which Defendant Presiding Judge Bruce Hilton was the assigned judge, and that were adversely impacted by the RICO enterprise alleged in this case.  This subclass excludes all judges, commissioners, or other court personnel.

15

4921-3441-1030, v. 1

Mary W. Greaves Subclass:

> All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue and in which Defendant Commissioner Greaves was the assigned Commissioner, and that were adversely impacted by the RICO enterprise alleged in this case. This subclass excludes all judges, commissioners, or other court personnel.

The Guardian *Ad Litem* Subclass:

> All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue and in which they were adversely impacted by a Guardian *Ad Litem* that was involved in RICO enterprise alleged in this case. This subclass excludes all judges, commissioners, or other court personnel.

John Fenley GAL Subclass:

> All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue in which John Fenley was appointed Guardian *Ad Litem* and that were adversely impacted by the RICO enterprise alleged in this case. This subclass excludes all judges, commissioners, or other court personnel.

The RHF Opposing Counsel Subclass:

> All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue in which any attorney of the firm RHF was an opposing party's counsel, and that were adversely impacted by the RICO enterprise alleged in this case. This subclass excludes all judges, commissioners, or other court personnel.

Maia Brodie Opposing Counsel Subclass:

> All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue, and in which Maia Brodie was an opposing party's counsel, and that were adversely impacted by the RICO enterprise alleged in this case. This subclass excludes all judges, commissioners, or other court personnel.

16

Mat Eilerts Client Subclass:

> All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue, and in which such individual(s) were represented by Mat G. Eilerts, and that were adversely impacted by the RICO enterprise alleged in this case. This subclass excludes all judges, commissioners, or other court personnel.

Growe Eisen Firm Client Subclass:

> All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue, and any member of the law firm Growe Eisen Karlen Eilerts entered her or his appearance on the individual(s)' behalf, and that were adversely impacted by the RICO enterprise alleged in this case.  This subclass excludes all judges, commissioners, or other court personnel.

C. Curran Coulter Client Subclass:

> All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue, and in which the individual(s) were represented by C. Curran Coulter, and that were adversely impacted by the RICO enterprise alleged in this case. This subclass excludes all judges, commissioners, or other court personnel.

Coulter Family Law Group Client Subclass:

> All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue, and any member of the law firm Coulter Family Law Group d/b/a Coulter Goldberger, LLC entered her or his appearance on the individual(s)' behalf, and that were adversely impacted by the RICO enterprise alleged in this case. This subclass excludes all judges, commissioners, or other court personnel.

106.    The foregoing Comprehensive and Subclass definitions are subject to revision throughout this litigation, as may be allowed by the Court.

## **ALLEGATIONS COMMON TO ALL COUNTS**

**A. GENERAL BACKGROUND STATED SHORT AND PLAINLY BUT WITH PARTICULARILTY:**

4921-3441-1030, v. 1

107.     Plaintiff re-alleges and incorporates by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

108.     The allegations in this Complaint have been narrowed in an attempt to comply with this Court's September 3, 2025, Memorandum Opinion and Show Cause Order.

109.     This First Amended Complaint contains approximately 37 pages of substantive factual allegations.

110.     In light of the subject matter, Plaintiffs suggest that this length is appropriate.

111.     Plaintiffs acknowledge FED.R.CIV.P. 8's requirement of a "short and plain statement" but they note FED.R.CIV.P. 9(b)'s requirement of "particularity" as applicable to Plaintiffs' causes of action.

112.     Plaintiffs' prior Complaint and this filing constitute Plaintiffs' *good faith effort* to strike a balance and to provide this Court, and likely the Eighth Circuit Court of Appeals, sufficient particularized facts to consider and upon which to make its ruling(s).

113.     Plaintiffs file this action to address the RICO enterprise and judicial corruption that has existed in the St. Louis Family Court for years.

114.     This case addresses discrete defendants and Plaintiffs do not request this Court to rid the 21st Circuit Court of corruption beyond the parties in this case.

115.     This case is but one step in a march towards Due Process in the 21st Circuit Court for the State of Missouri.

116.     Plaintiff did *not* file this RICO and Civil Rights Act case in response to any adverse rulings.

4921-3441-1030, v. 1

117.     Plaintiff has been highlighting the RICO violations and corruption in the 21st Circuit since December 2024 when Plaintiff first reported Defendant Greaves and Defendant Brodie to the OCDC for *ex parte* communication.

118.     On ***February 3, 2025***, Plaintiff Matthew R. Grant sent an email to the United States Department of Justice reporting Defendant Judge Bruce F. Hilton for criminal investigation:

Matt Grant <mattgrant.stl@gmail.com>
To          @usdoj.gov

Just when you thought you would get a break from me.  Holy shit, I cracked a big one on Friday and another over the weekend, and more are unfolding each hour

PLEASE INVESTIGATE PRESIDING JUDGE HILTON!!!!!!

119.     As just one example of the damning evidence Plaintiffs possess regarding the long-standing RICO enterprise, below is an email that one of Plaintiff's fact witnesses will authenticate:

From
Sent: Monday, September 18, 2017 3:11 PM
To:
Subject:

All:

From my perspective, we have the October 13th TRO date and subsequent trial dates in November.  How wedded are you to the trial dates?  It is important that          get evaluated since we are buying future litigation.  Thoughts?  The alternative is                    who is also a PhD and does a large volume of child evaluations for St. Louis County Juvenile Court.

120.     As the September 18, 2017, email proves, the RICO enterprise at issue in this case has been "buying litigation" for years.

121.     Plaintiffs will present evidence that the RICO enterprise has existed for more than a decade.

122.     Plaintiff Matthew R. Grant is just one of the latest victims of the RICO enterprise and its pattern and practice of using family court litigation to line the enterprise members'

19

pockets with money stolen from parents through theft by deception and numerous RICO predicate criminal actions.

123.     The RICO enterprise has a well-orchestrated playbook by which it implements its plan to intentionally prolong litigation to enrich all those involved.

124.     The RICO enterprise uses its list of attorneys and Guardians *Ad Litem* to perpetuate the organized crime that persists in the 21st Circuit Court for the State of Missouri.

125.     As the email reflected above illustrates, the RICO enterprise not only prolongs family court litigation solely to unnecessarily increase attorneys' and Guardian *Ad Litem* fees, but it also uses evaluators and therapists to assist in its unlawful actions.

126.     Many have been victims of the RICO enterprise at issue in this case.

127.     Most victims simply pay the high cost required to return custody of their children.

128.     Others, such as those that will testify, have brought their own lawsuits to attempt to cease the criminal activity.

129.     The RICO enterprise has thus far avoided accountability and full exposure to Missourians.

130.     Prior cases have failed to overcome the criminal shield of immunity to withstand prior filings.

131.     However, this lawsuit presents this Court and ultimately the Eighth Circuit Court of Appeals with claims that must survive motion practice and that deserve full discovery so that the merits of Plaintiffs' claims can be put to the test.

132.     This specific Court, with its long history of viewing federalism and comity from the state's point of viewpoint, now has the opportunity to address what happens when

20

federal constitutional rights are violated in a state, and the state knowingly does nothing to stop it.

133.    As quoted earlier in this Complaint, the framers of the United States Constitution wisely included a Supremacy Clause to ensure that the federal court system would serve as the final arbiter of the disputes regarding the states, including their judges' compliance with the United States Constitution.

134.    One of the newest victims, Plaintiff Matthew R. Grant, is a Missouri licensed attorney who is a member of and has practiced in this court going back to his first federal case for which he provided assistance more than 25 years ago.

135.    Congress passed RICO and continues to entrust the enforcement of the federal criminal laws to the Department of Justice and, among others, the Federal Bureau of Investigation.

136.    This case addresses a situation whereby the United States Attorney's Office, despite years of *actual notice*, has chosen not to intervene to protect Missourians' constitutional rights allowing the St. Louis Family Court to run amuck and violate rights to procedural and substantive Due Process on what seems to be a daily basis.

137.    Plaintiff Matthew R. Grant intends to at least end the corruption on display in this case and do his best to restore *minor children's* constitutional protections to the St. Louis County Family Court.

138.    Plaintiff Matthew R. Grant seeks prospective relief because he intends to protect all those *parents* and children that have not yet been a party in a matter filed in the St. Louis County Family Court that might otherwise be assigned to Defendant Hilton or Defendant Greaves.

21

139.     Despite the suggestion to the contrary, **Plaintiffs seek no action from this Court that will impact the pending state court matter that involves Plaintiff** and that *lacks a final judgment.*

140.     Plaintiff reiterates that he seeks no rulings that will change the outcome of his state court case.

141.     That is precisely why this Court has jurisdiction and this matter should proceed.

142.     This Complaint unnecessarily contains *actual evidence* in addition to factual allegations to eliminate any suggestion of false allegations.

143.     The allegations and evidence in this Complaint are true.

144.     Plaintiff is well aware that the appellate courts of the State of Missouri have thus far made it clear that he and his children will obtain no relief in their pending case.

145.     Had the state courts *not* made the conscious choice not to intervene, this lawsuit would never have been filed.

146.     But, the Missouri courts have failed to address the RICO enterprise and Civil Rights Act violations that most certainly take place in the 21st Circuit Court for the State of Missouri.

147.     Plaintiff Matthew R. Grant first learned the capabilities of the RICO enterprise when Defendant and Commissioner Defendant Mary W. Greaves engaged in ***ex parte judicial communications*** after Plaintiff moved for her disqualification for bias and prejudice.

148.     The attorney involved and counsel for Defendant Rebecca A. Copeland is Defendant Maia Brodie who is a special representative of the Missouri Office of Chief Disciplinary Counsel.

22

149.    This case also involves Defendant Hilton's former (named) law partner who represents Defendant Sarah Grant.

150.    This case involves Plaintiff's fight with the RICO enterprise's "dream team."

151.    This case does not involve fanciful or untrue allegations.

152.    Instead, it involves actual evidence of the very real RICO enterprise that has denied Plaintiff and his minor children their constitutional protections.

153.    Plaintiff is asking this Court to follow the United States Constitution's express language and ensure that "***the Judges in every State shall be bound thereby***" and to take action.

154.    This case filing is not a reaction to negative rulings.

155.    Plaintiff first reported Defendant Greaves and Defendant Brodie to the Missouri Office of Chief Disciplinary Counsel (OCDC) back on **December 31, 2024.**

156.    After Defendant Hilton was tasked to hear Plaintiff's Motion seeking transfer to the Missouri Supreme Court, Plaintiff learned that Defendant Hilton was a member of the same criminal enterprise.

