UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW R. GRANT, et al, | ) | |
| | ) | |
| *Plaintiffs,* | ) | JURY TRIAL DEMANDED |
| vs. | ) | |
| | ) | |
| BRUCE F. HILTON, et al., | ) | Case No.  25-CV-1203-JMD |
| | ) | |
| *Defendants.* | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT MAIA BRODIE'S MOTION TO DISMISS

Plaintiffs submit this Memorandum in Opposition to Defendant Maia Brodie's Motion to Dismiss ("Motion") and Memorandum in Support thereof ("Memo" or "Opposition").  Docs. 52 and 69.

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................................4

    **A.** Co-Plaintiff Stop Missouri Corruption LLC Has Standing................................7

    **B.** Plaintiffs' Amended Complaint Complies With Rule 8(A)..................................9

    **C.** Plaintiffs' Claims Directed To Defendant Brodie State......................................9
       A Claim Upon Which Relief Can Be Granted.

        1. Count I – Civil RICO.................................................................................9

        2. Count III – Civil Conspiracy.....................................................................12

        3. Count IV – Fraudulent Misrepresentation................................................12

        4. Count VI – Invasion of Privacy.................................................................13

        5. Count VII - Intentional Infliction of Emotional Distress............................13

        6. Count VII – Negligent Infliction of Emotional Distress.............................15

        7. Count XIV – Unjust Enrichment................................................................16

    **D.** Plaintiff Requests Leave To Amend His Amend Complaint, If Necessary..........17

CONCLUSION.....................................................................................................................18

4921-3441-1030, v. 1

# **TABLE OF AUTHORITIES**

*Abels v. Farmers Commodities Corp.,* 259 F.3d 910, 919 (8th Cir. 2001)……………………..8

*Bates v. Law Firm of Dysart, Taylor, Penner, Lay & Lewandowski,*……………………..15, 16
844 S.W.2d 1, 1 (Mo. App. 1992)).

*Blunt v. Lower Merion Sch. Dist.,* 767 F.3d 247, 290 (3d Cir. 2014)……………………..6

*Brock v. McClure,* 404 S.W.3d 416, 421 (Mo. App. 2013)……………………………….17

*Clayton v. White Hall Sch. Dist.*, 778 F.2d 457, 460 (8th Cir. 1985)…………………....17

*Crichlow v. Fischer,* No. 12-CV-7774 NSR, 2015 U.S. Dist. LEXIS 18812, ……………….8
2015 WL 678725, at *1 (S.D.N.Y. Feb. 17, 2015).

*Geran v. Xerox Educ. Servs., Inc.,* 469 S.W.3d 459 (Mo. App. 2015)……………………….13

*Hunt v. Wash. State Apple Advert. Comm'n,* 432 U.S. 333, 343,……………………….....6, 7
97 S. Ct. 2434, 2441 (1977)

*Iowa League of Cities v. EPA*, 711 F.3d 844 (8th Cir. 2013)…………………………………5

*Kim v. Kimm*, 884 F.3d 98 (2nd Cir. 2018)………………………………………………….9

*Lopez v. Three Rivers Elec. Coop.,* 26 S.W.3d 151, 156 (Mo. 2000)……………………….15

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)……………………………………4, 5

*McFarland v. McFarland*, 684 F. Supp. 2d 1073, 1085 (N.D. Iowa 2010)………………..11

*Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674 (6th Cir. 1988)………………..8

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 997-98 (2002)……………14

*Sykes v. Mel Harris & Assocs., LLC,* 757 F. Supp. 2d 413, 418 (S.D.N.Y. 2010)…………..10

*United Food & Commer. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 553,………7
116 S. Ct. 1529, 1534 (1996) 5

*United States v. Simmons*, 154 F.3d 765, 770 (8th Cir. 1998)……………………………..11

*Yates v. Skinner*, 748 F. Supp. 3d 666 (S.D. Iowa 2024)……………………………….8, 9

**INTRODUCTION**

Defendant Maia Brodie's Motion to Dismiss ("Motion" or "MTD") and Memorandum in Support thereof ("Memo" or "Brief") seek the dismissal of co-Plaintiff Stop Missouri Corruption LLC based upon a purported lack of standing, and she seeks dismissal of each cause of action asserted against her based upon only 2 issues for which the law fails to support her flawed positions – Rule 8(a) and 12(b)(6) failure to state a claim. *See* Docs. 52 (Motion) and 69 ("Memo").

