UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW R. GRANT, et al, | ) | |
| | ) | |
| *Plaintiffs*, | ) | JURY TRIAL DEMANDED |
| vs. | ) | |
| | ) | |
| BRUCE F. HILTON, et al., | ) | Case No.  25-CV-1203-JMD |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS REBECCA COPELAND, STACI THOMAS, AND SARAH GRANT'S JOINT MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED INDIVIDUAL, CLASS ACTION, CIVIL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT (18 U.S.C. § 1964), CIVIL RIGHTS ACT (18 U.S.C. §1983), AND OTHER CAUSES OF ACTION COMPLAINT**

Plaintiffs submit this Memorandum in Opposition to Defendants Rebecca Copeland, Staci Thomas, And Sarah Grant's Joint Motion To Dismiss Plaintiffs' First Amended Individual, Class Action, Civil Racketeer Influenced And Corrupt Organizations (Rico) Act (18 U.S.C. § 1964), Civil Rights Act (18 U.S.C. §1983), And Other Causes Of Action Complaint ("Motion") and Memorandum of Law in Support Thereof ("Memo").  Docs. 86 and 87.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………………..3

INTRODUCTION……………………………………………………………………………….4

    I.   The Issue Of The Inclusion Of Plaintiff Matthew R. Grant's ……………………….4
        Minor Children As Parties Is Not Ripe For Ruling.

    II.  Co-plaintiff Stop Missouri Corruption, LLC Has Associational Standing…………6

    III.  Plaintiffs' Amended Complaint Does Not Violate Rule 8(a)………………………7

    IV.  Plaintiff Has Stated A Claim for Civil Conspiracy…………………………………11

    V.  Plaintiff Has Stated A Claim For Fraudulent Misrepresentation……………………..11

    VI.  Plaintiff Has Stated A Claim Of Trespass……………………………………………...13

    VII.  Plaintiff Has Stated A Claim for Invasion of Privacy………………………………15

    VIII.  Plaintiff Has Stated A Claim for Intentional Infliction of …………………………..16
         Emotional Distress.

    IX.  Plaintiff Has Stated A Claim For Defamation Against Copeland…………………16

    X.  Plaintiff has Stated A Claim for Tortious Interference With Contract……………..17

    XI.  Plaintiff has Stated A Claim for Conversion Against S. Grant……………………18

    XII.  Plaintiff has Stated A Claim for Unjust Enrichment………………………………19

CONCLUSION…………………………………………………………………………………19

# TABLE OF AUTHORITIES

*Arthaud v. Mutual of Omaha Ins. Co.,* 170 F.3d 860, (8th Cir. 1999)................................16

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)......................................................4

*Bochantin v. Inland Waterways Corp.,* 9 F.R.D. 592, 593 (E.D. Mo. 1950)..........................5

*Brian Bergstreser, infant v. Mitchell*, 448 F. Supp. 10, 15 (E.D. Mo. 1977) ........................5

*Brock v. McClure,* 404 S.W.3d 416, 421 (Mo. App. 2013).................................................15

*Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328, (7th Cir. 1994).....................................8

*Kenney v. Wal-Mart Stores, Inc.,* 100 S.W.3d 809, 816 (Mo. 2003) ...................................16

*McFarland v. McFarland*, 684 F. Supp. 2d 1073, 1085 (N.D. Iowa 2010) ....................15-16

*Michaelis v. Nebraska State Bar Assoc.,* 717 f.2d 467 (8th Cir. 1983) ................................6

*Roach v. Teamsters Local Union,* 595 F.2d 446, 450 (8th Cir. 1979)...................................7

*Yates v. Skinner*, 748 F. Supp. 3d 666, 674 (S.D. Iowa 2024)...............................................6

*Smith v. Woodard,* 15 S.W.3d 768, 773 (Mo. App. E.D. 2000) ..........................................13

*UMB Bank N.A. v. Guerin*, 89 F 4th 1047, 1055 (8th Cir. 2024)..........................................9

*United States v. Gould*, 536 F.2d 216, 219 (8th Cir. 1976)..................................................7

*Walters v. McMahen*, 684 F.3d 435, 440-43 (4th Cir. 2012)...............................................13

*Welker v. Pankey,* 225 S.W.2d 505, 507 (Mo. App. E.D. 1949)..........................................13

*Wright v. Edison,* 619 S.W.2d 797, 803 (Mo. App. E.D. 1981)...........................................13

## **INTRODUCTION**

Defendants Rebecca Copeland, Sarah M. Grant and Staci Thomas' Motion to Dismiss ("Motion" or "MTD") and Memorandum in Support thereof ("Memo" or "Brief") seek the dismissal of each and every claim directed at them in Plaintiffs' Amended Complaint (Doc. 29).

