UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MATTHEW R. GRANT, et al, ) | |
| ) | |
|     *Plaintiffs*, ) | |
| vs. ) | |
| ) | |
| BRUCE F. HILTON, et al., ) | Case No.  25-CV-1203-JMD |
| ) | |
|     *Defendants*. ) | |

### PLAINTIFFS' AMENDED *COMBINED* REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISQUALIFY AND IN SUPPORT OF THEIR MOTION TO SET ASIDE AND VACATE

Plaintiffs, pursuant to Local Rule 4.01(c) and Rule 15(a)(1), submit this *Combined* Reply Brief in support of their Motion to Disqualify Judge Divine pursuant to 28 U.S.C. §§ 144 and 455 (Doc. 89 and 90), and in response to the joinder filed by Defendants Copeland, Thomas and S. Grant (Docs. 99 and 104), the joinder filed by Defendants Gillespie and Gellespie, Hetlage & Coughlin (Docs. 105 and 106) and in response to the adopted Opposition Memorandum filed by Defendants Eilerts; Growe, Eisen Karlen Eilerts, LLC; Coulter; and Coulter Goldenberger (Doc. 91).[1]

Plaintiffs also present this Combined Reply Brief in support of their Motion to Set Aside Invalid Orders (Doc. 107) and in response to the Opposition filed by Defendants Eilerts; Growe, Eisen Karlen Eilerts, LLC; Coulter, and Coulter Goldenberger (Doc. 91).[2]  Although greater than ten (10 pages), this 15 page *Combined* Reply is shorter than the 20 pages

---

[1] Defendants Hilton and Greaves waived their right to file an Opposition to Plaintiffs' Motion to Disqualify as it was due on December 1st.  This *Combined* Reply is being filed prior to the actual deadline for Plaintiffs Reply Brief in response to either of the Opposition Memoranda (Docs. 91 and 109) based upon the joinders that were allowed by the Court on December 2nd.

[2] Plaintiffs reserve the right to file any additional Reply Briefs in response to any future Opposition Briefs.

1

Plaintiffs would be entitled to file if they elected to split this *Combined* Brief in two and file it separately.[3]

Here, due to the repetition and overlapping issues, Plaintiffs have submitted a single *Combined* Brief to allow the Court a single reading.

---

[3] To the extent required, Plaintiffs move for leave of court to extend the page limit found in Local Rule 4.01(c) that is applicable to *individual* briefs.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………………….4

INTRODUCTION……………………………………………………………………………....5

    A.    Section 144 Requires Judge Divine's Disqualification…………………………..6

        1. Judge Divine Served In The Missouri Attorney General's
           Office While The Corruption At Issue In This Case Was Ongoing………..6

        2. Senator Joshua Hawley Was Identified As A Likely Fact Witness By
           Plaintiff Grant Almost 10 Months Ago On February 28, 2025……………7

        3. Judge Divine Violated § 144's Mandate That He "Shall Proceed
           No Further" And That Conclusively Establishes That His
           Disqualification Is Warranted………………………………………………12

        4. Section § 455 requires Recusal and an Orders Vacating The Improper
           Rulings Under Rule 60 as Plaintiffs Have Requested……..……………..15

        5.   The Post-November 17th Orders Must Vacated……………………………..18

CONCLUSION………………………………………………………………………………...18-19

# **TABLE OF AUTHORITIES**

**Cases:**

*Akins v. Knight*, 863 F.3d 1084, 1086 (8th Cir. 2017)......................................................12

*Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 458 n.7 (5th Circuit 1996) ....................................12

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).......................14

*In re Murchison*, 349 U.S. 133, 136, 99 L. Ed. 942, 75 S. Ct. 623 (1955)..........................16

*In re Sch. Asbestos Litig.*, 977 F.2d 764, 784 (3d Cir. 1992)..............................................18

*\*Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 859-60 (1988) ...................15-17

