UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW R. GRANT, et al, | ) | |
| | ) | |
| *Plaintiffs,* | ) | JURY TRIAL DEMANDED |
| vs. | ) | |
| | ) | |
| BRUCE F. HILTON, et al., | ) | Case No.  25-CV-1203-JMD |
| | ) | |
| *Defendants.* | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS HILTON AND GREAVES' MOTION TO DISMISS

Plaintiffs submit this Memorandum in Opposition to Defendants Bruce F. Hilton and

Mary W. Greaves' Joint Motion To Dismiss ("Memo.").  Docs. 86 and 87.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES...........................................................................................3

    I.    Defendants Hilton and Greaves Can Be Sued For Prospective Injunctive Relief In Their Official Capacities...............................................5

    II.    Hilton and Greaves' Argument on behalf of the Municipality of the County of St. Louis, Missouri Is Baseless.....................................................7

    III.    Defendants Hilton and Greaves Do Not Have Individual and Personal Judicial Immunity In This Matter................................................8

    IV.    Co-Plaintiff Stop Missouri Corruption, LLC Has Standing........................10

    V.    Plaintiffs' Complaint Complies with Rule 8(a)........................................11

    VI.    Plaintiffs Have Stated A Claim for RICO Violations By Defendants Hilton and Greaves.............................................................................11

    VII.    Neither Defendant Hilton nor Defendant Greaves has Immunity.................18

CONCLUSION.............................................................................................19

4921-3441-1030, v. 1

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases:</u>**

*Bennett v. Berg*, 710 F.2d 1361, 1365 (8th Cir. 1983)……………………………………………13, n.6

*Boyer v. County of Washington*, 971 F.2d 100 (8th Cir. 1992)……………………………….....9

*Christopher v. Harbury,* 536 U.S. 403, 415 n.12……………………………………………....18

*Cushing v. Packard,* 30 F.4th 27, 30 (1st Cir. 2022)……………………………………….6

*Forrester v. White*, 484 U.S. 219, 226 (1998)……………………………………………….8

*Handeen v. Lemaire,* 112 F.3d 1339, 1352 (8th Cir. 1997)………………………………….13

*Heights Apartments, LLC v. Walz*, 30 F.4th 720, 732 (8th Cir. 2022)…………………………17

*Jones v. Slay,* 61 F. Supp. 3d 806, 835 (E.D. Mo. 2014)…………………………………19-20

*Karsjens v. Jesson, 2*015 U.S. Dist. LEXIS 11779, at *53 (D. Minn. Feb. 2, 2015)………………5

*Leclerc v. Webb*, 270 F. Supp. 2d 779, 783-84 (E.D. La. 2003)………………………………6

*Lehr v. Robertson*, 463 U.S. 248, 258 (1983)………………………………………….....17

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992)………………………………….10

*Michealis v. Nebraska State Bar Assoc.,* 717 F.2d 437, 439 (8th Cir. 1983)………………….11

*Myers v. Morris*, 810 F.2d 1437, 1462 (8th Cir. 1987) …………………………………….17

*Pinkerton v. United States,* 328 U.S. 640 (1946)………………………………………….12

*Reves v. Ernst & Young,* 507 U.S. 170, 184 (1993)………………………………………14

*Serna v. Goodno*, 567 F.3d 944, 952 (8th Cir. 2009)…………………………………….5

*Scheeler v. City of St. Cloud,* 402 F.3d 826, 830 (8th Cir. 2005)…………………………….17

*SDDS, Inc. v. S.D. (In re SDDS, Inc.),* 225 F.3d 970, 973 (8th Cir. 2000)……………………8

*State ex rel. Helms v. Rath*ert, 624 S.W.3d 159, 163 (Mo. banc 2021)…………………………18

*United States v. Houlihan,* 92 F.3d 1271, 1298-99 (1st Cir. 1996)……………………………14

*United States v. Hurley*, 63 F.3d 1, 22 (1st Cir. 1995)…………………………………….12

*United States v. Lemm,* 680 F.2d 1193, 1203 (8th Cir. 1982)…………………………………..13, n.8

*United States v. Metro. St. Louis Sewer Dist.,* 578 F.3d 722, 726 (8th Cir. 2009)………………8

