UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW R. GRANT, individually, as *Next Friend* to C.L.G. and as *Next Friend* to C.M.G., and on behalf of all others similarly situated, | ) ) ) ) ) | |
| and | ) ) | |
| STOP MISSOURI CORRUPTION, LLC, dba www.StopMissouriCorruption.com | ) ) ) ) | Case No.  25-CV-1203-JMD |
| *Plaintiffs*, | ) ) | JURY TRIAL DEMANDED |
| vs. | ) ) | |
| BRUCE F. HILTON, in his individual and official capacity as Presiding Circuit Judge of the 21st Circuit Court of the State of Missouri, MARY W. GREAVES, in her individual and official capacity as Commissioner within the 21st Circuit Court of the State of Missouri JOHN FENLEY, in his individual and his official capacity as Guardian Ad Litem, RIENKER, HAMILTON & FENLEY, LLC, MAIA BRODIE, LAWRENCE GILLESPIE, GILLESPIE HETLAGE & COUGHLIN LLC, REBECCA A. COPELAND, STACI THOMAS, SARAH M. GRANT, MATHEW G. EILERTS, GROWE EISEN KARLEN EILERTS, LLC, CON CURRAN COULTER, THE COULTER LAW GROUP, LLC d/b/a COULTER GOLDBERGER, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Defendants*. | ) ) | |

## SECOND AMENDED INDIVIDUAL,
## CLASS ACTION,
## CIVIL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT (18 U.S.C. § 1964),
## CIVIL RIGHTS ACT (42 U.S.C. § 1983), AND
## OTHER CAUSES OF ACTION
## COMPLAINT

Plaintiff Matthew R. Grant ("Plaintiff" or "Plaintiff Grant"), individually, and on behalf of, and as proposed *Next Friend* for his minor child C.L.G. ("Plaintiff C.L.G.), and on behalf of, and as proposed *Next Friend* for his minor child C.M.G. ("Plaintiff C.M.G.) (collectively the "Children"), and on behalf of all others similarly situated (the "Comprehensive Class" or "Class" including "subclasses"), and Plaintiff Stop Missouri Corruption, LLC ("Plaintiff LLC") (collectively "Plaintiffs"), pursuant to FED. R. CIV. P. 15(a), for their Second Amended Individual, Class Action, Civil Racketeer Influenced and Corrupt Organizations (RICO) Act (18 U.S.C. § 1964), Civil Rights Act (42 U.S.C. § 1983), and Other Causes of Action Complaint ("Complaint") against the named Defendants, allege as follows:

## THE PARTIES

### Plaintiffs:

1. Plaintiff Matthew R. Grant ("Plaintiff" or "Plaintiff MRG") is citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

2. Plaintiff is proposed as *Next Friend* of Plaintiff C.L.G. who is a minor child that is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

3. Plaintiff C.L.G. is one of the two minor children at issue in the St. Louis Family Court Case with Case No. 12SL-DR03959-02.  Plaintiff C.L.G. is 16 years old at the time of this filing.

4. Plaintiff Matthew R. Grant is proposed as *Next Friend* of Plaintiff C.M.G. who is a minor child that is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

5. Plaintiff C.M.G. is one of the two minor children at issue in the St. Louis Family Court Case with Case No. 12SL-DR03959-02. Plaintiff C.M.G. is 14 years old at the time of this filing.

6. Plaintiff intends to move for appointment as *Next Friend* for non-parties C.L.G. and C.M.G. at a future time.

7. Plaintiff Stop Missouri Corruption, LLC ("Plaintiff LLC") is a Missouri Limited Liability Company registered within the State of Missouri. Plaintiff is the sole member of Plaintiff LLC.

8. Plaintiff created Plaintiff LLC in April 2025 to pursue and expose the corruption detailed herein both now and in the future. *See* www.StopMissouriCorruption.com.

9. Plaintiff also created Plaintiff LLC in order to facilitate the protection of other victims of the criminal enterprise at issue in this litigation and others, both now and in the future.

10. Stop Missouri Corruption, LLC is an advocacy group with Article III associational and other standing to protect the interests of its member and Missourians impacted by the RICO criminal conduct and Civil Rights Act violations at issue in this case.

**RICO/Civil Rights/Intentional Tort Defendants:**

11. Defendant Bruce Hilton ("Defendant Hilton") is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri. Defendant Hilton is the Presiding Judge of the 21st Circuit Court of the State of Missouri.

12. Defendant Bruce Hilton is being sued in his individual capacity as a Circuit Judge acting under color of law within the 21st Circuit of the State of Missouri.

13. Defendant Hilton is not immune from individual liability relating to his participation in a criminal enterprise and/or his violations of Title IX of the Organized Crime Control Act of 1970 otherwise known as the Racketeer Influenced and Corrupt Organizations Act ("RICO") as his actions at issue were taken in a complete absence of jurisdiction.

14. Plaintiffs seek an award of treble damages, attorneys' fees and costs from Defendant Hilton for his RICO and Civil Rights Act violations taken in complete absence of jurisdiction.

15. Defendant Hilton is not immune from liability for non-monetary, prospective injunctive relief in his official and/or individual capacity as a state court judge relating to his violations of the Constitutions of the United States of America and the State of Missouri, and his violations of the Civil Rights Act.

16. Plaintiff Grant intends to appear in the state court case via future motion practice and will be faced with the same RICO enterprise retaliation at issue in this case if this RICO activity is not enjoined.

17. Plaintiffs do *not* seek an award of damages, attorneys' fees or costs from Defendant Hilton in any capacity relating to their RICO or Civil Rights Act claims against him wherein Defendant Hilton acted *with* jurisdiction.

18. The State of Missouri is liable for any award of damages against Defendant Hilton or Defendant Fenley for actions taken under color of state law.

19. There was no final judgment in the referenced state court proceedings at the time of filing this matter.

20. Plaintiffs do *not* seek a stay of any state court proceedings and, therefore, the Anti-Injunction Act (28 U.S.C. § 2283) is inapplicable.

4921-3441-1030, v. 1

21. Plaintiffs are entitled to *prospective* injunctive relief against Defendant Hilton as effective declaratory relief is unavailable.

22. If this Court holds that declaratory relief is effectively and functionally available, Plaintiffs seek leave to amend this Complaint to seek such relief regarding Defendant Hilton under the Declaratory Judgment Act. 28 U.S.C. §§ 2201-2202.

23. Defendant Hilton is an active member of the RICO conspiracy and enterprise alleged herein.

24. Defendant Mary W. Greaves is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

25. Defendant Mary Greaves is a Family Court Commissioner within the 21st Circuit Court of the State of Missouri. Defendant Greaves is currently assigned to Division 65 of St. Louis County's Family Court and was previously assigned Case No. 12SL-DR03959-02 until her own Order of Recusal dated January 13, 2025, that she entered in response to Plaintiff's Motion to Disqualify her for Cause in which Plaintiff alleged bias, prejudice and ex parte judicial communications.

26. Defendant Greaves is not immune from liability for non-monetary, prospective injunctive relief in her individual and official capacity as a Missouri state court Commissioner relating to her violations of the Constitutions of the United States of America and the State of Missouri, and for her violations of the Civil Rights Act.

27. Plaintiffs are entitled to *prospective* injunctive relief against Defendant Greaves as effective declaratory relief is unavailable.

28. If this Court holds that declaratory relief is effectively and functionally available, Plaintiffs seek leave to amend this Complaint to seek such relief regarding Defendant Greaves under the Declaratory Judgment Act. 28 U.S.C. §§ 2201-2202.

4921-3441-1030, v. 1

29. Defendant John R. Fenley is a citizen of the State of Missouri. Upon information and belief, Defendant Fenley is a resident of St. County, Missouri.

30. Defendant John Fenley is the Guardian *Ad Litem* in 21st Circuit Court Case No. 12SL-DR03959-02.

31. Defendant Fenley is being sued in both his individual capacity and in his official capacity as a Guardian *Ad Litem* acting under color of law within the 21st Circuit Court of the State of Missouri.

32. Defendant Fenley is not immune from his personal and individual liability for his participation in a criminal enterprise and/or his violations of Title IX of the Organized Crime Control Act of 1970 otherwise known as the Racketeer Influenced and Corrupt Organizations Act ("RICO") as his actions are outside the very limited scope of any qualified immunity.

33. Defendant Fenley is not immune, via his limited qualified immunity, in his individual or official capacity as a Guardian *Ad Litem* acting under color of law from claims for both damages and injunctive relief relating to his specific violations of the Constitutions of the United States of America and the State of Missouri, and his violations of the Civil Rights Act.

34. Defendant Fenley is an active member of the RICO conspiracy and enterprise as alleged herein.

35. Defendant Fenley does not have qualified immunity in this matter because his actions, including extortion by coercion, were undertaken in bad faith and with actual malice and a reasonable person would have known that Fenley's conduct violates both statutory and constitutional rights.

36. Defendant Reinker, Hamilton & Fenley, LLC ("Defendant RHF") is a limited liability company organized under the laws of the State of Missouri.

37. Defendant RHF is a law firm, and its members are Randall J. Reinker, Robert N. Hamilton and John R. Fenley.

38. Defendant RHF is vicariously liable for the actions of Defendant Fenley as they were conducted within the scope of Defendant Fenley's duties with Defendant RHF.

39. Plaintiffs specifically allege that Defendant Fenley's intentional actions were within the scope of his duties with Defendant RHF.

40. Defendant Maia Brodie ("Defendant Brodie") is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

41. Defendant Brodie practices law as a sole proprietor and doing business as Brodie Law.

42. Defendant Brodie is a Special Representative for the Missouri Supreme Court's Office of Chief Disciplinary Counsel ("OCDC").

43. Brodie is only being sued in her personal and individual capacity and not in relation to her position as Special Representative for the OCDC.

44. Defendant Brodie is an active member of the RICO conspiracy and enterprise alleged herein.

45. Defendant Rebecca A. Copeland ("Defendant Copeland") is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

46. Defendant Copeland is an active member and/or associate of the RICO conspiracy and enterprise alleged herein.

47. Defendant Staci Thomas ("Defendant S. Thomas") is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

48. Defendant S. Thomas is an active member and/or associate of the RICO conspiracy and enterprise alleged herein.

49. Defendant Sarah M. Grant ("Defendant S. Grant") is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

50. Defendant S. Grant is an active member and/or associate of the RICO conspiracy and enterprise alleged herein.

51. Defendant Lawrence G. Gillespie ("Defendant Gillespie") is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

52. Defendant Gillespie is the former law partner of Defendant Hilton.

53. Defendant Gillespie is an active member of the RICO conspiracy and enterprise alleged herein and his involvement in the RICO conspiracy dates back to his joint involvement with Defendant Hilton in the same enterprise in his private practice before being appointed a circuit judge.

54. Defendant Gillespie, Hetlage & Coughlin, LLC ("Defendant GHC") is a limited liability company organized under the laws of the State of Missouri.

55. Upon information and belief, the members of Gillespie Hetlage & Coughlin, LLC are Lawrence G. Gillespie, W. Laird Hetlage and Richard Coughlin.

56. Defendant GHC is vicariously liable for the actions of Defendant Gillespie as they were conducted within the scope of Defendant Gillespie's duties with Defendant GHC.

57. Plaintiffs specifically allege that Defendant Gillespie's intentional actions were within the scope of his duties with Defendant GHC.

**Negligence/Professional Malpractice Defendants:**

58. Defendant Mathew G. Eilerts ("Defendant Eilerts") is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

59. Defendant Growe Eisen Karlen Eilerts LLC ("Defendant Growe Eisen Firm") is a limited liability company organized under the laws of the State of Missouri.

60. Defendant Growe Eisen Firm's members are Gary A. Growe, Richard Eisen, Christopher Karlen and Mathew Eilerts.

61. Defendant Eilerts and Defendant Growe Eisen Firm were retained as counsel by Plaintiff to represent him in the 21st Circuit Court Case No. 12SL-DR03959-02.

62. Defendant Eilerts and Defendant Growe Eisen Firm's representation of Plaintiff Grant ceased on January 21, 2025.

63. Defendant Growe Eisen Firm is vicariously liable for the actions of Defendant Eilerts as they were conducted within the scope of Defendant Eilerts' duties with Defendant Growe Eisen Firm.

64. Defendant Con Curran Coulter ("Defendant Coulter") is a citizen of the State of Missouri and is a resident of St. Louis County, Missouri.

65. Defendant The Coulter Law Group LLC d/b/a Coulter Goldberger LLC ("Defendant Coulter Law Group") is a limited liability company organized under the laws of the State of Missouri.

66. Defendant Coulter Law Group's sole member is Con Curran Coulter.

67. Defendant Coulter and Defendant Coulter Law Group were retained as counsel by Plaintiff to represent him in the 21st Circuit Court Case No. 12SL-DR03959-02.

68. Defendant Coulter and Defendant Coulter Law Group's representation of Plaintiff Grant ceased on January 7, 2025.

69. Defendant Coulter Law Group is liable for the actions of Defendant Coulter as they were conducted within the scope of Defendant Coulter's duties with Defendant Coulter Law Group.

4921-3441-1030, v. 1

## JURISDICTION AND VENUE

70. This Court has original subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331, in that, Plaintiffs' claims and civil actions arise under the Constitution and laws of the United States of America.

71. This Court has original subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1964(a), in that, some or all of Plaintiffs' claims and civil actions arise under the RICO Act.

72. This Court has original subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1983, in that, some or all of Plaintiffs' claims allege that Defendants have deprived Plaintiffs of rights, privileges, and immunities secured by the Constitution of the United States of American and the laws of the United States as codified by the United States Congress.

73. Plaintiffs seek *no relief* in this case that would impact the full and final resolution of Case No. 12SL-DR03959-02 in the 21st Circuit Court for the State of Missouri, including any appellate actions.

74. Missouri State Court Case No. 12SL-DR03959-02 *lacked* a final judgment at the time this action was filed.

75. Plaintiff reported Defendant Hilton to the United States Department of Justice (DOJ) on February 3, 2025, *more than 6 months before* this litigation was commenced and before Defendant Hilton entered a single ruling adverse to Plaintiff.

76. Plaintiff has presented the issues of corruption and constitutional violations within the 21st Circuit Court to the Missouri Court of Appeals and the Missouri Supreme Court.

