**MISSOURI COURT OF APPEALS**
**EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| STATE ex. rel. | ) | |
| MATTHEW R. GRANT, | ) | |
| | ) | |
| *Relator,* | ) | Case No. |
| | ) | |
| vs. | ) | Cause No. 2012SL-DR03959-02 |
| | ) | |
| The HONORABLE BRUCE HILTON, | ) | |
| Presiding Judge of the Circuit Court | ) | |
| of the County of St. Louis, | ) | |
| 21st Judicial Circuit, Division 13, | ) | |
| | ) | |
| *Respondent.* | ) | |

### *VERIFIED* PETITION FOR PRELIMINARY AND PERMANENT WRITS OF PROHIBITION, OR IN THE ALTERNATIVE, PRELIMINARY AND PERMANENT WRITS OF MANDAMUS, BOTH RELATING TO *JUDICIAL CORRUPTION* WITHIN THE 21ST CIRCUIT COURT OF THE STATE OF MISSOURI

COMES NOW, Relator Matthew R. Grant ("Relator"), pursuant to Rules 97 and 94, and petitions this Court to issue a Preliminary and Permanent Writ of Prohibition, prohibiting the Honorable Bruce Hilton from proceeding in the underlying action in any way other than to enter an administrative order transferring the underlying matter to the Missouri Supreme Court pursuant to MO.R.CIV.P. 51.05(e). In the alternative, Relator requests that this Court issue a Preliminary and Permanent Writ of Mandamus ordering the Honorable Bruce Hilton to transfer the underlying matter to the Missouri Supreme Court pursuant to MO.R.CIV.P. 51.05(e).

Additionally, Relator petitions this Court to issue a Preliminary and Permanent Writ of Prohibition, prohibiting Honorable Bruce Hilton from enforcing at least the three (3) Orders he entered after February 27, 2025 (e.g., on February 28, 2025) and further prohibiting his entry of any further orders other

1

Exhibit E

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

than those requested herein, those entered by this Court, or those entered by the Missouri Supreme Court.

In the alternative, Relator requests that this Court issue a Preliminary and Permanent Writ of Mandamus and/or Prohibition ordering Honorable Judge Hilton to vacate and set aside at least the three (3) Orders he entered after February 27, 2025 (e.g., on February 28, 2025), and any others, up to the date of this Court's, and/or the Missouri Supreme Court's preliminary and/or permanent and/or final ruling.

In support of his Petition, Relator states:

1.    The underlying child support and child custody matter involves **_blatant judicial corruption_** and ongoing efforts within the 21st Circuit to prohibit Relator from exposing the long-rumored truth – that the 21st Circuit is plagued by corruption throughout its ranks.

2.    The corruption is not limited to just one judge.  In contrast, it involves the Presiding Judge (Hilton), a sitting Commissioner (Greaves), current and former counsel of record (Brodie, Fenley, Eilerts and Coulter) and it extends to and involves various courthouse staff and personnel.

3.    Within the Courthouse, the corruption in the underlying case involves unethical and improper conduct by _at least_ the following:

    i.    Honorable Commissioner Mary W. Greaves;

    ii.    Honorable Bruce Hilton;

    iii.    Respondent's counsel Maia Brodie, _Special Representative of the Office of Chief Disciplinary Counsel_ of the Missouri Supreme Court;

    iv.    Relator's former counsel Mat G. Eilerts of the law firm of Growe Eisen Karlen Eilerts;

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

      v.   Each of the named partners in the law firm of Growe Eisen Karlen Eilerts: Gary Growe, Richard Eisen, Christopher Karlen, and Mat Eilerts;

      vi.   Relator's former counsel C. Curran Coulter; and

      vii.   Guardian *Ad Litem* – John Fenley.

4.    Many other individuals are known to be involved.

5.    Further, the corruption goes far beyond the descriptions above as Relator will describe in future filings.

6.    The underlying matter should have been a simple child custody and child support matter. It was and is not.

7.    The underlying matter has involved the theft of Relator's savings and the withholding of Petitioner's children from his custody as leverage to attempt to force Relator to submit and yield and allow the corruption to continue.

8.    As discussed below, the corruption involving Presiding Judge Hilton has presently resulted in the wrongful denial of Relator's right to an Order transferring the underlying matter to the Missouri Supreme Court.

9.    The denial is based upon Presiding Judge Hilton's fear that *the Missouri Supreme Court* will learn of the illicit, improper, unethical, and criminal conduct that has taken place in this matter and that is commonplace in the 21st Circuit Court.

10.    Relator notes that Missouri Supreme Court Chief Justice Mary Russell is an appointee of former Governor Jay Nixon. The critical importance of that fact, appointment by a Democratic Governor, will become apparent.

11.    Upon information and belief, the corruption that Relator now exposes relates to *many* Republican Governor judicial appointees.

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

12.   The corruption is the result of the Missouri legislature's adoption of the Missouri Nonpartisan Court Plan.  Whether it was intended is speculation, but Relator can assure all those that read this and his other filings, that it has been and is being used to cement corruption with the courts of the State of Missouri.

13.   Relator notes that he is a former equity partner of Husch Blackwell LLP.

14.   Relator practiced at Husch Blackwell LLP for ~21 years.  Husch Blackwell was formerly led by former Chair and well-known Republican Catherine Hanaway.

15.   Relator has intimate knowledge of Republican politics in this State.

16.   Relator possesses civil substantial and valuable claims against Husch Blackwell LLP regarding its and its partner's conduct after his July 31, 2023, resignation as an equity partner in that law firm.  That very well may be the motive behind much of the ongoing actions in this case.

17.   This Petition does not include much of what Petitioner knows about those involved in the corruption at issue in this case.

18.   Relator has documented and distributed objective evidence to several third-parties that, together, are pieces of an easy puzzle for the Missouri Supreme Court to solve on its own.

19.   If this Court does not issue a preliminary and permanent writ order of prohibition and/or mandamus, the 21st Circuit will continue along its path of widespread Republican judiciary corruption and Presiding Judge Hilton will continue to punish Relator for his efforts to expose the truth and obtain his normal custody of his Children.

20.   As will be discussed, the corruption exposed in this filing has been used to keep Relator and his children apart from the joint physical custody that Relator and his children's mother possessed by court

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

order from the June 17, 2010, until the TRO was entered in this matter on March 13, 2024.

