**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| MATTHEW R. GRANT, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| | ) |
| v. | ) |
| | ) No. 4:25-CV-01203-JMD |
| BRUCE F. HILTON, et al., | ) |
| | ) |
| *Defendant.* | ) |
| | ) |
| | ) |
| | ) |

## Memorandum and Order

Matthew Grant, an attorney, lost a custody dispute in state court.  When the state appellate courts rejected his attempts to overturn his loss, Grant repackaged his custody dispute into a sprawling RICO conspiracy and filed this suit.  He then tried to engage in judge shopping, insisting that the Court reassign this case to a "Judge that was nominated by a President from the Democrat Party."  ECF 90 at 17.

The Court has already explained why Grant's initial complaint was "plainly deficient." ECF 22 at 1.  His new complaint is no better.  Because Grant has failed to comply with relevant rules even after a warning and chance to amend, and because his complaint is legally deficient, defendants' motions to dismiss are granted.  The Court also concludes that it is more likely than not that Grant filed (and continued) this litigation for an improper purpose, violating Rule 11.

## Factual Background

This action stems from a child custody dispute in which Grant currently is embroiled. Grant formerly practiced at a large law firm in St. Louis.  He has had problems with

1

alcoholism. ECF 35 ¶¶ 269–70.[1] After the mother of Grant's children argued in state court that Grant had relapsed, Judge Bruce Hilton of the St. Louis County Circuit Court entered a temporary restraining order suspending Grant's custody and visitation rights with his children. *Id.* ¶¶ 162, 165. Grant sought relief from the Missouri Supreme Court and was denied. *Id.* ¶¶ 186–87; *Grant v. Hilton*, SC101040 (April 3, 2025) (summarily denying Grant's writ petition, which alleged that Grant was "hiding in a foreign country" because Judge Hilton was trying to "assassinate" him); *Grant v. Hilton*, SC101140 (June 16, 2025) (similar). He concedes that he filed this suit only because he was unsuccessful in state court. ECF 35 ¶ 145 ("Had the state courts *not* made the conscious choice not to intervene, this lawsuit would never have been filed." (emphasis in original)).

Grant dislikes not only the temporary restraining order, but also other orders entered by the state court. For example, he complains about a security order that Judge Hilton issued months after the state court entered the temporary restraining order. *Id.* ¶192. After a family court commissioner reported receiving what the commissioner said was a suspicious package from Grant, Judge Hilton issued a security order prohibiting Grant from walking around the St. Louis County courthouse without being accompanied by security. *Id.* ¶¶ 193–97.

Grant refuses to accept that these orders were issued in good faith by a judge who agreed with the arguments presented to him. Instead, he thinks the better inference is that Judge Hilton and countless others are involved in a RICO enterprise of "corrupt St. Louis County Family Court Judges, Commissioners, Guardians *Ad Litem*" and a "pool of corrupt family law lawyers intentionally delay[ing] child custody and child support matters in order

---

[1] Because the operative complaint [ECF 29] is sealed, the Court cites an unsealed redacted copy of the complaint [ECF 35] whenever possible.

to, among other things, intentionally inflate attorney fees, Guardian *Ad Litem* fees, unnecessary evaluation fees, and therapist fees, [] to obtain unfair, coerced and extorted monetary settlements." *Id.* ¶ 231.  It gets worse, he says: the whole conspiracy is an attempt to "fund the Missouri Republican party," and it purportedly extends all the way up to the President of the United States.  ECF 90-2 at 6; ECF 90 at 8, 10.  And law enforcement agencies are in on it, too—or are at least tacitly complicit.  He has reported his theories of corruption to law enforcement, issuing emails like this one: "[j]ust when you thought you would get a break from me.  Holy sh*t, I cracked a big one on Friday and another over the weekend, and more are unfolding each hour[.]   PLEASE INVESTIGATE PRESIDING JUDGE HILTON!!!!!!"  ECF 35 ¶¶ 79, 241.  But the FBI, Department of Justice, Attorney General of Missouri, and all others who have received reports of the alleged corruption or were constructively aware of the alleged corruption have declined to investigate.