157.    This conclusion was not surmised by Plaintiff, Defendant Hilton not so subtly and expressly told Plaintiff that he was involved.

158.    Defendant Hilton's bold statement was intended to force Plaintiff to surrender but that effort failed.

159.    Plaintiff first reported Defendant Hilton and this RICO enterprise to the United States Department of Justice (DOJ) back on **February 3, 2025.**

160.    Defendant Hilton had not even entered a single order adverse to Plaintiff when Plaintiff reported him to the United States Department of Justice.

23

161.    Plaintiff exposed this corruption to the Missouri Court of Appeals in his writ filings commenced on March 25, 2025, and were completed on March 26, 2025.

162.    On March 27, 2025, *and this is critically important,* less than 24 hours after the writ filing's submission, Defendant Hilton **retaliated** against Plaintiff and entered **an ex parte TRO** removing all of Plaintiff's custody and visits with his children.

163.    The Order was entered in bad faith and was blatant retaliation for Plaintiff's exposure of the corruption at issue.

164.    The TRO being issued *ex parte* when Plaintiff did not have a visit with his children until 3 days after the date it was entered is so damning that Defendant Brodie, who herself obtained the *ex parte* TRO, falsely told the Senior Judge ruling on Plaintiff's Motion to Disqualify for Cause **that it did not even exist.**

165.    A March 27, 2025, *ex parte* TRO entered in the state court case was contrived and based upon the false argument that Defendant Rebecca Copeland and Defendant Brodie believed that Plaintiff had relapsed in his battle with alcoholism and was secretly in a rehab:

> Respondent believes Petitioner is currently in a rehabilitation or detox program/facility.

166.    At that time, Defendant Hilton knew Plaintiff was subject to breathalyzer testing 3 times per day.

167.    Both Defendant Copeland and Defendant Fenley, the Guardian *Ad Litem* received Plaintiff's daily, passing Soberlink test results.

168.    Defendant Brodie, Copeland, Fenley, Hilton all falsely claimed to believe Plaintiff had relapsed when the evidence in their hands proved that Plaintiff had not had a drink since March 2024.

24

169.   Specifically, the Defendants knew that Plaintiff had tested negative for alcohol every single day and 9 times in the 3 days immediately before the March 27, 2025, *ex parte* TRO:



170.   No Defendant in this case actually believed that Plaintiff had relapsed.

171.   This fact is demonstrated clearly by Defendant Copeland's friendly message to Plaintiff relating to his necessary travel:



172.   The version of events that these Defendants put forth and that was adopted by Defendant Hilton was nothing but a ruse and pretextual reason to punish Plaintiff for the writ he filed exposing the corruption *less than 24 hours earlier*.

173.   To this day, none of the Defendants can explain how Plaintiff could have *relapsed and secretly went to rehab for alcoholism if he didn't consume any alcohol*.

174.   There is no more proof that Defendant Hilton's March 27, 2025, *ex parte* TRO was retaliation.

25

175.     At the June 2, 2025, hearing on Plaintiff's Motion to Dissolve the injunction and return to normal custody, he presented the Court with both passing Soberlink results also a business records affidavit and the results of the completely negative hair follicle test:

176.     Without justification, Defendant Hilton **refused to admit the hair follicle test results** that he ordered.

177.     Defendant Hilton stated that *he **could not interpret** the "negative" test results without the assistance of an expert witness* which Plaintiff failed to hire and present at the hearing.

178.     Defendant Hilton, the Presiding Judge of the 21st Circuit Court of the State of Missouri *stated and ruled* that he could not interpret the word "negative" next to each of the drugs listed on the tests results he himself ordered.

179.     As further proof of Defendant Hilton's involvement in the RICO enterprise and corruption, when he finally lifted the Preliminary Injunction that prohibited Plaintiff from having any of his overnights or visits, Defendant Hilton **only provided _6 nights per month_**

26

*instead of the **10** overnights and visits* that Plaintiff was allowed prior to his exposure of the corruption.

180.    On August 27, 2025, when Plaintiff cross-examined Defendant Hilton on this issue, he falsely testified that failing to provide the other nights and visits was a **"mistake."**

181.    If it was a **"mistake"** as Defendant Hilton swore, surely he would have corrected the error quickly for the sake of the minor children that missed time with their father due to his error.

182.    As of the moment of this filing, Defendant Hilton has ***still not corrected his "mistake"*** because it was no accident.

183.    As more evidence, Defendant Hilton also threatened to seize the Plaintiff's 529 college savings accounts to pay the Guardian *Ad Litem* fees in the case.

184.    All such accounts are free from collection via judgment.

185.    Again, presumably that baseless threat was just another "mistake."

186.    With regard to the lack of action by the state court system, Plaintiff exposed this corruption to the Missouri Supreme Court on April 2, 2025, and June 11, 2025, in separate Writs.

187.    Just like the Court of Appeals, the Missouri Supreme Court has declined to act.

188.    There can be no doubt that Plaintiff has exhausted all efforts he could be expected to take in order to obtain assistance from the Missouri appellate court system to address the RICO acts and Civil Rights Act violations.

189.    Plaintiff can only deduce that no Missouri state appellate court is willing to publicly acknowledge the corruption due to the impact it will have on Missouri's judicial system.

4921-3441-1030, v. 1

190.     Plaintiff submits that those courts overlook the fact that overlooking evidence of Civil Rights Act violations and RICO acts causes *much greater harm* to Missouri's judicial system than commencing change in one case.

191.     As this Court is aware, on August 11, 2025, Plaintiffs filed their initial Complaint in this matter.

192.     On August 13, 2025, in retaliation for Plaintiffs' initiation of this litigation, Defendant Hilton entered an Escort Order in bad faith and in order to harass Plaintiff Matthew R. Grant.  **Exhibit A.**

193.     The August 13, 2025, bad faith and harassment Escort Order requires Plaintiff to be accompanied by security at all times while in the St. Louis County Courthouse.

194.     The basis of the bad faith and harassment Escort Order is the mere fact that on August 11, 2025, Plaintiffs sent a Request for Waiver of Service of Process along with a copy of the Complaint via U.S. Mail to Defendant Greaves at her residence in compliance with FED.R.CIV.P. 4(D)(1)(G).

195.     This is photograph taken by Plaintiff of the 10" x 13" white envelopes that he mailed to all defendants as required by FED.R.CIV.P. 4(D)(1)(G):



4921-3441-1030, v. 1

196.    No reasonable person, much less a court commissioner, could interpret the receipt of one of the standard white envelopes above containing service papers as harassment or intimidation.

197.    Defendant Greaves intentionally misrepresented the 10" x 13" white envelope containing a photocopy of the Complaint and Request for Waiver of Service as a suspicious package in obvious retaliation for being named as a defendant.

198.    Most importantly, the August 13, 2025, Escort Order was entered by Defendant Hilton in the complete absence of jurisdiction.

199.    Due to the lack of jurisdiction, Defendant Hilton has *no judicial immunity* for that RICO violation.

200.    Defendant Hilton had no jurisdiction because on August 5, 2025, Plaintiff filed a fully compliant Motion and Application for Change of Judge for Cause pursuant to RSMo. § 508.090 et seq.

201.    Because Plaintiff's Motion and Application for Change of Judge for Cause complied with RSMo. § 508.090 et seq., it was set for hearing on August 27, 2025.

202.    Upon the filing of Plaintiff's August 5, 2025, Motion for Change of Judge for Cause, Defendant Hilton *lost all jurisdiction* to take any action in the Family Court matter until after a ruling following the August 27, 2025, hearing.

203.    Because Defendant Hilton's August 13, 2025, Escort Order took place after August 5, 2025, and before a ruling on Plaintiff's Motion for Change of Judge for Cause, Defendant Hilton's actions were taken in complete absence of jurisdiction.

204.    Defendant Hilton is not alone in his improper violations of Plaintiffs' civil rights.

29

205.    Defendant Greaves' *ex parte* judicial communications and retaliation that took place in December 2024, are more proof of Plaintiffs' allegations.

206.    The actions of Defendant Greaves and Defendant Hilton after receiving notice of the Complaint are independent and additional proof, apart from her *ex parte* judicial communications, of their willingness to violate the Rules of Judicial Conduct to conceal and protect her involvement in the very RICO enterprise alleged in the August 11, 2025, Complaint.

207.    The actions of Defendant Greaves and Defendant Hilton after receiving notice of the Complaint are themselves independent and additional RICO predicate acts.  *See* 18 U.S.C. §§ 1510 and 1512(b).

208.    On September 2, 2025, not to be outdone by the absurd Escort Order, Defendant Fenley decided to launch his own retaliation against Plaintiff.

209.    On that date, Defendant Fenley filed an Amended Motion for Sanctions claiming that Plaintiff sent him an envelope containing balm, tape and white pencils.

210.    That is what Defendant Fenley filed in court via wire:

16. The package was sent on August 11, 2025, from the downtown post office where Father said he was that day to mail pleadings from his Federal Lawsuit that was filed and the handwriting on the package is likely Father's handwriting.

17. The package included shipping tape, an herbal balm from India for healing sore joints, a box of white colored pencils and a single #2 pencil.

18. There was no reason to send the package of items other than to harass and intimidate.

4921-3441-1030, v. 1

> 19. Further, there is no logical explanation for these items to be sent to the GAL without any other written documents in the envelope/package that was delivered.
>
> 20. The most logical way for the undersigned GAL to interpret these items is as a threat from Petitioner as a result of the ongoing litigation.

211. Defendant Fenley's Motion doesn't even contain a photograph of the supposed envelope of balm, tape and white pencils.

212. Defendant Fenley's story is so unbelievable that it deserves little substantive opposition.

213. Plaintiff does not type a 170-page RICO and Civil Rights Act Complaint with various legal theories but at the same time resort to the self-help of intimidation by mailing balm, tape and pencils to the Guardian *Ad Litem*.

214. The ongoing unconstitutional acts that have taken place in the 21st Circuit Court are difficult to believe.

215. On September 2, 2025, the same day as the Motion for Sanctions, the 21st Circuit Court of the State of Missouri issued an Order of Protection that required Plaintiff to remove his initial Complaint filed in this Court *from all online locations*. **Exhibit B**.