**A. CO-PLAINTIFF STOP MISSOURI CORRUPTION LLC HAS STANDING.**

Brodie cites a single case, *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) in support of her blanket arguments that Co-Plaintiff's creation after "many" of the allegations is fatal and "[m]oreover, there are no allegations in the Amended Petition that demonstrate Stop Missouri Corruption, LLC has experienced an invasion of a legally protected interest that is concrete and particularized." Memo., pp. 5-6. The brevity of Brodie's legal argument is reflective of its quality and content.[1]

Brodie's broad recitation on standing may be generally correct; however, she bypasses the precise allegations of Co-Plaintiff in this matter and fails to address the sole issue actually before this Court – associational standing.

In paragraph 10, Co-Plaintiff alleges in a short and plain statement that it has "associational standing," a phrase that is completely omitted from Brodie's Memo. and discussion. Doc. 69 at ¶ 10. Specifically, Co-Plaintiff alleged that "Stop Missouri Corruption, LLC is an **advocacy group** with **Article III associational and other standing** to protect

---

[1] Defendant Brodie fails to elaborate in any way as to why the date of formation of Co-Plaintiff LLC is relevant, much less dispositive of any issue. The comment is mere surplusage that the Plaintiffs will ignore.

the interests of **its member** and Missourians impacted by the RICO criminal conduct and Civil Rights Act violations at issue in this case." Doc. 29 at ¶ 10 (emphasis added).

Co-Plaintiff LLC's allegations were specifically and carefully drafted to illustrate its associational standing in anticipation of standing challenge. Associational Standing is not novel and yet Brodie does *not* even raise it. Indeed, the case upon which Brodie relies is distinguishable and inapplicable except for its description of the general rules of Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

The 8th Circuit Court of Appeals addressed the issue of associational standing in *Iowa League of Cities v. EPA*, 711 F.3d 844 (8th Cir. 2013). In that case, the court explained:

> An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

711 F.3d at 869.

The 8th Circuit went on to explain that "[t]he League need not establish that all of its members would have standing to sue individually so long as it can show that "any one of them" would have standing. *Id.* at 869 (citation omitted) (citation omitted).

While some courts still cite *Hunt* and its third requirement, the Supreme Court dispensed with its necessity in *United Food & Commer. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 553, 116 S. Ct. 1529, 1534 (1996):

> But once an association has satisfied Hunt's first and second prongs assuring adversarial vigor in pursuing a claim for which member Article III standing exists, <u>it is difficult to see a constitutional necessity for anything more</u>.

*Id.* at 556 (citation omitted) (emphasis added).

Here, the circumstances and allegations in the Amended Complaint satisfy the 2 requirements detailed in *Iowa League of Cities* and the third requirement is optional and is

5

**moot**: 1) member Matthew R. Grant must have a right to sue; and 2) the interests at stake are germane to the organization's purpose.

The third requirement is moot in this case because Plaintiff Matthew R. Grant is a party to this case. *See, e.g., Blunt v. Lower Merion Sch. Dist.,* 767 F.3d 247, 290 (3d Cir. 2014) ("Unlike other cases conferring standing on organizations, the plaintiffs in this case are not absent."). As such, all requirements are met in this case.

With regard to the first requirement, it is easily satisfied by the implied admission that member Matthew R. Grant has a right to sue, as Brodie has *not* moved to dismiss him based upon a lack of standing and he has asserted *his individual right to sue*.

The second requirement is easily satisfied as the interests at stake here, among other things, Missourians' constitutional rights as denied by conspiracy and enterprise actions that also violate the RICO statute is obviously germane to the 2 purposes of Co-Plaintiff Stop Missouri Corruption, LLC (Pursue and expose the corruption, and protect other victims).

The third and final consideration is no longer a constitutional requirement, and it is moot as Co-Plaintiff Matthew R. Grant is a party in this case. *See, e.g., Blunt,* 767 F.3d at 290 ("Unlike other cases conferring standing on organizations, the plaintiffs in this case are not absent.").

Further, the *Hunt* case which involved an 'association' that was actually a state agency, explained why Co-Plaintiff LLC here has associational standing due to its exclusive request for injunctive relief:

> [W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. <u>If in a proper case the association seeks a declaration, injunction, or some other form of **prospective relief,** it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, **in all cases** in which we have expressly recognized standing in associations to represent their members, **the relief sought has been of this kind**</u>.