Incredibly, they argue that that they do not have fair notice of Plaintiffs' claims directed to them as required by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That claim is belied by any objective review of Plaintiffs' ~78-page Amended Complaint. *See* Doc. 29.

These Movants know precisely what Plaintiffs allege they did and why those facts, taken as true, state several causes of action. Defendants' citation to *Aschcroft v. Iqbal*, 556 U.S. 662, 778 and their claim that, here, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster" is baseless. Doc. 87, p. 6.

### **I. THE ISSUE OF THE INCLUSION OF PLAINTIFF MATTHEW R. GRANT'S MINOR CHILDREN AS PARTIES IS NOT RIPE FOR RULING.**

Defendants raise a standing argument relating to Plaintiff Matthew R. Grant's plans to seek appointment by this Court as the *Next Friend* of the minor children, C.L.G. and C.M.G. *Id*. Defendants claim it was improper for Plaintiffs to include references to these proposed co-Plaintiffs in the caption of the Amended Complaint but fail to cite a single piece of authority supporting that conclusion.

Plaintiffs included the minor children from the outset for 2 reasons. First, the minor children have suffered as much or more harm as their father Matthew R. Grant from the illegal conduct that has been committed and that is at issue in this matter. The harm inflicted upon them was caused by their own mother Defendant Rebecca A. Copeland and

4

their court-appointed Guardian *Ad Litem* Defendant John Fenley. Doc. 29. Additionally, their own Aunt Sarah M. Grant joined and participated in an illegal scheme to delay and limit the minor children's time and custody with their own father (her brother) to assist Defendant Copeland in her desire to obtain full custody **_solely to increase the child support_** that she believed otherwise would not change.

Most notably, Defendant Copeland's Motion to Modify filed in the state court matter at a time in which Plaintiff Matthew R. Grant was struggling the most, failed to seek any long-term change in custody or any change in child support at all.

The actions of the minor children's Mother Defendant Rebecca A. Copeland, Aunt Defendant Sarah M. Grant, and their first cousin once removed Defendant Staci Thomas are *atrocious*. The minor children suffered from their actions and at a future date, Plaintiffs intend to seek an order appointing Plaintiff Matthew R. Grant as their Next Friend to *vigorously* pursue their independent claims against all of the RICO defendants in this case.

While not before this Court, Defendants proactively assert that Plaintiff Matthew R. Grant cannot serve as the minor children's representative in this matter because he is not "conflict-free." Memo. at p. 7. The minor children and their father's interests are perfectly aligned and he will be a proper representative as a matter of law.[1]

---

[1] "Rule 17(b) of the Federal Rules of Civil Procedure provides that the capacity of an individual to sue in a representative capacity is governed by the law of the state in which the district court is held. Under Missouri law an infant may sue by its parent who is a natural guardian of the child **w*ithout the formality of having the parent appointed as next friend*.**" BRIAN BERGSTRESER, *infant v. MITCHELL,* 448 F. Supp. 10, 15 (E.D. Mo. 1977) (citations omitted) (emphasis added); *see also Bochantin v. Inland Waterways Corp.*, 9 F.R.D. 592, 593 (E.D. Mo. 1950) ("Preliminary to the main question, we rule respondents' position that Sophie Bochantin must first be appointed next friend for her minor children before she can maintain a suit on their behalf **finds no support in the law of Missouri.**") (emphasis added).

## II.    Co-plaintiff Stop Missouri Corruption, LLC Has Associational Standing.

Defendants urge the same flawed argument as other co-defendants. The argument that the LLC was not formed until after "some" of the events at issue has no relevance. Not surprisingly, Defendants cite no precedent to support their argument.

Most importantly, Defendants fail to even address the issue of associational standing in any detail despite the issue being raised and briefing several times before Defendants filed their Motion to Dismiss.

For the sake of judicial efficiency, Plaintiffs incorporate by reference their arguments and discussion of precedent already submitted to this Court on this issue. *See* Docs. 74-76 and 80.