*Love v. Macomber*, No. 2:23-cv-00790-DJC-EFB, 2023 U.S. Dist. LEXIS 83000,
at \*4 (E.D. Cal. May 10, 2023).............................................................................................7

*Moran v. Clarke*, 296 F.3d 638, 649 (8th Cir. 2002)......................................................12-13

*United States v. Amico*, 486 F.3d 764, 778 (2d Cir. 2007) ................................................18

*United States v. Olis,* 571 F. Supp. 2d 777, 782 (S.D. Tex. 2008).....................................11

**Statutes:**

28 U.S.C. § 144............................................................................................... (throughout)

28 U.S.C. § 455..............................................................................................(throughout)

**Other:**

https://en.wikipedia.org/wiki/Josh_Divine ..........................................................8, n.6

https://themissouritimes.com/bailey-brings-on-national-conservative-figure-josh-divine-as-solicitor-general/ .......................................................................................................6

https://www.moed.uscourts.gov/sites/moed/files/judges/requirements/jmd.pdf ..........17, n.17

4

## **INTRODUCTION**

Plaintiffs Motion to Disqualify Judge Divine and its Motion to Set Aside Invalid Order should be granted because Plaintiffs' Motion and Affidavit are sufficient under § 144, and the same facts support a finding of disqualification of Judge Divine under § 144.

Judge Devine's personal background creates serious conflicts of interest, bias, prejudice and an appearance of propriety.  Specifically, Judge Divine served as Deputy Solicitor General and as Solicitor General within the Missouri Attorney General's Office, on behalf of client the State of Missouri.

Additionally, Judge Divine served as Deputy Counsel and then Chief Counsel to United States Senator Josh Hawley who is ***1 of only 2*** likely fact witness identified by Plaintiff Grant, in writing, back in February 2025.  In the same documented communication, Grant identified new Missouri Attorney General Catherine Hanaway as t***he only other*** likely fact witness.  As discussed below, Ms. Hanaway is Plaintiff's former law partner, and she was conveniently and surprisingly appointed as Attorney General ***just 8 days*** after this matter was filed.

Further, Judge Divine was selected for nomination as a District Judge by the same, corrupt political and judicial network that Plaintiffs seek to end via this litigation.[4]  Much worse, Judge Divine was nominated by that same corrupt network ***after*** the corruption exposed by Plaintiff Grant was publicly known.

Judge Divine's duty to recuse is clear.  However, Judge Divine removed any doubt as to his bias and prejudice when, after being faced with a Motion to Disqualify under 28 U.S.C. 144 and 455 (Docs. 89 and 90) he did the one thing he could not, he "proceeded further" which

---

[4] To be clear, Plaintiffs do not allege all involved are corrupt.  As Plaintiffs explained in their Initial Complaint (Doc. 3), the RICO enterprise needs only a limited number of members in the right positions to further the enterprise's interests.

5

is expressly prohibited by § 144. He didn't just proceed further; he elected to enter orders prejudicial to Plaintiffs, including excusing a default, before Plaintiffs even had a chance to file their mandatory response within the time provided under the Rules.[5] *See* Local Rule 4.1 (a party "must" file a memorandum within 14 days).

These facts further support the finding of actual bias, prejudice and appearance of impropriety in this matter and they require the vacating and setting aside of the orders entered by Judge Divine completely without any jurisdiction.

### A. Section 144 Requires Judge Divine's Disqualification.

#### 1. Judge Divine Served In The Missouri Attorney General's Office While The Corruption At Issue In This Case Was Ongoing.

Plaintiffs intend to prove that former Missouri Attorney General Andrew Bailey had actual and/or constructive notice of the allegations of corruption in the St. Louis County Courts. *See* Supplemental Affidavit of Matthew R. Grant attached hereto as **Exhibit A**. If allowed to keep this case, Judge Divine would be faced with dealing with issues relating to his former bosses (Bailey and Hawley), in addition to his former colleagues and friends.