*United States v. Simmons,* 154 F.3d 765, 770 (8th Cir. 1998) ……………………………………13

*Whisman ex rel. Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997)……………………17

*Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71(1989)…………………………………...…5

**Statutes:**

18 U.S.C. § 1962(c) & (d)……………………………………………………………………………14

42 U.S.C. § 1983………………………………………………………………………………………5-6

**Other:**

https://blacks_law.en-academic.com/2695/bad_faith……………………………………………………19

4921-3441-1030, v. 1

I.    **Defendants Hilton and Greaves Can Be Sued For Prospective Injunctive Relief In Their Official Capacities.**

Defendants Bruce F. Hilton and Mary W. Greaves first argue that they cannot be sued in their official capacity because the suit would violate the 11ᵗʰ Amendment and Missouri's sovereign immunity.  Memo. p. 2-3.

To support their flawed argument, they cite the United States Supreme Court's decision in *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71(1989).

However, Defendants overlook the Supreme Court's statement in the *Will* decision upon which they rely that rejects their argument:

> Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State."

491 U.S. at 71, n.10 (citations omitted).

The Supreme Court explained that "[t]his distinction is 'commonplace in sovereign immunity doctrine,' and would not have been foreign to the 19th-century Congress that enacted § 1983." *Id.* (citations omitted).

The Eighth Circuit, in compliance with the Supreme Court's dictate, held that "the Eleventh Amendment bars damages claims against the states, but generally **does not bar claims for prospective injunctive relief against public officials in their official capacities**." *Serna v. Goodno*, 567 F.3d 944, 952 (8th Cir. 2009) (citations omitted) (emphasis added); *see also Karsjens v. Jesson, 2*015 U.S. Dist. LEXIS 11779, at *53 (D. Minn. Feb. 2, 2015) (citing *Seran* and denying summary judgment in class action to defendants who were state employees and holding "the interests of justice require that substantial changes be made to [the State of] Minnesota's sex offender civil commitment scheme.").

The First Circuit Court of Appeals recognized the language that Defendants in this case ignore when it addressed claims brought against the State of New Hampshire's

speaker of the house sued in his official capacity.  *Cushing v. Packard,* 30 F.4th 27, 30 (1st Cir. 2022) (citations omitted).  Importantly, the suit sought injunctive relief against the Speaker in his official capacity.  *Id.*

In *Cushing,* the 1st Circuit Court of Appeals explained: "[b]ut, the Court expressly recognized in *Graham* and *Will* that, at least when such an official capacity state officer suit is brought under § 1983 for the kind of relief that is at issue here, it must not be treated as a suit against the State itself."[1]  *Id.* at 37 (citations omitted).

As implied by the *Cushing* court's statement, that case involved a request for prospective injunctive relief just as this case does.  *Id.* at 30.

The United States Supreme Court's distinction in *Gram* and *Will* is not novel and has been recognized by other courts as well.  *See, e.g., Leclerc v. Webb,* 270 F. Supp. 2d 779, 783-84 (E.D. La. 2003); *affirmed by LeClerc v. Webb,* 419 F.3d 405, 425 (5th Cir. 2005).

In *Leclerc,* the court denied of dismissal plaintiffs' claims against 6 Justices of the Louisiana Supreme Court and the Chairman and Vice-Chairman of the Louisiana Committee on Bar Associations, all sued in their official capacities.  *Leclerc v. Webb,* 270 F. Supp. 2d 779, 783-84 (E.D. La. 2003).

The Court rejected the defendants' 11th Amendment sovereign immunity claim noting, like here, that the plaintiffs' relief included prospective injunctive relief.

Specifically, the court explained:

---

[1] Of course, the amendments to the Anti-Injunction Act still apply.  *See Leclerc* at 792-93.  Here, those restrictions are inapplicable due to the fact that declaratory relief is unavailable.  Doc. 29, ¶¶18, 25 and 28.  The lack of declaratory relief as a requirement was adopted by Congress to address claims such as unconstitutional statutes that could be resolved by a simple declaration.  It has no application here.  Obviously, no declaration from this Court can provide sufficient relief for the civil RICO and Civil Rights Act violations by the named defendants that will continue if not enjoined.