4921-3441-1030, v. 1

77. Neither the Missouri Court of Appeals nor the Missouri Supreme Court has elected to address the issues of corruption and constitutional violations in the 21st Circuit Court of the State of Missouri.

78. This case presents evidence of bad faith, malice and harassment solely motivated to cause emotional distress as retaliation for Plaintiff Grant's exposure of corruption within the 21st Circuit Court for the State of Missouri.

79. This case also presents the extraordinary issue of ongoing federal constitutional violations impacting *minor children* and the harm being done to them is irreparable.

80. Because the state courts of Missouri have not afforded adequate protection and because this case presents extraordinary circumstances, this court should *not* abstain from immediately hearing this matter.

81. This Court has jurisdiction over Plaintiffs' claims as detailed in the second clause of Article VI of the Constitution of the United States:

> **This Constitution**, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, **shall be the supreme Law of the Land**; **and the *Judges in every State shall be bound thereby***, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

> U.S. Const. Art. VI, Clause II (emphasis added); *see also Mitchum v. Foster*, 407 U.S. 225, 240 (1972).

82. The Supremacy Clause of United States Constitution and the protection of citizens' civil rights override all concerns of federalism and comity in this case.

83. Where state courts are presented with and elect to leave constitutional violations by state court judges and commissioners unaddressed, the federal courts of the United States are obligated to exercise jurisdiction and ensure the protections of the United States Constitution are afforded to citizens of the individual States.

4921-3441-1030, v. 1

84. The Court has supplemental jurisdiction over Plaintiffs' other claims, not included in the original subject matter jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), as they are so related to the existing claims in this action that they form part of the same case or controversy.

85. Venue for the initial filing of this matter is proper in this Court pursuant to 28 U.S.C. § 1391 and 31 U.S.C. § 3732, as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## CLASS ACTION DEFENDANTS AND
## CLASS AND SUBCLASS DEFINITIONS

*(Defendant Bruce Hilton, Defendant Mary Greaves,
Defendant John Fenley, Defendant RHF, Defendant Maia Brodie,
Defendant Gillespie, Defendant GHC, Defendant Growe Eisen, Defendant Mat Eilerts,
Defendant C. Curran Coulter, and Defendant Coulter Family Law Group)*

86. Plaintiff Grant, in addition to himself as an individual, as the sole member of Plaintiff LLC, and as proposed *Next Friend* to Plaintiffs C.M.G. and C.L.G., also brings this Complaint as a putative class representative, and on behalf of a class of similarly situated individuals that have been involved in any matter involving Child Custody in St. Louis County Family Court within the 21st Circuit Court of the State of Missouri and that have been a victim of the RICO enterprise and its violations of the RICO Act and/or Civil Rights Act (the "Comprehensive Class" as defined in more detail herein).

87. The putative Comprehensive Class expressly includes putative class members that are citizens of states other than Missouri.

88. The putative Comprehensive Class expressly includes *minor children* class members that are citizens of the State of Missouri and citizens of states other than Missouri.

89. Plaintiff's request for alternative and/or subclass wide relief, is directed at the following Defendants only: Defendant Bruce Hilton, Defendant Mary Greaves, Defendant John

Fenley, Defendant RHF, Defendant Maia Brodie,  Defendant Gillespie, Defendant GHC, Defendant Mat Eilerts, Defendant Growe Eisen Firm, Defendant C. Curran Coulter, and Defendant Coulter Family Law Group ("the Class Defendants").

90. Due to the nature of the almost identical St. Louis Family Court liability and other  issues implicated in this matter, a class action is appropriate in this matter because:

- The class is so numerous that joinder of all members is impracticable.
- There are questions or law or fact common to the class.
- Plaintiff's claims are typical of the claims of the class.
- Plaintiff will fairly and adequately protect the interests of the class.

91. Additionally, certification of this matter as a class action is superior and appropriate because:

- Prosecuting separate actions by individual class members would create a risk of:
    - Inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; and

    - Adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

92. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs request that this Court certify an "opt-in" class of similarly situated individuals for the Comprehensive Class and all Subclasses.

93. Pursuant to Rule 23(b)(3), Plaintiffs additionally and, in the alternative, requests that this Court certify an "injunctive relief only" Comprehensive Class and Subclasses.

94. Class injunctive relief in this matter is appropriate because the Class Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive

relief or corresponding declaratory relief is appropriate respecting the class(es) as a whole.

95. Pursuant to Rule 23, Plaintiffs intend to move this Court to certify the putative Comprehensive Class and Subclass(es) to address the issue of civil liability only, expressly excluding damages.

96. Plaintiffs request that, following any verdict or other finding in favor of the opt-in Comprehensive Class or any opt-in Subclass(es) on the issue of liability, this Court order damages-only trials for each Class or Subclass member(s).

97. The scope and time for all Class or Subclass members shall be "within the last 4 years."

98. Plaintiff seeks certification of an opt-in "Comprehensive Class" as follows:

> All individuals over the age of 18 that were parties in a St. Louis Family Court matter filed in the 21st Circuit Court of the State of Missouri and in which the individuals were adversely impacted by the RICO enterprise alleged in this case. This definition excludes all judges, commissioners, or other court personnel.

99. Additionally, and in the alternative, Plaintiff seeks certification of the following putative opt-in subclasses:

> Motion for Change of Judge for Cause Subclass:
> All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which he/she filed a Motion for Change of Judge *for Cause* pursuant to RSMo. § 508.090 et seq. and that were adversely impacted by the RICO enterprise alleged in this case. This subclass excludes all judges, commissioners, or other court personnel.

> Bruce Hilton Subclass:
> All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue and in which Defendant Presiding Judge Bruce Hilton was the assigned judge, and that were adversely impacted by the RICO enterprise alleged in this case. This subclass excludes all judges, commissioners, or other court personnel.

4921-3441-1030, v. 1

**Mary W. Greaves Subclass:**
> All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue and in which Defendant Commissioner Greaves was the assigned Commissioner, and that were adversely impacted by the RICO enterprise alleged in this case. This subclass excludes all judges, commissioners, or other court personnel.

**The Guardian Ad Litem Subclass:**
> All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue and in which they were adversely impacted by a Guardian Ad Litem that was involved in RICO enterprise alleged in this case. This subclass excludes all judges, commissioners, or other court personnel.

**John Fenley GAL Subclass:**
> All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue in which John Fenley was appointed Guardian Ad Litem and that were adversely impacted by the RICO enterprise alleged in this case. This subclass excludes all judges, commissioners, or other court personnel.

**The RHF Opposing Counsel Subclass:**
> All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue in which any attorney of the firm RHF was an opposing party's counsel, and that were adversely impacted by the RICO enterprise alleged in this case. This subclass excludes all judges, commissioners, or other court personnel.

**Maia Brodie Opposing Counsel Subclass:**
> All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue, and in which Maia Brodie was an opposing party's counsel, and that were adversely impacted by the RICO enterprise alleged in this case. This subclass excludes all judges, commissioners, or other court personnel.

**Mat Eilerts Client Subclass:**
> All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue, and in which such individual(s) were represented by Mat G. Eilerts, and that were adversely impacted by the RICO enterprise alleged in this case. This subclass excludes all judges, commissioners, or other court personnel.

4921-3441-1030, v. 1

Growe Eisen Firm Client Subclass:

    All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue, and any member of the law firm Growe Eisen Karlen Eilerts entered her or his appearance on the individual(s)' behalf, and that were adversely impacted by the RICO enterprise alleged in this case.  This subclass excludes all judges, commissioners, or other court personnel.

C. Curran Coulter Client Subclass:

    All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue, and in which the individual(s) were represented by C. Curran Coulter, and that were adversely impacted by the RICO enterprise alleged in this case. This subclass excludes all judges, commissioners, or other court personnel.

Coulter Family Law Group Client Subclass:

    All individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue, and any member of the law firm Coulter Family Law Group d/b/a Coulter Goldberger, LLC entered her or his appearance on the individual(s)' behalf, and that were adversely impacted by the RICO enterprise alleged in this case. This subclass excludes all judges, commissioners, or other court personnel.

## ALLEGATIONS COMMON TO ALL COUNTS

### A. GENERAL BACKGROUND:

100.    Plaintiff re-alleges and incorporates by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

101.    This Complaint addresses a longstanding racketeering criminal organization and Family Court enterprise and its various associates', members' and co-conspirators' violations of at least the RICO Act (18 U.S.C. § 1964) and predicate acts and crimes detailed herein along with the associated violation of the Civil rights of Plaintiff Grant and the minor children in this matter in violation of the Civil Rights Act (42 U.S.C. § 1983).

102.    Defendants Hilton, Greaves, Fenley, Brodie, Copeland, Thomas, S. Grant and Gillespie (the "RICO Defendants") are members and/or associates of the RICO enterprise

at issue in this case and they endeavored to, among other things, influence, obstruct, and impede the due administration of justice in the state court matter.

103.    These defendants had full knowledge of all relevant facts and had knowledge and criminal intent relating to each predicate act alleged herein.

104.    Plaintiff Grant was unaware of the falsity and relied upon the misrepresentations made by the RICO defendants in the state court case and he was harmed as a result.

105.    The RICO criminal enterprise and judicial corruption has existed in the St. Louis Family Court for more than 8 years and predates the year 2017 in which members of the enterprise documented and admitted illegal motives and goals:



From: Deborah Henry [mailto:DHenry@chgolaw.com]
Sent: Monday, September 18, 2017 3:11 PM
To: Elaine Pudlowski; Elliott Goldberger; Patricia Susi
Subject: RE: ▮▮▮▮▮▮▮

All:

From my perspective, we have the October 13th TRO date and subsequent trial dates in November. How wedded are you to the trial dates? It is important that ▮▮▮▮ get evaluated since we are buying future litigation. Thoughts? The alternative is Lisa Emmenegger who is also a PhD and does a large volume of child evaluations for St. Louis County Juvenile Court.

CHGO CURTIS, HEINZ, GARRETT & O'KEEFE P.C.
DEBORAH C. M. HENRY
130 S. BEMISTON, SUITE 200, CLAYTON, MISSOURI 63105
314-725-8788
314-725-8789 (Facsimile)
dhenry@chgolaw.com
www.chgolaw.com

106.    The RICO Defendants and the RICO enterprise are separate.

107.    If any one or more members of the RICO enterprise, including the RICO Defendants, were to cease involvement in the enterprise for any reason, the RICO racketeering and enterprise would continue uninterrupted.

108.    The RICO enterprise utilizes a standard set of pattern and practices to, among other things deceive and defraud parents in at least the St. Louis County Family Court,

and it has both closed-ended and open-ended continuity.

109.    Defendant Gillespie admitted the existence of the RICO enterprise and his membership or association with it through statements he made to Plaintiff Grant on February 7, 2025.

110.    Gillespie's statements were observed and overheard by FACT WITNESS #1.

111.    As alleged herein, Defendant Gillespie, like the other RICO Defendants, personally participated in the RICO enterprise's illegal conduct, and he personally committed predicate acts including but not limited to Wire Fraud (28 U.S.C. § 1343) and Obstruction of Justice (28 U.S.C. § 1503).

112.    Each RICO Defendant, including Hilton, Fenley, Brodie and Gillespie, shared in the management and operation of the RICO enterprise on a case-by-case basis.

113.    Alternatively, each RICO Defendant that is deemed an "outsider" itself participated in the RICO enterprise's conduct including RHF and GHC.

114.    Each of the acts of the RICO defendants at issue were foreseeable by all members and associates of the RICO enterprise.

115.    Under the *Pinkerton* Doctrine, each RICO Defendant is liable for the foreseeable acts of other co-conspirators that are detailed in this Complaint.

116.    The RICO Defendants are "persons" under the RICO statute, and the St. Louis Family Court Corruption and Racketeering Organization is the "enterprise."

117.    All RICO Defendants are members of the racketeering enterprise or have associated with it.

118.    Plaintiff Matthew R. Grant is just one of the latest victims of the RICO enterprise and its pattern and practice of using family court litigation to line the enterprise

members' pockets with money stolen from parents through theft by deception and

numerous RICO predicate criminal actions.

    a. The RICO enterprise has a well-orchestrated playbook by which it implements its plan to intentionally prolong litigation to enrich all those involved.

    b. The RICO enterprise places minor children in custody of known abusers to generate the fees the competent, non-abusing parent(s) will inevitably spend in an ongoing and often failed effort to protect their child(ren) and remove them from their abusers' custody.

119. The RICO enterprise also intimidates and intentionally inflicts emotional distress and

harm on victims through the following examples of its pattern of actions:

    a. Stalking by vehicle in this case involved private investigators, upon information and belief, associated with Global Intelligence Consultants, Inc.

        1. Plaintiff Grant was followed, harassed and suffered medically diagnosable emotional distress when the RICO enterprise caused him to be followed on at least February 9th, 16th, 17th, 20th, 21st, 23rd, 2025.

        2. Plaintiffs will present the testimony of an FBI credentialed Missouri licensed attorney to confirm this allegation (FACT WITNESS #2).

    b. Stalking and surveillance inside various establishments, including eavesdropping.

        1. Plaintiffs will present the testimony of an FBI credentialed Missouri licensed attorney to confirm this allegation (FACT WITNESS #2).

        2. This witness has trained FBI agents at the Quantico, Virginia facility.

    c. Breaking and Entering and Trespass to vehicles

    d. Trespass to residential properties.

    e. Illegal accessing victim cellular phones, laptops and tablets (wiretapping).

        1. Example #1 of a laptop used by Plaintiff Grant (2/23/25):



2. Example #2 of a different laptop used by Plaintiff Grant (4/26/25):



3. The RICO enterprise often makes its access to electronic devices known to its victims, as it did to Plaintiff Grant via his iPhone, to increase intimidation and that action was solely motivated to and did cause medically diagnosable emotional distress.

f. Confrontation of victims:

1. The RICO enterprise uses misrepresentations by private investigators who claim to be official law enforcement officers, including but not limited agents of the Drug Enforcement Agency (DEA).

120. The RICO enterprise's patterns and practices also include post-judgment collection efforts relating to family court final judgments, including the illegal use of improper garnishment actions to garnish higher dollar amounts than allowed by Missouri law, often without notice to judgment debtors as required by Missouri Rule of Civil Procedure 90.03(b) and they are often filed in improper jurisdictions.