21.    The underlying matter has been pending for more than a year and Relator only has custody of his Children one night per week. He has a solid year of proven sobriety and yet the relevant injunction and limited custody remains.

22.    Simply stated, Relator uncovered the corruption, can easily prove it, and the corrupt, criminal co-conspirators are using Relator's current and future custody of his children to attempt to keep him quiet. The corrupt individuals also seem to desire even more money from Relator than they have already stolen.

23.    Relator, as a member of the Missouri Bar, and as an Officer of this Court, refuses to yield to the pressures of the corrupt conspirators and he will continue to expose the truth through the proper application of Missouri law and Missouri civil procedure.

24.    Indeed, Missouri law forbids not only the substantive actions taken by Presiding Judge Hilton and others, but it also forbids Judge Hilton's efforts to disregard his procedural obligation to transfer this matter to the Missouri Supreme Court where his, and others', criminal corruption will be laid bare for all to see.

25.    Relator seeks the assistance of this Court to apply Missouri law and transfer this matter to the Missouri Supreme Court by its own order, or to at least enter a Writ of Prohibition and/or Mandamus compelling Judge Hilton to do the same.

## FACTS

The underlying matter was filed by Respondent on March 12, 2024. Ex. 1 (Exhibits Pages 1-33) and Exhibit 2 (Exhibits Pages 34-38). On March 15, 2024, counsel Mathew G. Eilerts formally entered his appearance on behalf of Relator. Ex. 3 (Exhibits Page 39). On March 19, 2024, the case was assigned to

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

Commissioner Mary W. Greaves following a motion for change of judge as a matter of right. Ex. 4 (Exhibits Pages 40-41). On March 18, 2024, counsel Maia Brodie and the law firm Brodie Law entered their appearance on behalf of Respondent. Ex. 5 (Exhibits Pages 42-43). Notably, the Brodie Law Entry of Appearance also included Elizabeth Carthen and Sara Lowe. *Id.* That will be particularly relevant when the Missouri Supreme Court implements the procedure to cast a wide net around all of the corrupt and unethical lawyers, judges and commissioners relating to this case. As referenced below, Relator possesses knowledge of more individuals that he has documented and will be sharing only with the Missouri Supreme Court.

This case proceeded through the entry of an initial March 13, 2024 *ex parte* TRO, an April 8, 2024, Order to Continue TRO, and series of improper and unnecessary consent orders dated April 29, 2024; August 5, 2024; and October 2, 2024, all of which were recommended by Relator's former, unethical and corrupt counsel Mathew G. Eilerts. Ex. 6 (Exhibit Page 44), Ex. 7 (Exhibit Page 45), Ex. 8 (Exhibit Pages 46-53), and Ex. 9 (Exhibit Pages 54).

The March 13, 2024, *ex parte* TRO contained that extreme and baseless injunctive relief that prohibited Relator from even texting his Children. Ex. 6 (Exhibit Page 44). That language was used to commence the corrupt path of stealing Relator's life savings, to, upon information and belief, financially reward some of the corrupt individuals, but more importantly fund the Missouri Republican party.

Notably, Commissioner Greaves (shortly after her assignment on April 1, 2024), Mat G. Eilerts and Maia Brodie were aware that Relator had checked into a rehab facility in California as of and shortly after March 17, 2024. Relator notes that Ms. Brodie entered her appearance on behalf of Respondent on March 18, 2024 just three (3) days after Respondent's initial counsel filed her Motion for Change of Judge from Associate Circuit Judge Heggie, a *Democratic* Governor

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

Jay Nixon appointee.  Ex. 1 (Exhibit Pages 1-13).  On April 1, 2024, this case was assigned to Commissioner Greaves.  Ex. 4 (Exhibit Pages 40-41).

Nevertheless, the April 8, 2024 Order to Continue TRO continued to prohibit Relator from texting his own children.  Exhibit 1 (Exhibit Pages 1-33), Exhibit 7 (Exhibit Page 45).  The Missouri Supreme Court needs to look no further than that Order and that date to find objective evidence of corruption.

On August 14, 2024, Relator filed his first Counter-Motion to Modify Child Support.  Exhibit 10 (Exhibit Pages 53-57).  That motion was delayed due to Mr. Eilerts' unethical recommendation resulting from his ongoing corrupt advice. Thereafter, on October 31, 2024, Relator filed his First Amended Counter-Motion to Modify Child Support, Physical Custody Schedule, and Amend Provision on Passports.  Exhibit 11 (Exhibit Pages 58-64).  That First Amended Counter-Motion was allowed by order of leave of court dated November 7, 2024.  Exhibit 12 (Exhibit Page 65).

Relator notes that the underlying matter was set for mediate that took place on November 19, 2024, before corrupt lawyer and routine mediator Elaine Pudlowski and the law firm of Frankel, Rubin, Klein, Payne & Pudlowski, P.C.  It was during that mediation that Guardian *Ad Litem* John Fenley for the first of *several* times, stated that Commissioner Greaves "hated" Relator.  Exhibit 13 (Exhibit Pages 66-69).  Relator softened the terminology he used with the 21st Circuit Court at the request of corrupt Guardian *Ad Litem* John Fenley.  Mr. Fenley requested that his statement of "hatred" be provided with the context that it was "his impression" of that obvious fact.  Exhibit 14 (Exhibit Pages 70-73).

On November 26, 2024, counsel C. Curran Coulter, who was recommended by Mr. Eilerts, and who was retained by Relator on a limited basis, entered his appearance on behalf of Relator to handle the sole deposition of a single fact witness – Staci Thomas.  Ex. 15 (Exhibit Pages 74-75).  Mr. Coulter and his law firm Coulter Goldenberger PC would eventually bill Relator more than $18,000 to

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

prepare for and take that single and partial deposition, a deposition that lasted all of ~2.5 hours. Exhibit 16 (Exhibit Pages 76-97). Corruption on full display.

On a related note, Mr. Eilerts and his law firm of criminal named partners billed Relator more than $60,000 for this matter in which Relator himself did 99% of all of the legal work, including *essentially all* briefs and other non-handwritten filings. *Id.* More corruption and more money to pay the corrupt participants, including Respondent Rebecca A. Copeland and, presumably, filter to Missouri's Republican political candidates and/or party.