In support of his RICO theory, Grant asserts that the decisions others have made are inexplicable absent a conspiracy.  First, the state court judge could not have lawfully ruled against him, he says, because the arguments presented to that judge were incorrect.  *E.g.*, *id.* ¶¶ 165–71.  Second, the "only" reason the Missouri Supreme Court could have rejected his arguments is because it is unwilling "to publicly acknowledge the corruption." *Id.* ¶ 189.  And third, as his prime example of "damning evidence," Grant supplies an email from one attorney to another and to a guardian ad litem.  *Id.* ¶ 119.  The 2017 email predates his child custody dispute by many years.  *Id.* at 120.  It discusses court hearing dates for a different case and includes the phrase "buying litigation."  It reads:

> All: From my perspective, we have the October 13th TRO date and subsequent trial dates in November. How wedded are you to the trial dates? It is important that [redacted by Grant] get evaluated since we are buying future litigation. Thoughts? The alternative is [redacted by Grant] who is also a PhD and does a large volume of child evaluations for St. Louis County Juvenile Court.

*Id*. ¶ 119.  Grant declines to accept that the phrase "buying future litigation" was meant to convey the risk that certain decisions in a case may lead to future litigation.  Instead, Grant believes that the confluence of factors reveals that a cabal of at least 70 people plus multiple law enforcement agencies are involved in the "St. Louis Family Court Corruption Organization."  *Id*. ¶ 235, 238.  And even though this "corruption" allegedly has "existed in the St. Louis Family Court for years," *id*. ¶ 113, almost all of Grant's accusations concern his specific child custody case.

### Procedural Background

Grant initially filed a 170-page RICO complaint, suing more than 100 defendants, including a sitting state court judge, the mother of his children, and the State of Missouri.  ECF 2.  The Court *sua sponte* issued an order explaining that the complaint was plainly deficient many times over.  ECF 22.  For example, the complaint included 48 pages of unnumbered paragraphs (contrary to Federal Rules of Civil Procedure 8 and 10(b)), it provided no apparent theory for why sovereign immunity did not apply, and it asked the Court to forcibly expel state court judges from office without providing any explanation for how this Court would have authority to issue such an extraordinary order.  ECF 2 ¶ 133.  The Court also noted that Grant appeared to have filed his sprawling complaint in response to judicial decisions that he disliked that were part of a custody dispute.  That raised the concern that Grant may have filed a deficient complaint for vindictive, improper purposes simply to draw more than 100 defendants into meritless litigation.

After the Court ordered Grant to show cause why he should not be sanctioned, Grant withdrew his initial complaint and submitted an 81–page amended complaint with a total of 515 paragraphs.  ECF 29, 35.  In this operative complaint, Grant sues on behalf of himself, his two children, all others similarly situated, and an LLC he created called Stop Missouri Corruption.  ECF 35 ¶ 8.  He brings this case as a putative class action, asking the Court to

certify a comprehensive class and eleven different subclasses that encompass almost anyone who had any contact with the St. Louis Family Court in the past four years. *Id.* ¶¶ 104–05. He says that he is "just one of the latest victims of [a] RICO enterprise and its pattern and practice of using family court litigation to line the enterprise members' pockets with money stolen from parents through theft by deception and numerous RICO predicate criminal actions." *Id.* ¶ 122. In addition to his RICO claims, Grant brings a claim under § 1983, plus twelve claims based in state law: civil conspiracy, fraudulent misrepresentation, trespass, invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, defamation per se, defamation, tortious interference with contract, conversion, professional malpractice, and unjust enrichment. He has sued over a dozen defendants, including the judge presiding over his custody dispute, the mother of his children, and her law firm. The defendants have moved to dismiss, and Grant has moved for leave to file a second amended complaint.

## Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." One thing a person must do to state a claim is follow the requirements of Rule 8(a)(2), which require that a plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining if well-pleaded factual allegations state a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A plaintiff's allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128

5

(8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  The well-pleaded facts must establish more than a "mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679.