216. The relevant language was buried in the fine print on page 2 and not listed in the Order of Protection's clearly marked restrictions.

217. Nevertheless, this is the Order of Protection language enlarged:

It is further ordered that:

Respondent shall remove all republished documents from, about, mentioning or referring to Petitioner as it relates to any sealed or pending legal action from digital, print, video and/or other media.

218. The Order is an outright violation of Plaintiffs' *1st Amendment right of free speech.*

4921-3441-1030, v. 1

219.    Plaintiff was actually booked, fingerprinted and underwent mug shots because the very Complaint **that is available on PACER** was unknowingly left on Plaintiff's website: www.StopMissouriCorruption.com.

220.    The constitutional violations that have taken place are too numerous to even list. As the above allegations and evidence prove, the RICO enterprise in the state court has not stopped its retaliation.

221.    This Complaint contains just a small portion of the string of retaliation Plaintiff has suffered in his personal attempt to stop the corruption in the St. Louis Family Court.

222.    Plaintiff has been fighting to expose this corruption for *more than 9 months*.

223.    Plaintiff's efforts have involved significant personal sacrifice and are ***not*** sour grapes.

## ADDITIONAL LITIGATION RICO CONSPIRACY FACTS STATED SHORT AND PLAINLY BUT WITH PARTICULARILTY:

224.    The STL County Family Court Matter does not involve a final judgment.

225.    Plaintiff is the father of two minor children, Plaintiffs C.L.G. and C.M.G.

226.    Plaintiff is proposed *Next Friend* to Co-Plaintiff C.L.G. who is 16 years old.

227.    Plaintiff is proposed *Next Friend* to Co-Plaintiff C.M.G. who is 14 years old.

228.    Defendant Rebecca A. Copeland is the mother of the children C.L.G. and C.M.G.

229.    Defendant Rebecca A. Copeland is a party and is the Respondent in the STL County Family Court matter.

230.    Prior to the March 2024 filing of the STL County Family Court matter by Defendant Copeland, Plaintiff had 50/50 joint physical and joint legal custody of his children C.L.G. and C.M.G.

231.    Long before the underlying litigation was commenced, a RICO enterprise has existed

4921-3441-1030, v. 1

involving an ongoing criminal racketeering scheme in which corrupt St. Louis County Family Court Judges, Commissioners, Guardians *Ad Litem* and a pool of corrupt family law lawyers intentionally delay child custody and child support matters in order to, among other things, intentionally inflate attorney fees, Guardian *Ad Litem* fees, unnecessary evaluation fees, and therapist fees, and to obtain unfair, coerced and extorted monetary settlements.

232. The conspiracy and corruption are accomplished through the assistance or willful blindness of court personnel, and it is actively assisted by at least one outside court reporter.

233. This Complaint address a longstanding racketeering criminal organization and Family Court enterprise and its various associates', members' and co-conspirators' violations of at least the following RICO (18 U.S.C. § 1964) predicate crimes:

    a. Aiding and Abetting

- 18 U.S.C. § 2

    b. Accessory After the Fact

- 18 U.S.C. § 3

    c. Wire Fraud

- 18 U.S.C. § 1343

    d. Honest Services Fraud

- 18 U.S.C. § 1346

    e. Attempt and Conspiracy

- 18 U.S.C. § 1349

4921-3441-1030, v. 1

f.  Obstruction of Justice

- 18 U.S.C. § 1503

g.  Obstruction of Criminal Investigations

- 18 U.S.C. § 1510

h.  Tampering with a Witness, Victim, or Informant Influencing or threatening a witness, victim, or informant to alter their testimony.

- 18 U.S.C. § 1512(b)

i.  Retaliating Against a Witness, Victim, or Informant

- 18 U.S.C. § 1513

234.    As alleged in this Complaint, each false and misleading email, electronic filing, and phone call in furtherance of the corrupt scheme in each case, including those in the underlying case was and is an act of at least Wire Fraud, Attempt and Conspiracy, and Obstruction of Justice, all RICO predicates, in violation of 18 U.S.C. §§ 1343, 1349 and 1503.

235.    The RICO Defendants are "persons" under the RICO statute, and the St. Louis Family Court Corruption Organization is the "enterprise."

236.    The evidence will show that all RICO Defendants are members of the enterprise or have associated with the enterprise.

237.    The RICO enterprise uses the same pattern of illegal actions to further its goal and that pattern is continuous and has both closed-ended and open-ended continuity.

238.    Based upon the most recent information available and investigation, the total number of associates and members of the enterprise is at least 70.

4921-3441-1030, v. 1

239.    Plaintiff will present the testimony of several FACT WITNESSES that personally contacted and submitted reports to the St. Louis Office of the Federal Bureau of Investigation ("FBI") regarding the same RICO enterprise.

240.    As alleged below and herein, Plaintiff personally and repeatedly reported the corruption in this case involving Defendant Greaves, Defendant Hilton, Defendant Brodie and Defendant Fenley, among others, to the St. Louis office of the United States Attorney's office, within the United States Department of Justice, between January 13, 2025, and June 27, 2025.

241.    Plaintiff's reporting, including his report of Defendant Hilton on **February 3, 2025**, was made via email to an Assistant United States Attorney ("AUSA"), a Missouri licensed attorney with whom Plaintiff used to work with at a large local law firm:

Matt Grant <mattgrant.stl@gmail.com>
To: ███████████@usdoj.gov

Just when you thought you would get a break from me. Holy shit, I cracked a big one on Friday and another over the weekend, and more are unfolding each hour
PLEASE INVESTIGATE PRESIDING JUDGE HILTON!!!!!!

242.    At least one FACT WITNESS also involved in reporting the corruption at issue in this case to the FBI is also a Missouri licensed attorney.

243.    In one recorded conversation between another FACT WITNESS and a FBI Special Agent that Plaintiff will present at trial, that FACT WITNESS reported the conduct at issue in this case to a Special Agent of the FBI and that led to no action.

244.    That recording and conversation took place on February 23, 2021.

245.    FACT WITNESS #1 will also testify and present documentary evidence proving that Defendant Bruce Hilton engaged in illegal *ex parte* communications in FACT WITNESS

35

#1's earlier case while he was a 21ˢᵗ Circuit Court judge.

246.     Plaintiffs' case is not unique.

**PRELITIGATION CIVIL CONSPIRACY:**

247.     Before this matter was introduced to the St. Louis Family Court, Defendant Copeland,

Defendant Staci Thomas and Defendant S. Grant engaged in an ongoing civil conspiracy

that damaged Plaintiff.

248.     On December 2, 2024, and December 3, 2024, at least Defendant S. Grant trespassed

in Plaintiff's home and took photographs of Plaintiff's usernames and passwords, business

papers and Plaintiff and his wife's prescription medication bottles:





4921-3441-1030, v. 1



249.    The civil conspiracy and plan to illegally gather evidence continued throughout the Spring of 2024 and it continues today.

250.    On March 10, 2024, Defendant Copeland, Defendant Thomas and Defendant S. Grant were continuing their collusion and civil conspiracy that began long before the underlying litigation commenced when they joined and/or associated with the existing RICO enterprise.

251.    Specifically, on March 10, 2024, Defendant Thomas, Plaintiff's first cousin, directed and colluded with Defendant S. Grant, via text message, to attempt to illegally access Plaintiff's personal medical information using his unknown password:

> 3/10/2024 9:36:58 PM
>
> Get his insurance login info too. We need to access his records as evidence

252.    Defendant Thomas repeated her demand and instructed:

> Make the login a demand. No flex

253.    The same day, Defendant S. Grant sent a text to Plaintiff in an unsuccessful attempt

to obtain his password under the guise of helping him locate a rehab facility:



254.    When the attempt to fraudulently obtain Plaintiff's password failed, Defendant Thomas suggested to Defendant S. Grant to try again:



255.    Defendant S. Grant sent yet another text message to Plaintiff trying to obtain his personal information:



256.    As noted herein, the fraudulent solicitation via wire was far from the first time Defendant S. Thomas, Defendant S. Grant and Defendant Copeland violated the civil and criminal laws to inflict intentional harm on Plaintiff.

257.    On March 11, 2024, Defendant S. Thomas, Defendant S. Grant and Defendant Copeland confirmed what will be proven at trial, the illegal access to Plaintiff's medical records by Defendant S. Grant, a Registered Nurse:

4921-3441-1030, v. 1



258.    Also on March 11, 2024 at 10:22 a.m., one day after Defendant Thomas, Defendant S. Grant and Defendant Copeland were unsuccessful at obtaining Plaintiff's login password, and when Plaintiff had hit rock bottom and was having the absolute worst of depressive thoughts, Defendant Thomas sent an email to the health insurance provider for not only Plaintiff, Plaintiff's wife and Plaintiff's step-children, but also the *minor children in this case* in an intentional attempt to cancel Plaintiff's health insurance before he could obtain medical help.

259.    Defendant Thomas' email intentionally and falsely claimed that Plaintiff and his now-wife, were not domestic partners at that time.

260.    Defendant Thomas, Plaintiff's first cousin, had such inexplicable and extreme criminal intent to harm that she sent this text:

`dress":"+13146` `dy":"We need this guy out of your life."` `"name":"Rebecca`

261.    Defendant Thomas' actions throughout this case were malicious and intentional and Defendant Thomas acted with malice or with deliberate and flagrant disregard for the safety of others.

262.    Moreover, the actions of Defendant Thomas and her co-conspirators above constitute at least Wire Fraud and Obstruction of Justice, RICO predicates, in violation of 18 U.S.C.

§§ 1343 and 1503.

263.    Defendant Thomas' actions also constitute Tortious Interference with Plaintiff and the minor children's health insurance contract with their health insurance provider as it was wrongfully breached and terminated.

264.    After Defendant Thomas submitted the false allegation of fraud, the health insurance benefits of Plaintiff and the minor children Co-Plaintiffs were wrongfully terminated as a result of her false reporting.

265.    On August 23, 2024 at 2:56 p.m., not knowing that Defendant Thomas' intentional fraud and tortious interference had already worked, and despite being advised by Defendant Brodie that there was no reason to believe there was Domestic Partner fraud,  Defendant Copeland nevertheless made yet another attempt to cancel Plaintiff *and her own children's health insurance*.