*Hunt v. Wash. State Apple Advert. Comm'n,* 432 U.S. 333, 343, 97 S. Ct. 2434, 2441 (1977) (citation omitted).

Associational standing has been routinely found under this premise. *See, e.g., United Food & Commer. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 553, 116 S. Ct. 1529, 1534 (1996) (citation omitted) (union found to have standing to sue on behalf of members) and *Automobile Workers v. Brock*, 477 U.S. 274, 91 L. Ed. 2d 228, 106 S. Ct. 2523 (1986) (union found to have standing on behalf of members).

Defendant Brodie's claim of a lack of standing by Co-Plaintiff Stop Missouri Corruption, LLC fails as a matter of law.

### B.   Plaintiffs' Amended Complaint Complies With Rule 8(a)

Not surprisingly, Brodie latches on this Court's prior Show Cause Order as support for her perfunctory claim that Plaintiffs' Amended Complaint fails to comply with Rule 8(a)'s requirement of a "short and plain statement." Doc. 69, p. 6.

Defendant Brodie cites only 2 cases that are both irrelevant. In *Michaelis v. Nebraska Bar Assoc.,* 717 F.2d 467 (8th Cir. 1980), the Eighth Circuit affirmed the extreme remedy of dismissal with prejudice. The actual facts of that case demonstrate why.

In *Michaelis*, the 8th Circuit addressed a disbarred attorney that initially filed a 38-page complaint. *Id.* at 439. The court found that complaint was "needlessly long, repetitious and confused." *Id.* Based upon those findings, the district court allowed the plaintiff to file an amended complaint. *Id.*

The plaintiff responded to the district court's dismissal without prejudice and allowance to plaintiff to shorten his Complaint by taking 2 *astounding* actions. First, the plaintiff responded by filing *a new and separate lawsuit* based upon the same facts that spanned **60 pages**. *Id.* at 439.

7

Second, the plaintiff brazenly expanded and extended his 38-page complaint that had been dismissed, and more than doubled its length and extended it into a **98-page** complaint. *Id.* The 8th Circuit holding in that decision based unique facts has no bearing here, where Plaintiffs pared down and cut by more than half its Complaint from ~170 pages to ~78 pages.[2]

Here, the Amended Complaint's length in this matter is properly the result and necessity of addressing the rare and unique nature of the 14 Counts asserted against 14 Defendants. *Id.* Moreover, the Amended Complaint in this matter raises unique jurisdictional and immunity issues. *Id.*

Further, Plaintiffs' Amended Complaint invokes Rule 9(b) as it alleges, among other things, wire fraud. *See, e.g. Abels v. Farmers Commodities Corp.,* 259 F.3d 910, 919 (8th Cir. 2001). In *Abels*, the 8th Circuit also reversed the district court's dismissal and quoted the decision in *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674 (6th Cir. 1988) that emphasized that Rules 8(a) and 9(b) "must be read in harmony." *Id.* at 679.

Next Defendant Brodie relies upon *Yates v. Skinner*, 748 F. Supp. 3d 666 (S.D. Iowa 2024). Memo. at p. 6. In that case, a *pro se* inmate initially filed a lengthy initial and amended complaint. The *Yates* court relied upon the unreported decision in *Crichlow v. Fischer,* No. 12-CV-7774 NSR, 2015 U.S. Dist. LEXIS 18812, 2015 WL 678725, at *1 (S.D.N.Y. Feb. 17, 2015).

*The Crichlow* case involved the observation of a "Amended Complaint reads like a stream of consciousness…". That is hardly the situation presented by Plaintiffs' Amended Complaint. It is not "confusing" as Defendant Brodie claims. Memo. p. 6. Indeed, Defendant

---

[2] The 8th Circuit's Rule 8(a) holding was not solely dispositive as the complaint was also dismissed with prejudice due to plaintiff's lack of standing and that court's recognition that only the United States Supreme Court could address a state court's order of disbarment. *Id.*

Brodie was able to read the Amended Complaint and prepare a Motion to Dismiss each of the Counts asserted against her.

First, Plaintiffs' Amended Complaint in this matter can be summarized by its length as follows:  11 pages (parties/venue/jurisdiction); 6 pages a (putative class action issues); 14 pages (allegations common to all counts); 23 pages (additional conspiracy facts); and 23 pages (detailing 14 Counts and unique Injunctive Relief relating to a state court judge, commissioner and Guardian *ad litem*, and Requested Relief.  *Id.* at pp. 55-78.