## III.    Plaintiffs' Amended Complaint Does Not Violate Rule 8(a).

Next, and similar to their co-defendants, Movants argue that that Plaintiffs' pared-down Amended Complaint fails to comply with Rule 8(a). They mistakenly rely upon *Michaelis v. Nebraska State Bar Assoc.,* 717 F.2d 467 (8th Cir. 1983) and *Yates v. Skinner*, 748 F. Supp. 3d 666, 674 (S.D. Iowa 2024) just as their co-defendants did.

Defendants Copeland, Thomas and S. Grant make a *new* argument and suggest that Plaintiffs' Amended Complaint is defective because it "brings the same number of claims." Memo. p. 9. However, once again, they cite no precedent supporting the baseless argument that plaintiffs are limited to the number of viable causes of action they may assert.

Contrary to Defendants' argument, Rule 18(a) is clear that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, ***as many claims as it has*** against an opposing party." FED.R.CIV.P. 18(a) (emphasis added). Moreover, Rule 18(b) goes further to expressly recognize parties right to bring additional, contingent claims. FED.R.CIV.P. 18(b).

6

It seems Defendants were misled by this Court's reference in the Show Cause Order to the number of Counts in Plaintiffs' Complaint. Clearly, Rule 18(a) coupled with the weak arguments asserted to date purporting to support the vague Rule 12(b)(6) motions filed to date clarify that Plaintiffs' claims are solid and legitimate.

As this Court is aware, Plaintiffs cannot withhold viable claims for later litigation with the same parties in light of the prohibition on claim splitting and issues such as res judicata and collateral estoppel. *See Roach v. Teamsters Local Union,* 595 F.2d 446, 450 (8th Cir. 1979) ("A party may not litigate a claim and then, upon an unsuccessful disposition, revive the same cause of action with a new theory.") (citation omitted).

For these reasons, Plaintiffs' Amended Complaint does not violate Rule 8(a) and Defendants' motion to dismiss based upon that argument should be denied.

### III.  Plaintiffs' Have Stated A Claim for Several RICO Violations.

Defendants incorrectly argue: "The crux of Plaintiffs' RICO claim appears to be that all the Defendants concocted a scheme in which they would use Family Court matters to increase their own payday." Memo. p. 9. That is untrue.

Plaintiffs clearly allege that these specific defendants participated in an existing and long-standing RICO criminal enterprise that has been used to deceive and steal money from parents for years, if not decades. *See, e.g.* Doc. 29, ¶¶123, 125, 231, 276, 298, 305 and 378. As the Amended Complaint reveals, the RICO enterprise at issue has existed since before Defendant Hilton was appointed as a Circuit Court Judge in 2017.[2] Doc. 29, ¶121.

---

[2] This Court can take judicial notice of the that fact that Defendant Bruce F. Hilton was appointed by Governor Greitens in 2017. *See United States v. Gould*, 536 F.2d 216, 219 (8th Cir. 1976).

7

Plaintiffs' arguments are not speculative as Defendants suggest. They are concrete and specific. It stretches credibility to for anyone to argue that Plaintiffs have not alleged an "actual pattern of illicit activity." Memo. p. 10. Of course they have.

Plaintiffs have alleged specific examples from Plaintiff Matthew R. Grant's state court case to illustrate the precise pattern and conduct this specific criminal enterprise uses to engage in racketeering.

Defendants' suggestion that "the alleged enterprise in the Amended Complaint is defined solely by the defendants' participation in the fraudulent schemes" is objectively untrue. The RICO enterprise at issue in this case *predates* Plaintiff Matthew R. Grant's case filed by Defendant Copeland in March 2014 and it continues throughout the St. Louis County Family Court to this very day. It would survive if all of them disappeared from it at this very moment.

Defendants also ignore the fact that Plaintiffs seek certification of a class action in this matter to address all of the other similarly situated victims that have been suffered and have been harmed and damaged by the criminal enterprise's actions. Doc. 29, ¶¶91-106. The criminal enterprise at issue is vast.

Realizing that Plaintiffs have properly pled RICO violations, they next argue that Plaintiffs have not stated a claim because they supposedly must allege specific facts "that show that Defendants intended to engage in illegal conduct (i.e., they had an intent to defraud Plaintiffs)." Memo. p. 10.