There is no chance that Judge Divine's relationship with his former boss, Andrew Bailey, does not create a bias that is permanent. In 2022, while the corruption in the St. Louis County Courthouse was ongoing, Judge Divine is quoted as stating:

> Andrew Bailey's record as a battle-tested, constitutional conservative will serve every Missourian well. His commitment to the Constitution has defined his career as a decorated Army combat veteran and a tough prosecutor who has put violent criminals behind bars protected religious liberty and defended our freedom of speech, which is increasingly under attack by Big Tech. I look forward to his leadership as Attorney General for the State of Missouri.

https://themissouritimes.com/bailey-brings-on-national-conservative-figure-josh-divine-as-solicitor-general/

---

[5] Again, it is the *objective* bias and *objective* appearance of impropriety that is dispositive. The Court's subjective beliefs are irrelevant.

Mr. Bailey and his office, which included Judge Divine, did not "serve every Missourian well" as Judge Divine is quoted as saying.  Quite the opposite.  Missourians have been failed by the very office from which Judge Divine just recently left to arrive in this District Court.

In response to the obvious bias and prejudice relating to Judge Divine's background in the Missouri Attorney General's Office, they cite an unpublished decision from the Eastern District of California to claim that Judge Divine's personal background is irrelevant.  Opposition, p. 3 (citing *Love v. Macomber*, No. 2:23-cv-00790-DJC-EFB, 2023 U.S. Dist. LEXIS 83000, at *4 (E.D. Cal. May 10, 2023)).

Defendants' reliance on the unpublished decision in *Love* is misplaced as that defendant's affidavit involved "unfounded theories and accusations" and the judge's prior employment had nothing to do with the case.  *Id.* at *4.  In stark contrast, at the time when the RICO enterprise at issue here was ongoing, Judge Divine served in the Missouri Attorney General's Office and represented a likely fact witness.

### 2. Senator Joshua Hawley Was Identified As A Likely Fact Witness By Plaintiff Grant Almost 10 Months Ago On February 28, 2025.

Plaintiff presents evidence to this Court of which it may not be aware.  It will be aware of it now and Judge Divine certainly should self-recuse. On February 27th and 28th, 2025, Plaintiff Matthew R. Grant exposed corruption for the first time, and confirmed to Defendants Hilton, Brodie and Fenley, that he was intent on exposing the judicial corruption and RICO criminal enterprise that exists in the St. Louis County Family Court.

Specifically, on the morning of February 28, 2025, after he filed Motions to Disqualify Defendant Hilton, Plaintiff Grant sent Defendant Hilton, Defendant Fenley and Defendant Brodie an email as notice that "the jig was up":

7

> Matt Grant <mattgrant.stl@gmail.com>
> To: Maia Brodie <mbrodie@brodielawstl.com>
> Cc: John Fenley <john@rhflegal.com>, "Bruce.Hilton@courts.mo.gov" <bruce.hilton@courts.mo.gov>
>
> Maia:
>
> You can return to the kids table now. The adults will be talking here on out.
>
> Your move Bruce. No need to drag this out, it will just make the political fallout worse.
>
> Am I negotiating with Catherine or Josh?
>
> Tell your top point person that is your go-between to have him or her send their messenger.
>
> 😊
>
> Thanks,
> Matt

**Exhibit B.**

The email references only two individuals. The reference to "Josh," is to United States Senator Joshua Hawley. **Exhibit A**. Critically important, Senator Hawley is a former sole client of Judge Divine, just as is the State of Missouri was his sole client, including its Attorney General's Office where Judge Divine worked.[6] The undisputed fact that Judge Divine worked for and with a likely fact witness identified almost 10 months ago is conclusive evidence of required recusal or disqualification.