> Under Ex parte Young, the Eleventh Amendment does not bar a suit against a state official *alleged to be acting in violation of federal law*. The Ex parte Young doctrine is grounded on the concept that *the state cannot authorize its officials to violate the Constitution and laws of the United States*.

*Id.* at 790 (citation omitted) (emphasis added).

Here, there is no dispute that Plaintiffs seek *prospective injunctive* relief against Defendants Hilton and Greaves in their official capacity.  Doc. 29, ¶¶18, 25 and 28.

Defendants Hilton and Greaves' reliance on several other inapplicable cases does not change the law on this issue   Memo. at pp. 2-3.

Because Plaintiffs seek prospective injunctive relief against Hilton and Greaves in their official capacities, Defendants' argument fails.

## II.    Hilton and Greaves' Argument on behalf of non-party the 21st Circuit Court Is Baseless.

After misapplying the United States Supreme Court's holding in *Will*, Defendants Hilton and Greaves next argue and admit: "**[t]hough not sued directly in this action**, the Circuit Court of St. Louis County is immune from suit under the Eleventh Amendment to the United States Constitution."  Memo. at p. 3 (emphasis added).  The statement proves why this issue should not even be included.  Defendants are correct that Plaintiffs have not brought any action against the "Circuit Court of St. Louis County."  *See generally* Doc. 29.

After making their argument relating to a non-party, Defendants next revert back to their prior flawed argument that Defendants Hilton and Greaves are not proper parties to be sued in their official capacity due to the Eleventh Amendment.[2]  Opposition, p. 3.

Defendants' argument fails for the same reasons already noted above.

4921-3441-1030, v. 1

Finally, Defendants Hilton and Greaves point to a lack of waiver by the State of Missouri. Opposition, p. 3. Again, this is an irrelevant issue as this Court demanded the dismissal of the State of Missouri as a party.

Certainly, there are instances where the State of Missouri would be a proper party. *See, e.g., United States v. Metro. St. Louis Sewer Dist.,* 578 F.3d 722, 726 (8th Cir. 2009) ("Were the State to assert the defense of sovereign immunity against the District's counterclaims while exercising the rights of a plaintiff, we would be condoning the selective invocation of immunity that the Supreme Court recognized as unfair in *Lapides*.") ("citation omitted); *see also SDDS, Inc. v. S.D. (In re SDDS, Inc.),* 225 F.3d 970, 973 (8th Cir. 2000).

For these reasons, Defendants' similar and overlapping arguments should be rejected.

### III.    Defendants Hilton and Greaves Do Not Have Individual and Personal Judicial Immunity In This Matter.

Hilton and Greaves incorrectly suggest that Plaintiffs' Amended Complaint is nothing more than a vexatious action brought by "disgruntled litigants." Memo. p. 4 (citing *Forrester v. White*, 484 U.S. 219, 226 (1998)). While Defendants surely desire that to be the case, they are well aware that Plaintiffs' claims expressly allege that Defendant Hilton is personally and individually liable for his actions because they took place as part of his involvement in a RICO criminal enterprise and their violations of the Civil Rights Act. *See* Doc. 29.

As an initial matter, Plaintiffs seek damages only from Defendant Hilton for a single action taken without any jurisdiction, and Plaintiffs' claims against Defendant Greaves seek solely injunctive relief. *See* Doc. 29, ¶26 ("Plaintiffs do not seek an award of damages, attorneys' fees or costs from Defendant Greaves.").

4921-3441-1030, v. 1

Defendants rely upon the Eighth Circuit decision in *Boyer v. County of Washington*, 971 F.2d 100 (8th Cir. 1992) to argue that Hilton cannot be held accountable for his illegal RICO conduct actions because Defendants claim that Hilton is not sued for "actions taken in the complete lack of jurisdiction." Memo. p. 5.

Defendants Hilton and Greaves argue: "Second, *nothing in the Amended Complaint suggests that Defendants' actions were taken in 'complete absence of all jurisdiction*." Memo. at p.5 (emphasis added).

Defendants' claim is belied by the plain language in the Amended Complaint. Plaintiffs' Amended Complaint specifically alleges:

- Most importantly, the August 13, 2025, Escort Order was entered by Defendant Hilton **in the complete absence of jurisdiction**.

- Due to **the lack of jurisdiction**, Defendant Hilton has *no judicial immunity* for that RICO violation.