121.   The RICO enterprise also perpetuates its racketeering beyond traditional family court matters, and it executes its racketeering in St. Louis County Probate, adult Conservatorship/Guardian Ad Litem matters filed under Chapter 475 of Missouri's Revised Statutes.

   a.   In these matters, the RICO enterprise improperly obtains court ordered Conservatorships and/or Guardians Ad Litem appointments for competent adults to improperly seize and sell the individuals' personal assets to generate illegal proceeds for the RICO enterprise and its members.

   b.   Plaintiffs will present the testimony of a victim of this racketeering method at trial (FACT WITNESS #3).

122.   Upon information and belief, the RICO enterprise and its members have used at least 2 separate methodologies to "launder" the illegal racketeering proceeds, a separate predicate act and a violation of 28 U.S.C. § 1957:

**Money Laundering Methodology #1:**

   a.   One or more RICO enterprise members have used the services of Mortgage Solutions of St. Louis, LLC (FACT WITNESS #4), to process one or more Cash-Out refinances of their real estate properties.

   b.   One RICO enterprise member who used the services of Mortgage Solutions is a now retired 21st Circuit Judge (Michael Burton).

      1.   Judge Burton refinanced the same parcel of property ~20 times in 20 years, including in rising interest rates.

      2.   Mortgage Solutions was also used for financing by Defendant John Fenley, many family court lawyers, and many Guardians Ad Litem, including Sarah Pleban.

      3.   ***Counsel for one or more of the defendants in this case*** used the same mortgage company for his or her home financing.

         a.   The counsel of record *in this case* is now at least a fact witness in this case. (FACT WITNESS #5).

**Money Laundering Methodology #2:**

   c.   Upon information and belief, the RICO enterprise and its members have organized and used several non-profit organizations, including one in which Defendant

Hilton was an original organizer and in which Defendant Brodie and Defendant Gillespie served on its Board of Directors, that are believed to have been used to transfer proceeds as purported "donations."

1. That same non-profit organized by Defendant Hilton and others **designated a Family Court** as its "charitable" beneficiary under 26 U.S.C. § 170(b).

2. A mailing address listed for this non-profit does not and never did exist.

3. The same non-profit included several other now retired and *still sitting* 21st Circuit Court judges and Family Court Commissioners.

   1. The author of the "Buying Future Litigation" email included in this Complaint, Deborah Henry, spouse of retired Judge Douglas R. Beach was a member of the Board of Directors of one non-profit of interest.

      a. Her spouse, retired Judge Douglas R. Beach, was the notary for the non-profit formation document.

d. Upon information and belief, the RICO defendants utilized racketeering proceeds to invest in property, including:

   1. Defendant Hilton's ~$1.6 million home in Kirkwood.

      i. Defendant Hilton's 2018-2024 salary as Circuit Judge ranged from $150,693.35 to $173,378.14.

   2. Defendant Fenley 's commercial property held in the name of his LLC (4815-4817 Oleatha LLC) located at the same address.

   3. Defendant Brodie: ~$2.6 million home in Frontenac owned by Defendant Brodie and her husband.

      a. $6.7 million commercial property owned and located at 8909 Ladue Road owned in part by Defendant Brodie's husband's LLC.

      b. Other unknown assets are held in Brodie and her husband's *Florida* Limited Liability Company - MBMJR, LLC.

123.    As alleged herein, Plaintiff Grant personally and repeatedly reported the corruption at issue in this case involving Defendants Hilton, Greaves, Fenley and Brodie, among others, to the St. Louis office of the United States Attorney's office, within the

United States Department of Justice, between January 13, 2025, and June 27, 2025.

124.    Plaintiff Grant's reporting, including his report of Defendant Hilton on **February 3, 2025**, was made via email to Assistant United States Attorney ("AUSA") Derek Wiseman (FACT WITNESS #6), with whom Plaintiff used to work at Husch Blackwell LLP.

Matt Grant <mattgrant.stl@gmail.com>
To: derek.wiseman@usdoj.gov

Just when you thought you would get a break from me.  Holy shit, I cracked a big one on Friday and another over the weekend, and more are unfolding each hour

PLEASE INVESTIGATE PRESIDING JUDGE HILTON!!!!!!

125.    To date, neither AUSA Wiseman nor any other individual associated with the Department of Justice has contacted or responded to Plaintiff Grant's ongoing complaints and reports.

126.    Plaintiff Grant is a Missouri licensed attorney and has practiced in litigation for 25 years.

127.    Plaintiff Grant is an Officer of this United States District Court and of the state courts of Missouri and Illinois and is an Officer of the Court in the United States District Court for the Central and Southern Districts of Illinois.

128.    In addition to the United States Department of Justice and its US Attorney's Office for the Eastern District of Missouri, Plaintiff Grant has reported the RICO enterprise, racketeering and corruption to the Missouri Court of Appeals for the Eastern District of Missouri, the Missouri Supreme Court, the Missouri Office of Chief Disciplinary Counsel and the Missouri Commission on Retirement, Discipline and Removal of Judges.

129.    To date no Missouri state court authority, office or agency has taken any action to investigate the complaints and reports that numerous Missourians, including Plaintiff Grant, have made regarding the St. Louis County Family Court.

### B. DEFENDANT PRESIDING JUDGE BRUCE F. HILTON WAS A MEMBER OF THE RICO ENTERPRISE PRIOR TO AUGUST 2017:

130.    Defendant Presiding Judge Bruce F. Hilton was a member of the RICO enterprise prior to his appointment as a 21st Circuit Judge in 2017, including during his law firm partnership with Defendant Lawrence Gillespie.

131.    On September 18, 2017, several likely members of the RICO enterprise sent the following email relating to a child custody case pending in St. Louis County Family Court (the "Buying Future Litigation" or "BFL" email):



132.    The September 18, 2017, "Buying Future Litigation" email included ***counsel for both parties, including mother's attorneys*** Deborah C. Henry (author) and Patricia Susi, and also the Guardian Ad Litem, Elaine Pudlowski, the court appointed mediator in the relevant state court case: *Matthew R. Grant v. Rebecca A. Copeland,* Case No. 12SL-DR03959-02 (FACT WITNESSES #7, #8, #9 and #10).

133.    As the September 18, 2017, BFL email proves, the RICO enterprise at issue in this case is documented to have been "Buying Future Litigation" for more than 8 years.

134.    The Buying Future Litigation email involved a state court child custody matter (EXAMPLE RICO CASE #1) that was improperly transferred by RICO enterprise members from Circuit Judge Hemphill to Defendant Bruce F. Hilton after Defendant Hilton's appointment as a 21st Circuit Judge.

1. EXAMPLE RICO CASE #1 involved allegations of sexual assault and child molestation against a father by his 5-year-old daughter.

2. EXAMPLE RICO CASE #1 was filed after a forensic interview of the 5-year-old child took place following a mandatory reporter who was told of the alleged molestation by the 5-year-old child (DISCLOSURE #1).

3. The allegations of sexual abuse were deemed substantiated by the Missouri Children's Division (FACT WITNESS #11).

4. Upon information and belief, after an adverse ruling from Judge Hemphill denying the father unsupervised visits with the child, counsel for the mother, Deborah Henry and Patricia Susi, along with father's counsel Elliott Goldberger, and the Guardian Ad Litem Elaine Pudlowski, colluded, conspired and agreed to improperly transfer the matter to Defendant Hilton as he was a known member of the RICO enterprise prior to his appointment to the bench earlier that year.

   a. The improper transfer via collusion to Defendant Hilton took place on August 23, 2017.

5. Defendant Hilton acted as expected and he maliciously reversed Judge Hemphill's ex parte Order of Protection and allowed unsupervised visits and eventually 50% physical custody and sole legal custody of the child to her father, a confirmed abuser.

6. In order to accomplish his illegal racketeering ruse and assist in "buying future litigation," Defendant Hilton maliciously ignored the testimony confirming abuse from *5 expert witnesses*, including a St. Louis County Police Officer, and he consistently placed the minor child in her father's custody (FACT WITNESSES #11-#15).

   a. Defendant Hilton intimidated 1 expert and convinced her not to testify as she would be sued.

   b. Defendant Hilton maliciously ruled that the minor child's disclosure of sexual abuse by her father to a therapist was inadmissible due to the patient/doctor privilege.

7.   To continue racketeering in that case, Defendant Hilton also ignored the fact that on October 10, 2018, a St. Louis County exchange center employee ordered father to undergo a breathalyzer test (positive) and, after having been dropping off the minor child with him smelling of alcohol, appearing inebriated, and the minor child at that time had visible red markings on her face and she had urinated herself.

8.   On May 20, 2020, with full knowledge of a CPS interview of the child set in June due to yet another disclosure of sexual abuse, and knowledge of the police recommendation to keep the minor child from the father, father and his counsel appeared before Defendant Hilton with *no notice to mother* and obtained an Order of Habeas Corpus.

9.   On May 21, 2020, mother appeared and requested an ex parte Order of Protection.  Mother advised the Court of the Habeas Order. The *court personnel **falsely** told the mother that her Motion for Order of Protection was denied*, when, in reality, it was *granted* by Judge Hemphill.

10. The Order of Protection "overruled" the Habeas Order but the father and his lawyer ignored its existence and colluded to pretend as if the ex parte Order had been denied.

11. Approximately 1 year after its entry, mother learned that the May 21, 2020, Order of Protection was, ***in truth, granted***, and **hidden** from her by members of the RICO enterprise that include court personnel.

12. Mother retained new counsel who reviewed the events in the case and then filed a Motion to Disqualify Defendant Hilton.

13. In January 2021, Defendant Hilton entered an Order of Recusal disguised as a Final Judgment.

14. More than 1 year later and after Defendant Hilton's recusal, the minor child again disclosed new sexual abuse.

15. All of Defendant Hilton's rulings in EXAMPLE CASE #1 were made with actual malice and intentionally to further the purposes of the RICO enterprise.

16. Defendant Hilton's malicious conduct in EXAMPLE CASE #1 has resulted in irreparable physical and psychological harm to the minor child of which Defendant Hilton is fully aware.

17. The mother at issue in EXAMPLE RICO CASE #1 has spent more than **$350,000.00** on attorneys' fees and Guardian Ad Litem fees to date.

4921-3441-1030, v. 1

18. The 2017 "Buying Future Litigation" email in EXAMPLE CASE #1 was correct as the RICO enterprise members at issue in that case pocketed more than **$350,000.00** through their illegal conduct.

19. EXAMPLE RICO CASE #1 reveals precisely how and why the racketeering takes place in the St. Louis County Family Court.

135.   At trial, Plaintiffs intend to offer additional evidence of Defendant Hilton's RICO violations in other cases along with Defendant Greaves' RICO violations in other cases not referenced in this Complaint that were and are part of Defendant Hilton and Greaves' ongoing knowing and malicious involvement in the RICO criminal enterprise.

136.   As detailed above and herein, the RICO enterprise existed and involved an ongoing, criminal racketeering scheme in which corrupt St. Louis County Family Court Judges, Commissioners, Guardians *Ad Litem* and a pool of corrupt family law lawyers engage in illegal and often colluded actions in bad faith and with intentional malice, to intentionally *delay* child custody and child support matters in order to, among other things, intentionally inflate attorney fees, Guardian *Ad Litem* fees, unnecessary evaluation fees, and therapist fees, and to obtain unfair, coerced and extorted monetary settlements.

137.   The conspiracy and corruption are accomplished through the knowing and active assistance of various 21st Circuit Court personnel, including one Division 13 clerk, one Division 13 court reporter, and it is actively assisted by at least one outside court reporter.

138.   Both court reporters referenced above involved in the underlying state court case altered, manipulated and changed deposition, court hearing and court trial transcripts to further the purposes of the RICO enterprise in which they are also active participants.

### C. <u>THE RICO ENTERPRISE TARGETS PLAINTIFF GRANT:</u>

139.   The RICO enterprise and its members' actions in this case commenced no later than April 2024.

140.    Prior to the state court litigation, Defendant Copeland, Defendant Thomas and Defendant S. Grant were members of a pre-litigation civil conspiracy.

141.    Defendant S. Grant is Plaintiff Grant's sister and Defendant Thomas is Plaintiff Grant's first cousin.

142.    Defendants Copeland, Thomas and S. Grant commenced their illegal actions when at least Defendant S. Grant trespassed in Plaintiff Grant's residence in early December 2023.

143.    On December 2, 2024, and December 3, 2024, at least Defendant S. Grant trespassed in Plaintiff Grant's home and took photographs of Plaintiff's usernames and passwords, business papers and Plaintiff and his wife's prescription medication bottles:



144.    Defendant S. Grant's documentation of Plaintiff Grant's passwords and medication was not undertaken in good faith; it was designed to gather evidence to be used against Plaintiff Grant in future litigation.

145.    Defendant Copeland admitted in deposition testimony that she too trespassed in Plaintiff Grant's home.

146.    Similar to Defendant S. Grant, Defendant Copeland testified that she took photographs of at least Plaintiff Grant's medication but that they turned out fuzzy and

indecipherable due to the fact that Defendant Copeland was shaking due to her knowingly trespassing.

147.    In late February and early March 2024, Defendant S. Grant and Defendant Thomas entered Plaintiff Grant's home without permission and proceed to enter his locked master bedroom where they both surreptitiously recorded him.

148.    Commencing on June 10, 2024, and continuing till today, co-conspirator Defendant Gillespie, with malice, colluded with his client Defendant S. Grant and refused to produce copies of the surreptitious audio and video recordings in the state court matter.

149.    During her deposition in November 2024, Defendant Thomas committed perjury and denied any knowledge or possession of any recordings despite her confirmation via text message to Plaintiff Grant's wife that she created and possessed them:

> I have plenty of video from Saturday and Sunday nights to show his state of mind. It actually does belong in court. Right now, I just want to make sure he's okay.

150.    On March 10, 2024, Defendant Thomas, Plaintiff's first cousin, directed and colluded with Defendant S. Grant, via text message, to attempt to illegally access Plaintiff's personal medical information using his unknown password:



151.    Defendant Thomas repeated her demand and instructed:

Make the login a demand. No flex

Now he's back to: where have you picked? Game time is over.