As detailed in Relator's written Motion to Disqualify Commissioner Mary W. Greaves ("Motion to DQ Greaves"), he made an oral motion to disqualify the Commissioner in open court on December 2, 2024, based, in part, on Guardian *Ad Litem* John Fenley's statement regarding "hatred" which obviously revealed the Commissioner's bias. Ex. 17 (Exhibit Pages 99-306). As detailed in the Motion to DQ Greaves and, more importantly, in its exhibits, Relator demonstrated the *actual bias* demonstrated by Commissioner Greaves throughout the case and he specifically demanded transfer to the Missouri Supreme Court pursuant to Mo.R.Civ.P. 51.05(e) in light of the corruption within the 21st Circuit Court. *Id.* As this Court knows, the rumors of corruption within *at least* the Family Court of the 21st Circuit Court are legendary.

Much how Judge Hilton would later reveal himself to be corrupt, Commissioner Greaves revealed the full extent of her corruption by entering three Orders dated December 9, 2024, long after Relator moved to disqualify her for bias and in violation of the Missouri Supreme Court's decision in *Matter of Buford*, 577 S.W.2d 809 (Mo. banc 1979). Ex. 18 (Exhibit Pages 307-308), Ex. 19 (Exhibit Page 309) and Ex. 20 (Exhibit Page 310).

As Commissioner Greaves' Orders were entered in violation of *Matter of Buford*, 577 S.W.2d 809, on December 16, 2024, Relator filed a Motion to Vacate and Set Aside December 9, 2014. Ex. 21 (Exhibit Pages 311-358). In that filing, Relator specifically cited and discussed *Matter of Buford*, 577 S.W.2d 809 (Mo.

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

banc 1979), and placed Commissioner Greaves on <u>actual notice</u> of the fact that her December 9, 2024 Orders were entered without authority and that she certainly could <u>*not*</u> enter any further orders in the matter other than transferring the matter to the Presiding Judge so that he could vacate the improperly entered Orders already entered by the Commissioner without jurisdiction.[1] *Id.*

Commissioner Greaves' unethical behavior was so obvious and Relator's investigation revealed the likely source(s) and/or conduit(s) of her information, that Relator noticed Commissioner Greaves herself and third-party fact witness Suzanne Bremehr for depositions before the newly reopened discovery window closed. Ex. 22 (Exhibit Pages 359-360) and Ex. 23 (Exhibit Pages 361). Relator has a much more than good-faith belief that Ms. Bremehr has relevant and admissible information regarding Commissioner Greaves' *ex parte* judicial communications. Evidence will show that they are lifelong friends, lived minutes from one another for more than a decade, and, most importantly, fact witness Staci Thomas admitted in her deposition that she talked to Ms. Bremehr about this case. Ex. 24 (Exhibit Pages 364-366). Even if Relator is incorrect, the entire purpose of discovery is to determine of such relevant and admissible evidence does exist.

Further, on December 18, 2024, in light of the *objective evidence* of the very corruption Relator knew was taking place, he filed a Motion for Leave to File a Second Amended Counter-Motion to Modify Child Support, Physical Custody Schedule, and Amend Provision on Passports directed to Judge Hilton as Relator's counsel Mr. Coulter advised him that Judge Ott would not hear his motion before January 1, 2025. Ex. 25 (Exhibit Pages 367-369), Ex. 26 (Exhibit Pages 370-378) and Ex. 16 (Exhibit Pages 76-98). Relator now realizes that Mr. Coulter's statement was part of the corruption and intent to delay his allegations for review by Judge Hilton. Again, while a seasoned circuit court litigator, Relator was told

---

[1] *Matter of Buford* did not expressly address whether the judge or commissioner that is subject to a Motion for Change of Judge for Cause can enter an Order favorable to the filing party. Relator's reading is that such a judge or commissioner <u>should not</u>. Where that is a prohibition is unclear.

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

that he had "no idea how things worked in family court" and he deferred to his corrupt counsel. Ex. 16 (Exhibit Pages 76-98). The Motion for Leave was improperly granted by Order of Commissioner Greaves dated December 19, 2024.[2] Exhibit 27 (Exhibit Page 379).

Relator went to the effort to specifically cite and discuss *Matter of Buford*, 577 S.W.2d 809, to Commissioner Greaves and she, just like Judge Hilton would later do, ignored it and entered three (3) improper Orders. Exhibit 27 (Exhibit Page 378), Exhibit 28 (Exhibit Pages 379) and Exhibit 29 (Exhibit Pages 381).[3] Obviously, a written motion was unnecessary to place Commissioner Greaves on notice that Petitioner was moving to disqualify her for bias. That was accomplished on December 2, 2024, and that fact is undisputed. Nonetheless, Commissioner Greaves cited the lack of an actual written filing as her apparent basis for continuing jurisdiction in her improper Order denying Relator's Motion to Reopen Discovery. Ex. 29 (Exhibit Page 381).

Her bias was placed at issue by Relator's oral motion in open court on December 2, 2024, and her ability to remain assigned to the case was thereby challenged on that date, and the corrupt Commissioner Greaves went on to ignore Missouri law and the fact that she had no jurisdiction as of that point in time and, instead, acted to deny the effort *to take her own deposition* that would expose *at least* her own corruption and *ex parte* judicial communication. Ex. 28 (Exhibit Page 379). That, that right there, is corruption on full display. That is the purpose behind the Missouri Supreme Court's ruling in *Matter of Buford*, 577 S.W.2d 809.

As noted above, despite being initially filed on December 17, 2024, and corrected and filed again on December 24, 2024, Relator's Motion to Disqualify Commissioner Greaves for Cause was not accepted on the Court's docket until January 3, 2025. Ex. 17 (Exhibit Pages 99-306). The significant delay (December

---

[2] *See* note 1 *infra*.
[3] *See* note 1 *infra*.

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

24, 2024 till January 3, 2025) was obviously intentional and was caused to ensure that Relator's motion to DQ Commissioner Greaves would be considered and ruled upon by newly assigned Presiding Judge Bruce Hilton who took over the position of Presiding Judge as of January 1, 2025, and not by outgoing Presiding Judge Ott. The courthouse was open during that entire time except for very limited hours on the date of Relator's filing, December 24, 2024, and the following day, Christmas Day on December 25, 2024. It is Relator's recollection that the courthouse was otherwise open except for potentially closing early on New Year's Eve and having limited hours on New Year's Day, January 1, 20205.