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010), and "grant all reasonable inferences in favor of the nonmoving party," *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009)).  But if a claim fails to allege facts to establish one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted.  *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Although courts must accept all well-pleaded factual allegations as true, they "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Generally, a *pro se* complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Rinehart v. Weitzell*, 964 F.3d 684, 687 (8th Cir. 2020) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  But that leniency applies to nonlawyers, not lawyers representing themselves. *Weimer v. Seterus Inc.*, No. 6:13-CV-03068-BCW, 2014 WL 12634291, at *3 (W.D. Mo. Sept. 18, 2014); *see also Taylor v. Caplan*, No. 4:24-CV-01303-MTS, 2025 WL 2695266, at *1, n.1 (E.D. Mo. Sept. 22, 2025); *United States ex rel. Holmes v. Northrop Grumman Corp.*, 642 F. App'x 373, 379 n.10 (5th Cir. 2016) (per curiam); *Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007).

## Analysis

Grant's amended complaint is no better than his original complaint. It fails for several reasons. The Court declines leave to amend a second time and determines that Grant has engaged in conduct that may justify sanctions.

### I.     The complaint violates Rule 8.

Grant's complaint violates the requirement in Federal Rule of Civil Procedure 8(a)(2) to include "a short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy this requirement, a complaint needs an "adequate summary of the *relevant* facts supporting plaintiff's conclusory allegations." *McAninch v. Wintermute*, 491 F.3d 759, 766 (8th Cir. 2007) (emphasis in original). Grant's 515-paragraph complaint does the opposite. His "convoluted filings" are "neither short nor plain." *Jackson v. Dayton*, No. 17-CV-0880 (WMW/TNL), 2018 WL 3696600, at *2 (D. Minn. Aug. 3, 2018). They are highly disorganized and filled with extraneous commentary and musings such as "[p]laintiff foolishly fell for Defendant Hilton's act, hook line and sinker," ECF 35 ¶ 364, and "[p]laintiff was dumbfounded but it all makes sense now," *id.* ¶ 344.

His complaint is exceedingly difficult to follow and includes allegations that have no apparent relation to each other. Why, for example, is it relevant that his sister allegedly removed his wine collection? *Id.* ¶ 470. Grant never explains, but he includes a count and thirteen paragraphs against his sister, Sarah Grant.

Grant also fails to logically arrange his complaint. For example, he appears to provide ten different potential predicate acts for his RICO count, *id.* ¶ 375, with facts for each sprinkled throughout the preceding 368 paragraphs. But "[j]udges are not like pigs, hunting for truffles buried in briefs," and neither are defendants. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Complaints must address "specific claim[s] or event[s] in a logical and coherent manner, with a clear connection to the legal claims asserted." *Ware v. Precythe*,

7

No. 4:25-CV-00488-SRW, 2025 WL 1663995, at *2 (E.D. Mo. June 12, 2025).  Grant has not done so.  And as an attorney who repeatedly touts his legal acumen, he is not entitled to the leniency often afforded to nonlawyers who file *pro se.*

Because Grant incorporates by reference 368 paragraphs of allegations into every claim, the Court would have to disentangle his allegations and separate the claims that warrant genuine review from those that do not.  The Court will not allow Grant to "shift onto the defendant and the court the burden of identifying [his] genuine claims [if any] and determining which of those claims might have legal support." *Sagez v. Glob. Agr. Invs., LLC*, No. 11-CV-3059-DEO, 2015 WL 1647921, at *4 (N.D. Iowa Apr. 14, 2015) (cleaned up).  Complaints that are "needlessly long and confusing" or that contain "lengthy, irrelevant, and largely incomprehensible factual allegations" violate Rule 8.  *Mangan v. Weinberger*, 848 F.2d 909, 911 (8th Cir. 1988) (first quote); *McAninch,* 491 F.3d at 766 (second quote).  "Courts may dismiss excessively wordy complaints because they make it difficult for the defendant to file a responsive pleading and make it difficult for the trial court to conduct orderly litigation." *Iverson v. City of Brooklyn Ctr.*, No. 23-CV-917 (NEB/LIB), 2024 WL 3178041, at *1 (D. Minn. Mar. 11, 2024) (cleaned up), *aff'd,* No. 24-2691, 2024 WL 5415776 (8th Cir. Oct. 16, 2024).  Courts cannot be expected to save cases by sifting through "rambling, and sometimes incomprehensible" pleadings. *See Fuentes v. Chavez*, 314 F. App'x 143, 145 (10th Cir. 2009).