266.    On April 16, 2024, Defendant Copeland waived attorney client privilege and shared Defendant Brodie's legal opinion that there were no grounds to believe fraud with Defendant Thomas and Defendant S. Grant:

4/16/2024 12:59:57 PM

Rebecca Copeland

I have access to nothing.
Talked to Maia today. Mostly b/c Matts being PIA bout these phone calls. Asked bout the insurance & domestic partner coverage & she's like "all insurance companies are different & some allow it". I kept trying to tell her I thought they doing illegally, but she def didn't seem to care.
So I guess I'll need to contact Aetna & found out what their domestic partner coverage entails.
Maia also told me not to be surprised if court allows Matt supervised visits after Mondays hearing. Not many. But some. Which isn't what John told me. She's supposed to talk to John before the hearing & lmk what's up so I don't have surprises. I told her - I can't handle surprises.

267.    On March 12, 2024, the day after her tortious interference email to Plaintiff and his children's health insurance provider, Defendant Thomas continued her RICO violations and assisted her co-conspirators Defendant Copeland and Defendant Grant, with *specific instructions on how to trespass on Plaintiff's property* to break and enter into his home for the purpose of invasion of privacy and burglary, as they did so many times before, even though there was a new Ring camera installed to prohibit that very conduct from continuing:

268.    The Town and Country, Missouri Police Department investigated all 3 of these individuals, with Defendant S. Grant invoking her 5th Amendment Rights by refusing an interview.

269.    On March 12, 2024, the underlying case officially began when Defendant Rebecca A. Copeland, after FACT WITNESS #5 having heard nothing from Defendant Eilerts, filed the underlying matter in response to a temporary situation in which she knew that Petitioner had briefly relapsed in his otherwise successful battle with the disease of alcoholism.

270.    Critically important, in her March 12, 2024, Motion to Modify, filed when Plaintiff

41

4921-3441-1030, v. 1

had hit rock bottom in his depression and battle with alcoholism, Defendant Copeland *still* acknowledged Plaintiff was a *great father* as she sought *no change* in the parties' 50/50 joint physical and joint legal custody arrangement under the Parenting Plan and merely sought the following relief:

> 12.    It is in the minor child's best interest to change the parenting plan and order Petitioner to only have supervised visitation with the minor children until he has his drinking and mental health under control.

271.    Defendant Copeland knew that Plaintiff was a *more than competent* co-parent who actually handled everything, as opposed to her, for the minor children C.M.G. and C.L.G. since they were born.

272.    On April 5, 2024, after Defendant Copeland learned that Plaintiff could not take a change from Defendant Greaves, Defendant Copeland shared the following with to Defendant Thomas and Defendant Grant as she became aware of the opportunities the RICO enterprise provided with the case now pending before Defendant Greaves:

> Rebecca Copeland
> OH!  N she also said they can't change the judge again. So they're stuck w/ this new one. Which is GREAT for us!

273.    As alleged herein, Defendant Copeland, Defendant S. Grant and Defendant Thomas joined and/or associated with the RICO enterprise and repeatedly engaged in Wire Fraud, Attempt and Conspiracy, and Obstruction of Justice, all RICO predicates, in violation of 18 U.S.C. §§ 1343, 1349 and 1503.

274.    On March 19, 2024, Defendant Staci Thomas bragged of her tortious interference and

42

4921-3441-1030, v. 1

ability to be relentless attacking Plaintiff's wife's employment and Plaintiff and his children's health insurance, when she sent her co-conspirator Defendant S. Grant a .GIF, but also accidently sent it to Plaintiff's wife:



275.    On April 29, 2024, Defendant Eilerts and Defendant Brodie appeared before Defendant Greaves.

276.    Defendant Brodie obtained an Order for entry on the court docket via wire (case.net) and that appearance and Order were intended to, and did start the long process of accomplishing the goals of an existing and an ongoing criminal racketeering scheme in which corrupt St. Louis County Family Court Judges, Commissioners, Guardians *Ad Litem* and a pool of corrupt family law lawyers intentionally delay child custody and child support matters, including the use of unnecessary evaluations, in order to intentionally inflate attorney, Guardian *Ad Litem*, and therapist fees, and obtain unfair, coerced and extorted monetary settlements.

277.    As of May 20, 2024, Defendant Copeland's filings in the underlying matter sought *no change* in long-term custody.

4921-3441-1030, v. 1

278.    However, by May 21, 2024, Plaintiff disclosed his financial information and documentation in the underlying matter via his attorney Defendant Eilerts.

279.    On May 21, 2024, at 10:42:50 A.M., Defendant Copeland and Defendant Thomas exchanged the following text messages resulting from Defendant Copeland's waiver of the privilege associated with the legal conclusion of her counsel Defendant Brodie and stated:



280.    Beginning on May 21, 2024, Defendant Copeland abandoned any willingness to return to 50/50 joint physical custody for no reason other than monetary gain.

281.    Defendant Copeland used the preexisting RICO enterprise and its patterns to pursue this case against Plaintiff and participate in many RICO predicate acts.

282.    On May 29, 2024, Defendant Eilerts issued subpoenas and Notices of Deposition for the deposition of Defendant S. Grant and Defendant S. Thomas to take place on June 10, 2024.

283.    The subpoenas compelled Defendant Grant and Defendant Thomas to produce, among other things, video and audio recording of Plaintiff and all text messages and emails relating to Plaintiff in any way.

44

284. On June 7, 2024, Defendant Gillespie, counsel for Defendant S. Grant, delivered approximately 507 incriminating pages of documents to Defendant Eilerts in purported compliance with the subpoena.

285. Defendant S. Grant intentionally manipulated the document production, and she omitted production of a video recording that she possessed of Plaintiff.

286. Defendant S. Grant continues to withhold the recording because it was taken illegally, in Plaintiff's master bedroom without his knowledge and in violation of RSMo. § 542.402 which criminalizes the act of Wire Tapping.

287. Defendant S. Grant's conduct alleged above constitutes at least Obstruction of Justice, Attempt and Conspiracy, and Theft or Alteration of Record or Process, all RICO predicates, in violation of 18 U.S.C. §§ 1503, 1343 and 1506.

288. The documents produced by Defendant S. Grant through her counsel, as demonstrated in the pictures above, prove that she trespassed in Plaintiff's home and engaged in an invasion of his privacy.

289. Defendant Gillespie knowingly and intentionally assisted Defendant S. Grant in her illegal inaction and action of refusing to produce a copy of the video and/or audio recording(s).

290. Defendant Gillespie's conduct alleged above constitutes at least Obstruction of Justice and Theft or Alteration of Record or Process, both RICO predicates, in violation of 18 U.S.C. §§ 1503 and 1506.

291. On June 10, 2024, Defendant Staci Thomas appeared and produced approximately 204 pages of text messages.

45

292.   Defendant Thomas purposefully withheld and refused to produce the email she sent to Plaintiff and his children's insurance provider as described above despite it being directly responsive to the subpoena.

293.   Defendant Thomas manipulated her production in several ways.

294.   First, Defendant Thomas intentionally used a program to make the texts almost illegible as the author and substance.

295.   Second, Defendant Thomas deleted and/or edited several text message entries.

296.   Defendant Thomas destroyed the audio and/or video files that were in her possession and later engaged in perjury when she falsely denied in her deposition to having ever possessed any:

> I have plenty of video from Saturday and Sunday nights to show his state of mind. It actually does belong in court. Right now, I just want to make sure he's okay.

297.   Defendant Thomas' conduct as alleged constitutes at least Obstruction of Justice and Theft or Alteration of Record or Process, both RICO predicates, in violation of 18 U.S.C. §§ 1503 and 1506.

298.   For her part in assisting the RICO enterprise and its common purpose of stealing money from one parent in many cases, Defendant Greaves granted the Motion to Quash in its entirety, in bad faith, *refusing to allow Plaintiff to obtain a single bank record* in a case involving child support and his allegations of money being transferred and hidden by Defendant Copeland.

46

4921-3441-1030, v. 1

299.     Defendant Greaves' order granting the Motion to Quash was a typical pattern and was entered in furtherance of the RICO enterprise's goal to protect the favored parent in custody litigation in which the enterprise had determined to victimize the other parent.

300.     Defendant Brodie also moved to Quash a subpoena served on the minor children's school district for their attendance records and argued:

> 6.     For the reasons set forth herein, the Subpoena requests documents that are not relevant to the subject matter involved in the pending litigation and are not reasonably calculated to lead to the discovery of admissible evidence.

301.     Defendant Fenley did not oppose the Motion to Quash as he should have as he knew what Defendant Brodie knew, the records would demonstrate truancy while in Defendant Copeland's custody.

302.     The Motion to Quash, Defendant Greaves would have granted if given he chance was part of pattern of RICO conduct, was not filed in good faith and was an effort to hide the undisputed fact that the minor children in this case missed *more than 1,130 periods of school* while in Defendant Copeland's custody.

303.     On November 19, 2024, Plaintiff, Defendant Eilerts, Defendant Copeland, Defendant Brodie, and Defendant Fenley participated in a mediation with a well-known CO-CONSPIRATOR.

304.     During the mediation, consistent with the RICO enterprise's pattern of conduct, Defendant Copeland *offered Petitioner 50/50 custody, less 2 days per month* (roughly 12 instead of 15), demanded sole legal custody, and demanded a trial on child support calculations and attorneys' fees issues.

47

305.    Defendant Copeland and Defendant Brodie's custody offer is *objective evidence and proof* that all claims that followed by Defendant Copeland in the underlying litigation that Plaintiff was a <u>danger</u> were and are false and part of the pattern used by the RICO enterprise to steal money.

306.    Defendant Fenley's agreement to any custody agreement the parties reached in November 2024, including up to 50/50 less 2 days per month is *objective evidence and proof* that his July 11, 2025, recommended Parenting Plan including only *2 overnights per month* and 2 visits per month is nothing more than retaliation and part of the pattern used by the RICO enterprise.

307.    During the mediation, Defendant Fenley noted that Defendant Greaves "hated" him a statement Plaintiff and Defendant Eilerts agreed was finally objective evidence of bias or the appearance of impropriety requiring Defendant Greaves' recusal or removal.

308.    On November 27, 2024, Defendant Thomas was deposed in the underlying matter.

309.    During her deposition, Defendant Thomas engaged in perjury in violation of not only RSMo. § 575.040, but also she engaged in *at least* Obstruction of Justice, a RICO predicate, in violation of 18 U.S.C. § 1503.