The page count breaks down to ~5.5 pages per defendant.  Considering the complex issues raised in this matter, the length is justified.  No one can argue that it is a "stream of consciousness" such as the *pro se* inmate complaint at issue in *Yates*.[3]

### C. Plaintiffs' Claims Directed To Defendant Brodie State A Claim Upon Which Relief Can Be Granted.

#### 1. Count I – Civil RICO

Defendant Brodie first cites *Kim v. Kimm*, 884 F.3d 98 (2nd Cir. 2018) for the proposition that Plaintiffs' allegations in Count I (Civil RICO) in this matter do not state a claim simply because they involve actions that took place during other litigation.  Memo. p. 7.  The *Kim* case fails to support Brodie's position in any way.

The *Kim* case involved a plaintiff that had successfully won summary judgment as a defendant in earlier litigation.  *Id.* at 101-102.   Plaintiff Kim sought an award of damages because ***he was sued and won*** a single earlier trademark infringement case.

It is surprising that Defendant Brodie elected to cite this Court to the 2nd Circuit's decision in *Kim v. Kimm* as that decision commenced its substantive analysis, it expressly stated:

---

[3] Plaintiffs ask this Court to take judicial notice of the Amended Complaint available on PACER.  For example, paragraph 66 is almost a page long on its own.  The allegations in the Amended Complaint in this matter are narrowly restricted in subject matter and length.

> Although we have not spoken directly on the issue, other courts have held that **"[i]n the absence of corruption,"** such litigation activity "cannot act as a predicate offense for a civil-RICO claim."

*Id.* at 104 (emphasis added) (citations omitted).

This entire case is about long-standing and ongoing corruption through many cases. In stark contrast, the 2nd Circuit noted that the *Kim* case involved conduct in only *a single lawsuit*.[4]  *Id.*  That is not the situation now before this Court.

This matter addresses predicate acts and corruption that took place not only in Plaintiff Matthew R. Grant's single case, but across a litany of cases within the St. Louis Family Court spanning more than a decade.[5]  The *Kim* case was akin to a belated abuse of process or post-judgment motion for sanctions claim and that decision simply has no relevance whatsoever.

Next, Defendants wrongfully argue that:

> Plaintiffs fail to plead the existence of an enterprise that is distinct from the participation in the fraudulent scheme, and, in fact, the alleged enterprise in the Amended Complaint is defined solely by the defendants' participation in the fraudulent schemes. If the alleged predicate acts are removed, the enterprise entirely lacks form or structure.

Memo. p. 8.

This is false and contradicted by the allegations in the Amended Complaint.  Here, if Brodie's or any other defendant's predicate acts are removed, the enterprise continues and thrives.

---

[4] Stated in another fashion, the *Kim* Court recognized the lack of the RICO-required pattern and practice over a period of time.

[5] The *Kim c*ourt also discussed the facts in the primary case Plaintiff-Kim relied upon to argue that he did properly allege a RICO violation, *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 418 (S.D.N.Y. 2010). The *Kim* court noted that Sykes was no help to Kim as that decision involved "a variety of other out-of-court actions to further this activity" and not just the execution of the 4 declarations at issue in the *Kim* case. *Id.* at 104-105. As applicable here, Plaintiffs allege that the activity not only spanned numerous cases, but it involved ex parte judicial communications, out of court stalking, harassment and the illegal access of electronic devices, etc. Doc. 29, ¶419 and Doc. 3.

In her next move, Brodie argues that Plaintiffs' allegations fail as they supposedly do not allege an intent to defraud. Memo. p. 8. That allegation is incredulous.

Plaintiffs' Amended Complaint is replete with specific allegations that they took very specific actions in collusion and coordination of others to defraud Plaintiff Matthew R. Grant and steal his money through, among other things, fraud and deception. Doc. 29.

Brodie relies upon Paragraph 276 to support her claim that Plaintiffs' allegations are "nothing but a conclusory statement involving Defendant Brodie's prior litigation activity." Memo., p. 10. Further, Brodie claims that "obtaining an order or filing a motion without any facts that show Defendants intended to engage in illegal conduct fail to pass muster." *Id*. Again, Defendant Brodie may wish that Plaintiffs' extensive complaint involved pm;u paragraph 276, but it contains *repeated* factual allegations of Brodie's intentional activities.