They parrot prior filings from their co-defendants to suggest that the decisions in *Walters v. McMahen*, 684 F.3d 435, 440-43 (4th Cir. 2012) and *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328, (7th Cir. 1994) support their claim. *Id.* at pp. 10-11. Similar to their co-defendants, Copeland, Thomas and S. Grant fail to provide any substance to their argument.

No fair and objective reading of Plaintiffs' allegations support the conclusion that Plaintiffs' allegations are directed to legitimate mistake as was at issue in *Jepson* or the sort of innocent mistake as was at issue in *Walters*.

To the contrary, Plaintiffs repeatedly, as Defendants protest, allege that they knowingly participated in an improper scheme to prolong the state court litigation through bad-faith filings submitted by wire, perjured testimony, false affidavits, *ex parte* judicial communications and Orders entered by Presiding Judge motivated solely by bad-faith retaliation.

Defendants' claim that Plaintiffs' allegations do not illustrate criminal intent is laughable.

Their additional argument that "[t]he simple act of obtaining an order or filing a motion without any facts that show Defendants intended to engage in illegal conduct fail to pass muster." Memo. at p. 11.  Plaintiffs' pared-down Amended Complaint is extensive no doubt, but Defendants Copeland, Thomas and S. Grant failed to acknowledge any of its substantive content.

Defendants switch gears and curiously argue that Plaintiffs are attempting to double-down on prior success by citing a case in which the 8th Circuit feared federal courts being "subsumed" by an "endless cycle where any **victorious litigant** immediately sues opponents for RICO violations." Memo. at p. 11 (citing *UMB Bank N.A. v. Guerin*, 89 F 4th 1047, 1055 (8th Circuit 2024)) (emphasis added).

Defendants are so desperate to find an argument to avoid being subject to accountability for their criminal conduct that they now analogize Plaintiff Matthew R. Grant to a "victorious litigant."

Because Defendants' claim that Plaintiffs' have not alleged criminal conduct is absurd and belied by the actual allegations, Defendant's request to dismiss Count I should be denied.

4921-3441-1030, v. 1

### IV. Plaintiff Has Stated A Claim for Civil Conspiracy.

Defendants' argument relating to Plaintiffs' civil conspiracy cause of action (Count III) can be summarily rejected.

Defendants attempt to portray the actions of the criminal enterprise that they joined as nothing more than a mother "who had every right to be able to contest his claims and fight for her right to do what she felt was in the best interests of her children." Memo. at p. 13. Further, they argue that Defendant Thomas and S. Grant's perjury, trespassing and withholding of evidence is nothing more than "adverse witnesses" sharing their "knowledge." *Id.*

Defendants stoop so low as to argue that Plaintiff Matthew R. Grant "who by his own admission in his Amended Complaint, was an alcoholic who had severe mental health issues" is somehow relevant to an objective evaluation of Plaintiffs' allegations under Rule 12(b)(6). Plaintiff Matthew R. Grant has seen this act for more than a year and it is sad that Defendants continue to cite a disability as an excuse for joining and involvement in an existing racketeering enterprise.

Defendants have the gall to suggest that Plaintiffs civil conspiracy claim fails because they "must allege that one or more unlawful overt acts were committed.." Id. at p. 13.

Here again, Defendants hide in *la la land* and ignore the actual allegations made that reveal the terrible deeds that they have done.

Understandably, Defendants fail to provide any plausible explanation how their breaking into Plaintiff's home, sharing the discovery of Plaintiff's new Ring security device and how to successfully continue to trespass and avoid it, their perjury and ongoing efforts to gain illegal access to Plaintiff's online medical records is innocent.

4921-3441-1030, v. 1

To suggest that Plaintiffs' allegations relating to these Defendants conduct is nothing more than a "formulaic recitation of the elements of civil conspiracy' is patently absurd.

V. **Plaintiff Has Stated A Claim For Fraudulent Misrepresentation.**

In response to the allegations in the Amended Complaint and Count IV, Defendants ignore the Amended Complaint's other 500+ paragraphs of allegations, and they reference Plaintiffs' independent detailing of Count IV in paragraphs 404 and 407.  Memo. at p. 13.

Plaintiffs understand that Defendants have no viable arguments but to ignore the fact that paragraph 403 incorporates the other 500+ detailed factual allegations is spurious, at best.