As the email reveals, Plaintiff Matthew R. Grant alleged *almost 10 months ago* that the **<u>only 2 individuals</u>** likely to have the proper "connections" to the current situation, and that could negotiate to end it, were Judge Divine's former client Senator Hawley, and his former law partner and new Missouri Attorney General Catherine Hanaway.[7]

As the email proves, when Plaintiff Grant attempted to address this corruption privately and out of the public's view, he suggested Defendant Hilton send either, or both of Judge Divine's

---

[6] https://en.wikipedia.org/wiki/Josh_Divine

[7] As Plaintiff Grant has confirmed in prior filings, he sat 4-5 offices from Attorney General Hanway when they were both at Husch Blackwell LLP.

8

former boss and client, Josh Hawley, or who would become the new Missouri Attorney General after this case was filed, Catherine Hanaway, his way.[8]  The individual who now, ultimately represents Defendant Hilton and Greaves.

Plaintiff did not include a laundry list of random Missouri politicians and political movers and shakers.  He listed only 2.   Plaintiff Grant knew then, as he knows now, that Senator Hawley and Attorney General Hanaway are likely fact witnesses in this matter.[9]

Plaintiff Grant confirmed those likely to be fact witnesses back in *February 2025*.  Now, what a surprise, Plaintiff Grant's former law partner, who he personally knows and who headed the group from which he learned all of his political knowledge, Catherine Hanaway, was brought in as the new Missouri Attorney General ~***8 days after*** Plaintiffs filed their Complaint.[10]  Plaintiff

---

[8] It is regrettable that this situation was not addressed privately.  Plaintiff Grant's motives include protecting Missouri's state court judicial system that he is now forced to publicly prove is infested with judicial corruption.

[9] Plaintiffs will prove that the corruption at issue was known to the Missouri Attorney General's Office, the Office of Chief Discipline Counsel that Defendant Brodie represents, and the Missouri Commission on Retirement.

[10] Plaintiff Grant has knowledge of the individuals and process certainly involved in Judge Divine's nomination just as he does the appointment of his other former law partner from Husch Blackwell LLP, United States District Court Judge Matthew T. Schelp.  Plaintiff Grant's former law partners include former United States Attorney Jeffrey Jensen.  Additionally, he has attempted to obtain the assistance of the Department of Justice via former colleague and attorney at Husch Blackwell LLP, Derek Wiseman.  Mr. Wiseman is an Assistant United States Attorney for the Eastern District of Missouri, and he sits in this courthouse building where Plaintiff Grant has previously met with him.  Plaintiff Grant's former law partners include Jeffrey Sigmund who sat on the 21st Circuit Judicial Commission that successfully recommended Defendant Hilton to Governor Greitens.  Governor Greitens and/or his campaign are former clients of new Attorney General Catherine Hanaway.  Again, Plaintiff Grant knows about the political and judicial appointment topics on which he speaks.  This Court's prior threat of sanctions and its suggestion that Plaintiff Grant is just an upset father is insulting, *at best*.  See **Exhibit A**.

knew long ago precisely the individuals he would be facing as adversaries when he exposed this corruption last March.[11]

Importantly, the Missouri Attorney General's Office, including Judge Divine's former colleagues, are now counsel of record for Defendants Hilton and Greaves.[12]

Plaintiffs are not "judge shopping." Instead, they seek to disqualify the *most conflicted* and *most biased* judge within either of this State's two District Courts. Judge Divine's overlapping and intertwined relationships with his former colleagues at the Missouri Attorney General's Office, and his former client and likely fact witness, Joshua Hawley, make it clear that he must recuse or be disqualified.

No reasonable person could objectively look at the following evidence and conclude there is **NOT** an appearance of impropriety associated with Judge Divine's handling of this case:

1. Plaintiff Grant's identification of Senator Hawley as an individual with knowledge in his email dated February 27, 2025;

2. Judge Divine's representation of Senator Joshua Hawley;

3. Judge Divine's two terms of service representing the State of Missouri in the Missouri Attorney General's Office from 2017 to 2019 and 2023 to 2025;

4. Plaintiffs' naming the State of Missouri as a defendant in their initial Complaint;

5. Judge Divine's focus on the State of Missouri in his "proactive" Show Cause Order and demand of its dismissal despite controlling precedent rejecting his position. Doc. 22.