- Because Defendant Hilton's August 13, 2025, Escort Order took place after August 5, 2025, and before a ruling on Plaintiffs Motion for Change of Judge for Cause, Defendant Hilton's actions **were taken in complete absence of jurisdiction**.

Doc. 29, ¶¶198, 199 and 203 (emphasis added).

Defendants do not even acknowledge Plaintiffs' allegations that summarily defeat their argument. Opposition, pp. 5-6. Instead, they skirt the issue entirely.

Instead of attempting to explain how Plaintiffs' allegations are insufficient, an impossible task, Defendants resort to stating that Plaintiffs' Amended Complaint "clearly stems from their state-court civil proceedings…" *Id.* at 5. Yet, they do not explain why that even matters.

The entire point of the two exceptions that Defendants themselves cite is to address the two situations in which judges (or commissioners) are liable and do not have immunity regarding their actions relating to "state-court civil proceedings."

Defendants' complete avoidance of Plaintiffs' allegations concedes the obvious conclusion that the "complete absence of jurisdiction" exception applies in this matter at this stage of the case. The exception was alleged verbatim and has not be rebutted in any way.

### IV.    Co-Plaintiff Stop Missouri Corruption, LLC Has Standing.

Next, Defendants summarily argue that Co-Plaintiff Stop Missouri Corruption, LLC and cite *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). Memo. at p. 6.

As Plaintiffs' have already briefed, the *Lujan* decision has no application in this case as the concrete harm to Plaintiff Matthew R. Grant is not "pure speculation" or "fantasy." *See Lujan* at 567 ("It goes beyond the limit, however, and into pure speculation and fantasy, to say that anyone who observes or works with an endangered species, anywhere in the world, is appreciably harmed by a single project affecting some portion of that species with which he has no more specific connection.").

There can be no doubt that the harm inflicted upon Plaintiff Matthew R. Grant by Defendant Hilton, Greaves and their co-conspirators is real and is far from "fantasy." Their actions resulted in actual, concrete harm and they are unforgivable.

Next, Defendants Hilton and Greaves go on to parrot their co-defendants and co-conspirators' argument that "the LLC was not formed until after many of the allegations in the Amended Complaint occurred." Memo. p. 6. Similar to their co-conspirators, Hilton and Greaves cite no authority to support *any argument* that the date of Co-Plaintiff Stop Missouri Corruption, LLC's establishment has any bearing on the standing analysis. They cite no authority or precedent to support their argument because none exists. Stop Missouri Corruption LLC intends to also pursue the end of the judicial corruption in this case.

## V.    Plaintiffs' Complaint Complies with Rule 8(a).

On page 6 of their Memorandum Defendants Hilton and Greaves finally argue that Plaintiffs' entire Amended Complaint should be dismissed because it supposedly fails to comply with Rule 8(a).  Memo. p. 6.

Defendants cite *Michealis v. Nebraska State Bar Assoc.*, 717 F.2d 437, 439 (8th Cir. 1983) and assert in conclusory fashion: "Plaintiffs' Amended Complaint decreased in length, it still does not comply with Rule 8(a) and therefore should be dismissed."[3]  Memo. at p. 7.

These Defendants, like their co-conspirators, fail to explain how Plaintiffs' revised and reduced Amended Complaint violates Rule 8(a).  They state that "lengthy, repetitious, and confusing" but fail to provide a *single* citation to repetition or anything confusing.  Memo. at p. 7.

The fatal defect in Defendants and their co-conspirators' claims is that they uniformly argue that Plaintiffs' Amended Complaint is too long but that, on the other hand, it should contain even more factual allegations.[4]   They are improperly on both sides of the argument.

Plaintiffs' Amended Complaint is lengthy because it involves particularized allegations in compliance with Rule 9(b) detailing how the *12* defendants at issue have engaged in racketeering and violations of the Civil Rights Act, and how others have engaged in legal malpractice, resulting in an aggregate total of *14* Counts.

---

[3] Defendants are merely clinging to the language in this Court's September 4, 2024, proactive Show Cause Order entered because of extrajudicial bias and prejudice. Had this Court not preemptively launched an attack, none of the defendants would have raised the Rule 8(a) argument.

[4] This is the very issue Plaintiffs attempted to avoid by virtue of the comprehensive nature of their original Complaint.  Doc. 3.