"nothing yet. Can't do that without your insurance info..."

152.    The next day, March 11, 2024 at 10:22 a.m., when Plaintiff Grant had hit rock bottom and was searching for a rehab facility, Defendant Thomas maliciously sent an email to the health insurance provider for not only Plaintiff, Plaintiff's wife and Plaintiff's step-children, but also the *minor children in this case* (FACT WITNESS #16) in an intentional attempt to cancel Plaintiff and the minor children's health insurance before Plaintiff Grant could check into a rehab facility and obtain necessary medical help by knowingly and falsely claiming that Plaintiff Grant and his now wife were not domestic partners.

153.    Defendant Thomas specifically intended for Defendant Grant to lose the financial and health insurance support he needed to check in a rehabilitation facility and potentially save his life.

154.    As a direct proximate result of Defendant Thomas' knowingly false and malicious email to Plaintiff Grant's health insurance provider, he and the minor children at issue in this case lost Domestic Partner and dependent health care coverage when it was wrongfully terminated by the insurer.

155.    On March 12, 2024, the day after Thomas' tortious interference email to Plaintiff and his children's health insurance provider, and contemporaneous with Defendant Copeland's Motion to Modify, Defendant Thomas continued her RICO violations and assisted her co-conspirators Defendant Copeland and Defendant Grant, with *specific*

*instructions on how to continue to trespass on Plaintiff's property* and continue to break and enter into his home for the purpose of burglary, as they did so many times before, even though there was a new Ring security camera installed to prohibit that very conduct from continuing:



156.    Defendant Thomas, Plaintiff's first cousin, had such inexplicable and extreme malicious criminal intent to harm that she sent this text:



157.    Defendant Thomas' actions prior to and throughout the state court case were malicious and intentional, and Defendant Thomas acted with malice or with deliberate and flagrant disregard for the safety of others, including Plaintiff Grant and minors C.L.G. and C.M.G.

158.    The actions of Defendant Thomas, and her co-conspirators above constitute at least Wire Fraud and Obstruction of Justice, RICO predicates, in violation of 18 U.S.C. §§ 1343 and 1503.

**STATE COURT CASE:** *MATTHEW R. GRANT v. REBECCA A. COPELAND*

4921-3441-1030, v. 1

159.   Prior to Defendant Copeland's March 12, 2024, Motion to Modify, Plaintiff Grant had retained Defendants Mat Eilerts and Growe Eisen Firm as his legal counsel to head off any potential litigation regarding Plaintiffs' struggles and while he planned to check into a rehabilitation facility.

160.   Defendant Eilerts communicated with FACT WITNESS #17, Defendant Copeland's attorney at the time, and was presented with the opportunity to resolve any concerns Defendant Copeland had regarding Plaintiff Grant and his custody of the minor children before he finalized his selection and travel to a rehabilitation facility.

161.   Defendant Eilert negligently ceased communications with FACT WITNESS #17 which wrongfully and unnecessarily caused the state court litigation to commence.

162.   Defendant Eilerts' failure to communicate with Copeland's attorney constitutes an example of his failure to exercise the degree of care, skill, and learning in representing Plaintiff that is ordinarily exercised by other attorneys under the same or similar situations.

163.   On March 12, 2024, the underlying case officially began when Defendant Rebecca A. Copeland, after FACT WITNESS #17 having heard nothing from Defendant Eilerts, filed the underlying matter in response to a temporary situation in which she knew that Petitioner had briefly relapsed in his otherwise successful battle with the disease of alcoholism.

164.   In her March 12, 2024, Motion to Modify, filed when Plaintiff had hit rock bottom in his depression and battle with alcoholism, Defendant Copeland ***still*** acknowledged Plaintiff was a *great father* as she sought ***no change*** in the parties' 50/50 joint physical and joint legal custody arrangement under the Parenting Plan.

165.    As alleged herein, Defendant Copeland, Defendant S. Grant and Defendant Thomas joined and/or associated with the RICO enterprise and repeatedly engaged in Wire Fraud, Attempt and Conspiracy, and Obstruction of Justice, all RICO predicates, in violation of 18 U.S.C. §§ 1343, 1349 and 1503.

166.    On March 19, 2024, Defendant **<u>Staci Thomas</u>** bragged of her tortious interference and ability to be relentless, attacking Plaintiff's wife's employment and Plaintiff and his children's health insurance, when she sent her co-conspirator Defendant S. Grant a .GIF, but also accidentally sent it to Plaintiff's wife:



167.    On April 29, 2024, Defendant Eilerts and Defendant Brodie appeared before Defendant Greaves.

168.    Defendant Brodie made several filings and obtained several Orders for entry on the court docket, as alleged in this Complaint, via wire (case.net) and those wire submissions were intended to, and did assist in accomplishing the goals of an existing and an ongoing criminal racketeering scheme in which corrupt St. Louis County Family Court Judges, Commissioners, Guardians *Ad Litem* and a pool of corrupt family law lawyers intentionally delay child custody and child support matters, including the use of

unnecessary evaluations, in order to intentionally inflate attorney, Guardian *Ad Litem*, and therapist fees, and obtain unfair, coerced and extorted monetary settlements. *See also* ¶190.

169.    As of May 20, 2024, Defendant Copeland's filings in the underlying matter sought *no change* in long-term custody.

170.    However, by May 21, 2024, Plaintiff disclosed his financial information and documentation in the underlying matter via his attorney Defendant Eilerts.

171.    On May 21, 2024, at 10:42:50 A.M., Defendant Copeland and Defendant Thomas exchanged the following text messages resulting from Defendant Copeland's waiver of the privilege associated with the legal conclusion of her counsel Defendant Brodie and stated:



172.    Beginning on May 21, 2024, Defendant Copeland abandoned any willingness to return to 50/50 joint physical custody for no reason other than monetary gain.

173.    Defendant Copeland used the preexisting RICO enterprise and its patterns to pursue this case against Plaintiff and participate in many RICO predicate acts.

174.    On May 29, 2024, Defendant Eilerts issued subpoenas and Notices of Deposition

for the deposition of Defendant S. Grant and Defendant S. Thomas and for their production of, among other things, video and audio recordings of Plaintiff Grant and all text messages and emails relating to Plaintiff in any way.

175.     On June 7, 2024, Defendant Gillespie, counsel for Defendant S. Grant, delivered approximately 507 incriminating pages of documents to Defendant Eilerts in purported compliance with the subpoena.

176.     Defendant S. Grant intentionally manipulated the document production, and she, with the malicious assistance of co-conspirator Defendant Gillespie, omitted production of a video/audio recording that she possessed of Plaintiff that she was obligated to produce.

177.     Defendant S. Grant continues to withhold the recording because it was taken illegally, in Plaintiff's master bedroom without his knowledge and in violation of RSMo. § 542.402 which criminalizes the act of Wire Tapping.

178.     Defendant S. Grant's conduct alleged above constitutes at least Obstruction of Justice, Attempt and Conspiracy, and Theft or Alteration of Record or Process, all RICO predicates, in violation of 18 U.S.C. §§ 1503, 1343 and 1506.

179.     The documents produced by Defendant S. Grant through her counsel, as demonstrated in several pictures above, prove that she trespassed in Plaintiff's home and engaged in an invasion of his privacy.

180.     Defendant Gillespie's conduct alleged above constitutes at least Obstruction of Justice and Theft or Alteration of Record or Process, both RICO predicates, in violation of 18 U.S.C. §§ 1503 and 1506.

181.    On June 10, 2024, Defendant Staci Thomas appeared and produced approximately 204 pages of text messages.

182.    Defendant Thomas purposefully withheld and refused to produce the email she sent to insurance provider Aetna as described above despite it being directly responsive to the subpoena.

183.    Defendant Thomas manipulated her production in several ways.

184.    Defendant Thomas intentionally used a program to make the texts almost illegible as to the author and substance.

185.    Defendant Thomas deleted and/or edited several text message entries.

186.    Upon information and belief, Defendant Thomas destroyed the audio and/video files that were in her possession and later engaged in perjury when she falsely denied in her deposition to having ever possessed any:

> I have plenty of video from Saturday and Sunday nights to show his state of mind. It actually does belong in court. Right now, I just want to make sure he's okay.

187.    Defendant Thomas' conduct as alleged constitutes at least Obstruction of Justice and Theft or Alteration of Record or Process, both RICO predicates, in violation of 18 U.S.C. §§ 1503 and 1506.

188.    On or about June 10, 2024, Defendants Brodie, Fenley and Copeland conspired and colluded to create the appearance of a settlement that would avoid the June 12, 2024, Preliminary Injunction hearing and that would provide Plaintiff Grant with unsupervised visits with the minor children.

189.   The supposed "settlement" was another ploy and misrepresentation undertaken by Defendants Fenley, Brodie and Copeland as they all later denied the existence of the agreement.

190.   Defendant Fenley and Brodie's malicious submission of electronic filings continuing the June 12, Preliminary Injunction, and many others were in support of the ongoing racketeering in the state court case in violation of 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1503 (Obstruction of Justice), and included but are not limited to:

   a. Fenley's e-filed Motions for GAL Fees including those dated June 13, 2024, December 16, 2024, and July 11, 2025.

   b. Brodie's June 12, 2024, Amended TRO, July 17, 2024, Motion to Continue and for Sanctions, and November 5, 2024, Motions to Quash.

   c. Gillespie's November 6, 2024, Objection and Motion to Quash.

   d. Gillespie's emails with Defendant Eilerts regarding recording omitted from S. Grant's subpoena compliance.

   e. Brodie's November 26, 2024, Proposed Parenting Plan and December 17, 2024, Amended Motion to Modify.

   f. Fenley's Motion for Hair Follicle Drug testing and Motion for Therapy and Sole Custody to Copeland dated March 26, 2025, and Amended Motion for Sanctions dated September 4, 2025.

   g. Brodie's March 27, 2025, Motion for Temporary Restraining Order and Preliminary Injunction and Brodie's August 25, 2025, Proposed Findings of Fact and Conclusions of Law.

   h. Fenley's July 11, 2025, Proposed Parenting Plan and Recommendation.

   i. Staci Thomas' December 5, 2024, Motion to Quash and September 8, 2025, Motion to Intervene served by U.S. Mail.

191.   After Plaintiff Grant exposed Brodie and Defendant Greaves' malicious ex parte judicial communications to the Department of Justice and the Missouri Office of Chief Disciplinary County, Defendant Brodie caused Plaintiff Grant to be stalked in vehicles

and intimidated by private investigators that, upon information and belief, were employed or paid as subcontractors by Global Intelligence Consultants, Inc. (FACT WITENSS #18) on several occasions including February 9th and 23rd, 2025.

192.    On November 27, 2024, Defendant Thomas was deposed in the underlying matter.

193.    During Thomas' deposition, Defendant Thomas engaged in perjury to assist the enterprise and in violation of not only RSMo. § 575.040, but also, she engaged in *at least* Obstruction of Justice, a RICO predicate, in violation of 18 U.S.C. § 1503.

194.    Defendant S. Grant's deposition was to have taken place on December 4, 2024.

195.    Before the deposition began, Defendant Gillespie, in furtherance of the RICO enterprise, made a plan to delay proceedings, and he maliciously conjured a false and bad faith basis to walk out of the deposition before it even began.

196.    Defendant Gillespie's actions in prohibiting the deposition and delaying it were in furtherance of RICO enterprise's pattern and practice to prolong family law cases.

197.    On or before December 9, 2024, Defendant Greaves and Brodie engaged in ex parte communication that lead to Greaves' entry of a sua sponte Order reopening discovery and allowing Defendants Brodie and Copeland to file an Amended Motion to Modify.

   a. Earlier, Defendant Greaves *refused to allow Plaintiff to obtain a single bank record* regarding Defendant Copeland's income, expenses and assets despite the child support calculation issues in the case.

      1. Defendant Greaves knowingly assisted in hiding the fact that Copeland had transferred and hidden money.

   b. On January 21, 2025, Defendant Hilton confirmed Greaves' and Brodie's ex parte judicial communication while he was feigning to be an ally for Plaintiff and his minor children.

198.    Defendant Greaves' sua sponte Order allowed Defendant Brodie to correct a fatal error and amend Defendant Copeland's Motion to Modify after the close of discovery and 8 days before the trial setting.

199.    The sua sponte Order also reopened discovery from December 9, 2024, until December 17, 2024, in order to allow Defendant Brodie to serve discovery to determine if Plaintiff Grant had video evidence of Copeland's, S. Grant's and Thomas' trespassing.

200.    The fatal error in Defendant Copeland's Motion to Modify noted herein was corrected by the very amendment allowed, *sua sponte*, by Defendant Greaves as a result of ex parte judicial communications.

201.    Once the new discovery period opened, that no one *supposedly* expected, Defendant Brodie served pre-prepared discovery within hours the very same day seeking the very surveillance footage that she had forgotten to request while discovery was open.

202.    Plaintiff Grant retained Defendant Coulter and Coulter Law Group to assist in the state court litigation.

203.    On December 2, 2024, at Defendant Eilerts' and Coulter's direction, Plaintiff Grant made a verbal Motion to Disqualify Defendant Greaves due to her bias as confirmed by Defendant Fenley's statement that she "hated" Plaintiff Grant.

204.    After Defendant Eilerts and Coulter's legal advice, Plaintiff Grant filed a written Motion to Disqualify that was improper on its face as it cited the wrong procedural rule as a proximate result of Defendant Eilerts and Coulter's negligent legal representation.

205.    On January 7, 2025, at 1:08 p.m., Plaintiff filed his Supplement to his Motion to Disqualify Defendant Greaves in which he laid out the evidence of the ex parte

communications.

206.    On January 8, 2025, at 11:35 a.m., less than 24 hours later Defendant Brodie's law firm associate, FACT WITNESS #18, *quit* Defendant Brodie's law firm realizing that Brodie's unethical actions were revealed.

207.    On January 13, 2025, Plaintiff filed a Motion for Sanctions against Defendant Brodie and Defendant Copeland.

208.    In that Motion for Sanctions, Plaintiff made it clear that he would eventually file suit against both Defendant Greaves and Defendant Brodie.