Relator's conclusion that the filing was intentionally delayed is also based upon statements made by Relator's unethical and corrupt former counsel C. Curran Coulter. Exhibit 16 (Exhibit Pages 76-98). Mr. Coulter's statements, but not Relators, are admissible under Missouri's crime-fraud exception. It was Mr. Coulter who stated that Judge Hilton needed to be the one to rule on Relator's Motion to Disqualify/Change of Judge due to actual bias. And, of course, it is now known that Judge Hilton is part of the pervasive corruption.

In light of Relator's deliberate and unrelenting demand to expose the corruption in which both of his counsel Messer's Eilerts and Coulter were participants, each moved to withdraw. Ex. 30 (Exhibit Pages 384-386) and Ex. 31 (Exhibit Pages 387-389). Mr. Coulter moved to withdraw on December 31, 2024 and Mr. Eilerts moved to withdraw on January 8, 2025. *Id.* On January 8, 2025, Relator filed a quasi-consent to Mr. Eilerts' Motion to Withdraw as he desired to fire Mr. Eilerts as his unethical lawyer but he also wanted to point out, on the record, the unethical conduct he had engaged in as he had already reported him to the Office of Chief Disciplinary Counsel. Ex. 32 (Exhibit Pages 381-389). At that point in time, Relator only realized that Mr. Eilerts refused to participate in the effort to expose Commissioner Greaves for personal reasons, he did not realize Mr. Eilerts, his friend and former law partner, was corrupt and stealing Relator's

11

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

money and actively assisting the other side.  Ex. 16 (Exhibit Pages 76-98). Absolutely stunning.  Shocking.

The date of Mr. Eilerts' Motion to Withdraw is important, in that, it took place the day immediately after Relator's filing of his January 7, 2025, Supplement and Amendment by Interlineation to Motion to Disqualify Commissioner Greaves for Cause, and for Transfer to the Missouri Supreme Court.  Ex. 33 (Exhibit Pages 390-437).

Relator's January 7, 2025, filing was a critical point in the underlying case as it was *the filing* in which Relator expressly proved on the record that Commissioner Greaves and Respondent's counsel Maia Brodie, Special Representative to the Office of the Chief Disciplinary Counsel of the Missouri Supreme Court, had engaged in *ex parte* judicial communications. Ex. 33 (Exhibit Pages 390-437). This is the filing that Mr. Eilerts and Mr. Coulter tried to stop. Relator knew that the Commissioner not only "hated" him, but that she was "on the take" and talking directly or indirectly to Ms. Brodie all along and was part of the very corruption that Relator now exposes.  Of course she was, that was no surprise. It is the fact that corruption extended beyond the Commissioner, Ms. Brodie, Mr. Eilerts, Mr. Coulter and Mr. Fenley that was a complete shock.

As was also no surprise, when faced with irrefutable proof that she had engaged in unethical and corrupt behavior, Commissioner Greaves **recused** under false pretenses on January 13, 2025.  Ex. 34 (Exhibit Page 438).  Her Order of Recusal cites purported threats in a filing by Relator.  *Id.*  Relator **urges** the Missouri Supreme Court to read the brief which Commissioner Greaves referenced in her Order of Recusal.  Ex. 33 (Exhibit Pages 390-437).  Relator made no threats, only promises that he would see her pursued criminally and that he would sue her and the other unethical participants civilly.  Ex. 33 (Exhibit Pages 390-437). Promises, not threats. There was nothing the Commissioner could do to stop Relator from his plan and any suggestion of an improper threat or intimidation is absurd.

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

Indeed, as is detailed in the briefing in this case, Relator had **long before** his January 7, 2025, filing, reported Commissioner Greaves to the Missouri Supreme Court's Office of Chief Disciplinary Counsel. Relator called the Office of Chief Disciplinary Counsel on December 31, 2024, and submitted a website Rule 4-8.3 Report on or about January 1, 2025. Exhibit 16 (Exhibit Pages 76-98). No threats, only promises made and promises that will be kept. Indeed, Relator will file civil suits against every single individual and entity that he has identified as corrupt and that he stated he would, just as soon as he can appear before an impartial and non-corrupt judiciary.

On January 20, 2025, Relator filed his response to Mr. Eilert's Motion to Withdraw in which he stated: "Petitioner consents but he notes that such withdrawal is improper under the Missouri Rules of Professional Conduct." Exhibit 32 (Exhibit Pages 381-389). No statement could be truer than that. At the time of the filing, Relator had no idea of the *full extent* of either Mr. Eilerts' or Mr. Coulter's corruption and unethical conduct. Both had actually and actively worked against Relator's best interests. Obviously, they must lose their law licenses as they await their jail or prison sentencing. Indeed, if the Office of Chief Disciplinary Counsel actually does its job, every corrupt individual will have their law license immediately suspended. Relator doubts that will happen as the Office of Chief Disciplinary Counsel *is part of the corruption at issue*. Ex. 16 (Exhibit Pages 76-98).

On January 14, 2025, the underlying case was improperly transferred by a Family Court Reassignment Order to Division 36 of the St. Louis Family Court within the 21st Circuit Court of the State of Missouri. Ex. 35 (Exhibit Page 439).

On January 17, 2025, realizing that most, if not all, of the 21st Circuit Court's Family Court and other divisions - at least those with judges appointed by Republican Governors - were corrupt, Relator filed his *second* Motion for Change of Judge and again requested that the underlying matter be transferred to the Missouri Supreme Court. Ex. 36 (Exhibit Pages 440-559). Because the filing was

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

not seven (7) days prior to the January 21, 2025, hearing that was set for Mr. Eilert's Motion to Withdraw, Relator noticed his second Motion for Change of Judge for hearing on February 7, 2025. Ex. 37 (Exhibit Pages 560-561). His prior motion directed to Commissioner Greaves was moot due to her recusal so Relator cancelled that hearing that had been set for January 21, 2025. Ex. 38 (Exhibit Pages 562-563).