These deficiencies are especially problematic because of the scale of Grant's allegations and the scope of his proposed discovery.  "[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Twombly*, 550 U.S. at 558 (cleaned up).  Grant asks the Court to certify a "Comprehensive Class" for "[a]ll individuals over the age of 18 that were parties in a St. Louis Family Court matter filed in the 21st Circuit Court of the State of Missouri and

in which the individuals were adversely impacted by the RICO enterprise alleged in this case." ECF 35 ¶ 104. He requests no fewer than eleven subclasses, including a "Motion for Change of Judge for Cause Subclass" that includes "[a]ll individuals over the age of 18 that were parties in a St. Louis Family Court matter in which he/she filed a Motion for Change of Judge [] *for Cause* pursuant to RSMo. § 508.090 et seq. and that were adversely impacted by the RICO enterprise alleged in this case," and a "Bruce Hilton Subclass" that includes "[a]ll individuals over the age of 18 that were parties in a St. Louis Family Court matter in which Child Custody was at issue and in which Defendant Presiding Judge Bruce Hilton was the assigned judge, and that were adversely impacted by the RICO enterprise alleged in this case." *Id.* ¶ 105. The "potential expense" here is "obvious enough." *Twombly*, 550 U.S. at 559. Courts must "tak[e] care to require allegations that reach the level suggesting" a viable claim so that parties are not needlessly subject to a "potentially enormous expense of discovery," especially in cases with "no reasonably founded hope that the discovery process will reveal relevant evidence." *Id.* (cleaned up).

The Court has already warned Grant that the "difficult-to-follow narrative" in his first complaint was an "apparent violation of Rule 8" and gave him a chance to course correct. ECF 22 at 1–2. Grant's amended complaint does not fix the issue. Rule 41(b) allows a court to dismiss "[a] complaint which fails to comply with Rule 8 . . . with prejudice . . . after allowing time to file an amended complaint." *Mangan*, 848 F.2d at 911. Rule 41(b) also provides that if a plaintiff fails to comply with the rules, a defendant may move to dismiss the action. Defendants have done so here. ECF 53 at 6; ECF 55 at 7; ECF 71 at 8–9; ECF 87 at 8; ECF 102 at 6. Grant has been warned and given time to file an amended complaint. His amended complaint still fails to follow Rule 8 and is thus dismissed.

9

## II.    Grant's federal claims are not plausible.

Complaints must be more than logical and legible; they must also be plausible. *Iqbal*, 556 U.S. at 678–79. A complaint must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (cleaned up). Plaintiffs with "largely groundless claim[s]" are not allowed to "take up the time" of the defendants. *Id.* at 558 (cleaned up). Having thoroughly reviewed Grant's pleadings, the Court concludes that Grant's claims are not plausible.

In one of many paragraphs that bring to mind the phrase from Hamlet that "[t]he lady doth protest too much," Grant insists that "[t]his case does not involve fanciful or untrue allegations." ECF 35 ¶ 151. The Court disagrees. Based largely on unfavorable court rulings in state court, several people declining to launch investigations, and an unrelated email taken wildly out of context, Grant infers a massive RICO enterprise called the "St. Louis Family Court Corruption Organization" that seeks to increase attorney and guardian ad litem fees by intentionally delaying child custody and support matters. *Id.* ¶¶ 231–38. Everyone involved in his own child custody case is alleged to be "in" on the scheme, including the mother of his children and his sister. It is highly unlikely that 70 people, including sitting state judges, are involved in a RICO scheme designed to defraud citizens of their money by prolonging litigation in St. Louis state courts. Without more than what is alleged here, it is certainly not more than a "sheer possibility." *Iqbal*, 556 U.S. at 678. Grant ignores the "obvious alternative explanation," *Twombly* 550 U.S. at 567, that the state court judge had sound reasons to rule against him and that everybody has ignored his calls for an investigation because those calls are baseless.