310.    During the deposition, despite allegedly having no idea that Defendant Thomas was secretly recording, Defendant Brodie cautioned Defendant Thomas from pulling her phone out of her pursue as she knew it would show the recording activity:

> Q. Will you pull up your cell phone and see if you have this message?
> MS. BRODIE:
> You can't force her to open up a cell phone and look at it. Staci, this is up to you.
> THE WITNESS: Oh, yeah, no.
> MS. BRODIE:

48

You're representing yourself, but --
THE WITNESS: Well, it's easy enough for me to look.
MS. BRODIE:
You shouldn't do that. He can look at what you're doing on your cell phone, so...

311.    Importantly, during the deposition, Defendant Thomas engaged in perjury to assist the RICO enterprise and the shared goal of theft of money from Plaintiff.

312.    At no time during or at the end of Defendant Thomas' deposition did Plaintiff's counsel, Defendant Coulter, mark a single document that was used, even the document(s) newly produced by Defendant Thomas, as an Exhibit for future use at trial or to otherwise authenticate them.

313.    Defendant Thomas produced new documents that had never before been seen and Defendant Coulter still failed to mark those pages as deposition Exhibits.

314.    Defendant Coulter's actions and inactions relating to the deposition of Defendant Thomas reflect just one instance of his failure to exercise the degree of care, skill, and learning in representing Plaintiff that is ordinarily exercised by other attorneys under the same or similar situations.

315.    Defendant S. Grant's deposition was to have taken place on December 4, 2024.

316.    Before the deposition began, Defendant Gillespie, in furtherance of the RICO enterprise, made a plan to delay proceedings, and he conjured a false and bad faith basis to walk out of the deposition before it even began.

317.    Defendant Gillespie's actions in prohibiting the deposition and delaying it were in furtherance of RICO enterprise's pattern and practice to prolong family law cases.

318.    Plaintiff ultimately moved to disqualify Defendant Greaves for Cause after Defendant

Fenley admitted verbally that she "hated him."

319.    Only later would Plaintiff learn that Defendant Greaves was simply doing her part in the RICO enterprise's pattern and practices.

320.    Despite Plaintiff moving to disqualify her for bias, Defendant Greaves acted before the motion could be ruled upon and entered a *sua sponte* Order dated December 9, 2025.

321.    The fact that the December 9th Order was entered *sua sponte* is critical.

322.    Defendant Greaves had, via Motion, been asked by ***no one*** to do ***anything***.

323.    But, nonetheless, Defendant Greaves issued an Order all on her own.

324.    That Order allowed two critical things.

325.    First, it allowed the parties to amend their pleadings, after the close of discovery and 8 days before trial.

326.    Second, the Order reopened discovery until December 17, 2004.

327.    That Order was the result of *ex parte* communication.

328.    The very technical error in Defendant Copeland's Motion to Modify was magically corrected by the very amendment allowed, *sua sponte*, by Defendant Greaves.

329.    Next, once the new discovery period opened, the one that no one *supposedly* expected, Defendant Brodie served discovery within hours the same day seeking the very surveillance footage that she had forgotten to request while discovery was open:

> 9.   Please state whether there has been any surveillance or any investigation of Rebecca Copeland, Sarah Grant, Staci Thomas, and Christine Tinker, either individually or within a group, including but not limited to photographs, video recordings, voice recordings, text messages, or emails.
>
> **PETITIONER'S ANSWER:**
>
> **RESPONDENT'S ANSWER:**
>
> None exist.

330.   The *ex parte* **communication** is obvious.

331.   More importantly, on January 21, 2025, Defendant Hilton himself confirmed the *ex parte* communication while he was feigning to be an ally for Plaintiff and his minor children.

332.   On January 7, 2025, at 1:08 p.m., Plaintiff filed his Supplement to his Motion to Disqualify Defendant Greaves in which he laid out the evidence of the *ex parte* communications.

333.   On January 8, 2025, at 11:35 a.m., less than 24 hours later Defendant Brodie's law firm associate, FACT WITNESS #7, *quit* Defendant Brodie's law firm.

334.   Specifically, Defendant Brodie, not FACT WITNESS #7, filed a Memorandum that stated:



> **MEMORANDUM OF WITHDRAWAL**
>
> COMES NOW ▮▮▮▮▮ and having left her previous firm, provides notice to the Court and all parties of her withdrawal of her appearance in the above-captioned matter as co-counsel for Respondent, Rebecca Copeland, who remains represented by counsel of record.

335.   On **January 13, 2025**, Plaintiff filed a Motion for Sanctions against Defendant Brodie

4921-3441-1030, v. 1

and Defendant Copeland.

336.    In that Motion for Sanctions, Plaintiff made it clear that he eventually file suit against

both Defendant Greaves and Defendant Brodie:

> [3] Commissioner Greaves' involvement in a broad, criminal conspiracy to intentionally utilize *ex parte* judicial communications eliminates any judicial immunity defense she might hope to have against <u>civil</u> claims relating to her conduct.

> [4] The exposure of Ms. Brodie and Ms. Copeland to criminal prosecution is patently obvious.  While not obvious to some, the exposure of Commissioner Greaves to similar criminal prosecution is well-established. *See, e.g., O'Shea v. Littleton*, 414 U.S. 488, 680 (1974) ("On the contrary, the judicially

> fashioned doctrine of official immunity does not reach 'so far as to immunize criminal conduct proscribed by an Act of Congress . . ..') (citation omitted).

> 12.    While it is true that Petitioner will likely pursue civil liability and damages from those named in this Motion for Sanctions *and others*, his financial ability to do so has been financially hamstrung by the actions of Respondent and her counsel.[8]

337.    Again, any suggestion that Plaintiff's August 11, 2025, Complaint is newly found sour

grapes is contrary to this objective evidence.

338.    On January 13, 2025, Defendant Greaves recused from the underlying case.

339.    January 21, 2025, was to be the day for the hearing on Petitioner's Motion to DQ

Defendant Greaves, but she had recused, and Plaintiff cancelled that hearing.

340.    Therefore, the only Motion that was ripe for a ruling was the Motion to Withdraw

filed by Defendant Eilerts and the Defendant Growe Eisen Firm.

341.    But Plaintiff filed a consent to that Motion.

342.    As such, no hearing on the Motion to Withdraw was necessary.

343.    As a *complete surprise*, Defendant Hilton's staff individual, CO-CONSPIRATOR #8,

confirmed that Defendant Hilton intended for the January 21, 2025, hearing to go forward

4921-3441-1030, v. 1

supposedly regarding only Defendant Eilerts and Defendant Growe Eisen Firm's Motion to Withdraw.

344.    Plaintiff was dumbfounded but it all makes sense now.

345.    During the January 21, 2025, hearing, Defendant Hilton engaged in his first ruse and made a litany of false statements to Plaintiff in order to persuade him to consent to his jurisdiction as opposed to the pending request for transfer to the Missouri Supreme Court.

346.    Defendant Hilton's false statements worked, and Plaintiff consented to Defendant Hilton's jurisdiction over this case.

347.    When the January 21, 2025, hearing began, Defendant Hilton intentionally and falsely pretended that he was the *savior* for Petitioner and his children.

348.    Defendant Hilton ***chastised*** Defendant Eilerts for his refusing to sign Petitioner's *pro se* Motion to Disqualify Defendant Greaves and the Supplement thereto.

349.    Defendant Hilton ***chastised*** Defendant Eilerts for his malpractice in not moving to dissolve the TRO in the case as soon as Petitioner returned from rehab in April 2024.

350.    Defendant Hilton stated how easy it would have been to dissolve a simple consent order injunction.

351.    Defendant Hilton noted that Petitioner had been using a Soberlink breathalyzer but still did not have his children.

352.    Defendant Hilton ***chastised*** Guardian *Ad Litem* Defendant Fenley for not speaking up for the children who Defendant Hilton stated repeatedly had "**suffered**."

353.    Defendant Hilton stated that Petitioner had "**suffered**" as well.

354.    Defendant Hilton went so far as to have read at least Plaintiff's financials before the

4921-3441-1030, v. 1

hearing, and he even commented on Plaintiff's high monthly mortgage payment and child support amount compared to his now-meager income.

355.    Defendant Hilton falsely signaled that he was there to help.

356.    Just allow him to keep the case, Defendant Hilton said.

357.    Consent to his jurisdiction and drop his demand for transfer to the Missouri Supreme Court.

358.    Defendant Hilton also refused to even rule on the Motion and sent Plaintiff home to think "real hard" about consenting to him as his trial judge.

359.    It was all an act and part of the pattern used by the RICO enterprise to conceal the activities of the St. Louis Family Court from the outside.

360.    The hearing *went __so well__* that Plaintiff ordered a copy of the hearing recording and transcript the next morning at 11:38 a.m.

361.    Plaintiff used the opportunity to disclose to the entire courtroom that he had reported all of them the United States Department of Justice (the St. Louis U.S. Attorney's Office), and also the OCDC with whom he was communicating.

362.    That disclosure is important because the Department of Justice is a criminal investigator and all retaliation Plaintiff has received since that date constitutes, among other things, Obstruction of Criminal Investigations and Retaliating Against a Witness, Victim, or Informant, both RICO predicates, in violation of 18 U.S. Code §§ 1510 and 1513.

363.    Unfortunately, Defendant Hilton's performance worked.

364.    Plaintiff foolishly fell for Defendant Hilton's act, hook line and sinker.

365.    Plaintiff consented to Defendant Hilton as the trial judge in this matter.

54

366.    Critically important in this matter remains the fact that Plaintiff openly stated in pleadings dating back to January 13, 2025, that he intended to document and prove the RICO violations, Civil Rights Act violations and corruption at issue in this complaint.

367.    Again, this evidence shows that Plaintiff has been documenting the corruption in the St. Louis Family Court *for more than 9 months.*

368.    For the sake of brevity, Plaintiff omits the additional evidence that he intended to present to prove that this litigation is *anything but frivolous.*

## <u>COUNT I</u>

### CIVIL RICO VIOLATIONS
### (18 U.S.C. § 1964(c) et. seq.)
### Class Action Claim

*(Defendants: Bruce Hilton, John Fenley, RHF, Maia Brodie,*
*Rebecca Copeland, Staci Thomas, Sarah Grant, Lawrence Gillespie, and GHC)*

369.    Plaintiff, individually and on behalf of the Class and subclass(es), reallege and incorporate by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

370.    Plaintiff asserts this cause of action against Defendants Bruce Hilton, John Fenley, RHF, Maia Brodie, Rebecca Copeland, Staci Thomas, Sarah Grant, Lawrence Gillespie, and GHC ("Civil RICO Defendants").