Examples are far too voluminous to cite but this Court need only look at the following allegations:

| **Paragraphs:** | **Brodie actions** |
|---|---|
| 164 | Brodie's **intentionally false statement to Senior Judge Zerr** denying the very existence of a March 27, 2025, Ex Parte TRO she personally obtained. |
| 165-173 | Brodie's involvement in obtaining Ex Parte TRO and filing Motion containing **factual allegations she knew to be untrue**. |
| 310 | Brodie's **collusion** with fact witness and Defendant Thomas during a deposition. |
| 327-330 | **Ex Parte Communications** between Defendant Brodie and Defendant Greaves and Brodie's service of discovery and filing of Amended Motion to Modify. |

Finally, Plaintiffs note that each RICO enterprise or conspiracy imputes the conduct of all members to one another as "… all members of a conspiracy are responsible for the foreseeable acts of co-conspirators taken in furtherance of the conspiracy." *United States v.*

11

*Simmons*, 154 F.3d 765, 770 (8th Cir. 1998). "Every member of the conspiracy need not have actually committed the unlawful act supporting liability." *Brock v. McClure*, 404 S.W.3d 416, 421 (Mo. App. 2013); *see also McFarland v. McFarland*, 684 F. Supp. 2d 1073, 1085 (N.D. Iowa 2010) ("the actions that the Moving Defendants' co-conspirators are alleged to have taken in furtherance of the alleged conspiracy may be imputed to them, if those actions could be reasonably foreseen as a necessary or natural consequence of the conspiracy.).

"Every member of the conspiracy need not have actually committed the unlawful act supporting liability." *Brock* at 421 (citation omitted).[6]

### 2. Count III – Civil Conspiracy

Defendant Brodie makes the bold and baseless allegation that Plaintiffs' "claim amounts to nothing more than a nonsensical allegation that the defendants conspired to **simply do their jobs**." Memo. p. 10 (emphasis added). As noted throughout the Amended Complaint, Plaintiffs allege an ongoing criminal enterprise that uses the same pattern and practices to engage in theft by deception.

Brodie's 12(b)(6) argument on Civil Conspiracy is nothing more than a "check the box" approach to assure that she moves to dismiss each Count in which she is named. There is no doubt that Plaintiffs have alleged her involvement in a civil-criminal conspiracy, and she is liable for the actions of her co-conspirators and enterprise members.

### 3. Count IV – Fraudulent Misrepresentation

In another bold move, Defendant Brodie alleges that Count IV of his Amended Complaint itself fails to allege specific facts. This is just a diversion from the truth.

As Defendant Brodie knows, Plaintiff's allegations are contained in the litany of paragraphs that precede his separate pleading of each allegation. Doc. 29. Those allegations

---

[6] As discussed *infra*, Plaintiffs have the ability to plead a litany of additional specific facts that also state a claim for relief.

are properly incorporated by reference and sufficiently allege fraudulent misrepresentation and omission of material facts. Doc. 29; *see also* Section C(1) *supra.*

### 4. Count VI – Invasion of Privacy

Regarding Count VI, Defendant Brodie argues that "there is nothing contained in the Amended Complaint that shows that Defendant Brodie invaded Plaintiff Grant's private concerns." Memo., p. 12. This is false.

Plaintiffs allege that the RICO Enterprise, **including Brodie**, *illegally accessed his electronic devices (iPhone and laptop)*. Doc. 29, ¶419. If needed, Plaintiffs can allege additional invasions that were omitted from the Amended Complaint to reduce length. *See* Section D *infra.*

### 5. Count VII - Intentional Infliction of Emotional Distress

Defendant Brodie cites the elements of a cause of action for emotional distress and then argues that "[w]here a desire to cause severe emotional harm is not the sole motivation for the conduct alleged, suit cannot be brought for intentional infliction of emotional distress." Memo., p. 12.