Contrary to Defendants' hopes, the Amended Complaint is chock-full of a chronological listing of many, but not even all, of the ways they participated in the ongoing deception and false statements made to Plaintiff Matthew R. Grant during the relevant time frame and as detailed in the Amended Complaint.

Defendants attempt to ignore the full extent of Plaintiffs' voluminous factual allegations fails as a matter of law.

VI. **Plaintiff Has Stated A Claim Of Trespass.**

In response to the damning evidence of trespass, Defendants attempt to divert attention to only the actions of Defendant S. Grant and they actually claim that Plaintiff did not plead "ultimate facts" showing trespass.  Memo. p. 14.

As an initial matter, each of the defendants, including Defendants Copeland, Thomas and S. Grant are liable for the actions of the other co-conspirators.

These Defendants conveniently overlook that Plaintiffs have alleged their involvement in two separate conspiracies, both before and after litigation commenced.  They cannot hide from the

foreseeable actions of their co-conspirators. Not that would do them any good as their individual conduct satisfies each element of each cause of action directed at them.

Plaintiff specifically alleges how Defendant S. Grant engaged in trespassing and she continues to hide the surreptitious recording she made of Plaintiff in his home. Doc. 29, ¶¶248, 282-286.

Thomas manipulated her document production (¶293), deleted and edited text messages (¶295), destroyed recordings in her possession that she admitted to having (¶296), withheld responsive documents including an email Plaintiff obtained from.

Thomas avoids the fact that Plaintiff not only alleged her personal trespass, she actively assisted her co-conspirators in their collective trespassing by providing instructions on how to avoid detection by Plaintiff's Ring video camera:



Doc. 29, ¶267.

Defendant Thomas even mocked Plaintiff's now-wife and gloated about her illegal action of attempting to have her fired and she was successful in causing the wrongful termination of Plaintiff's health insurance policy:

4921-3441-1030, v. 1



Doc. 29, ¶274.

How these Defendants look at themselves in the mirror is a mystery to be sure, but to argue that Plaintiff has failed to plead "ultimate facts" is shocking.

Rarely, is a district court provided not only factual allegations as voluminous as those included by Plaintiff in this case. Indeed, their volume required Plaintiffs to cut ~100 pages from their initial Complaint.

But Plaintiff went so far as to include overwhelming and damming evidence of these Defendants' illegal conduct. *See* Doc. 29, ¶¶171, 248, 251-57, 260, 266-67, 272, 274.

Defendants even argue that Plaintiff failed to allege that "that any specific harm was caused by any alleged act [of trespass" when Missouri law is clear that no specific harm need be alleged or proven. *See, e.g., Smith v. Woodard,* 15 S.W.3d 768, 773 (Mo. App. E.D. 2000) ("In cases alleging trespass, it is not necessary that damage result because trespass entitles the wronged party to nominal damages.") (citation omitted); *see also Wright v. Edison,* 619 S.W.2d 797, 803 (Mo. App. E.D. 1981) ("a trespass was committed and they were entitled to at least nominal compensatory damages, regardless of whether they suffered any actual damage.").

### VI.    Plaintiff Has Stated A Claim for Invasion of Privacy.

As proof that Defendants would move to dismiss literally any Count brought by Plaintiff, these Defendants argue that Plaintiffs "fail to plead any ultimate facts showing that

Joint Defendants intentionally intruded upon their private affairs or concerns." Memo. at p. 15. Absolutely unnerving.

Plaintiff specifically alleged that with the assistance of Copeland and Thomas, Defendant S. Grant entered Plaintiff's bedroom and surreptitiously recorded him without his knowledge. Doc. 29, ¶ 286.

Again, Defendant Thomas assisted the others to avoid Plaintiff's ring camera so that they could illegally access his home, and Defendant S. Grant produced pictures that she took of Plaintiff and his now-wife's prescription medications and even photographs of Plaintiff's website passwords:




*Id.* at ¶248.

The parties colluded to lie and pretend to assist him when all along they merely wanted improper access to his personal health and other medical records:



Doc. 29, ¶¶ 251-52.

The extent to which Defendants invaded Plaintiff's privacy is simply unreal.

14

The fact that Defendants would even argue that Plaintiff has not alleged that they invaded his privacy should be embarrassing to all involved in submitting that utterly baseless legal argument.