6. Judge Divine's incorrect and prejudicial claim that *Exxon Mobil* decision and the Rooker Feldman Doctrine apply. Doc. 22.

---

[11] The only other explanation is that Plaintiff Grant's February 28, 2025, email proves that he has *Nostradamus-like* abilities. Unfortunately, that is not the case.

[12] Plaintiffs will prove that these facts are *not* a coincidence.

7. Judge Divine's employment in the Missouri Attorney General's Office which is charged with prosecuting public and judicial corruption.[13]

8. Plaintiff Grant's identification of Catherine Hanaway as an individual with knowledge in his email dated February 27, 2025; and

9. Catherine Hanaway's appointment as the new Missouri Attorney General, and head of the office where Judge Divine worked twice, just *8 days* after this RICO and Civil Rights Act case was filed on August 11, 2025.

Almost 10 months ago, Plaintiff Grant predicted many of the events that have transpired.[14] Any objective person can see that Plaintiff is *far from* a "state court loser."

Instead, Plaintiff Grant is a victim and someone with unique personal knowledge of St. Louis Republican politics and how state and federal judicial appointments are *actually* made.

Defendants also cite *United States v. Olis,* 571 F. Supp. 2d 777, 782 (S.D. Tex. 2008). That case adds nothing as it involved a criminal defendant making factually unsupported claim that the judge and United States Attorney had a "close personal friendship" based upon similar backgrounds. 571 F. Supp. 2 d at 783.

---

[13] The United States Department of Justice and its U.S. Attorneys' Office for Eastern District of Missouri in this Court's courthouse also owe an explanation to *all Missourians* for its failure to take any publicly known action to stop the RICO enterprise and corruption at issue in this case. Plaintiff Grant emailed his former colleague from Husch Blackwell and now Assistant U.S. Attorney Derek Wiseman ***13 times*** reporting the RICO enterprise's existence and forwarding actual evidence that his claims are true. *See* **Exhibit A.** To date, he still has never received any response or other contact from his former colleague. Again, Plaintiff Grant made this reporting and also many reports to the Office of Chief Disciplinary Counsel (OCDC) and the Commission on Retirement, Removal and Discipline. To date, no one has acted to end the patently obvious corruption at issue in this case. Hence, the parties in this case find themselves here and Plaintiff faces Catherine Hanaway as the new Missouri Attorney General as an adversary, and a former counsel within the Missouri Attorney General's Office and former counsel to Senator Hawley, a likely fact witness, as his judge.

[14] The Defendants' baseless but uniform Motions to Dismiss every single count are just a few examples of the desperate lengths the RICO enterprise will go to avoid Rule 26 fact discovery in this matter. They are wise to be fearful.

11

In *Olis*, the District Judge correctly disregarded the inmate's claims that were "speculation" and finding that the inmate's affidavit "does not describe or even suggest any extrajudicial or judicial relationship." *Id.* at 786-87. Defendants cite several other cases that stand for nothing but general propositions of law.

### 3. Judge Divine Violated § 144's Mandate That He "Shall Proceed No Further" And That Conclusively Establishes That His Disqualification Is Warranted.

Defendants cite no authority for the unsupported suggestion that the statutory mandate that a district judge "**shall proceed no further**" contained in 28 U.S.C. § 144 means what it says.

The statute says that judges "**shall proceed no further**" and the Eighth Circuit has explained precisely what the means in cases such as this. *See Akins v. Knight*, 863 F.3d 1084, 1086 (8th Cir. 2017).

The Eighth Circuit's mandate is clear: a challenged district judges has only two things she may do "at her option." *See Akins v. Knight*, 863 F.3d 1084, 1086 (8th Cir. 2017). There is no room for Opposing Defendants' meritless argument and request that this District Court create its own 3rd option that proves the very bias and prejudice that Plaintiffs have demonstrated.