4921-3441-1030, v. 1

Plaintiffs' Amended Complaint raises complex issues relating to an *ongoing racketeering* that exists in the St. Louis Family Court and that includes at least the Circuit Judge (Defendant Hilton) and Court Commissioner (Commissioner Greaves) named in this case.  Plaintiffs' Amended Complaint cannot be drafted on a napkin.

Plaintiffs' Amended Complaint is somewhat complex, but it is also simple.  Despite their claims to the contrary, Plaintiffs address the precise manner in which all RICO defendants are liable for their own actions, and the law is clear that they are liable for the foreseeable actions of their co-conspirators.  *See United States v. Simmons,* 154 F.3d 765, 770 (8th Cir. 1998) ("Our ruling is in accord with the traditional rules with respect to criminal conspiracy, under which all members of a conspiracy are responsible for the foreseeable acts of co-conspirators taken in furtherance of the conspiracy.") (citing *Pinkerton v. United States*, 328 U.S. 640 (1946) and *United States v. Hurley*, 63 F.3d 1, 22 (1st Cir. 1995) (apply same doctrine to forfeiture and stating "The government can collect its $ 136 million only once but, subject to that cap, it can collect from any appellant so much of that amount as was foreseeable to that appellant.").

Contrary to these and the other defendants' contentions to the contrary, Plaintiffs' Amended Complaint does not contain solely conclusory allegations.  Instead, it lays out in very specific detail, in supposedly in too lengthy of a fashion, how the RICO enterprise at issue operated in Plaintiff Grant's case and it includes nothing but factual allegations of foreseeable actions.  *Id.*

Plaintiffs' Amended Complaint is proper under both Rules 8(a) and 9(b).

**VI.    Plaintiffs Have Stated a Claim for RICO Violations by Defendants Hilton and Greaves.**

Defendants unconvincingly argue: "Plaintiffs [RICO] allegations are nothing more than speculation and are completely unsupported other than conclusory allegations made

by Plaintiffs." Opposition, p. 8. That is simply amazing. Plaintiffs' Amended Complaint is loaded with specific factual allegations how Defendants Hilton and Greaves played their part in the state court matter. This is the same ineffective approach taken by their co-defendants/co-conspirators. Ignore the actual allegations. It is quite ironic because it is Defendants' description of the Plaintiffs' Amended Complaint that is purely conclusory.

Contrary to Defendants' conclusory claim, Plaintiffs' Amended Complaint includes a litany of very detailed allegations, most often including a specific date. *See, e.g.,* Doc. 29, ¶¶119, 165, 248, 250, 258, 265, 267, 269, 274, 275-76, 279-80, 284, 291, 306, 308-09, 15-16, 347-59, and 453.

As a final throw-away argument, Defendants argue that "[t]he existence of an enterprise may be determined if it would still exist were the predicate acts removed from the equation." Opposition, p. 8 (citing *Handeen v. Lemaire,* 112 F.3d 1339, 1352 (8th Cir. 1997)).[5] Defendants cite *Handeen* for a general proposition of RICO law, but that case actually supports Plaintiffs' RICO claim.

---

[5] *Handeen* is helpful, in that, it explains why Hilton and Greaves' co-conspirators' "management" defense fails. *Handeen* reiterated: "An enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management. An enterprise also might be 'operated' or 'managed' by others 'associated with' the enterprise who exert control over it as, for example, by bribery." *Id.* at 1348 (quoting *Bennett v. Berg,* 710 F.2d 1361, 1365 (8th Cir. 1983) ("And, as we said in *United States v. Lemm,* 680 F.2d 1193, 1203 (8th Cir. 1982), '[A] RICO conspiracy charge alleges agreement to participate in conducting the affairs of an enterprise through the commission of . . . predicate acts.'")). The Eighth Circuit's earlier decision in *Berg* rejected Defendants' co-conspirators' *oversimplified* "management and control" argument asserted in this case when it observed the *oversimplified wording* but stated: "**We do affirm the statement** of the panel contained in its footnote 10 and again observe that it is unlawful for 'any person employed by or associated with any enterprise . . . **to conduct or participate** . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]'" 710 F.2d at 1364-65 (emphasis added). Here, there is no doubt that Plaintiffs' allegations as to all RICO defendants are sufficient as to their involvement. *See, e.g.,* Doc. 85, p. 8; *see also Reves v. Ernst & Young,* 507 U.S. 170, 184 (1993).