209.    On January 13, 2025, Defendant Greaves recused from the underlying case.

210.    In January 2025, Defendants Eilerts, the Growe Eisen Firm, Coulter and Coulter Family withdrew from the state court case.

211.    Defendant Eilerts repeatedly failed to take appropriate actions to protect Plaintiff Grant's interests in the case when he, for example, failed to move to the dissolve the TRO after Plaintiff Grant's proven sobriety, failed to document an agreement for Plaintiff Grant's unsupervised custody of the minor children, and his failure to proceed with a hearing on Defendant Copeland's request for a Preliminary Injunction.

212.    From April 2024, until his withdrawal in January 2025, Defendant Eilerts repeatedly advised Plaintiff Grant to sign Consent Orders restricting his visits and custody of the minor children.

213.    No St. Louis, Missouri area family law attorney would ordinarily fail to exercise the degree of care, skill, and learning in representing Plaintiff Grant in the manner done by Defendant Eilerts and his law firm.

214.    But for Defendant's Eilerts' professional negligence as alleged in this Complaint, the state court litigation would have never taken place and/or it would have been quickly resolved.

215.    As a direct and proximate result of Eilert's professional negligence, Plaintiff Grant was harmed by losing irreplaceable time with his minor children that continues to this day and paying significant unnecessary attorneys' fees, and supervisor and Guardian Ad Litem fees.

216.    As a result of Defendant Eilerts and Coulters negligent actions and inactions, the state court case would have been assigned to Presiding Judge Ott, the Motion to Disqualify would have been granted by Judge Ott and the case would not have been transferred to Defendant Hilton.

217.    But for Defendant Eilerts' and Coulter's professional negligence, this case would have concluded almost 1 year sooner, with joint custody awarded and Plaintiff would not have suffered the retaliation and harm detailed in this Complaint.

218.    Plaintiff Grant also would have avoided incurring the substantial, unearned attorneys' fees that he improperly paid to Defendants Growe Eisen and Coulter Law Group for professionally negligent legal advice that caused significant harm to Plaintiff and his minor children, both financially and emotionally.

### D. DEFENDANT BRUCE F. HILTON, PRESIDING JUDGE OF THE 21ST CIRCUIT COURT FOR THE STATE OF MISSOURI.

219.    Defendant Judge Hilton, a RICO enterprise member for many years, first appeared in the state court case at a January 21, 2025, hearing where he knowingly and with malice engaged in his first ruse and made a litany of knowingly false and malicious statements to Plaintiff in order to persuade Plaintiff Grant to consent to Defendant Hilton

as opposed to a transfer to the Missouri Supreme Court as Plaintiff Grant requested.

220.    When the January 21, 2025, hearing began, Defendant Hilton intentionally and with malice falsely pretended that he was the *savior* for Petitioner and his children.

221.    Defendant Hilton ***chastised*** Defendant Eilerts for his malpractice in not moving to dissolve the TRO in the case as soon as Petitioner returned from rehab in April 2024.

222.    Defendant Hilton noted that Petitioner had been using a Soberlink breathalyzer for 7 months but still did not have his children.

223.    As part of the ruse, Defendant Hilton maliciously ***chastised*** Guardian *Ad Litem* Defendant Fenley for not speaking up for the children who Defendant Hilton stated repeatedly had "**suffered**."

224.    Defendant Hilton maliciously stated that Petitioner had "**suffered**" as well.

225.    Defendant Hilton falsely stated in bad faith and with actual malice that he was there to help but his actual goal, on behalf of the racketeering enterprise was to keep the case from being transferred to the Missouri Supreme Court and/or a non-21st Circuit judge.

226.    Defendant Hilton refused to grant the Motion seeking transfer to the Missouri Supreme Court and he maliciously sent Plaintiff home to think "real hard" about consenting to him as his trial judge.

227.    It was all an act and part of the pattern used by the RICO enterprise to conceal the illegal racketeering activities in the St. Louis Family Court from the outside world.

228.    Plaintiff used the opportunity to disclose to the entire courtroom that he had reported all of them the United States Department of Justice (the St. Louis U.S.

Attorney's Office), and also the OCDC with whom he was communicating.

229.     That disclosure is important because the Department of Justice is a criminal investigator and all retaliation Plaintiff Grant has undergone since that date constitutes, among other things, Obstruction of Criminal Investigations and Retaliating Against a Witness, Victim, or Informant, both RICO predicates, in violation of 18 U.S.C. §§ 1510 and 1513.

230.     Plaintiff openly stated in pleadings dating back to January 13, 2025, that he intended to document and prove the RICO violations, Civil Rights Act violations and corruption at issue in this complaint.

231.     Defendant Hilton's bad faith and false statements made with actual malice worked, and Plaintiff consented to Defendant Hilton's jurisdiction over the state court case.

**C. This Lawsuit Is Plaintiff Grant's Good Faith Effort to Return Public Trust to the 21st Circuit Court of the State of Missouri.**

232.     Plaintiff first reported Defendant Greaves and Defendant Brodie to the Missouri Office of Chief Disciplinary Counsel (OCDC) back on __December 31, 2024.__

233.     Plaintiff first reported Defendant Hilton and this RICO enterprise to the United States Department of Justice (DOJ) back on __February 3, 2025.__

234.     Defendant Hilton had not entered a single order adverse to Plaintiff when Plaintiff reported him to the United States Department of Justice.

235.     On February 27th and 28th Plaintiff Grant filed a Motion to Disqualify Defendant Hilton and he lost any and all jurisdiction as of that moment.

236. On March 4, 2025, the Missouri Supreme Court assigned a Senior Judge to the state court case but that order was maliciously hidden from Plaintiff Grant until after his writ filings.

237. Plaintiff first exposed this corruption to the Missouri Court of Appeals in his writ filings which commenced on March 25, 2025, and completed on March 26, 2025.

238. On March 27, 2025, less than 24 hours after the writ filing's submission, Defendant Hilton **retaliated** against Plaintiff for his writ filing and in bad faith and with malice, entered **an ex parte TRO** removing all of Plaintiff Grant's custody and visits with his 2 minor children.

239. The March 27, 2025, *ex parte* TRO entered in the state court case was contrived and based upon the false argument that Defendant Rebecca Copeland, Defendant Brodie and Defendant Fenley believed that Plaintiff had relapsed in his battle with alcoholism and was secretly in a rehab.

240. At that time, Defendant Hilton, Brodie, Copeland and Fenley knew Plaintiff was subject to breathalyzer testing 3 times per day.

241. Both Defendant Copeland and Defendant Fenley, the Guardian *Ad Litem* received Plaintiff's daily passing Soberlink test results, including 9 passing tests in the 3 days prior to the ex parte TRO.

242. No Defendant in this case believed that Plaintiff had relapsed.

243. This fact is demonstrated clearly by Defendant Copeland's friendly message to Plaintiff relating to his necessary travel:

| | |
|---|---|
| Sent: | 03/25/2025 at 09:08 PM |
| From: | Rebecca Copeland |
| To: | Matt Grant *(First Viewed: 03/25/2025 at 10:07 PM)* |
| Subject: | Re: Tomorrow and Thurs - OUT of TOWN |

I'm sorry to hear that. I hope you're able to get done what you need to. Safe travels.

4921-3441-1030, v. 1

244.    The version of events that these Defendants put forth and that was adopted by Defendant Hilton was nothing but a ruse and pretextual reason to punish Plaintiff for the writ he filed exposing the corruption *less than 24 hours earlier*.

245.    To this day, none of the Defendants have explained how Plaintiff could have *relapsed and secretly went to rehab for alcoholism* **if he didn't consume any alcohol**.

246.    At an August 27, 2025, hearing on Plaintiff Grant's Motion to Disqualify and Recuse Defendant Hilton, Defendant Brodie knowingly and falsely denied that the ex parte order she obtained even existed in attempt to assist her co-conspirator Defendant Hilton who had no reasonable explanation as to why an ex parte TRO would be needed if Plaintiff Grant had checked into a rehabilitation facility:

> Q. Okay. The next day - Tell me if you recall this or not - there was an ex parte TRO entered that was presented by Ms. Brody. Do you remember that?
> MS. BRODY: Your Honor, I'm gonna object to the characterization. **It was not an ex parte order.** It was set for hearing. And you received notice.
> MR. GRANT: That's the 28th.
> MS. BRODY: I applied for a date on the 27th. It was set on the 28th. **It was not an order entered**. It was a notice of hearing.

**Exhibit A** (emphasis added).

247.    The March 27th and March 28th TROs were entered in bad faith, with actual malice and were retaliation against Plaintiff Grant for his Petition for Writ filing on March 26th.

248.    Plaintiff Grant's Motion to Disqualify Defendant Hilton was denied in abstentia on April 2, 2025 and each and every action taken by Defendant Hilton between February 27th and April 2nd were undertaken in the complete lack of authority.

249.    At the June 2, 2025, hearing on Plaintiff Grant's Motion to Dissolve the injunction and return to normal custody that existed in the litigation, he presented the Court with

both passing Soberlink results also a business records affidavit and the results of the completely negative hair follicle test.

250. Without justification and in bad faith and with actual malice, Defendant Hilton *refused to admit the "passing" hair follicle test results* that he, himself had ordered.

251. Defendant Hilton stated with actual malice that *he **could not interpret** the "negative" test results without the assistance of an expert witness* which Plaintiff failed to hire and present at the hearing.

252. As further proof of Defendant Hilton's involvement in the RICO enterprise and corruption along with his ongoing retaliation, when he finally lifted the Preliminary Injunction that prohibited Plaintiff from having *any* time with the minor children C.L.G. and C.M.G., Defendant Hilton, in bad faith and with actual malice, ***only provided Grant 4 overnights per month instead of the 10 overnights and visits*** that Plaintiff was allowed under the Consent Order that was in effect immediately prior to the Plaintiff Grant's exposure of the corruption via a Petition for Writ filed in the Eastern District Court of Appeals.

253. On June 2, 2025, in a phone call, Defendant Fenley extorted Plaintiff Grant via coercion.

254. Defendant Fenley, in bad faith and with actual malice, refused to provide Plaintiff Grant additional custody of the minor children, but he offered a *quid pro quo* and offered to trade Plaintiff Grant custody of his children in exchange for Plaintiff Grant's agreement to disavow and abandon his truthful claims of criminal corruption and criminal conduct in the state court case.

255. The June 23-24, 2025, trial in the state court matter was part of Defendants' ongoing malicious effort to retaliate against Plaintiff Grant for not settling and instead exposing

the RICO enterprise to the Court of Appeals, Missouri Supreme Court and via social media.

256.    During the trial, Defendants Hilton, Brodie and Fenley took actions with malice, solely motivated to inflict emotional distress upon Plaintiff Grant.

257.    Each improper action herein and the defendants' actions during trial involved violations of Plaintiff Grant and his minor children's procedural and substantive Due Process rights under the 5th and 14th Amendments of the United States and Missouri Constitutions.

258.    On August 11, 2025, Plaintiffs filed their initial Complaint in this matter.

259.    On August 13, 2025, in retaliation for Plaintiffs' initiation of this litigation, Defendant Hilton entered an Escort Order in bad faith and with malice in order to punish Plaintiff Matthew R. Grant for the filing of this case.  **Exhibit B (Perpetual Escort Order).**

260.    The August 13, 2025, bad faith and harassment Escort Order requires Plaintiff to be accompanied by security at all times while in the St. Louis County Courthouse in perpetuity.

261.    The basis of the bad faith and harassment Escort Order is the mere fact that on August 11, 2025, Plaintiffs sent a Request for Waiver of Service of Process along with a copy of the Complaint via U.S. Mail to Defendant Greaves at her residence in compliance with FED.R.CIV.P. 4(D)(1)(G).

262.    This is photograph taken by Plaintiff of the 10" x 13" white envelopes that he mailed to all defendants as required by FED.R.CIV.P. 4(D)(1)(G):



263.    No reasonable person, much less a Court Commissioner, could interpret the receipt of one of the standard white envelopes above containing service papers via the Federal Rules of Civil Procedure as harassment or intimidation.

264.    Defendant Greaves intentionally, in bad faith and with malice, misrepresented the 10" x 13" white envelope containing a photocopy of the Complaint and Request for Waiver of Service as a suspicious package in retaliation for being named as a defendant.

265.    Defendants Greaves and Hilton, intentionally and with malice, colluded and conspired to retaliate against Plaintiff Grant for this August 11th federal court filing.

266.    The August 13, 2025, Escort Order was entered by Defendant Hilton in the **complete absence of jurisdiction** as Plaintiff Grant had filed a Motion to Disqualify Defendant Hilton on August 5, 2025, pursuant to RSMo. § 508.090 et seq.

267.    Due to his complete lack of jurisdiction, Defendant Hilton has *no judicial immunity* for his RICO violations taking place between the August 5th Motion to Disqualify and the denial of that motion by Senior Judge Zerr (FACT WITNESS #19) on August 29, 2025.

268.    Because Defendant Hilton's August 13, 2025, Escort Order took place after August 5, 2025, and before a ruling on Plaintiff's Motion for Change of Judge for Cause, Defendant Hilton's actions were taken in **complete absence of jurisdiction**.

269.    Defendant Greaves and Defendant Hilton's actions after receiving notice of the Complaint in this case are independent and additional proof, apart from Greaves' *ex parte* judicial communications, of their willingness to violate the Rules of Judicial Conduct to conceal and protect their involvement in the RICO enterprise addressed in this litigation.

270.    The actions of Defendant Greaves and Defendant Hilton after receiving notice of the Complaint are independent and additional RICO predicate acts.  *See* 18 U.S.C. §§ 1510 and 1512(b).

271.    On August 27, 2025, when Plaintiff Grant cross-examined Defendant Hilton on the issue of the omitted overnights and visits and Defendant Hilton, in bad faith and with actual malice, falsely testified under oath that his failing to provide the missing nights and visits was a "mistake."

272.    Defendant Hilton failed to correct his "mistake" after he acknowledged it.

273.    During the state court case, Defendant Hilton also, intentionally and with malice threatened to seize the Plaintiff's 529 college savings accounts to pay the Guardian *Ad Litem* fees in the case.

   a.  Defendant Hilton's sole motivation was to intentionally cause emotional distress and harm to Plaintiff Grant and that harm was, in fact, inflicted upon him.