On January 21, 2025, due to his cancellation of the hearing on his own Motion to Disqualify Commissioner Greaves, Relator appeared to argue solely Mr. Eilerts' Motion to Withdraw. Ex. 16 (Exhibit Pages 76-98). At that hearing, Judge Hilton made quite the production in the courtroom that he took offense to everything that had happened just as Relator detailed in his *second* Motion to Disqualify, he noted the unethical behavior of, and he chastised, Mr. Eilerts, Ms. Brodie and Mr. Fenley. *Id.* With regard to Mr. Eilerts, Judge Hilton denied Relator's request to examine him and create a record of the basis for his unethical motion to withdraw. *Id.*

Further, Judge Hilton assured Relator that things would be corrected as soon as possible *if only* Relator would consent to allowing Judge Hilton to personally handle the case going forward. Ex. 16 (Exhibit Pages 76-98). Judge Hilton went so far as to promise Relator a March trial setting. *Id.*

In order to accomplish his corrupt goal, Judge Hilton unexpectedly urged Relator to argue his second Motion to Disqualify directed at the fact that his case was assigned to Division 36 and Judge Green. Ex. 16 (Exhibit Pages 76-98). That motion had been noticed for February 7, 2025, not January 21, 2025, as its January 17, 2025 filing was not at least seven (7) days before the January 21, 2025 hearing, and instead it was only four (4) days prior. Ex. 37 (Exhibit Pages 560-561).

Despite *not* being prepared to argue it that day as it was not set for another few weeks, Relator nonetheless made his argument and Judge Hilton granted the motion as to the Administrative Reassignment's Order's violation of local rule 6.6(1) only. Ex. 39 (Exhibit Page 915). Relator now realizes why that Order was

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

so limited in its basis. Judge Hilton directed Relator to hand write the Order and he told him exactly what to put in the Order. Ex. 16 (Exhibit Pages 76-98) and Ex. 39 (Exhibit Page 915). Relator notes that he learned that he omitted the reference to local rule 6.6(1) on the Order as that addition and handwriting is that of Judge Hilton. Ex. 16 (Exhibit Pages 76-98).and Ex. 39 (Exhibit Page 915).

At the end of the hearing when Relator still demanded transfer to the Missouri Supreme Court based upon an appearance of impropriety resulting, in his opinion, from a Presiding Judge evaluating and ruling upon the actions within his own circuit, even in light of Judge Hilton's offer, Relator held firm and demanded transfer to the Missouri Supreme Court. Ex. 16 (Exhibit Pages 76-98).

But Judge Hilton refused to grant that request. Ex. 16 (Exhibit Pages 76-98). As noted above, Judge Hilton stressed to Relator over and over again that Relator should consent to his handling of the matter. *Id.* In fact, Relator left the courtroom that day without making a decision on whether to stand on his demand for a transfer to the Missouri Supreme Court or to accept Judge Hilton's offer for him to personally handle the case. *Id.* Ultimately, Relator made the wrong choice and, based upon Judge Hilton's *feigned* helpful and sympathetic behavior, including his chastising of Mr. Eilerts, Ms. Brodie and Mr. Fenley, and noting that Relator and his Children had "suffered," Relator agreed to consent and he placed a lengthy consent pleading on file. Ex. 40 (Exhibit Pages 564-591). Later, Relator would place a shorter consent pleading on file. Ex. 41 (Exhibit Pages 592-595). The consent filings were huge mistakes to be sure.

Again, Relator was *unaware* at that time of Presiding Judge Hilton's family law background and his connection to the various counsel in the case, namely, Relator's former counsel at Growe **Eisen** Karlen Eilerts. As Relator later noted in his February 27, 2025, and February 28, 2025, *third* Verified Motions for Change of Judge and to Disqualify Judge Hilton And The Entire 21st Circuit For Cause, Richard **Eisen** is a former named law partner of Judge Hilton – the law firm of **Eisen**, **Gillespie**, Brown and **Hilton**, LLC. Ex. 42 (Exhibit Pages 596-613) and

15

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

Ex. 43 (Exhibit Pages 614-639).  Mr. Lawrence Gillespie, also Judge Hilton's former law partner, had long ago appeared at the first scheduled date for the deposition of Relator's adverse witness and sister Sarah M. Grant.  Ex. 16 (Exhibit Pages 76-98).

On January 24, 2025, the very next day, *at least* Respondent Rebecca A. Copeland, Guardian *Ad Litem* John Fenley and Judge Hilton coordinated a plan to frame Relator for attempted kidnapping.  Ex. 44 (Exhibit Pages 640-710).  The details of that ***diabolical*** and unsuccessful plan are contained in the *Ex Parte* Motion for Temporary Restraining Order that Relator presented to Judge Hilton on January 28, 2025.  Ex. 44 (Exhibit Pages 640-710).  Relator had coordinated with Judge Hilton's assistant on exactly when he would appear to the present the *ex parte* motion.  Ex. 45 (Exhibit Pages 711-712).

It was immediately after Relator's presentation of that *Ex Parte* Motion for TRO that Judge Hilton himself intentionally alerted Relator to his family law background as an express signal to let Relator know that he, Judge Hilton, was involved in the corruption and would now be in charge, in his own mind, of how the underlying matter would proceed.  Ex. 16 (Exhibit Pages 76-98).  With basic internet research, Relator learned what he should have investigated in December or before the January 21, 2025 hearing.  Ex. 16.  *Id.*  To much chagrin, Relator trusted his former counsel C. Curran Coulter the most as he was a fellow Eagle Scout.

It was at that moment that Relator learned that Judge Hilton was corrupt, but Relator held out some hope that Judge Hilton would still fix what was done so that Relator, a lawyer, might be open to limiting, as a victim, the criminal sentences of the individuals involved, and accept a reasonable settlement of Relator's civil claims.

On January 30, 2025, after the corruption was obvious, Relator filed his Motion To Vacate And Set Aside October 2, 2024, Interim Consent Order And December 20, 2017, Modification Judgment, In Part, And For An Order Requiring

Respondent To Pay Unjustly Received Child Support Monies, that kept him from his children in order to obtain a just ruling in his favor addressing, *inter alia*, the travesty that took place regarding his custody of his Children and the his huge overpayment of child support. Ex. 46 (Exhibit Pages 713-745). That Motion was supplemented on February 6, 2025. Ex. 47 (Exhibit Pages 746-769).

On January 31, 2025, after he knew that he would be moving to take a change from Judge Hilton and the entire 21st Circuit, Relator filed a Motion For Leave To File Third Amended Counter Motion To Modify Child Support, Legal Custody, Physical Custody Schedule, Amend Provision On Passports, Allocate Vehicle Expenses, And Allocate College Expenses and the actual Motion itself. Ex. 48 (Exhibit Pages 770-772) and Ex. 49 (Exhibit Pages 773-780).