Consider the "buying future litigation" email that he highlights. Grant uses this unrelated email from a case predating his case by several years to "prove" that there was a scheme by officials to increase family court costs. ECF 35 ¶¶ 119–20. But he ignores that

10

the expression is a colloquial phrase meant to convey that some litigation decisions will predictably create future litigation. *See, e.g.*, *Medinol Ltd. v. Guidant Corp.*, 500 F. Supp. 2d 345, 355 (S.D.N.Y. 2007) ("[I]n agreeing to the product restriction now urged . . . Abbott would be buying a future litigation. . . . [and] would face a new patent infringement suit every time it developed a new generation of the V/X stents."); Br. for Appellants, 1972 WL 137565, at *46, *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973) ("Thus a state that adopted 'district power equalizing' as a response to a decree of the sort entered below would at best be buying future litigation."). While the Court must accept the email's content as true at this stage of litigation, it need not accept Grant's implausible "*characterization* of those facts." *Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 286 (3d Cir. 1995) (emphasis in original). This Court "is not required to accept [] wildly implausible factual scenarios when deciding a motion to dismiss." *Lacy v. Gray*, No. 4:13-CV-370-RWS, 2013 WL 3766567, at *7 (E.D. Mo. July 16, 2013).

It is true that a "judge's disbelief of a complaint's factual allegations" alone does not justify dismissal. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). But there is a difference between dismissing a case that is plausible (if unlikely) and dismissing a case whose allegations establish nothing more than "sheer possibility" of misconduct. *Iqbal*, 556 U.S. at 678. The Eighth Circuit has consistently rejected "attempts to convert ordinary civil disputes into RICO cases." *Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1029 (8th Cir. 2008); *see also UMB Bank, N.A. v. Guerin*, 89 F.4th 1047, 1054 (8th Cir. 2024); *Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 822 (8th Cir. 2015). This Court rejects Grant's attempt to turn an ordinary custody case into a massive RICO conspiracy, especially where Grant has conceded that he brought this lawsuit only because his efforts in state appellate courts were unsuccessful. *Cf.*, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,

11

544 U.S. 280, 284 (2005) (stating that federal district courts generally cannot hear cases "brought by state-court losers complaining of injuries caused by state-court judgments").

### III.    The complaint fails to state a claim under 42 U.S.C. § 1983.

In addition to his RICO claim, Grant pursues a claim under § 1983, asserting that the defendants violated the Free Speech Clause in the First Amendment and also violated procedural and substantive due process.   This claim fails for all the reasons already described—the allegations are hazy, poorly organized, and implausible—plus more.

Grant cannot so easily evade judicial immunity.   A judge who issues an order "is immune from suit, including suits brought under section 1983 to recover for alleged deprivation of civil rights, in all but two narrow sets of circumstances." *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012).   "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity.   Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Just. Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 760 (8th Cir. 2019) (citation omitted).   Grant asserts that Judge Hilton lacked jurisdiction because Grant had filed a motion for a change of judge.   ECF 35 ¶ 200.   Under Missouri law, a judge loses jurisdiction to do anything other than to "transfer the case" when faced with a valid, timely motion to change judge. Mo. S. Ct. R. 51.05.   But Grant filed the change of judge motion months *after* Judge Hilton's temporary restraining order rescinding custody.   *Id.* ¶ 200.   And although Grant filed the change of judge motion before Judge Hilton's security order, Rule 51.05, by its plain text, applies only to a "case" that could go to "trial."   It does not apply to miscellaneous matters not part of a traditional, triable case, such as orders concerning courthouse security.

Defendant Fenley, the guardian ad litem, also cannot be sued for violating § 1983.   A guardian ad litem does not act "under color of state law." *Collins v. Bern*, No. CIV. 04-4182-

12

KES, 2006 WL 8453547, at *3 (D.S.D. Aug. 30, 2006) (collecting cases). So a guardian ad litem is not a proper defendant in a claim brought under § 1983.

### IV.    The Court denies leave to amend.

Because Grant has already amended his complaint, *see* ECF 29, he "may amend [his] pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The opposing parties have denied consent, arguing that Grant's proposed second amended complaint "amount[s] to nothing more than additional legal conclusions, formulaic recitations of the elements of asserted claims, or facts that do not otherwise form the basis of a cause of action against Defendants." ECF 120 at 5; *see also* ECF 116; ECF 117. So Grant requires the Court's leave to amend his complaint. Although "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), "denial of leave to amend may be justified by undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party," *United States ex rel. Joshi v. St. Luke's Hosp., Inc.,* 441 F.3d 552, 557 (8th Cir. 2006) (citation omitted). The Court concludes that justice does not require leave to amend.