371.    As alleged in more detail herein, all RICO Defendants named in this Complaint have engaged in racketeering and conspiracy, and have membership in or association with a long-standing criminal enterprise and organization within the St. Louis Family Court.

4921-3441-1030, v. 1

372.    This Count is directed to Defendant Hilton only in relation to his actions on August 13, 2025, and his entry of the Escort Order at a time when he had a complete absence of any jurisdiction.

373.    The RICO Defendants and the RICO enterprise are separate, and the enterprise exists in the St. Louis County Family Court.

374.    The RICO Defendants and the RICO enterprise use a pattern of racketeering activity as alleged in this Complaint.

375.    The RICO predicates at issue are alleged herein and include, but are not limited to:

    a.  Aiding and Abetting

- 18 U.S.C. § 2

    b.  Accessory After the Fact

- 18 U.S.C. § 3

    c.  Wire Fraud

- 18 U.S.C. § 1343

    d.  Honest Services Fraud

- 18 U.S.C. § 1346

    e.  Attempt and Conspiracy

- 18 U.S.C. § 1349

    f.  Obstruction of Justice

- 18 U.S.C. § 1503

    g.  Obstruction of Criminal Investigations

- 18 U.S. Code § 1510

    h.  Tampering with a Witness, Victim, or Informant Influencing or threatening a witness, victim, or informant to alter their testimony.

- 18 U.S.C. § 1512(b)

    i.   Retaliating Against a Witness, Victim, or Informant

- 18 U.S.C. § 1513

    j.   Violations of one or more Missouri state criminal statutes that carry sentences of 1 year of incarceration or longer.

376. The RICO Defendants, the RICO enterprise, and the pattern are all connected as alleged in this Complaint.

377. The RICO enterprise uses the same pattern of illegal actions to further its goal and that pattern is continuous and has both closed-ended and open-ended continuity.

378. Plaintiff and the putative class and subclass members have been financially harmed through the fraudulent theft of their money in the form of excessive attorneys' fees, excessive Guardian *Ad Litem* fees, therapist fees, coerced settlements and other strategies and forms of harm as alleged in this Complaint.

379. The putative class, including specifically Plaintiff, has been specifically harmed as the RICO enterprise and racketeering has significantly impacted their and Plaintiff's ability to work.

380. For Plaintiff that equates to his lack of ability to practice law in the manner he would like, past, present and future.

381. Plaintiff, on behalf of himself and the Class and Subclasses, seeks an award of compensatory damages against all RICO Defendants.

382. Plaintiff, on behalf of himself and the Class and Subclasses, seeks an award of treble damages as provided for in 18 U.S.C. § 1964(c).

4921-3441-1030, v. 1

383.    Plaintiff on behalf of himself and the Class and Subclasses seeks an award of attorneys' fees.  Here, Plaintiff requests that his attorneys' fees be calculated at his average hourly rate collected 2024 for all of time Plaintiff has spent and will spend on this matter and any attorneys' fees he may incur in the future.

WHEREFORE, Plaintiff requests, on behalf of himself and on behalf of the Class and subclass(es), that this Court enter judgment in their favor and against the RICO Defendants, jointly and severally, for compensatory damages, treble damages, pre-judgment interest, and the award of attorneys' fees and costs that have been and will be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

## COUNT II

### CIVIL RIGHTS ACT
### (18 U.S.C. § 1983 et. seq.)
### Class Action Claim

*(Defendants Bruce Hilton, Mary Greaves, and John Fenley)*

384.    Plaintiff, individually and on behalf of the Class and subclass(es), Co-Plaintiffs C.L.G. and C.M.G., and Co-Plaintiff Stop Missouri Corruption, LLC, reallege and incorporate by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

385.    Plaintiffs assert this cause of action against Defendants Bruce Hilton, Mary Greaves, and John Fenley ("Civil Rights Defendants").

386.    As detailed herein, the Civil Rights Defendants each acted under the color of law as part of their involvement in the RICO criminal enterprise.

4921-3441-1030, v. 1

387.     The Civil Rights Defendants, jointly and severally, violated Plaintiff and Co-Plaintiffs C.M. G. and C.L.G., and the Class and subclass(es)' Due Process and other rights, including their Freedom of Speech, as alleged in this Complaint.

388.     Defendant Hilton's actions are outside any judicial immunity because Defendant Hilton's August 13, 2025, Escort Order was entered in the complete absence of jurisdiction.

389.     Defendant Fenley's actions were taken outside the scope of his role as a Guardian *Ad Litem* and are outside any qualified immunity.

390.     As detailed herein, the Civil Rights Defendants have violated Plaintiff and Co-Plaintiffs C.M. G. and C.L.G.'s rights, and the rights of the Class and subclass(es), to Due Process, both procedurally and substantively, and the right to Free Speech as guaranteed by the 1st, 5th and 14th Amendments of the Constitution of the United States.

391.     Plaintiff, Co-Plaintiffs, the Class and subclass(es), were deprived of the Civil Rights alleged herein.

392.     Plaintiff, individually and on behalf of the Class and subclass(es), and Co-Plaintiffs C.L.G. and C.M.G., seeks an award of compensatory damages against Defendant Hilton and Defendant Fenley.

393.     Plaintiff, individually and on behalf of the Class and subclass(es), Co-Plaintiffs C.L.G. and C.M.G., seeks an award of punitive damages and attorneys' fees against Defendant Hilton and Defendant Fenley as provided for in 18 U.S.C. § 1988(b).

394.     Plaintiff, individually and on behalf of the Class and subclass(es), Co-Plaintiffs C.L.G. and C.M.G., and Co-Plaintiff Stop Missouri Corruption, LLC, seek an award of attorneys' fees against Defendant Hilton and Defendant Fenley.

59

395.       Here, Plaintiff Matthew R. Grant requests that his attorneys' fees be calculated at his average hourly rate collected 2024 for all time Plaintiff has spent and will spend on this matter and any attorneys' fees he may incur in the future.

396.       Plaintiff, individually and on behalf of the Class and subclass(es), Co-Plaintiffs C.L.G. and C.M.G., and Co-Plaintiff Stop Missouri Corruption, LLC, seek mandatory and prohibitory injunctive relief against Defendant Hilton, Defendant Greaves, and Defendant Fenley, *excluding* any injunctive relief that would impact the underlying St. Louis Family Court matter.

WHEREFORE, Plaintiff, individually and on behalf of the Class and subclass(es), Co-Plaintiffs C.L.G. and C.M.G., and Co-Plaintiff Stop Missouri Corruption, LLC, request that this Court enter judgment in their favor and against the Civil Rights Defendants, jointly and severally, for compensatory and punitive damages against Defendant Hilton and Defendant Fenley, pre-judgment interest, and the award of attorneys' fees and costs that have been and will be incurred in this matter.

Plaintiff, individually and on behalf of the Class and subclass(es), Co-Plaintiffs C.L.G. and C.M.G., and Co-Plaintiff Stop Missouri Corruption, LLC, seek no monetary award against Defendant Greaves, but they seek injunctive relief against all Civil Rights Defendants that does not impact the state court case, and for such other and further relief that this Court deems just and appropriate.

## COUNT III

### CIVIL CONSPIRACY
### Class Action Claim

*(Defendants: John Fenley, Maia Brodie, Rebecca Copeland,
Staci Thomas, Sarah Grant, Lawrence Gillespie and GHC)*

60

4921-3441-1030, v. 1

397.     Plaintiff, individually and on behalf of the Class and subclass(es), and Co-Plaintiffs C.L.G. and C.M.G., reallege and incorporate by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

398.     Plaintiff, individually and on behalf of the Class and subclass(es), and Co-Plaintiffs C.L.G. and C.M.G., assert this cause of action against Defendants John Fenley, Maia Brodie, Rebecca Copeland, Staci Thomas, Sarah Grant, Lawrence Gillespie and GHC ("Civil Conspiracy Defendants").

399.     The Defendants named in this Count reached a meeting of the minds to take unlawful actions that harmed Plaintiff, Co-Plaintiffs C.L.G and C.M.G, and the Class and subclass(es).

400.     The Defendants named in this Count did engage in numerous unlawful acts that caused harm and caused damage to Plaintiff, Co-Plaintiffs C.L.G and C.M.G, and the Class and subclass(es).

401.     Plaintiff, individually and on behalf of the Class and subclass(es), Co-Plaintiffs C.L.G. and C.M.G., are entitled to an award of compensatory damages in an amount to be proven at trial.

402.     Because these actions were the result of gross negligence and/or were willful and wanton conduct, these Defendants are liable to Plaintiff, Co-Plaintiffs C.L.G. and C.M.G., and the Class and subclass(es) for punitive damages.

WHEREFORE, Plaintiff, individually and on behalf of the Class and subclass(es), and Co-Plaintiffs C.L.G. and C.M.G., requests that this Court enter a judgment in their favor and against the Defendants listed in this Count, finding them liable for civil conspiracy, and granting the

61

remedies of compensatory damages, punitive damages, pre-judgment interest, and costs, and for such other and further relief that this Court deems just and appropriate.

## COUNT IV

## FRAUDULENT MISREPRESENATION

*(Defendants: John Fenley, Maia Brodie, Rebecca Copeland, Staci Thomas, and Sarah Grant)*

403.    Plaintiff and Co-Plaintiffs C.L.G. and C.M.G. reallege and incorporate by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

404.    Plaintiffs assert this cause of action against Defendants John Fenley, Maia Brodie, Rebecca Copeland, Staci Thomas and Sarah Grant ("Fraudulent Misrepresentation Defendants").

405.    These Defendants named in this Count made false material statements of fact.

406.    These Defendants made these knowingly false statements with the intent that Plaintiff and Co-Plaintiffs C.L.G. and C.M.G. would rely upon them and be deceived.

407.    These Defendants also omitted material facts with the intent that Plaintiff and Co-Plaintiffs C.L.G. and C.M.G. would be deceived.

408.    As a result of these Defendants' fraudulent conduct, false material statements and omissions of material fact, Plaintiff and Co-Plaintiffs C.L.G. and C.M.G. have been damaged in an amount to be proven at trial.

409.    Because these actions were the result of gross negligence and/or were willful and wanton conduct, these Defendants are liable to Plaintiff and Co-Plaintiffs C.L.G. and C.M.G., for punitive damages.