To support this claim, Brodie relies upon *Geran v. Xerox Educ. Servs., Inc.,* 469 S.W.3d 459 (Mo. App. 2015). The *Geran* decision addressed uncontroverted evidence at **the summary judgment stage** and did not include a Motion to Dismiss analysis under notice pleading requirements. Brodie's reliance on *Geran* is misplaced. That case involved what was primarily a consumer fraud - Missouri Merchandising Practices Act (MMPA) - complaint that included a claim for intentional infliction of emotional distress. *Id.*

The lawsuit in *Geran* related to a dispute about student loan repayment terms. 469 S.W.3d at 461. The crux of the dispute and basis for the plaintiff's claims was the fact that the defendant, XES, had acquired his consolidated student loan promissory note initially

13

refused to honor the repayment schedule offered by the prior loan owner Wells Fargo - interest only payments in the amount of $160.41. *Id.*

XES, after acquiring Geran's loan, indicated that it could not honor the prior repayment plan offered by the prior owner of the note, Wells Fargo, but instead offered the plaintiff two other payment plans that its company did provide. *Id.* at 461-62. The plaintiff agreed and later learned that he was entitled to the original payment terms. Instead, Geran continued to make the new, higher payments for the next year and a half and then he filed a lawsuit. *Id.*

Within this context, the *Geran* court affirmed the trial court's ruling against Mr. Geran's claim of intentional infliction of emotional distress based upon the higher payment amount billing. *Id.* at 467-68. The *Geran* court noted that there was as legitimate business purpose and the defendant "believed it had authority to change the repayment plan." *Id.* at 468.

The allegations in the Amended Complaint have no comparison to the allegations and evidence in *Geran*. Here, Plaintiffs allege that Brodie was involved in and caused the ***illegal accessing*** of Matthew R. Grant's iPhone, tablet and laptop.[7] Doc. 29, ¶419. The access to Plaintiff's iPhone was conducted in a manner to ensure that Matthew R. Grant was aware of the remote access. There is no doubt that Plaintiffs' allegations reveal conduct that is *more than* outrageous and lack any business purpose.[8]

---

[7] To clarify, Plaintiffs do not allege that Brodie participated in the surreptitious recording conducted by Defendants Staci Thomas and Sarah Grant.

[8] Importantly, Count VII only requires **notice pleading**. *See, e.g., Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 997-98 (2002). In *Swierkiewicz,* the Supreme Court noted that "[b]efore discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case." 534 U.S. 512.

14

Defendant Brodie's statement that "Plaintiffs fail to plead conduct that may be reasonably regarded as so extreme and outrageous to permit recovery, *as a highly contentious family court issue <u>is certainly not out of the norm in any family court</u>*" is unsupported by facts and commonsense. Memo., p. 13.

### 6. Count VII – Negligent Infliction of Emotional Distress

Just as Plaintiffs properly alleged "Intentional" Infliction of Emotional Distress, they necessarily sufficiently alleged conduct that is "Negligent."

Defendant Brodie attempts to circumvent this most certain conclusion and moves to dismiss Plaintiff's Negligent Infliction of Emotional Distress claim based upon the sole argument of *lack of duty*. Memo., p. 13. This strategy is unavailing.

Brodie correctly cites *Lopez v. Three Rivers Elec. Coop.*, 26 S.W.3d 151, 156 (Mo. 2000) for the proposition that the determination of duty is a matter of law. *Id.* However, Brodie failed to continue her review of the *Lopez* decision in which the court went on to explain:

> Under the principles of general negligence law, whether a duty exists in a given situation depends upon whether a risk was foreseeable. In the absence of a particular relationship recognized by law to create a duty, ***the concept of foreseeability is paramount in determining whether a duty exists.***

*Id.* at 156 (emphasis added).

The *Lopez* court stated that "[f]or purposes of determining whether a duty exists, this Court has defined foreseeability as the presence of <u>some probability or likelihood of harm sufficiently serious that ordinary persons would take precautions to avoid it</u>." *Id.*

Here, there is no doubt that Defendant Brodie had a duty to refrain from intentionally participating in the criminal enterprise at issue, and refrain from personally participating in the illegal access of Plaintiff's iPhone, tablet and laptop. Brodie had a duty to refrain from that conduct it created "…some probability or likelihood of harm sufficiently serious that ordinary persons would take precautions to avoid it." *Id.* at 5.

In an effort to avoid the obvious conclusion of duty, Brodie cites a "relation back" case out of the Missouri Court of Appeals. Memo., p. 14 (citing *Bates v. Law Firm of Dysart, Taylor, Penner, Lay & Lewandowski,* 844 S.W.2d 1, 1 (Mo. App. 1992)).