**VII. Plaintiff Has Stated A Claim for Intentional Infliction of Emotional Distress.**

Next Defendants argue that the Plaintiff has not alleged a claim for Intentional Infliction of Emotional Distress. Memo. p. 16.

First, Defendants argue that "[w]here a desire to cause severe emotional harm is not the sole motivation for the conduct alleged, suit cannot be brought for intentional infliction of emotional distress." *Id.* at p. 16 (citing *Geran v. Xerox Educ. Servs., Inc.*, 469 S.W.3d 459, 468 (Mo. App. 2015)).

Here, Plaintiff previously alleged that the sole motivation of the criminal enterprise when its members arranged for him to be stalked and followed was "intimidation." Doc. 3, ¶475-476.

In order to alleviate any dispute regarding this issue, Plaintiff seeks leave to amend his allegations to reincorporate his prior allegations of intentional intimidation and also add the factual claim that he suffered severe emotional mental distress as a result of the ongoing stalking and intimidation. Further, Plaintiff seeks leave to allege that the criminal enterprise not only illegally gained access to his iPhone, but they did so in a manner to alert Plaintiff to their access and control of his iPhone's functionality.

Again, Plaintiff alleges that these Defendants are liable not only for their own illegal actions, but also, the foreseeable illegal actions of their co-conspirators.

Missouri law is clear that "… all members of a conspiracy are responsible for the foreseeable acts of co-conspirators taken in furtherance of the conspiracy." *United States v. Simmons*, 154 F.3d 765, 770 (8th Cir. 1998). "Every member of the conspiracy need not have

15

actually committed the unlawful act supporting liability." *Brock v. McClure*, 404 S.W.3d 416, 421 (Mo. App. 2013); *see also McFarland v. McFarland*, 684 F. Supp. 2d 1073, 1085 (N.D. Iowa 2010) ("the actions that the Moving Defendants' co-conspirators are alleged to have taken in furtherance of the alleged conspiracy may be imputed to them, if those actions could be reasonably foreseen as a necessary or natural consequence of the conspiracy.).

There can be question that the addition of these allegations to the plethora of allegations of extreme and outrageous conduct that are currently included will sufficiently state a claim under Missouri law.

### VIII. Plaintiff Has Stated A Claim For Negligent Infliction Of Emotional Distress.

Defendants claim that Plaintiff has failed to state a claim under Count VII (Negligent Infliction of Emotional Distress) because they claim that Plaintiff merely complains of the "adversarial role" Defendants possessed in the state court litigation. Memo. at p. 17.

As already discussed above, Plaintiffs' allegations relating to Defendant Copeland, Thomas and S. Grant's actions and their roles in the RICO conspiracy go far beyond the proper conduct of adversaries.

### IX. Plaintiff Has Stated A Claim For Defamation Against Copeland.

Defendant Copeland fails to even acknowledge her horrendous conduct.[3] Plaintiff Matthew R. Grant accurately alleges that Copeland falsely identified him as her de facto rapist. It is telling that Copeland refrains from even repeatedly her own conduct.

There is no doubt that falsely publicizing someone as a rapist causes reputational harm as Plaintiff alleged. *See* Doc. 29, ¶438. Additionally, Plaintiff Matthew R. Grant has alleged severe emotional distress caused by Copeland's conduct. *See* Doc. 29, ¶438 and 447.

---

[3] Plaintiff agrees to voluntarily dismiss his separate Count (IX) for Defamation *Per Se*.

16

The Missouri Supreme Court noted that the Eighth Circuit has aptly noted that "psychological or emotional distress, or depression" are more than sufficient forms of harm and damage. *Kenney v. Wal-Mart Stores, Inc.,* 100 S.W.3d 809, 816 (Mo. 2003) (citing *Arthaud v. Mutual of Omaha Ins. Co.*, 170 F.3d 860, (8th Cir. 1999).

Plaintiff specifically alleged this harm in Count X. Doc. 29, ¶447 ("Defendant Copeland's false statement has caused damage to Plaintiff, including but not limited to emotional distress.").

In fact, Plaintiff intends to call at least his therapist as a witness at trial to address these issues.

## X.    Plaintiff has Stated A Claim for Tortious Interference With Contract.

Despite Plaintiff's actual factual allegations at issue in a Rule 12(b)(6) analysis, Defendant Thomas attempts to avoid her liability for obvious tortious inference with contract by arguing:

> Plaintiffs do not state plead[sic] how they were not able to show the insurance company that Plaintiff Grant was not engaged in fraud which would have allowed his insurance to be reinstated immediately as insurance companies do not cancel insurance policies based upon emails alone.