The Eighth Circuit acknowledged that there were **only 2 options** that district judges faced with a 28 U.S.C. § 144 motion have. Specifically, the Eight Circuit adopted the earlier ruling in in *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 458 n.7 (5th Circuit 1996) ("either through a motion to recuse under § 455, an affidavit of prejudice under 28 U.S.C. § 144, or the judge's own motion), the judge may—**at her option—transfer the matter to another judge for decision or determine it herself**.").

It is surprising that Defendants discuss Plaintiffs' citation to the Eighth Circuit's decision in *Moran v. Clarke*, 296 F.3d 638, 649 (8th Cir. 2002). Opposition, p. 4. In *Moran*, the Eighth Circuit ruled that that the defendant was entitled to a new trial and it held that district judge's potential recusal *should* be *thoroughly reconsidered* by him on remand. 296 F.3d at 649 (remanded "with the suggestion that it [the judge] revisit and *more thoroughly consider* and respond to Moran's recusal request.") (emphasis added).

In analyzing the issue of recusal, the Eighth Circuit noted in *Moran*: "We are troubled by the record in this case." *Id.* Before it remanded for reconsideration of recusal, the Court noted that "[t]he image of one sitting in judgment over a friend's affairs would likely cause the average person in the street to pause." *Id.* That case supports Judge Divine's disqualification in this matter. The Eighth Circuit surely would reject Defendants' arguments and question how Judge Divine both didn't recuse, but then he "proceeded further" to enter orders prejudicial to Plaintiffs.

Defendants next suggest that the district judge's decision following remand is helpful. Opposition, p. 6 (citing *Moran v. Clarke,* 213 F. Supp. 2d 1067, 1075 (E.D. Mo. 2002)). However, they gloss over the fact that the judge's recusal decision was made with the backdrop of a district judge's statements: "With all due respect, this court's faith in the appellate majority herein has been shaken" and the statement that "In any event, the undersigned is at a loss to explain the majority's justification and reasoning for choosing to demean the character of this court with such zeal. *Id.* at 1076.

The judge recused and stated: "[t]he disrespect that this court feels has been visited upon it by fellow Article III judges makes the orderly administration of justice extremely difficult, if not impossible, in further presiding over this case." *Id.* at 1076. There were also references to racial issues included as well. *Id.*

13

The district judge's decision that followed remand in *Atkins* is very far from instructive on any of the issues in this case.  Defendants' citation is akin to asking a court to adopt the holding of a dissenting opinion.  To the extent Defendants are suggesting that Judge Divine adopt the district judge's approach and reject the holding in *Atkins*, that is clearly inappropriate.

As their final commentary, Defendants attempt to soften the blows proactively handed out to Plaintiff Grant by Judge Divine in his Show Cause Order. Opposition, p. 9. Yet, Defendants provide absolutely no explanation as to how a reasonable person would not find even more proof of bias and an appearance of impropriety in the Court's seemingly intentional misstatement of facts.  Not just any facts.  Jurisdictional facts.

This Court implied Plaintiff Grant was a "state court loser" and that *Rooker Feldman* applied.  Doc. 22, p. 4 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  It clearly does not.  The only 2 Defendants to touch on the issue stated: "To the extent …" followed by a clearly unreasonable proposition.  Doc. 105, p. 12.  Not even the lawyers in Judge Divine's former office and his colleagues who represent Defendants Hilton and Greaves supported this Court's position and inexplicable citation to *Exxon Mobil Corp.*  *See* Doc. 102.

A reasonable person would observe that Judge Divine was so blinded by the allegations of corruption allowed by his former employer's Office of Attorney General and Plaintiffs' direct attack on the corrupt portion of the process that led to his very recent confirmation, that all reasonable persons would have more than "some doubt" as to Judge Divine's impartiality and would see the footprints of bias and prejudice.

A reasonable person might just interpret the Court's Show Cause Order and its threat of sanctions as yet another effort by many to keep Plaintiffs from exposing to the public and the

14

Eighth Circuit, the very corruption that was allowed to thrive under the watch of Judge Divine's colleagues in the Missouri Attorney General's Office.