In *Handeen*, the Eighth Circuit *reversed* summary judgment that had been entered in favor of a RICO defendant.  112 F.3d 1339, 1344-45.  The Eighth Circuit rejected that defendant's improper strategy to obtain summary judgment by merely alleging: "Handeen cannot prevail 'even if the [Firm] had engaged in the acts described in [his] Complaint."  *Id.* at 1346.  That strategy is not at issue in this case.

Defendants Hilton and Greaves simply overlook the reach and breadth of 1962(c) & (d).  *See* 18 U.S.C. § 1962(c) & (d).  Those provisions hold defendants liable if they are merely "associated with" the RICO enterprise, or even if they just "*conspire*" to violate the RICO statute.  *Id.*  As the *Handeen* court recognized, "[w]hen a plaintiff has already established a right to relief under § 1962(c), he may show a conspiracy to violate RICO simply by presenting additional evidence that the defendant entered into an agreement to breach the statute."  *Id.* at 1354 (citation omitted).

 Here, *Reves* does not apply because "[u]nlike the accountants in *Reves*, who were classic 'outsiders,' the appellants here are quintessential 'insiders,' that is, persons whom the evidence places *in the maw of the criminal activity*."  *United States v. Houlihan*, 92 F.3d 1271, 1298-99 (1st Cir. 1996) (emphasis added); *see also Handeen* at 1348 ("[Section] 1962(c) cannot be interpreted to reach complete 'outsiders' because liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs.") (italics in original).

In this matter, Plaintiffs have alleged that each RICO defendant, specifically including Defendants Hilton and Greaves was "in the maw of criminal activity."  *See* Doc. 29.  Neither are "outsiders" as was at issue in *Reves*.

Moreover, even if Defendant Hilton and Greaves' and/or their co-conspirators were deemed "outsiders," none of the RICO defendants were engaged in solely "run-of -the-mill

provision of professional services." *Handeen* at 1349 ("Neither *Reves* nor RICO itself exempts professionals, as a class, from the law's proscriptions, and the fact that a defendant has the good fortune to possess the title 'attorney at law' is, standing alone, completely irrelevant to the analysis dictated by the Supreme Court).

As *Handeen* expressly notes, attorneys may be immune from RICO actions *only if* they provide "conventional advice" or "ordinary legal tasks." *Id.*   Defendants Hilton and Greaves, along with their co-conspirators continue to run away from the *actual* allegations in the Amended Complaint.  Plaintiffs are alleging, with specificity, that each RICO Defendant knowingly joined and played their part in long-standing criminal enterprise.[6]  That is more than sufficient.

Finally, Defendants Hilton and Greaves argue that "Plaintiffs fail to plead the existence of an enterprise that is distinct from the participation in the fraudulent scheme and fails to plead the requisite facts."  Memorandum, p. 8.  Contrary to that claim, Plaintiffs allege that "[t]he RICO Defendants and the RICO enterprise are separate, and the enterprise exists in the St. Louis County Family Court."[7]  Doc. 29, ¶373.

Defendant Greaves refuses to acknowledge how Plaintiffs specifically allege her involvement in *ex parte* judicial communications with co-defendant Maia Brodie in furtherance of the RICO criminal enterprise's goal of, among others, theft by deception. *See*

---

[6] Plaintiffs, if necessary, intend to amend their allegations against Defendant Greaves to reallege and expand upon the ex parte judicial communications allegations cut from their Initial Complaint in order to reduce its length.  *See* Doc. 3, p. 6, 35, 38-39 and ¶¶215-19, 427-31, and 488.

[7] Here again, Plaintiffs can add by amendment more the details cut from the Initial Complaint to reduce length.  Doc. 3, ¶¶98-104.  The enterprise at issue would continue to run like smooth machine even if all the RICO defendants in this case were completely removed.

Doc. 29 at ¶¶117, 147, 205, 319-32, 336.  In addition to those allegations, Plaintiffs allege

that Defendant Greaves caused a baseless and bad-faith Escort Order to issue.  *Id.* at

¶¶192-198.