274.    Plaintiff exposed this corruption at issue in this case via Writ Petitions to the Court of Appeals on March 26, 2025 (ED113446), May 30, 2025 (ED113599), August 22, 2025 (ED113799) and September 2, 2025 (ED11386), and to the Missouri Supreme Court on April 2, 2025 (SC101040), and June 11, 2025 (SC101140) and September 25, 2025 (SC101295),

275.    The Missouri Court of Appeals removed any evidence of Plaintiff Grant's March 26, 2025, Petition for Writ and Motion to Disqualify, including removing the caption and case number of Plaintiff Grant's March 26, 2025, writ filings from Missouri's case.net. *Compare* **Exhibit C** (Case.Net search for Grant in 2025 in Missouri Court of Appeals) *with* **Exhibit D** (actual EDMO case docket), **Exhibit E** (EDMO Petition for Writ) and **Exhibit F** (EDMO Motion to Disqualify).

276.    All of the above information and filings were publicly available at the time of the Writ's Denial.

277.    Plaintiff Grant filed a Motion to Disqualify the Eastern District due to, among other things, Defendant Hilton's verbal statement that the Court of Appeals would protect him, regardless of his corruption and intentionally false statements from the bench. **Exhibit F.**

278.    Plaintiff Grant's March 26, 2025, Petition for Writ was not just filed, it was denied by the Court of Appeals judges that did not recuse. **Exhibit G.**

279.    The March 27th denial of Plaintiff Grant's Petition for Writ is also unavailable on case.net. **Exhibit C.**

280.    Just like the Court of Appeals, the Missouri Supreme Court has declined to act or even acknowledge the corruption that Plaintiff Grant has exposed and proven.

281.    Plaintiff has exhausted all efforts he could be expected to take in order to obtain assistance from the Missouri appellate court system to address the RICO and Civil Rights Act violations at issue in this case.

282.    Upon information and belief, Plaintiff Grant assumes that the Court of Appeals and Missouri Supreme Court fear the ripple effect of any Missouri state court

acknowledgement of long standing and pervasive judicial corruption in the 21st Circuit of the State of Missouri.

283.    Plaintiff Grant does *not* allege that any member of the Missouri Supreme Court is a member of the RICO enterprise.

284.    On September 2, 2025, Defendant Fenley launched his own retaliation against Plaintiff.

285.    On that date, Defendant Fenley filed, via wire, an Amended Motion for Sanctions claiming that Plaintiff sent him an envelope containing balm, tape and white pencils.

286.    Defendant Fenley's allegations were knowingly false, made in bad faith and with malice, and he was acting under color of law when he violated Plaintiff Grant's civil rights once again with these actions.

287.    On September 2, 2025, the same day as Defendant Fenley's Motion for Sanctions, 21st Circuit Judge Jason Dodson, another likely member of the RICO conspiracy, issued in bad faith, actual malice Order of Protection at the request of Defendant Thomas that required Plaintiff to remove his publicly available initial Complaint in this matter ***from all online locations***.

288.    Judge Dodson's facially unconstitutional Order prohibited Plaintiff from publishing any documents that had been filed as a matter of public record in this case and available to the public on PACER.

289.    Missouri State Court Circuit Judge Jason Dodson's Order was a violation of at least Plaintiffs' 1st Amendment right of free speech.

290.    Defendant Thomas' bad faith ex parte Order of Protection and request for a full Order of Protection were later ***denied*** at the full hearing pursuant to a ***directed verdict.***

291.    As a result of Judge Dodson's facially unconstitutional Order, Plaintiff was harmed.

292.    For example, Plaintiff Grant was booked, fingerprinted and underwent mug shots by the Town and Country, Missouri Police Department because the very Complaint **that is available on PACER** was unknowingly left on Plaintiff's website: www.StopMissouriCorruption.com.

293.    Defendant Copeland repeatedly made her own efforts to obtain an Order of Protection in bad faith and with the sole motivation to cause Plaintiff Grant emotional distress.

294.    On September 4th and 15th, Defendant Copeland was twice *denied* an ex parte Order of Protection.

295.    Defendant Copeland returned for a ***3rd try*** for Order of Protection on September 17, 2025, and was able to obtain an ex parte Order of Protection against Plaintiff Grant from, once again, Circuit Judge Jason Dodson who had denied her on her first attempt dated September 4, 2025.

296.    To assist in her false claims asserted in her petition for Order of Protection, she made the false and malicious claim that her vehicle tire had been punctured by Plaintiff Grant.

297.    On the evening of September 15, 2025, after being denied her second attempt at an ex parte Order of Protection, Defendant Copeland actually punctured *Plaintiff Grant's wife's vehicle tire* in Plaintiff Grant's driveway and then claimed, falsely and under oath, that *her* tire had been punctured.

298.    Plaintiff Grant repeatedly requested Defendant Copeland undergo a mental evaluation in the state court matter and Defendant Hilton denied each request with actual malice to perpetuate the illegal racketeering that took place in that case that hinged upon a knowingly false conclusion that Defendant Copeland was a competent parent.

299.    Defendant Copeland caused medically diagnosable emotional distress by wrongfully and intentionally obtaining an Order that prohibited Plaintiff Grant to attend any of minor child C.M.G.'s football games.

300.    Defendant Copeland's ex parte Order of Protection and request for a full Order of Protection was dismissed at its hearing pursuant to Plaintiff Grant's Motion for Sanctions.

301.    On December 4, 2025, Plaintiff Grant filed many documents relating to the money laundering operations in the state court case.

302.    On December 5, 2025, Defendant Hilton in bad faith and intentional malice directed the 21st Circuit, Division 13 bailiff to **handcuff** Plaintiff Grant which the bailiff did.

303.    Defendant Hilton's actions were solely based upon his ongoing retaliatory motives and were solely intended to cause emotional distress to Plaintiff Grant that did, in fact, result.

304.    On December 14, 2025, Defendant Staci Thomas physically and verbally assaulted Plaintiff Grant and his wife immediately following minor child C.L.G.'s baptism.

   a. Thomas assaulted Plaintiff Grant's wife and Plaintiff Grant inside the church auditorium and immediately following the baptism and physically next to the church's baptismal pool.

   b. Defendant Thomas stated that her attorney (Matthew Radefeld) advised her to make the confrontation and assault.

      1. Counsel of record Matthew Radefeld is now a fact witness in this matter.

   c. Plaintiff Grant possesses a video recording of Thomas' assault that he will offer as evidence at trial.

305.    Each of Defendant Hilton, Greaves, Brodie, Fenley, Copeland, Gillespie, S. Grant and Staci Thomas' malicious actions in the state court case were done as part of their membership in the RICO enterprise at issue in this litigation, to protect it, and to further

the common purpose of the criminal enterprise through the pattern and practices alleged herein.

306.    Plaintiff Grant has lost significant wages and income as a proximate result of the RICO and Civil Rights Act Defendants' actions in this matter.

307.    The minor children, C.L.G. and C.M.G., have suffered harm and damages inflicted upon them by the conduct of the Defendants in this case.

### COUNT I

**CIVIL RICO VIOLATIONS**
**(18 U.S.C. § 1964(c) et. seq.)**
**Class Action Claim**

*(Defendants: Bruce Hilton, John Fenley, RHF, Maia Brodie,*
*Rebecca Copeland, Staci Thomas, Sarah Grant, Lawrence Gillespie, and GHC)*

308.    Plaintiff, individually and on behalf of the Class and subclass(es), reallege and incorporate by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

309.    Plaintiff asserts this cause of action against Defendants Bruce Hilton, John Fenley, RHF, Maia Brodie, Rebecca Copeland, Staci Thomas, Sarah Grant, Lawrence Gillespie, and GHC ("Civil RICO Defendants").

310.    As alleged in more detail herein, all RICO Defendants named in this Complaint have engaged in racketeering and conspiracy and have membership in or association with a long-standing criminal enterprise and organization within the St. Louis Family Court.

311.    This Count is directed to Defendant Hilton only in relation to his actions on August 13, 2025, and his entry of the Escort Order at a time when he had a complete absence of any jurisdiction.

312.    The RICO Defendants and the RICO enterprise use a pattern of racketeering activity as alleged in this Complaint.

313.    The RICO predicates at issue are alleged herein and include, but are not limited to:

    a.  Aiding and Abetting

        o   18 U.S.C. § 2

    b.  Accessory After the Fact

        o   18 U.S.C. § 3

    c.  Extortion

        o   18 U.S.C. § 875

    d.  Wire Fraud

        o   18 U.S.C. § 1343

    e.  Honest Services Fraud

        o   18 U.S.C. § 1346

    f.  Attempt and Conspiracy

        o   18 U.S.C. § 1349

    g.  Obstruction of Justice

        o   18 U.S.C. § 1503

    h.  Obstruction of Criminal Investigations

        o   18 U.S. Code § 1510

    i.  Tampering with a Witness, Victim, or Informant Influencing or threatening a witness, victim, or informant to alter their testimony

        o   18 U.S.C. § 1512(b)

    j.  Retaliating Against a Witness, Victim, or Informant

        o   18 U.S.C. § 1513

    k.  Violations of one or more Missouri state criminal statutes that carry sentences of 1 year of incarceration or longer

314.    Each RICO defendant acted corruptly, via prohibited means and with criminal intent, and their knowing and intentional actions satisfy each element of each predicate act at issue.

315.    The RICO Defendants, the RICO enterprise, and the pattern are all connected as alleged in this Complaint.

316.    The RICO enterprise uses the same pattern of illegal actions to further its goal and that pattern is continuous and has both closed-ended and open-ended continuity.

317.    The RICO enterprise intentionally obstructs justice in each case in which they operate, such as Plaintiff Grant's state court case, each RICO Defendant endeavored to influence, obstruct, and impede the due administration of justice.

318.    Plaintiff and the putative class and subclass members have been financially harmed through the fraudulent theft of their money in the form of excessive attorneys' fees, excessive Guardian *Ad Litem* fees, therapist fees, coerced settlements and other strategies and forms of harm as alleged in this Complaint.

319.    The putative class, including specifically Plaintiff, has been specifically harmed as the RICO enterprise and racketeering has significantly impacted their and Plaintiff's ability to work.

320.    For Plaintiff that equates to his lack of ability to practice law in the manner he would like, past, present and future.

321.    The RICO Defendants' conduct has also proximately caused Plaintiff Grant to incur lost wages, quantifiable medical expenses including Psychiatrist and Therapist charges and also the cost of prescription medication.

322.    Plaintiff, on behalf of himself and the Class and Subclasses, seeks an award of compensatory damages against all RICO Defendants.

323.    Plaintiff, on behalf of himself and the Class and Subclasses, seeks an award of treble damages as provided for in 18 U.S.C. § 1964(c).

324.    Plaintiff on behalf of himself and the Class and Subclasses seeks an award of attorneys' fees.  Here, Plaintiff requests that his attorneys' fees be calculated at his average hourly rate collected 2024 for all of time Plaintiff has spent and will spend on this matter and any attorneys' fees he may incur in the future.

WHEREFORE, Plaintiff requests, on behalf of himself and on behalf of the Class and subclass(es), that this Court enter judgment in their favor and against the RICO Defendants, jointly and severally, for compensatory damages, treble damages, pre-judgment interest, and the award of attorneys' fees and costs that have been and will be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

## COUNT II

### CIVIL RIGHTS ACT
### (42 U.S.C. § 1983 et. seq.)
### Class Action Claim

*(Defendants Bruce Hilton, Mary Greaves, John Fenley and RHF)*

325.    Plaintiff, individually and on behalf of the Class and subclass(es), Co-Plaintiffs C.L.G. and C.M.G., and Co-Plaintiff Stop Missouri Corruption, LLC, reallege and incorporate by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

326.    Plaintiffs assert this cause of action against Defendants Bruce Hilton, Mary Greaves, John Fenley and RHF ("Civil Rights Defendants").

327.    As detailed herein, the Civil Rights Defendants each acted under the color of law as part of their involvement in the RICO criminal enterprise.

328.   The Civil Rights Defendants, jointly and severally, violated Plaintiff and Co-Plaintiffs C.M. G. and C.L.G., and the Class and subclass(es)' Due Process and other rights, including their Freedom of Speech, as alleged in this Complaint.

329.   Defendant Hilton's actions are outside any judicial immunity because Defendant Hilton's August 13, 2025, Escort Order was entered in the complete absence of jurisdiction.

330.   Defendant Fenley's actions, including the June 2, 2025, extortion by coercion, were taken outside the scope of his role as a Guardian *Ad Litem* and are outside any qualified immunity.

331.   Defendant RHF is liable due to its failure to properly supervise and train its member John Fenley who caused the constitutional violations at issue.

332.   Additionally, RHF knowingly approved and participated in Fenley's actions.

333.   As detailed herein, the Civil Rights Defendants have violated Plaintiff and Co-Plaintiffs C.M. G. and C.L.G.'s rights, and the rights of the Class and subclass(es), to Due Process, both procedurally and substantively, and the right to Free Speech as guaranteed by the 1st, 5th and 14th Amendments of the Constitution of the United States.

334.   Plaintiff, Co-Plaintiffs, the Class and subclass(es), were deprived of the Civil Rights alleged herein.

335.   Plaintiff, individually and on behalf of the Class and subclass(es), and Co-Plaintiffs C.L.G. and C.M.G., seeks an award of compensatory damages against Defendant Hilton and Defendant Fenley.

336.   Plaintiff, individually and on behalf of the Class and subclass(es), Co-Plaintiffs C.L.G. and C.M.G., seeks an award of punitive damages and attorneys' fees against Defendant Hilton and Defendant Fenley as provided for in 42 U.S.C. § 1988(b).

337.    Plaintiff, individually and on behalf of the Class and subclass(es), Co-Plaintiffs C.L.G. and C.M.G., and Co-Plaintiff Stop Missouri Corruption, LLC, seek an award of attorneys' fees against Defendant Hilton and Defendant Fenley.

338.    Here, Plaintiff Matthew R. Grant requests that his attorneys' fees be calculated at his average hourly rate collected 2024 for all time Plaintiff has spent and will spend on this matter and any attorneys' fees he may incur in the future.