On January 31, 2025, Relator also sought via motion and motions to compel, a mental evaluation of Respondent and the deposition of fact witnesses Sarah M. Grant and Staci Thomas. Ex. 50 (Exhibit Pages 781-784) and Ex. 51 (Exhibit Pages 916-917) and Ex. 52 (Exhibit Pages 785-806 and 807-828[sic]).

At the February 7, 2025, hearing on Relator's pending motions, he appeared expecting that Judge Hilton would do the right thing. What a fool Relator was. When Relator appeared for the routine granting of his consent motion to vacate and set aside the operative injunction order, Judge Hilton did what was a possibility all along. Judge Hilton required Relator to take the stand and present evidence on this Motion to Vacate and Set Aside the October 2, 2024, Interim Consent Order. Ex. 16 (Exhibit Pages 76-98). Relator's motion was verified so explained to Judge Hilton that no testimony or additional evidence was required. As soon as Judge Hilton told Relator to take the stand, he knew that Judge Hilton – the corrupt Presiding Judge of the 21st Circuit – had no intention to cease the tragedy that was ongoing and that was victimizing Relator's children and himself. Shockingly, Judge Hilton implied that Relator should have called his own children to the stand and presented expert witnesses. The Judge's statements

17

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

and actions were a sham.  Judge Hilton had decided to keep the corruption hidden from public view because he was its 21st Circuit ringleader.

As soon as cross-examination began, Relator realized even more what he suspected when he walked to the stand, the entire point was to allow some sort of cross-examination testimony.  Ex. 16 (Exhibit Pages 76-98).  When Relator testified that day, he knew the court reporter was corrupt, the judge was corrupt, the bailiff was corrupt, and the Judge's assistant was corrupt. He also knew that Respondent and her counsel were corrupt and that the Guardian *Ad Litem* were corrupt.  There wasn't a single person in Division 13 that day other than Relator that would even speak the truth about what happened on the stand.

As Relator will later explain, it is in that context that any transcript of his testimony must be read, if any transcript is even accurate at all.  Petitioner confirmed what he suspected on February 7, 2025, that the court reporter was willing to edit the prior transcript of Judge Hilton's hearing that took place on January 21, 2025. Ex. 16 (Exhibit Pages 76-98).  At that moment on February 7, 2025, Relator knew that he might need more objective evidence to prove to the Missouri Supreme Court that he was telling the truth, and that such an outlandish criminal RICO scheme of corruption was true.  As discussed below, Relator was able to obtain the precise sort of objective evidence he wanted.

But Judge Hilton was not done with Relator for his gall to push back on the corruption, Judge Hilton set this matter, filed on March 12, 2024, for trial on June 23-24, 2025.  Ex. 53 (Exhibit Page 829).  More than fifteen (15) months Judge Hilton ruled that Relator should be kept away from his Children.  That was clear and obvious punishment for not surrendering and agreeing to Maia Brodie and her clients' demands.  As discussed below, Judge Hilton expressly intends to continue that trial setting until Relator relents.  That will never happen.

As noted in Relator's *third* Motion for Change of Judge that is presently at issue before this Court, Presiding Judge Hilton's former family law partner Richard Eisen is a co-named partner in the law firm that defrauded Relator, and

counsel of record Larry Gillespie for fact witness Sarah M. Grant (Relator's own sister), Lawrence Gillespie, is also a former family law partner of Presiding Judge Hilton. Ex. 42 (Exhibits Pages 596-613) and Ex. 43 (Exhibit Pages 614-639).

In his *third* Motion for Change of Judge, this time directed at Presiding Judge Hilton, Petitioner cited Presiding Judge Hilton, once again, to the fact that Missouri Supreme Court's mandatory precedent in *Matter of Buford* and his filing served to *strip* Judge Hilton of jurisdiction and compelled the Presiding Judge to cease taking any further action in the underlying matter other than to enter an administrative order transferring the matter to the Missouri Supreme Court for its consideration of Relator's motion. Ex. 42 (Exhibits Pages 596-613) and Ex. 43 (Exhibit Pages 614-639). That Verified Motion was submitted and accepted for filing on February 27, 2025, at 9:26 p.m. Ex. 42 (Exhibits Pages 596-613). As Realtor moved to disqualify the entire 21st Circuit, there is no situation in which Judge Hilton could have reasonably believed that he could issue any orders. Any dicta in *Matter of Buford* about Relator presenting his motion for argument is inapplicable, as that surely could not have been accomplished the very next morning as the only way for Relator to present this issue to the proper court, was to file this Petition for Temporary and Permanent Writs. For reasons Relator will explain to the Missouri Supreme Court, Judge Hilton and the co-conspirators have made it almost impossible for Relator to draft and file this matter and all related filings. Once the details are heard, no reasonable judge will find that Realtor did not file this timely.

With regard to the February 27, 2025 Motion for Change of Judge, Relator went so far as to send an email at 9:45 p.m. on February 27, 2025, advising Judge Hilton and Judge Hilton's clerk, Veronica Gipson, Respondent's counsel Maia Brodie and the Guardian *Ad Litem*, John Fenley, of the filing and confirming that the hearing the next morning on February 28, 2025, could <u>not</u> go forward as the 21st Circuit Court no longer had jurisdiction to take any substantive action. Ex. 54 (Exhibit Pages 830-833). Relator also forwarded that email to Judge Hilton's

former law partner, Lawrence Gillespie, as he represents Relator's sister and fact witness Sarah M. Grant in the underlying matter as noted above. Ex. 55 (Exhibit Pages 834-836).

Of course, Relator was correct in his brief and in his emails about the status of Judge Hilton's jurisdiction. There is no chance that Realtor would even have grounds to file a Petition for Writ until and unless Judge Hilton denied transfer or took an improper action.

The next morning, February 28, 2025, at 9:14 a.m., Relator filed an updated version of the same Verified Motion to correct certain grammatical and other errors. Ex. 43 (Exhibit Pages 614-639).

Within minutes, on February 28, 2025, at 9:34 a.m., Relator sent an email to Judge Hilton, Respondent's counsel Maia Brodie and the Guardian *Ad Litem*, John Fenley, that read:



Ex. 54 (Exhibit Pages 830-833).