As the defendants correctly argue, amendment would be futile. Grant's proposed second amended complaint contains 307 introductory paragraphs before getting to Count I. It is as haphazard as his current complaint. It reduces his fourteen-count complaint by just one, to thirteen counts. ECF 114-1 at 72. He adds many legal conclusions, including: "[t]he RICO Defendants and the RICO enterprise are separate," ECF 114-1 ¶ 106; "[t]he RICO enterprise utilizes a standard set of pattern and practices to, among other things deceive and defraud parents in at least the St. Louis County Family Court, and it has both closed-ended and open-ended continuity," ¶ 108; and "[e]ach RICO defendant acted corruptly, via prohibited means and with criminal intent, and their knowing and intentional actions satisfy each element of each predicate act at issue," ¶ 314. But adding legal conclusions does nothing

13

to avoid dismissal. *Burdunice v. Mjanger*, No. 25-CV-4276 (JRT/DJF), 2026 WL 474618, at *2 (D. Minn. Feb. 19, 2026).

Grant also adds new facts, but none of these allegations transform the overarching alleged RICO conspiracy into something plausible. He includes a number of allegations about surveillance. He asserts that he was stalked by private investigators "on at least February 9th, 16th, 17th, 20th, 21st, 23rd, 2025," that he was stalked and surveilled "inside various establishments, including eavesdropping," and that he "will present the testimony of an FBI credentialed Missouri licensed attorney to confirm this allegation." ECF 114-1 ¶ 119. He vaguely asserts that the "RICO enterprise uses misrepresentations by private investigators who claim to be official law enforcement officers, including but not limited agents of the Drug Enforcement Agency (DEA)." *Id.* Grant submits photos of a warning on his laptops that states "[i]f you restart now, you and any other people using this PC could lose unsaved work"; he argues this computer warning is an example of "[i]llegal accessing victim cellular phones, laptops and tablets (wiretapping)" and notes that this was no mistake, as "[t]he RICO enterprise often makes its access to electronic devices known to its victims, as it did to Plaintiff Grant via his iPhone, to increase intimidation and that action was solely motivated to and did cause medically diagnosable emotional distress." *Id.* None of this makes the RICO conspiracy plausible, even if Grant is experiencing something that is medically diagnosable.

Grant also contends that one of the defendants plus members of the alleged RICO enterprise who have not been sued use the same mortgage company for their home financing or are connected to the same unnamed nonprofit. ECF 114-1 ¶ 122. Grant assesses several defendants' home values and lists a defendant's salary. *Id.* To Grant, this is all evidence of money laundering in connection with the RICO scheme. *Id.* Again, nothing he alleges undermines the "obvious alternative explanation[s]," *Twombly* 550 U.S. at 567, or pleads more than a "sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678.

14

Grant also tries to add allegations of an unrelated custody case involving child abuse, asserting that "[t]he RICO enterprise places minor children in custody of known abusers to generate the fees the competent, non-abusing parent(s) will inevitably spend in an ongoing and often failed effort to protect their child(ren) and remove them from their abusers' custody."  ECF 114-1 ¶ 118; *see also* ¶ 134.  It appears that he is trying to turn his "own idiosyncratic disputes . . . into a RICO claim by linking those officials to isolated events from other years."  *Gott v. United Parcel Serv., Inc.*, No. 3:24-CV-00052-SHL-HCA, 2025 WL 3516796, at *8 (S.D. Iowa Nov. 4, 2025).  He also provides more details about specific interactions with his sister, the mother of his children, his attorneys, and others regarding his custody case.  None of these scattershot details persuades the Court that the facts allege a plausible RICO violation.  Indeed, as with the operative complaint, the proposed new complaint is scattershot with unrelated allegations, with no connective thread between them.

The third complaint would add a new law firm defendant to the claim under § 1983 "due to its failure to properly supervise and train its member John Fenley who caused the constitutional violations at issue" and for "knowingly approv[ing of] and participat[ing] in Fenley's actions."  ECF 114-1 ¶¶ 331–32.  But Fenley cannot be liable, as he did not act under color of state law.  *See supra* Section III.  So the law firm cannot be liable for failing to supervise and train or for supposedly knowing or approving his actions (of which Grant provides no supporting facts, just a bare conclusion).  *See also Shulz v. Long*, 44 F.3d 643, 650 (8th Cir. 1995) (explaining that liability for failure to train does not apply in claims under § 1983 when there is no underlying violation).