4921-3441-1030, v. 1

WHEREFORE, Plaintiff, individually and on behalf of Co-Plaintiffs C.L.G and C.M.G., requests that this Court enter a judgment in their its favor and against these Defendants listed in this Count, finding the liable for fraudulent misrepresentation of material fact and granting the remedies of compensatory damages, punitive damages, pre-judgment interest and costs that have been and will be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

## COUNT V

### TRESPASS

*(Defendants: Rebecca Copeland, Staci Thomas and Sarah Grant)*

410. Plaintiff realleges and incorporates by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

411. Defendants made unauthorized entry into Plaintiff's real property and home.

412. Plaintiff had the legal right to possess the real property and Plaintiff's home thereupon.

413. Defendants had intent to enter Plaintiff's real property and home without authorization.

414. Defendants had intent to commit harm, including burglary, invasion of privacy, and gathering evidence for future litigation.

415. Plaintiff was harmed by Defendants' trespass in his home.

416. Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

417. Because these actions were the result of gross negligence and/or were willful and wanton conduct, these Defendants are liable to Plaintiff for punitive damages.

WHEREFORE, Plaintiff requests that this Court enter a judgment in his favor and against the Defendants listed in this Count, finding them liable for trespass and granting the remedies of compensatory damages, punitive damages, pre-judgment interest and costs that have been and will be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

## COUNT VI

### INVASION OF PRIVACY

*(Defendants Maia Brodie, Sarah Grant, Staci Thomas and Rebecca Copeland)*

418.    Plaintiff realleges and incorporates by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

419.    Through their unauthorized and intentional intrusion into Plaintiff's home, iPhone, tablet and laptop, and making surreptitious recordings of Plaintiff in his bedroom, all in a manner offensive to a person of ordinary sensibilities, Defendants Maia Brodie, Rebecca Copeland, Staci Thomas and Sarah Grant caused financial and other harm, including emotional distress to Plaintiff.

420.    Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

421.    Because these actions were the result of gross negligence and/or were willful and wanton conduct, these Defendants are liable to Plaintiff for punitive damages.

64

4921-3441-1030, v. 1

WHEREFORE, Plaintiff requests that this Court enter a judgment in his favor and against these Defendants listed in this Count, finding the liable for invasion of privacy and granting Plaintiff the remedies of compensatory damages, punitive damages, pre-judgment interest, and costs that have been and will be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

## COUNT VII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*(Defendants Maia Brodie, Sarah Grant, Staci Thomas and Rebecca Copeland)*

422.    Plaintiff realleges and incorporates by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

423.    As alleged in this Complaint, these Defendants have acted with intentional and reckless disregard, extreme and outrageous conduct that it is so extreme and outrageous in character and degree that it goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community.

424.    These Defendants' actions have caused severe emotional distress to Plaintiff.

425.    Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

426.    Because these actions were the result of gross negligence and/or were willful and wanton conduct, these Defendants are liable to Plaintiff for punitive damages.

WHEREFORE, Plaintiff requests that this Court enter a judgment in his favor and against these Defendants listed in this Count, finding them liable for intentional infliction of emotional distress and granting Plaintiff the remedies of compensatory damages, punitive damages, pre-judgment interest and costs that have been and will be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

4921-3441-1030, v. 1

## COUNT VIII

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

*(Defendants Maia Brodie, Sarah Grant, Staci Thomas and Rebecca Copeland)*

427.    Plaintiff realleges and incorporates by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

428.    As alleged in this Complaint, these Defendants knew of the risk of foreseeable emotional distress to Plaintiff if they proceeded with their actions.

429.    Plaintiff's factual situation involving his children placed him in zone of danger.

430.    Despite this knowledge, these Defendants proceeded in their actions in a manner that did cause severe emotional distress to Plaintiff.

431.    Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

WHEREFORE, Plaintiff requests that this Court enter a judgment in his favor and against these Defendants listed in this Count, finding the liable for negligent infliction of emotional distress and granting Plaintiff the remedies of compensatory damages, pre-judgment interest and costs that have been and will be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

## COUNT IX

### DEFAMATION *PER SE*
*(Defendant Rebecca Copeland)*

432.    Plaintiff realleges and incorporates by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

433.    Defendant Copeland made at least one false statement of fact regarding Plaintiff.

434.    The false statement of fact was that Plaintiff coerced and refused to provide child support checks to Defendant Copeland unless she provided sexual favor(s).

66

435.    The false statement is so outrageous and offensive that it is *per se* defamatory.

436.    Defendant published her false statement of fact to at least 2 third parties.

437.    Defendant Copeland knew the statement to be false when she made it and her actions are beyond negligent, they are intentional and willful.

438.    Defendant Copeland's false statement has caused damage to Plaintiff, including but not limited to emotional distress and damage to reputation.

439.    Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

440.    Because Defendant Copeland's actions were the result of gross negligence and/or were willful and wanton conduct, Defendant Copeland is liable to Plaintiff for punitive damages.

WHEREFORE, Plaintiff requests that this Court enter a judgment in his favor and against Defendant Rebecca Copeland finding her liable for defamation *per se* and granting him the remedies of compensatory damages, punitive damages, pre-judgment interest and costs that have been and will be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

## COUNT X

### DEFAMATION
*(Defendant Rebecca Copeland)*

441.    Plaintiff realleges and incorporates by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

442.    Defendant Copeland made at least one false statement of fact regarding Plaintiff.

443.    The false statement of fact was that Plaintiff coerced and refused to provide child support checks to Defendant Copeland unless she provided sexual favor(s).

4921-3441-1030, v. 1

444.     The false statement is so outrageous and offensive that it harms Plaintiff's reputation by lowering Plaintiff in the community's view and it deterrs others from associating with him.

445.     Defendant published her false statement of fact to at least 2 third parties.

446.     Defendant Copeland knew the statement to be false when she made it and her actions at least negligent.

447.     Defendant Copeland's false statement has caused damage to Plaintiff, including but not limited to emotional distress.

448.     Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

449.     Because Defendant Copeland's actions were the result of gross negligence and/or were willful and wanton conduct, Defendant Copeland is liable to Plaintiff for punitive damages.

WHEREFORE, Plaintiff requests that this Court enter a judgment in his favor and against Defendant Rebecca Copeland finding her liable for defamation and granting him the remedies of compensatory damages, punitive damages, pre-judgment interest and costs that have been and will be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

## COUNT XI

### TORITIOUS INTERFERENCE WITH CONTRACT
*(Defendant Staci Thomas)*

450.     Plaintiff and Co-Plaintiffs C.L.G. and C.M.G. reallege and incorporate by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

4921-3441-1030, v. 1

451.    Plaintiff and Co-Plaintiff's C.L.G. and C.M.G. had a contract for domestic partner and dependent health insurance coverage through Plaintiff's domestic partner and now wife.

452.    Defendant Staci Thomas knew of that insurance coverage.

453.    Defendant Staci Thomas intentionally and improperly interfered with that contract via an email dated March 11, 2024, at 10:22 a.m., and falsely claimed that Plaintiff was engaged in fraud and was not a domestic partner of his now-wife.

454.    Defendant Staci Thomas knew that Plaintiff was in the process of seeking treatment for alcoholism and was suffering from extreme depression.

455.    Defendant Staci Thomas is Plaintiff's first cousin.

456.    Defendant Staci Thomas had the specific intent to cancel Plaintiff's health insurance coverage before he could be admitted to a rehab facility.

457.    Defendant Staci Thomas knew and had the intent to cancel *minor children* C.L.G. and C.M.G.'s health insurance coverage.

458.    Defendant Staci Thomas is the second cousin twice removed of the minor children C.L.G. and C.M.G.

459.    Defendant Staci Thomas falsely testified under oath that she did not send the email that caused the cancelation of the insurance coverage.

460.    As a result of Defendant Staci Thomas' actions, the insurance contract was wrongfully breached.

461.    Defendant Thomas' conduct as alleged herein caused Plaintiff harm and damage.

462.    Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

4921-3441-1030, v. 1

463.    Defendant Thomas sent the email *1 day before* Defendant Copeland filed the underlying state court matter on March 12, 2024, in an effort to ensure that, upon service of process, Plaintiff could not obtain critical medical care.

464.    Defendant Staci Thomas's actions are *deplorable*.

465.    Defendant Staci Thomas acted to attempt to withdraw medical care for her own first cousin when he needed it the most.

466.    Because Defendant Staci Thomas' actions were the result of gross negligence and/or were willful and wanton conduct, Defendant Staci Thomas is liable to Plaintiff for punitive damages.

WHEREFORE, Plaintiff requests that this Court enter a judgment in his favor and against Defendant Staci Thomas finding her liable for tortious interference with contract and granting him the remedies of compensatory damages, punitive damages, pre-judgment interest and costs that have been and will be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

## COUNT XII

### CONVERSION
*(Defendant S. Grant)*

467.    Plaintiff realleges and incorporates by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

468.    Plaintiff owned an extensive wine collection.

469.    The wine collection included vertical vintages of collectible wine such as Opus One and Silver Oak.

470.    Defendant Sarah Grant trespassed in Plaintiff's home and removed the wine collection without permission or authority.

70

471.      Defendant Sarah Grant's conversion included the removal of 2 completely full wine refrigerators.

472.      Defendant Sarah Grant further removed the extensive wine collection that Plaintiff stored in his basement.

473.      Defendant Sarah Grant thereby exercised dominion and control of Plaintiff's property that interfered with Plaintiff's right to use his property (e.g., sell his wine collection and wine refrigerators, or otherwise put them to whatever purpose he would like).

474.      Plaintiff first learned that his cause of action accrued during her June 20, 2025, deposition wherein she was asked under oath where Plaintiff's property was located.

475.      Despite being under oath and no valid objection being made, Defendant Sarah Grant refused to answer the question.

476.      Plaintiff now knows that Defendant Sarah Grant consider his property hers and she has no intention to return it.

477.      Plaintiff has been damaged by Defendant's taking of his property as alleged herein.

478.      Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

479.      Because Defendant Sarah Grant's actions were the result of gross negligence and/or were willful and wanton conduct, Defendant Sarah Grant is liable to Plaintiff for punitive damages.