The *Bates* case has no application as it simply addressed a claim of "**negligent pleading**" by opposing counsel. *Id.* at 5. Of course, there is no duty in that instance as the *Bates* court properly recognized.

This case does not involve allegations of negligent pleading. The *Bates* decision's dicta does not create some form of immunity for lawyers allowing them to cause emotional distress through the illegal access to an adversary's iPhone, tablet and laptop.

Again, the issue before this Court on duty is whether an ordinary person would refrain from illegally hacking and accessing Matthew R. Grant's iPhone, tablet and laptop in light of the foreseeable harm. There is undoubtedly a duty by all lawyers to refrain from such conduct in light of the foreseeable harm.

Here, Plaintiff did not merely discover the illegal access on his own, which would still state a cause of action, but rather, Plaintiff Matthew R. Grant's iPhone was illegally accessed in a manner to demonstrate to him that the RICO enterprise and its members had control of his iPhone. *See* Doc. 3; *see also* Section D *infra*. There is undoubtedly a duty by all lawyers to refrain from such conduct in light of the foreseeable harm.

### 7. Count XIV – Unjust Enrichment

As her final effort, Brodie actually claims that Plaintiffs have not alleged that the illegal conduct in this case did not satisfy the pleading requirements because they did not repeat the voluminous allegations in this case in Count XIV.

As Plaintiffs alleged through the Amended Complaint, the entire goal of the criminal conspiracy and enterprise at issue in this case was to engage in conduct that conferred benefits upon them in the form of unearned and unnecessary fees and costs (e.g., a benefit).

16

There can be no doubt that Plaintiffs have adequately alleged this equitable cause of action and satisfied the notice pleading requirements for this Count. In the event the Court deems it appropriate, Plaintiffs are ready and willing to allege in more specificity how Brodie and others intentionally increase attorneys' fees that they bill to their own client but then recover from the opposing parties.

**D. PLAINTIFF REQUESTS LEAVE TO AMEND HIS AMEND COMPLAINT, IF NECESSARY.**

Plaintiffs possess and have already pleaded a litany of additional factual allegations against Defendant Brodie detailing more of her corrupt and fraudulent conduct. *See* Doc. 3.

The law is clear that leave to amend should be freely granted, particularly at this earliest stage of this litigation, the Motion to Dismiss stage so that Plaintiffs can have their day in court. *See, e.g., Clayton v. White Hall Sch. Dist.*, 778 F.2d 457, 460 (8th Cir. 1985) (reversing dismissal with prejudice stating: "To deny forever the appellant's day in court is unjustified where, as here, there is no evidence of a pattern of delay or contumacious conduct.").

Here, Plaintiffs have diligently sought to satisfy this Court's demands and focus on Rule 8(a) as opposed focusing on the requirements of Rule 9(b) in a complex case such as this one.

As such, Plaintiffs respectfully request leave of court to amend its Amended Complaint (Doc. 29) in the event this Court finds any of Plaintiffs' allegations insufficient. Obviously, Plaintiffs possess detailed knowledge of the facts and circumstances relating to Brodie's involvement in the RICO enterprise, civil conspiracies and other improper conduct at issue in this case. *See* Doc. 3.

In fact, Brodie directed every step and even facilitated the harassment and stalking of Matthew R. Grant in addition to the illegal access into his iPhone, tablet and laptop. *See*

17

Doc. 3, p. 28, ¶¶275-278, 468, 472, 484, 485, 489 and 707.  Brodie's intentionally false statements to the Court are voluminous.   Her intentional directives to her client to further the goals of the RICO enterprise are numerous and include directions to force ongoing therapy and delay custody in furtherance of the enterprise's common goal.

## CONCLUSION

For the reasons detailed herein, Defendant Brodie's Motion to Dismiss (Doc. 52) should be denied in its entirety.  In the alternative, Plaintiffs respectfully request leave to amend.

Respectfully submitted,

*/s/Matthew R. Grant*
Matthew R. Grant, #MO50312
GRANT FIRM LLC
701 Market Street
Suite 110, PMB 1709
St. Louis, MO 63131
T: (314) 255-7760
Email:  mattgrant.stl@gmail.com

**Pro Se Plaintiff and counsel for Co-Plaintiff Stop Missouri Corruption, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 24, 2025, the foregoing was filed electronically with the Clerk of Court, therefore to be served electronically by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Matthew R. Grant*