Memo. at p. 19.

Next, she incredibly claims that "insurance companies do not cancel insurance policies based upon emails alone." Memo. at p. 19.

Thomas' entire argument is not only nonsensical, it represents nothing but an irrelevant argument that even though Thomas' allegation may have been false, Plaintiff should have been able to successfully refute it. *Id.* While creative, the argument fails as a matter of law. If anything, she might be able to argue these issues at trial or in a third-party complaint against the insurance company. The arguments do not defeat Plaintiff's properly pleaded claim.

17

Plaintiff expressly alleged that Thomas "falsely claimed that Plaintiff was engaged in fraud and was not a domestic partner of his now-wife." Doc. 29, ¶453. That is more than sufficient factual detail under Rule 8(a).

Plaintiff is not obligated to recite, verbatim, the false words Thomas used as she claims. Rule 9(b) does not apply. *See. e.g., Miljas v. Greg Cohen Promotions, LLC,* 536 F. Supp. 3d 409, 421 (S.D. Iowa 2021). Notably, Plaintiffs even cite Thomas to the date and time of her tortious and wrongful email. Doc. 29, ¶258.

**XI.    Plaintiff has Stated A Claim for Conversion Against S. Grant.**

Defendant S. Grant's attempt to avoid her liability for conversion is absurd. She misstates the reasoning and holding in *Walker v. Hanke*, 992 S.W.2d 925, 930 (Mo. App. 1999).

Walker correctly noted that:

> Conversion can be proved in three ways: '1) by tortious taking; 2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to [the] owner's rights; **or** 3) by refusal to give up possession to the owner on demand, even though the defendant's original possession of the property was proper.'

922 S.W.2d at 930 (citation omitted).

Defendant S. Grant attempts to portray the third way of proving conversion is the only way and she ignores the first 2 ways listed in the *Walker* quote above. Plaintiff need not, although he could, allege that he demanded the return of his wine collection.

Finally, Defendant S. Grant's entire argument is made in bad faith as during her deposition she refused to even identify the wine collection's location. If the Court deems it necessary, Plaintiff can amend his allegations to include this testimony.

**XII.    Plaintiff has Stated A Claim for Unjust Enrichment.**

Lastly, Defendants argue that Plaintiff's 78-page complaint alleges no benefit conferred upon them.  Memo. at p. 21.  Defendants' argument fails as unjust enrichment includes situations where it is "morally wrong for one party to enrich himself at the expense of another." *Toomey v. Dahl,* 63 F. Supp. 3d 982, 999 (D. Minn. 2014).

Here, Defendants Copeland, Thomas and S. Grant colluded and conspired to wrongfully remove and keep the minor children from Plaintiff Matthew R. Grant's physical custody.  There is no doubt that the extra time stolen from Plaintiff and the exclusion of Plaintiff from the children's lives, and conversion of that time into time with Defendants, served to concretely benefit these Defendants.  That is why they did it.

Moreover, Defendant Thomas' text message shows that another benefit was wrongfully inflated child support award and was intended to get Plaintiff "out of your life."  Doc. 29, at ¶279.  Their efforts continue to be successful in obtaining these benefits as well.

To the extent the Court deems necessary, Plaintiff Matthew R. Grant can add these unnecessary additional allegations by way of amendment.

## **CONCLUSION**

For the reasons detailed herein, Defendant Copeland, Thomas and S. Grant's Motion to Dismiss (Doc. 86) should be denied in its entirety.  In the alternative, Plaintiffs respectfully request leave to amend.

4921-3441-1030, v. 1

Respectfully submitted,

    */s/Matthew R. Grant*
Matthew R. Grant, #MO50312
GRANT FIRM LLC
701 Market Street
Suite 110, PMB 1709
St. Louis, MO 63131
T: (314) 255-7760
Email:  mattgrant.stl@gmail.com

***Pro Se* Plaintiff and counsel for Co-Plaintiff Stop Missouri Corruption, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 28, 2025, the foregoing was filed electronically with the Clerk of Court, therefore to be served electronically by operation of the Court's electronic filing system upon all counsel of record.

    */s/ Matthew R. Grant*

20