A reasonable person would be concerned that Plaintiffs identified Judge Divine's former client, Josh Hawley, as a likely fact witness almost 10 months ago.

A reasonable person would observe that Judge Divine's bias, prejudice and an appearance of impropriety is readily apparent.

Here, a reasonable person with all the facts would observe that when District Judge Divine's impartiality was questioned, he did **the one thing he couldn't**, he "proceeded further" and compounded the impact of that violation by entering orders prejudicial to Plaintiffs.

### 4. 28 U.S.C. § 455 requires Recusal and an Order Vacating The Improper Rulings Under Rule 60 as Plaintiffs Have Requested.

The United States Supreme Court provided mandatory guidance on the propriety of setting aside and vacating final judgments after a district judge should have self-recused prior to a final judgment's entry.[15] *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 858 (1988) ("We must first determine whether § 455(a) can be violated based on an appearance of partiality, even though the judge was not conscious of the circumstances creating the appearance of impropriety, and second, whether relief is available under Rule 60(b) when such a violation is not discovered until after the judgment has become final.").

In *Liljeberg,* the Court allowed a Motion to Disqualify *10 months* after a judgment was affirmed on appeal and it vacated criminal convictions in that case and clearly ruled that the

---

[15] Plaintiffs believe that, under the facts of this case, the Eighth Circuit would allow a district judge to vacate his mistaken orders prior to transferring the case via a contemporaneous Order of Recusal. There should be no reason the next, impartial judge should be forced to get up to speed and grant such obvious relief.

15

answers to both of the preceding questions (partiality and availability of Rule 60) were undoubtedly yes.[16] *Id.* It held that a purported lack of personal knowledge of an appearance of impropriety was not a sufficient excuse for violating § 455 in large part due to the public's interest in an undoubtedly fair and impartial judiciary. *Id.* at 869-870 ("The guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact.").

The Court adopted the 5th Circuit's earlier explanation that:

> If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created **even though** no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because **the judge is pure in heart and incorruptible.**

*Id.* at 860 (citation omitted) (emphasis added).

The *Liljeberg* Court harshly chastised the district judge at issue in that case and went so far as to recognize that: "[t]hird, it is remarkable -- and **quite inexcusable** -- that Judge Collins failed to recuse himself on March 24, 1982." *Id.* at 866 (emphasis added). The same could be said regarding Judge Divine's disregard of the Motion to Disqualify.

The Court emphasized the very purpose of disqualification: "[w]e must continuously bear in mind that 'to perform its high function in the best way 'justice must satisfy the appearance of justice.'" *Id.* at 864 (citing *In re Murchison*, 349 U.S. 133, 136, 99 L. Ed. 942, 75 S. Ct. 623 (1955)) (holding that all "possible temptation" of impropriety must be removed to ensure due process of law and mandating that "[s]uch a stringent rule may sometimes bar trial by judges

---

[16] Plaintiffs do not suggest that *Liljeberg is* precisely on-point. That case involved 4 factors to consider when potentially invoking Rule 60 to reverse a final judgment due to a § 455 violation. However, the Supreme Court's analysis and the lengths to which it went to ensure the public's trust in the judiciary is more than instructive.

16

who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties.") (citation omitted).

Importantly, citing Congressional intent, the Supreme Court explained: "[t]he problem, however, is that *people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges.* The very purpose of § 455(a) is to promote confidence in the judiciary *by avoiding even the appearance of impropriety whenever possible.*" *Id.* at 866 (citing S. Rep. No. 93-419, at 5; H. R. Rep. No. 93-1453, at 5) (emphasis added). This rationale applies directly in this case.

Now is the time to remove the appearance of impropriety from this case that the reasonable public, who "often all too willing to indulge suspicions and doubts concerning the integrity of judges," would question the motives of Judge Divine in this case by completely ignoring the Motion to Disqualify and instead making the extraordinary move to enter rulings adverse to the very parties awaiting a ruling on their Motion to Disqualify.