### VII.    Plaintiffs Have Stated A Claim for *Multiple* Civil Rights Violations.

In their attempt to avoid liability, Defendants Hilton and Greaves claim: "Plaintiffs

again failed to plead any ultimate facts to demonstrate against Defendants Hilton and

Greaves that their civil rights were violated."  Memo. at p. 9.

Again, Defendants Hilton and Greaves are themselves arguing fantasy.  The actual

allegations in the Amended Complaint are what is at issue.  The entire RICO enterprise

has caused several constitutional violations in Plaintiff Grant's case.

Plaintiffs repeatedly cite violations of Matthew R. Grant's civil rights:

- The Civil Rights Defendants, jointly and severally, violated Plaintiff and Co-Plaintiffs C.M. G. and C.L.G., and the Class and subclass(es)' Due Process and other rights, including their *Freedom of Speech,* as alleged in this Complaint.

- As detailed herein, the Civil Rights Defendants have violated Plaintiff and Co-Plaintiffs C.M. G. and C.L.G.'s rights, and the rights of the Class and subclass(es), to *Due Process, both procedurally and substantively, and the right to Free Speech as guaranteed by the 1st, 5th and 14th Amendments of the Constitution of the United States*.
- Specifically, this Court should step in and enforce the United States Constitution's guarantees of *Due Process and Freedom of Speech*.

*Id.* at ¶¶387, 495 (emphasis added)

As noted above, Defendants Hilton and Greaves personally participated in the

violation of Plaintiff Matthew R. Grant's civil rights while acting under color of law.  See,

e.g., Both Defendants knowingly joined and participated in a criminal enterprise that used

withdrawal and delay of parents' access to their children to further the enterprise's goal,

among others, theft by deception.

16

Greaves' violations include her ex parte communications and the bad faith prolonging of the litigation and her denial of legitimate discovery. *See* Doc. 29 at ¶¶117, 147, 205, 319-32, 336.   Again, Greaves, acting in bad faith, is the source of false foundational facts that she and her co-conspirator Hilton utilized to unconstitutionally impair Plaintiff Grant's free access to the courthouse via a perpetual Escort Order.  *Id.* at ¶¶192-198.

Next, the Eighth Circuit has recognized that "[p]arents have a recognized liberty interest in the care, custody, and management of their children. ***Both parents and children*** have a liberty interest in the care and companionship of each other."[8] *Whisman ex rel. Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997) (citing *Myers v. Morris*, 810 F.2d 1437, 1462 (8th Cir. 1987) and *Lehr v. Robertson*, 463 U.S. 248, 258 (1983) ("The relationship of love and duty in a recognized family unit is an interest in liberty entitled to constitutional protection.")) (emphasis added).

The entire crux of this case is that the RICO enterprise, in specific cases, removes children from their parents without cause and solely to further the goals and purposes of the RICO enterprise.  *See, e.g.,* Doc. 29, ¶237, 299, 311 and 377. Again, Plaintiffs do not allege that the RICO enterprise has acted in every Family Court matter.  To the contrary, Plaintiffs individually and on behalf of the putative class that the RICO enterprise's standard and common "playbook" was utilized in the specific cases that Plaintiffs will identify and prove at trial.

As noted above, Defendant Hilton colluded with Defendant Greaves and entered an Escort Order in bad faith just 3 days after this matter was filed for the sole, bad faith

---

[8] The law is clear that the minor children will be proper parties in this case as their constitutional rights were violated by Judge Hilton and Commissioner Greaves as well.

purposes of retaliation.  That Escort Order is a violation of Plaintiff Matthew R. Grant's right to free access to the St. Louis County Courthouse.  Doc. 29, ¶¶192-193.  The Eighth Circuit has recognized that "[t]he right to access courts has long been a fundamental constitutional right."  *Heights Apartments, LLC v. Walz,* 30 F.4th 720, 732 (8th Cir. 2022) (citation omitted).

As is particularly relevant here, "[t]he right applies not only to the actual denial of access to the courts, but also to situations in which the plaintiff has been denied *meaningful access by **some impediment** put up by the defendant.*"  *Scheeler v. City of St. Cloud,* 402 F.3d 826, 830 (8th Cir. 2005) (emphasis added).