339.    Plaintiff, individually and on behalf of the Class and subclass(es), Co-Plaintiffs C.L.G. and C.M.G., and Co-Plaintiff Stop Missouri Corruption, LLC, seek mandatory and prohibitory injunctive relief against Defendant Hilton, Defendant Greaves, and Defendant Fenley, *excluding* any injunctive relief that would impact the underlying St. Louis Family Court matter.

WHEREFORE, Plaintiff, individually and on behalf of the Class and subclass(es), Co-Plaintiffs C.L.G. and C.M.G., and Co-Plaintiff Stop Missouri Corruption, LLC, request that this Court enter judgment in their favor and against the Civil Rights Defendants, jointly and severally, for compensatory and punitive damages against Defendant Hilton and Defendant Fenley, pre-judgment interest, and the award of attorneys' fees and costs that have been and will be incurred in this matter.

Plaintiff, individually and on behalf of the Class and subclass(es), Co-Plaintiffs C.L.G. and C.M.G., and Co-Plaintiff Stop Missouri Corruption, LLC, seek no monetary award against Defendant Greaves, but they seek injunctive relief against all Civil Rights Defendants that does not impact the state court case, and for such other and further relief that this Court deems just and appropriate.

## COUNT III

**CIVIL CONSPIRACY**
**Class Action Claim**

*(Defendants: John Fenley, Maia Brodie, Rebecca Copeland,*
*Staci Thomas, Sarah Grant, Lawrence Gillespie and GHC)*

340.    Plaintiff, individually and on behalf of the Class and subclass(es), and Co-Plaintiffs C.L.G. and C.M.G., reallege and incorporate by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

341.    Plaintiff, individually and on behalf of the Class and subclass(es), and Co-Plaintiffs C.L.G. and C.M.G., assert this cause of action against Defendants John Fenley, Maia Brodie, Rebecca Copeland, Staci Thomas, Sarah Grant, Lawrence Gillespie and GHC ("Civil Conspiracy Defendants").

342.    The Defendants named in this Count reached a meeting of the minds to take unlawful actions that harmed Plaintiff, Co-Plaintiffs C.L.G and C.M.G, and the Class and subclass(es).

343.    The Defendants named in this Count did engage in numerous unlawful acts that caused harm and caused damage to Plaintiff, Co-Plaintiffs C.L.G and C.M.G, and the Class and subclass(es).

344.    Plaintiff Grant, individually and on behalf of the Class and subclass(es), Co-Plaintiffs C.L.G. and C.M.G., are entitled to an award of compensatory damages in an amount to be proven at trial.

345.    Because these actions were the result of gross negligence and/or were willful and wanton conduct, these Defendants are liable to Plaintiff, Co-Plaintiffs C.L.G. and C.M.G., and the Class and subclass(es) for punitive damages.

WHEREFORE, Plaintiff, individually and on behalf of the Class and subclass(es), and Co-Plaintiffs C.L.G. and C.M.G., requests that this Court enter a judgment in their favor and against the Defendants listed in this Count, finding them liable for civil conspiracy, and granting the remedies of compensatory damages, punitive damages, pre-judgment interest, and costs, and for such other and further relief that this Court deems just and appropriate.

**COUNT IV**

**FRAUDULENT MISREPRESENATION**

*(Defendants: John Fenley, Maia Brodie, Rebecca Copeland, Staci Thomas, and Sarah Grant)*

346.   Plaintiff and Co-Plaintiffs C.L.G. and C.M.G. reallege and incorporate by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

347.   Plaintiffs assert this cause of action against Defendants John Fenley, Maia Brodie, Rebecca Copeland, Staci Thomas and Sarah Grant ("Fraudulent Misrepresentation Defendants").

348.   These Defendants named in this Count made false material statements of fact.

349.   These Defendants made these knowingly false statements with the intent that Plaintiff and Co-Plaintiffs C.L.G. and C.M.G. would rely upon them and be deceived.

350.   These Defendants also omitted material facts with the intent that Plaintiff and Co-Plaintiffs C.L.G. and C.M.G. would be deceived.

351.   As a result of these Defendants' fraudulent conduct, false material statements and omissions of material fact, of which Plaintiff and Co-Plaintiffs C.L.G. and C.M.G. were unaware of their falsity and they had the right to rely upon them, have been damaged in an amount to be proven at trial.

352.   Plaintiffs' damages include lost wages, the payment of attorneys' fees, Guardian Ad Litem fees and substantial medically diagnosable emotional distress.

353.   Because these actions were the result of gross negligence and/or were willful and wanton conduct, these Defendants are liable to Plaintiff and Co-Plaintiffs C.L.G. and C.M.G., for punitive damages.

WHEREFORE, Plaintiff, individually and on behalf of Co-Plaintiffs C.L.G and C.M.G., requests that this Court enter a judgment in their its favor and against these Defendants listed in this Count, finding the liable for fraudulent misrepresentation of material fact and granting the remedies of compensatory damages, punitive damages, pre-judgment interest and costs that have been and will be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

## COUNT V

## TRESPASS

*(Defendants: Rebecca Copeland, Staci Thomas and Sarah Grant)*

354.   Plaintiff realleges and incorporates by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

355.   Defendants made unauthorized entry into Plaintiff's real property and home.

356.   Plaintiff had the legal right to possess the real property and Plaintiff's home thereupon.

357.   Defendants had intent to enter Plaintiff's real property and home without authorization.

358.   Defendants had intent to commit harm, including burglary, invasion of privacy, and gathering evidence for future litigation.

359.   Plaintiff was harmed by Defendants' trespass in his home.

360.   Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

361.    Because these actions were the result of gross negligence and/or were willful and wanton conduct, these Defendants are liable to Plaintiff for punitive damages.

WHEREFORE, Plaintiff requests that this Court enter a judgment in his favor and against the Defendants listed in this Count, finding them liable for trespass and granting the remedies of compensatory damages, punitive damages, pre-judgment interest and costs that have been and will be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

## COUNT VI

## INVASION OF PRIVACY

*(Defendants Maia Brodie, Sarah Grant, Staci Thomas and Rebecca Copeland)*

362.    Plaintiff realleges and incorporates by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

363.    Through their unauthorized and intentional intrusion into Plaintiff's home, iPhone, tablet and laptop, and making surreptitious recordings of Plaintiff in his bedroom, all in a manner offensive to a person of ordinary sensibilities, Defendants Maia Brodie, Rebecca Copeland, Staci Thomas and Sarah Grant caused financial and other harm, including emotional distress to Plaintiff.

364.    Defendant Brodie caused several individuals associated with the RICO enterprise to stalk and follow Plaintiff Grant in a manner that invaded his private concerns with the intention that such actions cause alarm, intimidation and emotional distress, all of which were caused.

365.    Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

366.    Because these actions were the result of gross negligence and/or were willful and wanton conduct, these Defendants are liable to Plaintiff for punitive damages.

4921-3441-1030, v. 1

WHEREFORE, Plaintiff requests that this Court enter a judgment in his favor and against these Defendants listed in this Count, finding the liable for invasion of privacy and granting Plaintiff the remedies of compensatory damages, punitive damages, pre-judgment interest, and costs that have been and will be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

## COUNT VII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*(Defendants Maia Brodie, Sarah Grant, Staci Thomas and Rebecca Copeland)*

367.    Plaintiff realleges and incorporates by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

368.    As alleged in this Complaint, these Defendants have acted with intentional and reckless disregard, extreme and outrageous conduct that it is so extreme and outrageous in character and degree that it goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community.

369.    As examples, the intentional actions of Defendant Brodie in Count VI were outrageous and were intended to and did cause Plaintiff Grant to suffer medically diagnosable emotional distress.

370.    The stalking and harassment by vehicle extended up to 20 miles and always involved inappropriately close following of Plaintiff Grant's vehicles through intentional paths Plaintiff Grant took in an unsuccessful attempt to "lose" the stalking vehicles.

371.    In one instance, a stalking vehicle parked in the middle of the street and shined a bright passenger police car spot light towards Plaintiff Grant in order to intentionally and adversely impact his ability to continue on his path down the street.

372.    These Defendants' actions have caused severe emotional distress to Plaintiff.

4921-3441-1030, v. 1

373.   Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

374.   Because these actions were the result of gross negligence and/or were willful and wanton conduct, these Defendants are liable to Plaintiff for punitive damages.

WHEREFORE, Plaintiff requests that this Court enter a judgment in his favor and against these Defendants listed in this Count, finding them liable for intentional infliction of emotional distress and granting Plaintiff the remedies of compensatory damages, punitive damages, pre-judgment interest and costs that have been and will be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

## COUNT VIII

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

*(Defendants Maia Brodie, Sarah Grant, Staci Thomas and Rebecca Copeland)*

375.   Plaintiff realleges and incorporates by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

376.   As alleged in this Complaint, these Defendants knew of the risk of foreseeable emotional distress to Plaintiff if they proceeded with their actions.

377.   Plaintiff's factual situation involving his children placed him in zone of danger.

378.   Defendants should have known that their conduct alleged in this Complaint involved unreasonable risks of causing distress and that medically diagnosable emotional distress was inflicted upon Plaintiff Grant.

379.   Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

WHEREFORE, Plaintiff requests that this Court enter a judgment in his favor and against these Defendants listed in this Count, finding the liable for negligent infliction of emotional distress and granting Plaintiff the remedies of compensatory damages, pre-

judgment interest and costs that have been and will be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

## COUNT IX

### DEFAMATION
*(Defendant Rebecca Copeland)*

380.   Plaintiff realleges and incorporates by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

381.   Defendant Copeland made at least one false statement of fact regarding Plaintiff.

382.   The false statement of fact was that Plaintiff acted as a rapist who coerced and refused to provide child support checks to Defendant Copeland unless she provided sexual favor(s).

383.   The false statement is so outrageous and offensive that it harms Plaintiff's reputation by lowering Plaintiff in the community's view and it deters others from associating with him.

384.   Defendant published her false statement of fact to at least 2 third parties.

385.   Defendant Copeland knew the statement to be false when she made it and her actions were at least negligent.

386.   Defendant Copeland's false statement has caused damage to Plaintiff, including but not limited to medically diagnosable emotional distress.

387.   Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

388.   Because Defendant Copeland's actions were the result of gross negligence and/or were willful and wanton conduct, Defendant Copeland is liable to Plaintiff for punitive damages.

WHEREFORE, Plaintiff requests that this Court enter a judgment in his favor and against Defendant Rebecca Copeland finding her liable for defamation and granting him the

remedies of compensatory damages, punitive damages, pre-judgment interest and costs that have been and will be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

## COUNT X

### TORITIOUS INTERFERENCE WITH CONTRACT
*(Defendant Staci Thomas)*

389.    Plaintiff and Co-Plaintiffs C.L.G. and C.M.G. reallege and incorporate by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

390.    Plaintiff and Co-Plaintiff's C.L.G. and C.M.G. had a contract for domestic partner and dependent health insurance coverage through Plaintiff's domestic partner and now wife.

391.    Defendant Staci Thomas knew of that insurance coverage.

392.    Defendant Staci Thomas intentionally and improperly interfered with that contract via an email dated March 11, 2024, at 10:22 a.m., and falsely claimed that Plaintiff was engaged in fraud and was not a domestic partner of his now-wife.

393.    Defendant Staci Thomas knew that Plaintiff was in the process of seeking treatment for alcoholism and was suffering from extreme depression.

394.    Defendant Staci Thomas is Plaintiff's first cousin.

395.    Defendant Staci Thomas had the specific intent to cancel Plaintiff's health insurance coverage before he could be admitted to a rehab facility.

396.    Defendant Staci Thomas knew and had the intent to cancel *minor children* C.L.G. and C.M.G.'s health insurance coverage.

397.    Defendant Staci Thomas is the second cousin twice removed of the minor children C.L.G. and C.M.G.

398.    Defendant Staci Thomas falsely testified under oath that she did not send the email that caused the cancelation of the insurance coverage.

399.    As a result of Defendant Staci Thomas' actions, the insurance contract was wrongfully breached.

400.    Defendant Thomas' conduct as alleged herein caused Plaintiff harm and damage.

401.    Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

402.    Defendant Thomas sent the March 11th tortious interference email *1 day before* Defendant Copeland filed the underlying state court matter on March 12, 2024, in an effort to ensure that, upon service of process, Plaintiff could not obtain critical medical care.

403.    Defendant Staci Thomas acted to attempt to withdraw medical care for her own first cousin when he needed it the most.

404.    Defendant Thomas' actions have caused actual harm to Plaintiff Grant and the minor children C.L.G. and C.M.G. as the improper termination of health insurance caused emotional distress to Plaintiff Grant and Plaintiff Grant and the minor children's health insurance was terminated.

405.    Because Defendant Staci Thomas' actions were the result of gross negligence and/or were willful and wanton conduct, Defendant Staci Thomas is liable to Plaintiff for punitive damages.

WHEREFORE, Plaintiff requests that this Court enter a judgment in his favor and against Defendant Staci Thomas finding her liable for tortious interference with contract and granting him the remedies of compensatory damages, punitive damages, pre-judgment interest and costs that have been and will be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

## COUNT XI

### CONVERSION
*(Defendant S. Grant)*

406.　Plaintiff realleges and incorporates by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

407.　Plaintiff owned an extensive wine collection.

408.　The wine collection included vertical and other vintages of collectible wine such as Opus One® and Silver Oak®, Marilyn Merlot® and Cristal® champagne.

409.　Defendant Sarah Grant trespassed in Plaintiff's home and removed the wine collection without permission or authority.

410.　Defendant Sarah Grant's conversion included the removal of 2 completely full wine refrigerators.

411.　Defendant Sarah Grant further removed the extensive wine collection that Plaintiff stored in his basement.

412.　Defendant Sarah Grant thereby exercised dominion and control of Plaintiff's property that interfered with Plaintiff's right to use his property (e.g., sell his wine collection and wine refrigerators, or otherwise put them to whatever purpose he would like).

413.　Plaintiff first learned that his cause of action accrued during her June 20, 2025, deposition wherein she was asked under oath where Plaintiff's property was located.

414.　Despite being under oath, Defendant Sarah Grant refused to provide any testimony regarding Plaintiff's personal property:

> (By Mr. Grant)  What happened to my wine?
> MR. GILLESPIE:  Objection to the form of the  question.
> A    You know what happened to your wine.
> Q    (By Mr. Grant)  What happened to it?
> A    We removed it from your premises.  An alcoholic doesn't need wine.
> Q    What happened to it after that?