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

The tone and content of the email in response to corrupt Mia Brodie was intentional. While Relator knew that Presiding Judge Hilton was corrupt, the evidence that would be before the Missouri Supreme Court could benefit from more *objective evidence* of corruption. Relator knew that his credibility may not be enough to demonstrate quite as conclusively as it should that Judge Hilton was, indeed, part of such an elaborate scheme of criminal corruption. Many have heard the rumors and seen the journalism coverage, and internet ravings, all true, but what Relator wanted was evidence that the Missouri Supreme Court could not ignore, so he sent the email above to see how Judge Hilton would react. The trap had been set.

Contrary to the Missouri Supreme Court's mandate in *Matter of Buford*, 577 S.W.2d 809, that Judge Hilton was well-aware of as Relator personally cited it to him during the hearing on January 21, 2025, and it was included in various briefs, including the very Motion to Disqualify him. However, Judge Hilton acted precisely as predicted, he ignored his lack of any substantive jurisdiction in the case and stepped right into the trap.

Judge Hilton reacted and punished Relator *yet again* for having the gall to, this time, go so far as attempt to expose criminal corruption within the 21st Circuit Court by entering an Order and Judgment denying Relator's *meritorious* Motion to Vacate and Set Aside the October 2, 2025, Consent Order. Ex. 56 (Exhibit Pages 837). Recall, the *Consent* Order at issue had only been executed because he was strictly advised to do so by his former, now known to be unethical and corrupt former counsel – Mat G. Eilerts of the law firm of Growe Eisen Karlen Eilerts. Ex. 46 (Exhibit Pages 713-745) and Ex. 47 (Exhibit Pages 746-769).

As will be discussed in future briefing, Presiding Judge Hilton acted as was hoped and he sprung Relator's trap. Specifically, he provided Relator the *additional objective* evidence that Relator desired to provide to the Missouri Supreme Court. More evidence above and beyond the tortured treatment of himself and his children, and the evidence of Commissioner Greaves' *ex parte*

21

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

judicial communication, so that that Missouri Supreme Court could see that Relator's credibility need not even be considered. The objective evidence shows that Judge Hilton is corrupt. Relator knows that this scenario difficult to believe but he swears subject to the penalty of perjury that it is.

**Only a corrupt Circuit Judge** would, like a corrupt Commissioner, so willingly violate the most basic mandate and well-settled commonsense rule of law detailed in *Matter of Buford*, 577 S.W.2d 809 - once the subject of a Motion for Change of Judge Due to An Appearance of Impropriety or Bias, absolutely no circuit court trial judge or commissioner can take any action, much less the extreme action so adverse to the moving party as is the Order and Judgment. The judge subject to the Motion must await a ruling by a neutral judge or judges – here the Missouri Supreme Court – and see if he or she will retain the case.

Judge Hilton's additional rulings on his former law partner Larry Gillespie's Motion to Dismiss With Prejudice a Notice of Deposition, which any capable lawyer knows isn't even a motion that can be procedurally filed and considered, and his ruling in favor of corrupt Office of Chief Disciplinary Counsel, Special Representative Mia Brodie, and her corrupt client Rebecca A. Copeland, was literally the cherries on the top. Judge Hilton didn't just enter one (1) Order adverse to Relator, he entered three (3). Hoisted With His Own Petard Judge Hilton is. And thankful Relator is.

Judge Hilton was so blinded by his self-believed power and self-fantasized skillset that he failed to see the very trap that Relator had set. Less worthy adversaries Relator has *never* encountered during his 24 years as a Missouri licensed attorney and litigator.

Judge Hilton's retaliatory ruling had the harsh and intended effect of not allowing Relator to have his normal, 50/50 joint physical custody of his children until at least the current trial setting of June 23-24, 2025. There is no doubt that Judge Hilton plans to continue the current trial setting that was already a punishment in and of itself, and if and when a trial ever takes place, he will delay

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

in making a ruling, all in the hope that Relator will submit, yield, and agree to keep the corruption at issue a secret.

How does Relator know?  Judge Hilton made it clear in off-the-record comments that he could drag the underlying case out until Relator's youngest child, CMG, now age 13, was 18 years old. Ex. 16 (Exhibit Pages 76-98).  Years of successful corruption without challenge appears to make a sitting judge cocky and convinced he is invincible.  Relator takes the corrupt criminal Judge Hilton at his word, and he believes that is surely his intent and plan.  There is absolutely no doubt.

In addition to the improper denial of Relator's Motion to Vacate the Consent Order that was entered without jurisdiction, Judge Hilton proceeded in the underlying matter and entered a total of three (3) Orders in two separate docket entries, that were each prejudicial to Relator.  Ex. 56 (Exhibit Page 837) and Ex. 57 (Exhibit Page 838).  Relator notes that he has supplemented the record in the Circuit Court (still improperly administratively assigned this matter) in order to make the *ex parte* Motion for TRO referenced in his Motion for Change of Judge relating to Judge Hilton part of the trial court record and he attaches the above-referenced Affidavit to further supplement the record in this matter. Ex. 58 (Exhibit Pages 839-912) and Ex. 16 (Exhibit Pages 76-98).  Not surprisingly, despite the supplementation being submitted at 1:00 p.m., it has not been accepted by the Judge Hilton or anyone in his Division.  Ex. 59 (Exhibit Pages 913-914). The same old trick pulled by Commissioner Greaves and/or her staff when Relator filed his Motion to Disqualify her and it sat as "submitted" from December 24, 2024, to January 3, 2025. Ex. 16 (Exhibit Pages 76-98).  To be sure, Judge Hilton is in no hurry to accept the TRO pleading that he already refused to accept once before.  It is **damning** evidence of corruption in this case.

Relator can now state what he knew at the time of his filing of the Motion for Change of Judge and to Disqualify Judge Hilton that was drafted to be lay in the weeds and focus on his *appearance of impropriety*.  Recall Relator's trap to

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

catch a corrupt Presiding Judge, Bruce Hilton does not just appear to be an improper judge for the underlying case, *he is the 21ˢᵗ Circuit Court's ringleader and protector of corruption in which he is involved and he is actually biased*. Relator hereby expresses his thanks to Judge Hilton for his sophomoric move and assistance with the additional objective evidence in this regard.