Allowing this amendment would be futile.  Grant "has already amended [his] complaint to no avail" so the Court "will not allow [him] a third bite at the apple."  *Mendota Elec., Inc. v. Fair Contracting Found.*, 144 F. Supp. 3d 1053, 1058 (D. Minn. 2015).

There are more reasons to deny Grant leave to amend his complaint. Grant has had ample opportunity to plead properly. "A district court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (citation omitted). The Court already put Grant on notice of the serious deficiencies in his case. Although he corrected some of those deficiencies in his amended complaint, many more remain. Pleadings are not a game of whack-a-mole where a plaintiff gets a do-over every time somebody identifies a problem with the complaint. Grant has already failed to cure deficiencies. He is not entitled to further amendment.

That is especially true because Grant's case appears motivated by bad faith. When he filed this case, Grant certified that the case was "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). But improper purpose appears to be exactly his motive. Although Grant purports to have identified a vast conspiracy, nearly all the allegations in his complaints concern his particular custody case. This case is an improper attempt to repackage a custody dispute into a federal RICO case. Grant has forthrightly acknowledged that the only reason he brought this case is because he failed to obtain relief from state appellate courts. ECF 35 ¶ 145.

The effect of Grant's actions has been to impose costs on people who have disagreed with him in other litigation. Grant, an attorney, knows that having to respond to a lawsuit is costly, even when the suit (as here) is frivolous. It is only because of this Court's early, *sua sponte* intervention that the defendants were spared even more expense. But after a clear warning from the Court, Grant's second complaint is little better than his first and still forces

16

more than a dozen defendants to undertake the expense of responding to a patently deficient lawsuit. The Court determines, by a preponderance of the evidence, that this suit has been filed for the improper purpose of harassing and imposing costs on others.

Other aspects of the litigation reinforce the Court's conclusion that Grant has litigated in bad faith. To take one example, he moved to strike a brief for exceeding the length for briefs by 3 pages, contending it was "untenable" for him to respond. ECF 95 at 1. But it was Grant who filed an 81-page disorganized complaint. Grant's contention cannot be taken seriously. Similarly, in a naked attempt at judge shopping, Grant submitted a patently deficient motion to disqualify the judge assigned to this case and insisted that the Court reassign this case to a "Judge that was nominated by a President from the Democrat Party." ECF 90 at 17. Grant already received a warning from this Court, including a sanctions warning, about his conduct. He is not entitled to repeated amendments.

## V.    The Court declines supplemental jurisdiction over Grant's state law claims and denies the motion to seal pleadings.

Even if the complaint had not violated Rule 8, the Court would decline to exercise supplemental jurisdiction over Grant's state law claims because his federal claims fail. *See* 28 U.S.C. § 1367(c)(3); *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 31–32 (2025) (explaining that if a district court "has dismissed all claims over which it has original jurisdiction. . . . the court may (and indeed, ordinarily should) kick the case to state court" (cleaned up)).

## VI.    The parties may brief what sanctions, if any, the Court should levy.

Having determined that Grant has brought this lawsuit for an improper purpose, the Court will entertain briefing from the defendants about what sanctions, if any, would be appropriate under Rule 11 or the Court's inherent authority. Within 14 days of this order, the defendants may file a single, consolidated brief suggesting sanctions. Grant may file a

17

single consolidated response within 14 days of the defendants' brief.  The defendants may file a consolidated reply.

**Conclusion**

**IT IS HEREBY ORDERED** that defendants' motions to dismiss, ECF 50, 52, 54, 70, 84, 86, 101, are **GRANTED** with prejudice.   **IT IS FURTHER ORDERED** that Grant's motion for leave to file second amended complaint, ECF 114, is **DENIED**.  **IT IS FURTHER ORDERED** that Defendant Maia Brodie's motion to seal or redact pleadings filed by plaintiff, ECF 118, is **DENIED** because the information requested to be sealed does not meet the standards of Local Rule 13.05.   **IT IS FURTHER ORDERED** that the motion to intervene, ECF 128, is **DENIED**.

Dated this 23rd day of April, 2026

JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE
FOR THE EASTERN AND WESTERN
DISTRICTS OF MISSOURI