WHEREFORE, Plaintiff requests that this Court enter a judgment in his favor and against Defendant Sarah Grant finding her liable for conversion and granting him the remedies of compensatory damages, punitive damages, pre-judgment interest and costs that have been and will

71

be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

## COUNT XIII

### NEGLIGENCE - PROFESSIONAL MALPRACTICE
*(Individual and Class)*

*(Defendants Growe Eisen Firm, Mat G. Eilerts,*
*Coulter Law Group, and Con Curran Coulter)*

480. Plaintiff, individually and on behalf of the Class and Subclasses, realleges and incorporates by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

481. Plaintiff retained Defendant Growe Eisen Firm, Mat G. Eilerts, Coulter Law Group to provide specialized legal advice for the underlying family law matter, and they, therefore had lawyer-client relationships.

482. Defendant Growe Eisen Firm is vicariously liable for the malpractice and negligence of Defendant Mat G. Eilerts.

483. Defendant Coulter Law Group is vicariously liable for the malpractice and negligence of Defendant C. Curran Coulter.

484. As alleged in this Complaint, Defendant Growe Eisen Firm, Mat G. Eilerts, Coulter Law Group breached their duty of care owed to Plaintiff.

485. These breaches include the failure to provide proper legal advice regarding the procedure for filing a Motion for Change of Judge for Cause.

486. Plaintiff has suffered damages as a result of these Defendants' breaches of duty of care.

487. Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

4921-3441-1030, v. 1

WHEREFORE, Plaintiff requests that this Court enter a judgment in his favor and against Defendant Growe Eisen Firm, Defendant Mat G. Eilerts, Defendant Coulter Law Group, and Defendant Con Curran Coulter, joint and severally liable negligence and granting him the remedies of compensatory damages, pre-judgment interest and costs that have been and will be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

**COUNT XIV**

**UNJUST ENRICHMENT**
*(Individual(s) and Class)*

*(Defendants: Maia Brodie, Rebecca Copeland, Staci Thomas, Sarah Grant,*
*Lawrence Gillespie, GHC, Growe Eisen Firm, Mat G. Eilerts,*
*Coulter Law Group, and Con Curran Coulter)*

488.     Plaintiff, individually, as *Next Friend* for Co-Plaintiffs C.L.G. and C.M.G., and on behalf of the Class and Subclasses, realleges and incorporates by reference all of the allegations in preceding paragraphs of this Complaint as if set forth fully herein.

489.     As alleged in this Complaint, Plaintiff and Co-Plaintiff C.L.G. and C.M.G. conferred and each of these Defendants otherwise received a benefit as a result of the underlying matter.

490.     The benefits that Defendants received were at Plaintiff and Co-Plaintiff C.L.G. and C.M.G.'s expense.

491.     It would be unjust and inequitable to allow these Defendants to retain any benefits they received.

**REQUEST FOR INJUNCTIVE RELIEF**

492.     Plaintiff, individually, as proposed *Next Friend* for Co-Plaintiffs C.L.G. and C.M.G., and on behalf of the Class and Subclasses, and Co-Plaintiff Stop Missouri

73

4921-3441-1030, v. 1

Corruption, LLC reallege and incorporate by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

493.    This Complaint presents a situation to this Missouri federal court unlike any situation before.

494.    Federal courts have addressed the RICO conduct such as that in this case in criminal actions; however, Plaintiffs believe this to be the first properly pleaded Complaint that allows this and any other federal court to guarantee citizens of the United States the protections of the United States Constitutions while parties in state family court litigation.

495.    Specifically, this Court should step in and enforce the United States Constitution's guarantees of Due Process and Freedom of Speech.

496.    The framers of the United States Constitution included the second clause of Article VI of the Constitution of the United States:

> **This Constitution**, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, **shall be the supreme Law of the Land**; **and the *Judges in every State shall be bound thereby***, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. Art. VI, Clause II (emphasis added).

497.    As alleged herein, this Complaint presents allegations of criminal conduct by a sitting state court judge, a sitting state court commissioner, a Guardian *Ad Litem*, and private individuals involved in the practice of law in the St. Louis Family Court.

498.    This Complaint presents this Court with allegations of organized crime taking place in the 21st Circuit Court of the State of Missouri.

499.    Of course, Congress has *not* provided private citizens with a right to compel any prosecuting authority to bring criminal charges.

4921-3441-1030, v. 1

500.     However, Congress *did* codify the right to bring private causes of action so that citizens of the United States of America could pursue their right to obtain relief in the event they are a  victim of Racketeering and Organized Crime and also when no prosecutorial authority has pursued charges or a conviction.

501.     It should *not* be distasteful to any federal court to be asked to enforce the protections of the Constitutions of the United States of America.

502.     As Article VI of the Constitution mandates, ***state court judges cannot*** ignore the "supreme law of the land."

503.     Certainly, it would have been preferable for the State of Missouri to tackle this well-known corruption as it has appeared in this specific case.

504.     However, the State of Missouri has thus far decided not to act.

505.     Therefore, it should be incumbent upon this federal court to ensure that the protections of the United States Constitution, such as Due Process and Freedom of Speech, are provided to the citizens of the State of Missouri.

506.     Again, this case does *not* present any issues that will be resolved on appeal at the state court level.

To the extent this Court believes any discrete issues will require abstention, Plaintiff expressly waives them and has clarified that he seeks no injunctive relief to improve his particular situation resulting from the RICO enterprise and its members and associates actions in the underlying case.

507.     Plaintiff seeks prospective injunctive relief and whatever and an award of damages that are unlikely to be recoverable.

508.     Plaintiffs *have not* asked this Court to disbar anyone.

4921-3441-1030, v. 1

509.     Plaintiffs *have* asked this Court to enjoin further Civil Rights Act violations by 2 specific jurists and to allow Plaintiffs their day in court to prove that they have been harmed by the RICO organization at issue, in this case.

510.     Plaintiffs do *not* present any specific requests other than injunctive relief narrowly tailored to protect citizens of the United States residing in Missouri from prospective constitutional violations from the 2 jurists at issue in this case.

511.     Plaintiffs defer to this Court's wisdom as to the specific mandatory and prohibitory injunctive relief to issue.

512.     Certainly, if Plaintiff were to present this Court with evidence of the State of Missouri refusing to address ***racial discrimination*** *by a judge and a commissioner*, this Court would *not* hesitate to act.

513.     This situation is no different.

514.     The State of Missouri has refused to stop the ***unlawful*** ***segregation of parents from their children***.

515.     As such, this Court should act and enforce the guarantees of the United States Constitution for those that cannot obtain protection on their own.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Matthew R. Grant, as proposed *Next Friend* for C.L.G. and C.M.G., on behalf of the Class and subclass(es), and Co-Plaintiff Stop Missouri Corruption, LLC, respectfully request that the Court enter judgment in their favor, and against Defendants, granting the following relief:

A. Entry of a judgment (Count I - Civil RICO) against the named Defendants, jointly and severally, and in the favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages, and treble damages;

76

B. Entry of a judgment (Count II - Civil Rights Act) against Defendant Hilton, Defendant Greaves and Defendant Fenley, and in the favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages, punitive damages, and attorneys' fees from Defendant Hilton and Defendant Fenley only;

    a. There is no request for an award of damages, fees or costs from Defendant Greaves.

C. Entry of a judgment (Count III – Civil Conspiracy) against the named Defendants, jointly and severally, and in favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages and punitive damages;

D. Entry of a judgment (Count IV – Fraudulent Misrepresentation) against the named Defendants, jointly and severally, and in favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages and punitive damages;

E. Entry of a judgment (Count V - Trespass) against the named Defendants, jointly and severally, and in favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages and punitive damages;

F. Entry of a judgment (Count VI – Invasion of Privacy) against the named Defendants, jointly and severally, and in favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages and punitive damages;

G. Entry of a judgment (Count VII – Intentional Infliction of Emotional Distress) against the named Defendants, jointly and severally, and in favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages and punitive damages;

H. Entry of a judgment (Count VIII – Negligent Infliction of Emotional Distress) against the named Defendants, jointly and severally, and in favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages;

I. Entry of a judgment (Count IX – Defamation *Per Se*) against the named Defendant, and in favor of Plaintiff and awarding Plaintiff compensatory damages and punitive damages;

J. Entry of a judgment (Count X – Defamation) against the named Defendant, and in favor of Plaintiff and awarding Plaintiff compensatory damages and punitive damages;

K. Entry of a judgment (Count XI – Tortious Interference with Contract) against the named Defendant and in favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages and punitive damages;

4921-3441-1030, v. 1

L.  Entry of a judgment (Count XII - Conversion) against the named Defendants, jointly and severally, and in favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages and punitive damages;

M.  Entry of a judgment (Count XIII – Negligence – Professional Malpractice) against the named Defendants, jointly and severally, and in favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages;

N.  Entry of a judgment (Count XIV – Unjust Enrichment) against the named Defendants, jointly and severally, and in favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages;

O.  Entry of a Preliminary and Permanent Injunction prohibiting the continued corruption and violation of Missourian's rights under the United States Constitution in the 21st Circuit Court for the State of Missouri;

P.  Entry of an award of Plaintiffs' costs;

Q.  Entry of an award of pre-judgment interest; and

R.  Entry of an Order granting to Plaintiffs such further relief that the Court deems just and proper.

## PRAYER FOR CLASS RELIEF

WHEREFORE, Plaintiff Matthew R. Grant, individually and on behalf of all others similarly situated, requests that when Plaintiff moves for Class Certification, that this Court certify the Comprehensive Class and subclass(es) and provide a trial on the common issue of liability.

In the event of a finding of liability, Plaintiff requests that this Court order damages-only trials for each class and subclass member.

## ADDITIONAL AND OTHER RELIEF

Plaintiff Matthew R. Grant, individually and on behalf of all others similarly situated, requests that this Court grant such other relief as the Court deems just and proper.

4921-3441-1030, v. 1

## JURY TRIAL DEMAND

Plaintiffs demand a jury on all issues so triable.


Respectfully submitted,


_____/s/Matthew R. Grant_____
Matthew R. Grant, #MO50312
GRANT FIRM LLC
701 Market Street, PMB 1709
St. Louis, MO 63131
T: (314) 255-7760
Email:  mattgrant.stl@gmail.com

*Pro Se* **Plaintiff and as counsel for Co-Plaintiff Stop Missouri Corruption, LLC**

4921-3441-1030, v. 1



80

4921-3441-1030, v. 1



4921-3441-1030, v. 1