Judge Divine's Orders are similarly perplexing as they were entered before Plaintiffs had a chance to file an Opposition Brief that is ***provided to all parties*** under Local Rule 4.1(b) & (c).[17] *Compare* Local Rule 4.1(b)&(c) *with* Docs. 93, 100 and 103.

A reasonable person would couple their view of Judge Divine's actions in tandem with the tone and factual inaccuracies in his September 3, 2025, Show Cause Order that primarily

---

[17] Judge Divine did not hesitate to excuse Defendant Hilton and Greaves' multi-day late filing by a former colleague despite the fact that his requirements take a firm stance on technical difficulty issues: "Technical Issues: Parties who **wait until the last minute** to begin filing are warned that technical difficulties do not necessarily constitute "good cause" or "excusable neglect" justifying an extension of the applicable deadline(s). See FED. R. CIV. P. 6(b)." *See* https://www.moed.uscourts.gov/sites/moed/files/judges/requirements/jmd.pdf (emphasis added). Defendants Hilton and Greaves did *far more* than wait until the last minute.

17

demanded the dismissal of his former employer and client (July 2025) in his Show Cause Order that is contrary to established law that allowed to the State of Missouri to be named as a party.[18] In fact, a reasonable person would be concerned that Judge Divine's threat of sanctions could be viewed as an effort to continue to conceal this *Republican* corruption.[19]

### 5.  The Post-November 17th Orders Must Be Vacated.

The Second Circuit explained the scope of the *Liljeberg* court's decision when it stated:

> In Liljeberg, the Court held that, although it is impossible for a judge to disqualify himself or herself based on something he or she does not know, he or she can **and should disqualify himself or herself <u>retroactively</u> upon discovery of the facts that led to the current appearance of partiality**.
>
> *In re Sch. Asbestos Litig.*, 977 F.2d 764, 784 (3d Cir. 1992) (citation omitted) (emphasis added).

Here, Plaintiffs seek precisely the ***retroactive relief*** commanded by the Supreme Court in *Liljeberg* and recognized in *In re Sch. Asbestos Litig.  See also United States v. Amico*, 486 F.3d 764, 778 (2d Cir. 2007) ("we cannot accept the results of such a trial without damaging the public's faith in its judiciary, and we conclude that the Liljeberg factors weigh decisively in defendants' favor.').

It is not enough for Judge Divine to set aside and vacate his orders entered in the complete absence of jurisdiction; more is required.  Judge Divine must recuse and transfer this matter to bring the appearance of "impartiality" back to this case.

---

[18] It was the State of Missouri's obligation and duty to raise sovereign immunity, not Judge Divine's.

[19] Plaintiffs do not allege this view.  However, other reasonable persons certainly would.  As Plaintiff Grant noted in the state courts of appeals, he has voted straight Republican tickets his entire life.

## CONCLUSION

The Court's decision to "proceed further" and then to enter prejudicial orders, Judge Divine's prior employment in the Office that represents Defendants Hilton and Greaves and that, more importantly, failed to intervene in the corruption at issue, coupled with Judge Divine's representation of likely fact witness Joshua Hawley, together compel this Court to enter an Order of Recusal, transfer this matter to a Senior District Judge appointed by a Democrat President who would have no apparent conflicts of interest, and the entry of an order vacating his Honor's Orders entered after November 17, 2025.

Respectfully submitted,

_/s/Matthew R. Grant_
Matthew R. Grant, #MO50312
GRANT FIRM LLC
701 Market Street
Suite 110, PMB 1709
St. Louis, MO 63131
T: (314) 255-7760
Email: mattgrant.stl@gmail.com

**Pro Se Plaintiff and counsel for Co-Plaintiff Stop Missouri Corruption, LLC**

## **CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on December 8, 2025, the foregoing was filed electronically with the Clerk of Court, therefore to be served electronically by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Matthew R. Grant*