The United States Supreme Court recognized this well-settled rule of law when it observed: "Decisions of this Court have grounded the right of access to courts in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause and the Fourteenth Amendment Equal Protection, and Due Process Clauses."  *Christopher v. Harbury,* 536 U.S. 403, 415 n.12 (2002) (internal citations omitted).

Defendant Hilton and Greaves' claim that no facts have been alleged, taken as true, do not support a violation of the Civil Rights Act in untenable.  More importantly, it is belied by the *actual* allegations in the Amended Complaint that each Defendant in this matter refuses to acknowledge and address.

### VII.    Neither Defendant Hilton nor Defendant Greaves has Immunity.

As their final argument, Defendants incorrectly argue that both qualified and official immunity apply when neither is applicable to Plaintiffs' allegations.[9]

---

[9] As noted, Plaintiffs' claims directed to Defendant Greaves do not seek an award of damages, fees or costs.

4921-3441-1030, v. 1

In support of their flawed argument, they cite a Missouri Supreme Court decision addressing "negligence."  Memo., p. 10 (citing *State ex rel. Helms v. Rathert*, 624 S.W.3d 159, 163 (Mo. banc 2021)).  Plaintiffs do not allege negligence by Defendants Hilton and Greaves.  Far from it.  Plaintiffs allege that they violated their judicial oaths and participated in criminal enterprise to steal money from parents.  The judge and commissioner at issue in this case *betrayed* the very office they were appointed and selected to hold.  Further, they betrayed all Missourians.

In lieu of briefing this issue further, Plaintiffs refer the Court to Part III on pages 7-9 *supra* where Plaintiffs have already briefed this issue and point out, among other things, that Plaintiffs' allegations directed to Defendant Hilton expressly allege conduct "*in a complete absence of jurisdiction*."  Those allegations remove any argument that Defendant Hilton can invoke any sort of immunity.  Defendants' suggestion that Plaintiffs have failed to allege "any degree of intent or malice" is again belied by the actual allegations.  Again, Defendants ignore the reality that Plaintiffs have alleged that Defendants knowingly participated in a criminal enterprise.  Try as they might, Defendants cannot run a away from that undisputed fact.

Moreover, Plaintiffs repeatedly allege "bad faith" against both Defendant Hilton and Defendant Greaves.  Doc. 29, ¶¶82, 163, 192-94 and 298-99.  That is more than sufficient to remove the possibility of judicial immunity in this case, or, at best, leave it for the jury to decide.  *Jones v. Slay,* 61 F. Supp. 3d 806, 835 (E.D. Mo. 2014) (noting immunity is a *jury issue* and unsuitable, even for summary judgment); *see also* https://blacks_law.en-academic.com/2695/bad_faith.  Plaintiffs specifically allege this exact type of bad faith and malicious conduct.

Moreover, the term "Bad faith" includes "conscious wrongdoing," and the law is clear that "[a]n allegation of 'malicious motive or purpose *or of conscious wrongdoing*' is sufficient under Missouri law to preclude application of the official immunity doctrine."[10] 61 F. Supp. 3d at 835 (citation omitted); *see also* 42 U.S.C. § 1983 ( confirming the ability to sue judges when "declaratory relief was unavailable").

Simply stated, Plaintiffs' allegations triumph over any immunity in this matter.

## CONCLUSION

For the reasons detailed herein, Defendant Bruce F. Hilton and Defendant Mary W. Greaves' joint Motion to Dismiss (Doc. 101) should be denied in its entirety.

In the alternative, Plaintiffs respectfully request leave to amend.

Respectfully submitted,

_____*/s/Matthew R. Grant*_____
Matthew R. Grant, #MO50312
GRANT FIRM LLC
701 Market Street
Suite 110, PMB 1709
St. Louis, MO 63131
T: (314) 255-7760
Email:  mattgrant.stl@gmail.com

*Pro Se* **Plaintiff and counsel for Co-Plaintiff Stop Missouri Corruption, LLC**

---

[10] To the extent the Court would prefer Plaintiffs to amend and swap in the word "malice" for "bad faith," they request leave to amend and do so.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 11, 2025, the foregoing was filed electronically with the Clerk of Court, therefore to be served electronically by operation of the Court's electronic filing system upon all counsel of record.

<u>/s/ Matthew R. Grant</u>