A   It was stored.
Q   Where?
A   It was stored at my house.
Q   Where is it today?
A   Not at my house.
Q   Is it still under your custody or control?
A   Nope.
Q   Was it sold?
A   Not to my knowledge.  Not to my knowledge.
Q   Who has custody and control of my wine collection?
A   It was moved.
Q   All right.  Sarah, is it somewhere that I can legally access it?
 MR. GILLESPIE:  Objection to –
**A   Why would an alcoholic want to legally access their wine?**
MR. GILLESPIE: · Hold on, hold on. · It is beyond the scope of the February 28, 2025, order as to the status, location or existence of his purported wine collection, so I'm instructing you not to answer.

**Exhibit H,** pp. 91:9-92:3 (emphasis added).

415.   Defendant Sarah Grant's actions prove that she has no intention to return Plaintiff's now-expired wine collection and related items, and she has denied Plaintiff Grant's demands for the return of the items.

416.   Plaintiff has been damaged by Defendant's taking of his property as alleged herein.

417.   Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

418.   Because Defendant Sarah Grant's actions were the result of gross negligence and/or were willful and wanton conduct, Defendant Sarah Grant is liable to Plaintiff for punitive damages.

WHEREFORE, Plaintiff requests that this Court enter a judgment in his favor and against Defendant Sarah Grant finding her liable for conversion and granting him the remedies of compensatory damages, punitive damages, pre-judgment interest and costs that have been and will be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

## <u>COUNT XII</u>

### NEGLIGENCE - PROFESSIONAL MALPRACTICE
*(Individual and Class)*

*(Defendants Growe Eisen Firm, Mat G. Eilerts,
Coulter Law Group, and Con Curran Coulter)*

419.    Plaintiff, individually and on behalf of the Class and Subclasses, realleges and incorporates by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

420.    Plaintiff retained Defendant Growe Eisen Firm, Mat G. Eilerts, Coulter Law Group to provide specialized legal advice for the underlying family law matter and they therefore had lawyer-client relationships.

421.    Defendant Growe Eisen Firm is vicariously liable for the malpractice and negligence of Defendant Mat G. Eilerts.

422.    Defendant Coulter Law Group is vicariously liable for the malpractice and negligence of Defendant C. Curran Coulter.

423.    As alleged in this Complaint, Defendant Growe Eisen Firm, Mat G. Eilerts, Coulter Law Group breached their duty of care owed to Plaintiff.

424.    These breaches include the failure to avoid the state court litigation entirely through a pre-litigation resolution, provide proper legal advice regarding the lapse of a TRO, the failure to document an agreement regarding unsupervised visitation, failure to pursue the dissolution of any injunctive relief, the negligent recommendation that Plaintiff Grant continue to execute consent injunctions, Eilerts and Coulter's lack of competent legal advice regarding the procedure for filing a Motion for Change of Judge for Cause, and their incompetent legal advice to delay a Motion for Change of Judge to be heard by Defendant Hilton and not his predecessor Judge Ott.

425. Plaintiff has suffered damages as a result of these Defendants' breaches of duty of care.

426. Plaintiff Grant's harm and damages include, but are not limited to the following proximately caused by these Defendants:

   a. Significant and medically diagnosable emotional damage resulting from the unconscionable loss of custody of his children caused, in part, by Defendants Eilerts, Growe Eisen Firm, Coulter and Coulter Family Law Group.

   b. The payment of significant and unnecessary and unearned attorneys' fees to Defendants Eilerts, Growe Eisen Firm, Coulter and Coulter Family Law Group.

   c. The payment of significant and unnecessary Guardian Ad Litem fees, supervised visitation fees, and deposition transcript and other litigation costs.

427. Plaintiff is entitled to compensatory damages in an amount to be proven at trial.

WHEREFORE, Plaintiff Grant requests that this Court enter a judgment in his favor and against Defendant Growe Eisen Firm, Defendant Mat G. Eilerts, Defendant Coulter Law Group, and Defendant Con Curran Coulter, joint and severally liable negligence and granting him the remedies of compensatory damages, pre-judgment interest and costs that have been and will be incurred in this matter, and for such other and further relief that this Court deems just and appropriate.

## COUNT XIII

### UNJUST ENRICHMENT
*(Individual(s) and Class)*

*(Defendants: John Fenley, RHF, Maia Brodie, Rebecca Copeland, Staci Thomas, Sarah Grant, Lawrence Gillespie, GHC, Growe Eisen Firm, Mat G. Eilerts, Coulter Law Group, and Con Curran Coulter)*

428. Plaintiff, individually, and on behalf of the Class and Subclasses, realleges and incorporates by reference all of the allegations in preceding paragraphs of this Complaint as if set forth fully herein.

4921-3441-1030, v. 1

429.   As alleged in this Complaint, Plaintiff Grant has conferred and each of these Defendants otherwise received a benefit as a result of the unjust and improper conduct relating to the underlying state court matter as detailed in this Complaint.

430.   These benefits include:

    a.   Unjust custody of and time with the minor children.

    b.   Unjust collection of attorneys' fees.

    c.   Unjust collection of Guardian Ad Litem fees.

    d.   Unjust possession and control of Plaintiff Grant's wine collection and related items (S. Grant).

    e.   Unjust collection of proceeds from the RICO enterprise by the RICO defendants from Plaintiff Grant and, in other cases, from the members of the Class and subclasses.

431.   The benefits that Defendants received were at Plaintiff Grant's expense.

432.   It would be unjust and inequitable to allow these Defendants to retain any benefits they received.

WHEREFORE, Plaintiff Grant individually and on behalf of the Class and Subclasses, requests that this Court enter a judgment in his favor and against Defendants Fenley, RHF, Brodie, Copeland, S. Grant, Thomas, Gillespie, Eilerts, Growe Eisen Firm, Defendant Mat G. Eilerts, Defendant Coulter Law Group, and Defendant C. Curran Coulter, in the amount of the unjust benefits obtained by each, and for such other and further relief that this Court deems just and appropriate.

## REQUEST FOR INJUNCTIVE RELIEF

433.   Plaintiff, individually, as proposed *Next Friend* for Co-Plaintiffs C.L.G. and C.M.G., and on behalf of the Class and Subclasses, and Co-Plaintiff Stop Missouri Corruption,

LLC reallege and incorporate by reference all of the allegations in the preceding paragraphs of this Complaint as if set forth fully herein.

434.   This Complaint presents a situation to this Missouri federal court unlike any situation before.

435.   Federal courts have addressed the RICO conduct such as that in this case in criminal actions; however, Plaintiffs believe this to be the first properly pleaded Complaint that allows this and any other federal court to guarantee citizens of the United States the protections of the United States Constitutions while parties in state family court litigation in the 21st Circuit Court for the State of Missouri.

436.   Specifically, this Court should step in and enforce the United States Constitution's guarantees of Due Process and Freedom of Speech.

437.   The framers of the United States Constitution included the second clause of Article VI of the Constitution of the United States:

> **This Constitution**, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, **shall be the supreme Law of the Land**; **and the _Judges in every State shall be bound thereby_**, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. Art. VI, Clause II (emphasis added).

438.   As alleged herein, this Complaint presents allegations of criminal conduct by a sitting state court judge, a sitting state court commissioner, a Guardian *Ad Litem*, and private individuals involved in the practice of law in the St. Louis Family Court.

439.   This Complaint presents this Court with allegations of organized crime taking place in the 21st Circuit Court of the State of Missouri that has been disclosed to the Missouri Court of Appeals, the Missouri Supreme Court, the Office of Chief Disciplinary Counsel,

Missouri's Commission on Retirement, Discipline and Removal, and the United States Department of Justice.

440.    Congress has *not* provided private citizens with a right to compel any prosecuting authority to bring criminal charges.

441.    Congress *did* codify the right to bring private causes of action so that citizens of the United States of America could pursue their right to obtain relief in the event they are a victim of Racketeering and Organized Crime, when their Civil Rights are violated, and also when no prosecutorial authority has pursued charges or a conviction.

442.    It should *not* be distasteful to any federal court to be asked to enforce the protections of the Constitutions of the United States of America.

443.    As Article VI of the Constitution mandates, ***state court judges cannot*** ignore the "supreme law of the land."

444.    Certainly, it would have been preferable for the State of Missouri to tackle this well-known corruption as it has appeared in this specific case.

445.    However, the State of Missouri has thus far decided not to act.

446.    A reasonable person would conclude that Defendants Hilton and Greaves are "in league with those who were bent upon abrogation of federally protected rights." *Mitchum v. Foster,* 407 U.S. 225, 240 (1972).

447.    A reasonable person would conclude that the Missouri state courts will not intervene and provide Plaintiff, C.L.G., C.M.G., the Class and Subclasses the protection of their Civil Rights and their right to not be victims of RICO judicial corruption in the St. Louis County Family Court.

448.    Therefore, it should be incumbent upon this federal court to "sit" and ensure that the protections of the United States Constitution and its civil rights, such as Due Process and Freedom of Speech, are provided to Plaintiffs and the citizens of the State of Missouri.

449.    Again, this case does *not* present any issues that will be resolved on appeal at the state court level.

450.    To the extent this Court believes any discrete issues will require abstention, Plaintiff expressly waives them and has clarified that he seeks no injunctive relief to improve his particular situation resulting from the RICO enterprise and its members and associates' actions in the underlying case.

451.    Plaintiff seeks prospective injunctive relief and an award of damages.

452.    Plaintiffs *have* asked this Court to enjoin further Civil Rights Act violations by ***only 2 specific jurists*** and to allow Plaintiffs their day in court to prove that they have been harmed by the RICO organization at issue, in this case.  *See, e.g., Mitchum v. Foster,* 407 U.S. 225, 240 (1972).

453.    Plaintiffs do *not* present any specific requests other than injunctive relief narrowly tailored to protect citizens of the United States residing in Missouri from prospective constitutional violations from the 2 jurists, the Guardian Ad Litem and the lawyers at issue in this case.

454.    Plaintiffs defer to this Court's wisdom as to the specific mandatory and prohibitory injunctive relief to issue.

455.    Certainly, if Plaintiff were to present this Court with evidence of the State of Missouri refusing to address ***racial discrimination*** *by a judge and a commissioner*, this Court would *not* hesitate to act.

456.    The State of Missouri has refused to stop the ***unlawful <u>segregation of parents from their children</u>***.

457.    As such, this Court should act and enforce the guarantees of the United States Constitution for those that cannot obtain protection on their own.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Matthew R. Grant, as proposed *Next Friend* for C.L.G. and C.M.G., on behalf of the Class and subclass(es), and Co-Plaintiff Stop Missouri Corruption, LLC, respectfully request that the Court enter judgment in their favor, and against Defendants, granting the following relief:

A.    Entry of a judgment (Count I - Civil RICO) against the named Defendants, jointly and severally, and in the favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages, and treble damages;

B.    Entry of a judgment (Count II - Civil Rights Act) against Defendant Hilton, Defendant Greaves and Defendant Fenley, and in the favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages, punitive damages, and attorneys' fees from Defendant Hilton and Defendant Fenley only;

   a.    There is no request for an award of damages, fees or costs from Defendant Greaves.

C.    Entry of a judgment (Count III – Civil Conspiracy) against the named Defendants, jointly and severally, and in favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages and punitive damages;

D.    Entry of a judgment (Count IV – Fraudulent Misrepresentation) against the named Defendants, jointly and severally, and in favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages and punitive damages;

E.    Entry of a judgment (Count V - Trespass) against the named Defendants, jointly and severally, and in favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages and punitive damages;

F.    Entry of a judgment (Count VI – Invasion of Privacy) against the named Defendants, jointly and severally, and in favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages and punitive damages;

G. Entry of a judgment (Count VII – Intentional Infliction of Emotional Distress) against the named Defendants, jointly and severally, and in favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages and punitive damages;

H. Entry of a judgment (Count VIII – Negligent Infliction of Emotional Distress) against the named Defendants, jointly and severally, and in favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages;

I. Entry of a judgment (Count IX – Defamation) against the named Defendant, and in favor of Plaintiff and awarding Plaintiff compensatory damages and punitive damages;

J. Entry of a judgment (Count X – Tortious Interference with Contract) against the named Defendant and in favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages and punitive damages;

K. Entry of a judgment (Count XI - Conversion) against the named Defendants, jointly and severally, and in favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages and punitive damages;

L. Entry of a judgment (Count XII – Negligence – Professional Malpractice) against the named Defendants, jointly and severally, and in favor of Plaintiff(s) and awarding Plaintiff(s) compensatory damages;

M. Entry of a judgment (Count XIII – Unjust Enrichment) against the named Defendants, jointly and severally, and in favor of Plaintiff and awarding Plaintiff compensatory damages;

N. Entry of a Preliminary and Permanent Injunction prohibiting the continued corruption and violation of Missourian's rights under the United States Constitution in the 21st Circuit Court for the State of Missouri;

O. Entry of an award of Plaintiffs' costs;

P. Entry of an award of pre-judgment interest; and

Q. Entry of an Order granting to Plaintiffs such further relief that the Court deems just and proper.

## **PRAYER FOR CLASS RELIEF**

WHEREFORE, Plaintiff Matthew R. Grant, individually and on behalf of all others similarly situated, requests that when Plaintiff moves for Class Certification, that this

Court certify the Comprehensive Class and subclass(es) and provide a trial on the common issue of liability.

In the event of a finding of liability, Plaintiff requests that this Court order damages-only trials for each class and subclass member.

## ADDITIONAL AND OTHER RELIEF

Plaintiff Matthew R. Grant, individually and on behalf of all others similarly situated, requests that this Court grant such other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a jury on all issues so triable.

Respectfully submitted,


_____/s/Matthew R. Grant_____
Matthew R. Grant, #MO50312
GRANT FIRM LLC
701 Market Street, PMB 1709
St. Louis, MO 63131
T: (314) 255-7760
Email:  mattgrant.stl@gmail.com

***Pro Se* Plaintiff and as counsel for
Co-Plaintiff Stop Missouri
Corruption, LLC**

4921-3441-1030, v. 1