Importantly, Judge Hilton and his corrupt co-conspirators' plan going back to at least January 2025, has been to engage in ruthless and relentless intimidation of Relator.  Relator declines to specify the extreme measures that he has encountered and suffered as they were specifically inflicted in the hopes that Relator would list them all, and risk looking delusional if he ever relied upon them as evidence.

When the time is right, Relator is prepared to tell and show the Missouri Supreme Court what this *despicable* group of corrupt Republican politicians, judges, commissioners and lawyers have done to make Relator's life a living hell.[4] That story will be told another day, when the Missouri Supreme Court has this case.

Finally, Relator notes that the sealing of courtrooms, certainly 21ˢᵗ Circuit Family Court courtrooms, and prohibition of *any* recordings is nothing more than an avenue for corruption to be hidden from public view.  The enemy of corruption is transparency.  Relator urges the Missouri Supreme Court to order that all counsel and *pro se* parties be allowed to openly record all court proceedings in at least the 21ˢᵗ Judicial Circuit.

Further, Relator urges the public to outcry for a change to the Missouri Non-Partisan Court Plan for the selection and appointment of judges.  It has been *the tool* misused by these corrupt and criminal co-conspirators to pull off what is

---

[4] The irony is that Relator is well-known to be a Republican himself and he openly voted for President Trump, twice.

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

an amazingly complex and shockingly vertically reaching conspiracy of corruption, silence and containment.

Relator looks forward to sharing all the names of the corrupt individuals above the Missouri state level that have been involved in this corruption. As noted in his prior and upcoming Affidavit(s), Relator has real concern and has taken a litany of steps of ensure this case reaches the Missouri Supreme Court as the corruption leads much further up and up.

## AUTHORITY

This Court has jurisdiction to determine whether a writ of prohibition, or in the alternative a writ of mandamus, shall issue. Mo. Const. Art. V, § 4; <u>State ex rel. Director of Revenue, State of Mo. v. Scott</u>, 919 S.W.2d 246 (1996).

As the Missouri Supreme Court, sitting en banc, explained:

> Prohibition, by its nature, is a preventative [sic] rather than a corrective remedy. Hence, prohibition generally lies to prevent commission of a future act, not to undo an act already performed." 24 Daniel P. Card II & Alan E. Freed, Missouri Practice *Appellate Practice* section 12.4 (2d ed.2001). Given this purpose, <u>an appellate court should employ **prohibition** when a circuit court has **erroneously denied transfer**</u> or has erroneously granted transfer but transfer is not complete.

<u>State ex. rel. Missouri Public Service Commission v. Joyce</u>, 258 S.W.3d 58 (Mo. banc 2008) (emphasis added).

Here, Judge Hilton has improperly refused to transfer the underlying matter to the Missouri Supreme Court and his entry of the three (3) improper orders after Relator's Motion for Change of Judge are clear *de facto* denials in the underlying matter of Relator's Motion for Change of Judge for Cause and Relator's request that Judge Hilton transfer the underlying matter to the Missouri Supreme Court for its consideration of Relator's pending Second *Verified* Motion For Change Of Judge And To Disqualify Judge Hilton And The Entire 21st Circuit For Cause and/or Due To The Appearance of Impropriety Due to Pervasive Judicial, Lawyer, Guardian *Ad Litem* and Courthouse Personnel Corruption, and for Transfer to the

Missouri Supreme Court for the Appointment of a New Trial Judge Without a Potential Conflict of Interests[sic].  Ex. 41 (Exhibit Pages ???).

The exclusive and proper venue for the underlying matter is the Missouri Supreme Court.  That conclusion is beyond dispute.  Missouri law is clear.  *Matter of Buford,* 577 S.W.2d 809 (Mo. banc 1979).

Further, because Judge Hilton has already entered several orders following the date and time at which he lost jurisdiction in the underlying matter, and particularly since those orders are prejudicial to Relator and require him to take action by March 28, 2025, this Court should enter an immediate and preliminary writ staying the enforceability of those orders and/or a Preliminary Writ compelling Judge Hilton to immediately vacate them and set them aside pursuant to Rule 74.06 no later than March 27, 2025.

Finally, Relator notes that this Court has the power to transfer this matter to the Missouri Supreme Court itself.  In light of the urgency and importance of the issues of corruption alleged, Relator would expect that it will do so.

### RELIEF SOUGHT

Relator prays this honorable Court for a Preliminary and Permanent Writ Order compelling Judge Hilton to follow the Missouri Supreme Court's mandatory precedent in *Matter of Buford*, 577 S.W.2d 809, and enter an Order transferring the underlying matter to the Missouri Supreme Court for future consideration and action.

Additionally, Relator prays that this honorable Court for a Preliminary and Permanent Writ Order compelling Judge Hilton to vacate and set aside the orders he entered on February 8, 2025, a time at which he lacked any substantive jurisdiction over this matter.  The underlying case is currently within the sole jurisdiction of the Missouri Supreme Court and it merely awaits the administration order formally transferring it to its proper situs and venue.

Electronically Filed - EASTERN DISTRICT OF APPEALS - March 26, 2025 - 12:17 PM

The Missouri Court of Appeals has the power to transfer this matter to the Missouri Supreme Court on its own accord, or, at a minimum, it should enter one or more *preliminary* and permanent writ orders of prohibition.

### WHY A PRELMINARY WRIT(S) SHOULD BE ISSUED

This Court should issue a preliminary writ of prohibition and/or mandamus as Presiding Judge Hilton's February 28, 2025, Orders include and Order that Relator produce certain information to which Respondent is not entitled.

The Order was entered as further retaliation and its **deadline falls on March 28, 2025**. As such, this Court should immediately enter a preliminary writ holding the Order's mandate in abeyance pending further consideration and resolution of this matter

Respectfully submitted,

_____/s/Mathew R. Grant_____

Matthew R. Grant, #50312
1625 Mason Knoll Rd.
St. Louis, MO 63131
T: (314) 412-9112
Email: mattgrant.stl@gmail.com

*Pro Se Relator*

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - March 26, 2025 - 12:17 PM

**NOTARY ACKNOWLEDGEMENT**

State of _Illinois_ )

County of _Sangamon_ )

On this _20th_ day of March, 2025, before me, the undersigned notary, personally appeared Matthew R. Grant, proved to me through identification documents (a Missouri Driver's license), to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

(official signature and seal of notary)

OFFICIAL SEAL
DEANNA JONES
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 07/21/2026