IN THE CIRCUIT COURT OF
ST. LOUIS COUNTY MISSOURI

| | | |
|---|---|---|
| *In Re the Matter of:* | ) | |
| | ) | |
| MATTHEW R. GRANT, | ) | |
| | ) | Case No. 12SL-DR03959-02 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Division 36 |
| | ) | |
| C.M.G. et al, | ) | |
| | ) | |
| Respondent. | ) | |

## PETITIONER MATTHEW R. GRANT'S VERIFIED EMERGENCY MOTION, AFFIDAVIT, AND APPLICATION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION AGAINST MAIA BRODIE, ELIZABETH CARTHEN BISCAN, REBECCA A. COPELAND, C. CURRAN COULTER, DZENANA DELIC, MAT G. EILERTS, JOHN FENLEY, LAWRENCE GILLESPIE, LAURA GILLMAN, SARAH GRANT, COMMISSIONER MARY W. GREAVES, STACI THOMAS, AND ELAINE PUDLOWSKI AND, IN THE ALTERNATIVE, EMERGENCY MOTION FOR ENTRY OF *EX PARTE* ORDER OF PROTECTION

COMES NOW, Petitioner Matthew R. Grant ("Petitioner" or "Father"), pursuant to

Missouri Rule of Civil Procedure 92.02(b) and Rule 74.06(b)(2), and files this Verified

Emergency Motion, Affidavit, and Application for *Ex Parte* Temporary Restraining Order,

Preliminary Injunction, and Permanent Injunction against Maia Brodie, Elizabeth Carthen

Biscan, Rebecca A. Copeland, C. Curran Coulter, Denzana Delic, Mat G. Eilerts, John Fenley,

Lawrence Gillespie, Laura Gillman, Sarah Grant, Commissioner Mary W. Greaves, Staci

1

**Exhibit G**

Thomas, and Elaine Pudlowski, and, in the alternative, Emergency Motion for Entry of Ex Parte

Order of Protection ("Motion for *Ex Parte* TRO and Motion for *Ex Parte* Order of Protection").

In support of this Motion for *Ex Parte* TRO and Motion for *Ex Parte* Order of Protection,

Petitioner states:

1. This Motion seeks this Court's **immediate** ex *parte* assistance in protecting the

   Children at issue in this case.[1]

2. This Court is faced with a two-fold analysis.

   a. First, is this matter properly before this Court on an *ex parte* basis; and

   b. Second, what sort of very temporary relief should be granted.

3. As noted below, because any aggrieved party and attempt to dissolve the TRO

   Petitioner seeks upon twenty-four (24) hours notice, this Court should enter broad,

   sweeping protection for the Children, and Petitioner.

4. Petitioner will address each of these issues in turn although there is significant

   overlap.

_____

[1] As discussed below, this Motion *also* seeks protection for the Petitioner himself. However, that request is secondary and subordinate to what this case is really about - the Children in this case. What this case has always been about. The Children. That is what matters. They have had no voice speaking up for them to an unbiased judiciary since this matter was filed. *Only now*, does Petitioner have a forum to obtain help for them. He is *now pro se*. He has no crooked lawyers to act an obstacle. And the crooked Commissioner recused under false pretenses – which will be discussed below.

As will be *critically discussed here*, the assistance needed for the Children is *more urgent* than even Petitioner could have imagined, or he would have made this request before the Court when many of the relevant parties were physically present before this Court on January 21, 2025, at 1:30 p.m. The actions of the relevant parties on January 24, 2025, are frightening.

## I. This Motion Is Properly Before This Court Without Notice:

1. Rule 92.02(b) expressly provides that this Court is expressly authorized to consider this Motion and grant the requested relief *without any prior notice* to those to be restrained by the Court's Order.

2. As discussed below, allowing the retrained individuals prior notice of this request will absolutely *defeat* the purpose of the Order. *See* Rule 92.02(b)(1).

3. The actions that have transpired in this case, and particularly those since the January 21, 2025, hearing in this matter, make it clear that the Children in this case are in immediate and extreme danger.[2]

4. When this Court considers what transpired on January 21, 2025 – it will be abundantly clear.

5. Petitioner believes that this Court recognizes that the Children in this case have suffered and are currently suffering as a result of the corruption and despicable 'parenting,' including, but not limited to the individuals expressly listed in this Motion.[3]

6. This case is now about the actions of crooks after they are caught.[4] This case is about, in its most focused sense, about what one crook and perjurer - who is the

---

[2] Petitioner has no fear of sanctions under Rule 92.02(b)(6).

[3] Petitioner notes that Mr. Coulter billed Petitioner *more than $11,000* for his time spent, among other things, reviewing the *entire file* between November 22, 2024, and December 8, 2024. He billed Petitioner *another $7,806.00* on January 9, 2024, for time spent by him and others at his firm between December 9, 2024, and January 3, 2025. With another smaller invoice, Mr. Coulter and his firm billed Petitioner more than **$18,800** for what should have been a small task – depose Staci Thomas. Notably, Mr. Coulter and his firm is still trying to collect some of the unpaid and alleged "owed" attorney fees from Petitioner.

[4] The bad actors, whomever they may be, and they all are not yet known, will attempt to assassinate Petitioner's reputation. No doubt about that. Upon information and belief, such actions are being directed by one or more criminal defense attorneys.

Children's mother - is capable of doing in light of her ongoing unstable mental condition.

7. Let Petitioner explain.

8. After the Court's statements as Presiding Judge of the 21st Circuit in Division 13 on January 21, 2025, Petitioner reached out to three (3) individuals.

9. Petitioner firmly demanded an immediate agreement to 50/50 custody that he sent via email to Ms. Brodie and Mr. Fenley as is discussed and addressed in his January 24, 2025, Motion Discharge Mr. Fenley and for Sanctions.

10. However, Petitioner did not stop there. Petitioner reached out *directly to the mother* of his Children as well!

11. What did he say? Well, per the existing Court order, Petitioner only communicates via Our Family Wizard (OFW) so what he said is documented:



**Exhibit A.**

12. Do you see it? Even after all that Ms. Rebecca A. Copeland has done to her own Children and Petitioner, Petitioner still recognized that she, even though she is crook that he hopes she is prosecuted criminally, she is still the mother of his Children!

13. Petitioner's Children will always view Ms. Copeland differently than will Petitioner. He has and will always recognize that. Again, their best interests come first. His desire for vengeance against her must yield as appropriate to his Children's best interests and their need for *appropriate* contact with their mother.

14. If it weren't for his Children, Petitioner would demand Ms. Copeland be locked up and the key – it would not just be thrown away.

   a. Petitioner would personally run that key through a metal shredder.

   b. He would take those individual shreds and melt each one down.

   c. He would then bury each individual metal nugget at separate and far ends of the earth.

   d. He would, he really would, do each and every one of these things.

15. But no. Here again. Petitioner only cares about one thing: **What is in the best interests of the Children.**[5]

16. How do you know the January 23, 2025, OFW message to Ms. Copeland was sent from a man with a pure heart that was actually putting his Children's interests above his own?

17. We can look at what Petitioner previously sent Ms. Copeland for additional evidence.

18. Before jumping into Petitioner's time machine, he notes the difficulty of resisting ridiculing Ms. Copeland daily for what she has done to her one Children.

   a. These Children came from her womb. It is impossible to understand.

   b. Maintaining some sense of civility with that woman has been about the hardest thing Petitioner has ever had to do.

---

[5] This delicate balance will be an ongoing task that cannot be accomplished in this Motion. Petitioner has already been giving this substantial thought and he believes he has the correct solution.

19. Now, let's close the time machine door, and go back to December 23, 2024 and see what has transpired between that date and today. This is important because this is ***not reflected on the Court docket***.

    a. On December 23, 2024, at 1:11 p.m., Petitioner made his first <u>submission</u> of his Motion to DQ Commissioner Greaves and for Change of Judge for Cause:



**Exhibit B.**

20. You see, Petitioner controlled the timeline of events after December 2, 2024. Missouri law provided him with no deadline for his written version and supplement to his oral Motion to Change of Judge for Cause and to DQ Commissioner Greaves.

21. The first thing Petitioner did was to research when he needed to file a written Motion and/or notice his request for hearing. Missouri law gave him time and no firm deadline.

    a. *GeeWally*: "It looks like Every . single . move . was . carefully . planned!

    b. Wally to Beaver: "Of course it was, Petitioner is no fool."

6

22. It wasn't January 3, 2025, that Petitioner dropped his ***bomb of accountability*** on the crooks in this case.

23. Oh no!

24. He flew the Enola Gay and dropped *Little Boy* on December 2, 2024. Three weeks later, on December 23, 2024, Petitioner took off in Bockscar and flew to the same target - and he dropped *Fat Man*.[6]

    a. Unfortunately, the December 23, 2024, submission lacked case numbers on a few exhibits, so Petitioner scrambled to get it corrected and refiled it on December 24, 2024, Christmas Eve! **Exhibits C and D.**

25. You see, Petitioner wanted to be sure his carefully wrapped present was there ready and waiting for these crooks ***on Christmas morning***!

26. That's right, Petitioner is **NOT** to be Trifled with!

27. These crooks forced his Children to suffer in the sole custody of a mentally disturbed and criminally negligent parent for over ten (10) months!

28. What did you think Petitioner would be serving? Warm soup?

    a. Ice cold revenge is all that is on the menu.

29. Not convinced?

30. Consider how *absolutely savage* it was for Petitioner to sit and wait until January 7, 2025, at 1:08 p.m. to file his Supplement and Amendment by Interlineation to his Motion to DQ Commissioner Greaves. **Exhibit E.**

---

[6] For non-lawyers that may someday read this, when a filing is "submitted," the other attorneys of record can see what was submitted by the filing attorney, but it does not yet appear on the court's formal docket until the later date when it is "accepted" by the Court.

7

31. Did the crooks really think that Petitioner had nothing more than what was in his December 24, 2024, filing?

32. It was with a sense of pride that Petitioner saw Ms. Elizabeth Curran Biscan's withdrawal *filed by Ms. Brodie* hit his inbox the next morning, January 8, 2025, at 11:35 a.m.[7] **Exhibits F and G**.

33. Petitioner now understands why the Memorandum of Withdrawal says that Ms. Biscan left the Brodie Law firm, but she is still on the website that was taken down and republished on the web again.[8]

    a. As will be discussed below, it is the criminal defense attorneys that are driving the bus now.

    b. These crooks handed over the wheel and are sitting in the back shaking. Some of the best criminal defense attorneys in St. Louis are providing privileged guidance now. But not all of these crooks hired the best.

        i. Again, the only destination for their bus of corruption is the glorious City of Reasonable Doubt.

            1. Its population? 0.

        ii. Will they reach their destination? Nope.[9]

---

[7] Notably, Ms. Brodie surely trained Ms. Biscan, after she worked for … wait…. wait for it… Elaine Pudlowski's firm as a part-time clerk and full-time associate for 2 years and 6 months! https://www.linkedin.com/in/elizabeth-carthen-biscan-ab4361302/ The very same Elaine Pudlowski that served as the mediator in this case and knew exactly the timeline at issue and how the Children were suffering from the March 12, 2024, and through today. What a coincidence.

[8] There is a criminal defense attorney somewhere in the St. Louis area pulling his/her hair out because of that move.

[9] Petitioner has considered whether the possible unsealing of this Motion will be used by some of the best criminal defense lawyers in town, or from out of town, to attempt to change the venue of any criminal trials. He has given that much thought. After much consideration, Petitioner has no fear that any such motion will be granted. Petitioner is making no argument now different than what the prosecuting

8

34. And here's the thing for the Court and any readers to consider ... how does Petitioner know that some of the best criminal defense attorneys have already been hired by these crooks?

    a. Because Petitioner tried to hire one of them himself to assist him if these crooks pulled off their plan to put Petitioner in jail based upon a string of lies.

    b. To be clear, Petitioner never thought that Presiding Judge Hilton would fall for this obvious trick.

        i. But what if Rebecca A. Copeland, Commissioner Greaves, Maia Brodie, John Fenley and Mat Eilerts, etc. would have all appeared before a different judge on or before January 24, 2025 (or even after), and somehow appeared and swore to the ongoing string of lies, and they obtained a finding of civil contempt and an order of arrest from another – let's say "sympathetic" judge, what situation would Petitioner found himself in?

        ii. Or what if this gaggle of crooks appeared at a police department ready to swear to and file charges? Would Petitioner have been arrested for a crime he never committed?

            1. Petitioner surely lived, and less so now lives, in fear of improper imprisonment.

_____

attorney will make at trial.

9

c. Petitioner can't wait to learn what actually transpired on at least January 24, 2025, but this Court can be sure that Petitioner went to great lengths to protect himself.

    i. And that included trying to line up counsel knowledgeable of how to finalize the Emergency Petition for *Writ of Habeas Corpus* that Petitioner had been drafting (*see* Rule 91.02 and 28 U.S.C. § 2254), and someone knowledgeable on how to quickly have it heard and granted.

        1. You see, Petitioner has committed no crime.

        2. But only a criminal defense attorney knows best how to protect the innocent![10]

d. Just like when he hired, and still hires, personal security to protect him from those who's judicial and/or legal careers are soon to be over, and those that have their rights of freedom now in jeopardy.

e. Setting the foregoing cathartic rant aside, and back to the criminal defense attorneys running the show now, Petitioner's contacts proved that they were already conflicted out for sure! Why?

    i. Because some of the best, some that Petitioner knows personally from white collar and other high dollar, bet the company, civil litigation, never even returned his call or replied to his email(s).

---

[10] There you go St. Louis criminal defense attorneys; you can each buy me a club soda next time you see me out and about – way down the road! Petitioner doesn't pander for support. He is no politician. This is a 100% truthful statement.

10

35. Back inside folks, let's get this time machine dial set for January 2, 2025.[11]

36. On that date, Petitioner sent the following OFW message to Rebecca A. Copeland:[12]



**Exhibit H.**

37. Right there, twenty-five (25) days ago, after the Motion to DQ Commissioner

Greaves was submitted and seen by her counsel Maia Brodie, Petitioner emphasized

---

[11] As Petitioner will explain, Ms. Copeland has never allowed a single accommodation. First, she told the Children that only Commissioner Greaves could allow the boys more time with Petitioner. Second, then, she changed her story and claimed that only Mr. Fenley could approve more time. Third, she told C.M.G. very recently that she was still scared for their safety when they came to Petitioner's house one (1) overnight a week. C.M.G. even relayed to Petitioner that he had asked his mother, Ms. Copeland, why she is scared when he knows and observes his father blow into a breathalyzer multiple times a day! That led to Ms. Copeland's fourth story that she finally landed on; she told at least C.M.G. that her lawyer would not allow her to agree to more time.

It is simply astonishing the lengths to which Ms. Copeland has gone and to which she will still go to make the Children suffer just to make Petitioner suffer. That, ladies and gentlemen, is *intentional ruthlessness*. Is that also, in part, mental illness? Ms. Copeland's criminal defense attorney may surely argue that. But that is one heck of a Catch-22 that Ms. Copeland's criminal defense attorney will have to address. If she is mentally ill, she cannot be trusted with any unsupervised custody of the Children even after any jail or prison time. If it was just pure evil and intentional conduct, Ms. Copeland is looking at a longer jail or prison sentence. Pick your poison Ms. Copeland! But choose wisely - C.M.G. is only thirteen (13) years old and C.L.G. is fifteen (15) years old. What a dilemma criminals find themselves in every single day. Entitled to sympathy, empathy or pity, are they? Petitioner think's not!

[12] When the Court reviews the exchanges regarding the snowstorm on January 5, 2025, please note that, as predicted, Ms. Copeland violated the Court order and refused to allow Petitioner to pick up the Children for his four (4) hour visit. The reason? Because they might get snowed in at Petitioner's house! Petitioner has it on an audio recording! Of course, he does.

11

to Ms. Copeland that the *jig was up* and that it was time to **surrender** and stop

making things *worse on herself.* *Id.*

38. After everything, Petitioner tried to toss Ms. Copeland a lifeline!



39. Did she grab it?

40. Nope.  She let it float right by.

41. Did Petitioner rejoice that Ms. Copeland was too naïve to listen?

42. Did Petitioner give up and just unleash continuous furry on the woman that deserved

it?

    a.  Or did he put his Children's interests first?

43. Off to the time machine … ok, that is a tired metaphor now …

44. Let's look at what OFW message Petitioner sent on January 10, 2025, when Ms.

Copeland tried to argue that C.M.G. did not miss an entire session of indoor soccer

last Spring while in Respondent's sole custody due to Petitioner's brief, out of state,

non-vacation:



**Exhibit I** (attachment redacted to remove minor names).

45. Wake up! Petitioner tried to shout! "**You need to wake up to reality to how bad your situation really is.**" *Id.* (emphasis added).

    a. "...**your situation is very very bad now.**" *Id.* (emphasis added).

46. Petitioner all but begged Ms. Copeland to think of the Children, do what is right and save herself from worse consequences too.

47. Any luck? Nope. Nothing. Nada.

48. Fast forward to January 13, 2025:



**Exhibit J** (attachment redacted to remove minor names).

49. Ok, a bit aggressive. Sure. This moment was a long time coming and the situation was unbelievable.

    a. The point was that Ms. Copeland needed to understand that the house of cards had crumbled. Stop the insanity!

    b. There was insanity!

    c. The Children had a ½ days at school that week and they were going to Petitioner's home at 3:00 p.m. on January 15th and 16th per the Interim Consent Order anyways.

    d. Why wouldn't Ms. Copeland just let them ride the bus home from school on those days and give them a few extra hours with their father?[13]

        i. It is because Ms. Copeland has never and will never put the Children's best interests first. Never.

            1. Not only will she not agree to any extra days. Oh no. But on ½ days when Petitioner has them beginning at 3:00 p.m., not a single extra minute with their own father by allowing them to ride the bus to their father's house – their primary legal residence!

            2. It gets worse!

            3. Ms. Copeland doesn't even live in the Children's school district. So she did ***not*** just demand the boys to take the bus to her house instead.

---

[13] In another instance, Ms. Copeland made the Children leave their own home with father at 8:00 p.m. and sleep down the street as Ms. Copeland was traveling out of town. She refused to allow them to sleep in their own beds! They were already there up to 8:00 p.m. and they had school the next day.

4. Oh no!

    a. She literally made two (2) separate drives to two (2) separate schools at two (2) separate times of day just to keep the Children from a little a more time with their father.

        i. That is a mentally unsafe and dangerous individual.

50. Jump forward again, to January 16, 2025. This is just unbelievable. The Children were to stay overnight with Petitioner per the operative Consent Order.

51. Upon their arrival, C.L.G. advised Petitioner that their mother, Rebecca A. Copeland had agreed to allow them to sleep in the next morning since they had no school.

    a. As such, Ms. Copeland told C.L.G. the normal non-school drop-off time of 9:00 a.m. was suspended per Ms. Copeland's agreement.

    b. She personally told her son, C.L.G., this fact to his face.

    c. She told him that he and his brother C.M.G. could sleep in and just needed to be back at her house by 11:00 a.m.

52. Petitioner smelled a rat!

53. This was unlike Ms. Copeland and it was suspicious that she would agree to more time and not document it to show how "flexible" she was being.

54. It smelled and it smelled bad.

55. So, on January 16, 2025, at 6:28 p.m., Petitioner sent Ms. Copeland an OFW message confirming what she had personally told C.L.G.:

15



**Exhibit K** (attachment redacted to remove minor names).

56. Just guess what happened next.

57. Just guess!

58. That's right, the message went unviewed – even though Ms. Copeland receives both a text and email notification of a new message (unless she opted to cancel those all of the sudden, because she responds immediately when it suits her).

59. What happened the next morning?

60. Recall, the boys were sleeping in per Ms. Copeland's verbal consent to C.L.G. and needed _not_ be home at the usual 9:00 a.m. deadline.

61. This is what that _crazy whack job_ sent on January 17, 2025, at **9:02 a.m.**:



 _Id._

62. "Stick to the court order." _Id._

16

63. What!?

64. She waited until Petitioner was technically 2 minutes late and then she did a complete 180 degree turn on what she told her own son C.L.G. was allowed.

65. What an evil parent!  Pure evil.

66. No consideration of what is best for the Children – NONE.

67. Petitioner had to scramble and wake the boys suddenly.

    a.  Because Petitioner knew that Ms. Copeland would use this situation against him and argue that he knowingly violated the Court Order.

68. When Petitioner challenged her inexplicable behavior and explained that her own son now knew *she had lied to his face*, she said:



17

*Id.*

69. Petitioner had to wake his Children for no reason whatsoever and scramble and get them to their mother's house despite the fact that she told them that they could sleep in!

70. Look at January 22, 2025:



**Exhibit L.**

71. Right there, "<u>You need to hire a criminal defense lawyer asap.</u>" That is ***not*** Petitioner gloating, that is him pushing his Children's mother to protect herself.

    a. Get solid legal advice and don't lengthen your own jail sentence!

72. This is the <u>madness</u> that Ms. Copeland and her co-conspirators have put these children through.

    a. It is not just Ms. Copeland.

    b. Petitioner's own sister Sarah M. Grant and his first cousin Staci Thomas have participated in this criminal and morally corrupt scheme for more than a year!

        i. It was no surprise at all that Mr. Gillespie was in the courtroom last Tuesday.

            1. Jail sentences will be handed out, and he knows it.

            2. Protecting *only* his client's interests? Ha.

73. Has this Court figured out why this bizarre behavior has continued?

74. What Division was assigned this case on January 14, 2025, and entered a handwritten Order on January 16, 2025, setting this matter for trial after reviewing the file and in the same Order adopting *in toto* all of then-recused Commissioner Greaves' Orders?

    a. Division 36.

75. Why would the crooks in this case be *so comfortable* going to trial in Division 36?

76. Petitioner is one smart cookie, but he can't figure it out.

77. Wouldn't Ms. Brodie, her client Ms. Copeland, and Mr. Fenley - the GAL - be concerned that Division 36 would result in this entire case being unveiled as one big, ongoing span of corruption?

78. Wouldn't Ms. Copeland fear that her absurd belief that it was Petitioner who did something wrong by believing in his child and confirming what he said via OFW message would be rejected as an obvious trap in Division 36?

79. Petitioner is stumped here. There seems to be no explanation.

19

80. Is it relevant that when Petitioner filed his delayed, now suspended (see below), consent to this Division as trial judge, his filing was rejected by *__someone associated with the courthouse__* at *5:02 a.m.* in the morning and that rejection provided no explanation?[14] **Exhibit M.**

    a. In light of what has happened, Petitioner *__formally moves and requests__* that his consent to Division 13 **be placed on hold** for the time being.[15]

    b. Petitioner is *pro se* and he still needs counsel to figure all of this out.

    c. Petitioner seeks a hearing no sooner than February 14, 2025, to make his current decision formal and binding.[16]

    d. Valentine's Day.

        i. Seems like a good day for all to gather on this case for that important decision.

            1. Petitioner can locate counsel outside of St. Louis to advise him before then.[17]

---

[14] Petitioner suggests that identifying the court system user that rejected this filing is critically important.

[15] Petitioner has no concerns being in Division 13 as he has made clear, but there are other issues to consider, even safety concerns. Petitioner likely needs someone familiar with at least family law to objectively consider this situation on his behalf. Notably, Petitioner now also understands that his reference to Division 13 in the caption of his Motion requesting the discharge of Mr. Fenley was an unintentional error. Petitioner begs this court's patience as his head has been spinning for some time now.

[16] As is obvious, Petitioner may change his mind on this tomorrow or at any point in future. Petitioner is overburdened at the moment protecting his Children – everything else is, unfortunately, a distraction.

[17] By no means does Petitioner intend to suggest that all St. Louis County family lawyers are in any way like the corrupt family lawyers in this case. But he hopes everyone understands that he feels that he cannot trust any local family law attorney at this very moment. How is Petitioner to know who he can safely call? How is the general public to choose? This is the problem with corruption in the courts. Petitioner, as an Officer of this Court, can confirm that he has already began his search for family law counsel that are located at least 100 miles from this Courthouse.

2. It may be that trial on or near March 11th is possible.

3. Petitioner honestly is taking this disaster one step at time as each step reveals yet another mystery.

81. Petitioner notes that this case was and still is *electronically*-assigned to Division 36, although the associated court order has been vacated. *See* Missouri's Case.Net.



82. Maybe Presiding Judge Hilton can crack the code on this enigma.

## REBECCA A. COPELAND/MAIA BRODIE/JOHN FENLEY, ETC.

1. Now with all that build-up and much more left unsaid, Petitioner explains why an *ex parte* Order is required to protect the Children from Ms. Copeland, her attorney Maia Brodie and current Guardian *ad litem* John Fenley:[18]

a. Look at what happened on January 24, 2025!

---

While Respondent has the burden of proof for her Motion to Modify, *Petitioner has his own December 19, 2024, Second Amended Counter-Motion to Modify to present at trial and for which he bears the burden of proof.* *But see* Motion for Sanction of striking pleadings.

Presumably, this Court will ignore any informal ethics opinions or cases to the contrary and find that under Rule of Professional Conduct 4-3.7 Petitioner must be allowed to represent himself and rely upon 4-3.7(a)(3) in doing so. If there is mandatory precedent to the contrary that must be applied, Petitioner has no hesitation making new law on this issue here.

[18] Petitioner can't wait to see the conflict waiver that Ms. Brodie has come up with for this situation and to which Ms. Copeland provided informed consent. Even now, crooked lawyers still screw over their crooked clients. The plea bargains and exchanges for testimony will be outstanding to watch unfold. Snakes forming fake alliances and biting other snakes' heads behind their backs. This will be entertaining.

21

2. Petitioner already *touched on some of this* in his Motion to Discharge Mr. Fenley and for Sanctions against him, but that motion was drafted and all but done on January 23, 2025, and it related to just Mr. Fenley.

3. Now it is time to focus on the *mental illness* of Rebecca A. Copeland.

4. Keep in mind, on November 7, 2024, even the crook Commissioner Greaves ordered the crook Ms. Copeland to provide her mental health and medication records to the crook John Fenley pursuant to a Protective Order. **Exhibit N.**

    a. Petitioner now realizes that Mr. Fenley's prior representation that no records were received pursuant to the subpoena to the MO Dept. of Social Services – Children's Division was surely a lie. **Exhibit O.**

        i. Petitioner demanded that subpoena as *Social Services interview his children and Petitioner and its representative determined that Ms. Copeland had coached the Children* while they were in elementary school, and Ms. Copeland convinced them to tell their school counselor that Petitioner had struck them.

            1. Ms. Copeland's mental issues are not new. Not at all.

            2. Petitioner seeks assistance from this Court to obtain any records that actually exist, to the extent he cannot obtain them on his own.

5. Petitioner took Ms. Copeland's failure to comply with that Order into his own hands and on December 3, 2024, the day after he orally moved to DQ Commissioner Greaves, he demanded crooked mother Copeland's mental health records.[19]

---

[19] Petitioner is out of time to assemble exhibits. He affirms that all statements are true. He is wrapping up this drafting so that he can present this Motion today.

22

6. As of the date of this Motion, crooked mother Copeland's mental health records still have not been produced to crook Fenley.

7. Why?

    a. Because they will show that crooked mother Copeland is mentally unstable, mentally unsafe and a danger to the Children in this case!

        i. **Is there any doubt that she is too mentally unstable and unsafe to be around the Children for sure!**

        ii. If not, where are the records?

8. Until <u>this Court sees those records</u>, Ms. Copeland absolutely cannot be allowed anywhere near the Children.

9. No "ifs," "ands," or "buts" about it.

    a. Because Petitioner is an honest and good person, he requests that this Court enter an Order having her involuntarily evaluated by a third-party professional before, or simultaneously with her attempt to pick up the Children from school so that she is protected from her own mental illness when she learns that she is prohibited by an *ex parte* TRO from seeing the Children for the next ten (10) days.

        i. This is not some veiled act of retribution. It is not! Rebecca A. Copeland is unstable. She needs protection from herself.

10. Ready? Ok, here we go!

11. On the morning of January 23, 2025, while Petitioner was working on motions for this case, as he always seems to be doing - - and follow this very closely because it tells the story of *pure evil, mental illness* and *danger*:

23

a. Petitioner received an automatic notice from his oldest son, C.L.G.'s high school around 10:00 a.m. saying that Ms. Copeland planned to pick up C.L.G. from school at noon for "safety"!

b. Holy ….. *Cow*.

c. He looked and Ms. Copeland had turned off the GPS locator on C.M.G.'s phone.

d. She was planning to grab them and disappear.  It seemed obvious!

e. Petitioner freaked out and became overwhelmingly alarmed for his Children's immediate safety.

f. Petitioner tried to email this Court via the Division 13 clerk, copying crook Fenley, but no luck.

    i. Ms. Brodie was <u>not</u> copied.  Why?  Because Ms. Brodie is a crook and she is Crook Copeland's lawyer.

g. Does this Court see now why this Motion is *ex parte*?

h. Why did Petitioner copy Mr. Fenley you may ask?

    i. Because there are rules against *ex parte* communication with the court – as Petitioner himself has made more than a HUGE deal about in this case, but Petitioner was desperate.  Absolutely desperate.

        1. Mr. Fenley is a member of the bar – for now.  Further, he is the GAL in this case – for now.

        2. Copying one of his *mortal enemies* surely protected against any suggestion that Petitioner was attempting to do anything improper.

24

3. Petitioner hoped that, even though Mr. Fenley was an obvious crook, maybe he would help keep the school from releasing the Children to their mother.

4. I mean we are talking about imminent danger of physical harm and/or kidnapping.

i. Petitioner still doesn't learn a darn thing does he!?

j. Mr. Fenley doesn't have a good bone in his body.

k. He was in on the January 24, 2025 plan the entire time!

l. As discussed earlier, Mr. Fenley, or his or someone's criminal defense attorney, choreographed this entire scenario prior to Tuesday, January 21, 2025.

m. But Mr. Fenley said out loud that he didn't want to "tip his hand" and then he went on to "tip his hand" in open court and said he had a "safety issue" to raise on Friday.

n. Petitioner believes he wasn't supposed to utter a word until January 24, 2025.[20]

o. Who claims they have an urgent safety issue and then says, "I'll be back in 3 days to tell you how urgent and scary the situation is"?

p. You just can't make this stuff up. This will make one heck of a movie. Petitioner just hopes he gets a cameo.

q. Now here is what this gaggle of corrupt fools likely did.

---

[20] Petitioner's best guess is that Mr. Fenley's criminal defense attorney warned him "now you don't want to tip your hand." And that fool, in that moment, said out loud what his attorney advised him NOT to do. "Judge: I don't want to tip my hand…."

25

r. Only now can Petitioner find humor because on this past Friday he just about had a heart attack, and his weekend was sleepless.

s. It seems some unknown criminal defense attorney(s) had this all planned out.

t. Recall that Petitioner dropped *Little Boy* on December 2, 2024, and his *Fat Man* bomb on December 23, 2024?

u. Here is what one or more of these fools' criminal lawyer(s) seems to have done.[21]

v. Go back and look at Commissioner Greaves' January 14, 2025, Order of Recusal. What did she claim? That Petitioner engaging in threating the court!

w. What nonsense.

x. But now, now, it makes sense.

y. The explanation these crooks have planned for their criminal trials is to argue that everything they did was justified because they honestly believed that Petitioner was a danger to the Children.

    i. Do you see it?

z. They have to stick to the story. It is their only chance to stay out of jail.

**aa. Reasonable Doubt!**

bb. They must find it.

cc. So what they planned was this entire scenario that Mr. Fenley hinted was coming.

dd. What sort of bus of bumbling fools is this?

ee. Who is the criminal defense attorney that came up with this plan?

---

[21] This is speculation but it is right on so please follow along.

26

Elmer Fudd?

ff. Petitioner needs to address one issue: The Court has noticed the over-the-top briefing by Petitioner that is replete with attempts at humor in this case.

gg. Why is it that Petitioner goes this route?

hh. Here is the answer for this Court:

> *The actions in this case that will result in the damnation to hell of the souls of everyone involved, make Petitioner's blood boil. It is all Petitioner can do is to try to inject humor in an effort to try to not spew his own vitriol and deserved hatred all over the pages of every page of every brief addressing what these horrible people have done. They all belong in jail. They are all going to hell!*

ii. Wow, that felt good.

jj. All of you crooks have stolen Petitioner's money – which is really his Children's money, and now you get him *pro se*.

   i. Reap what you have sown!

## 1.    Petitioner's Visit to C.L.G.'s High School

*Getting back to the legal basis for the injunctive relief that Petitioner seeks on both an ex parte, temporary, preliminary and permanent basis/*

1. Having left off with the fact that these individuals actively planned to pull these long-used and long-suffering Children out of school on January 24, 2025, under a false threat of an urgent "safety" situation.

2. Petitioner did just what they may have wanted, he drove to the school.

3. But they didn't realize that Petitioner *would never* violate a Court Order.

27

a. They didn't realize that Petitioner, even in such an extreme situation, would respect crooked Commissioner Greaves's Order that he was tricked into signing by his own crooked lawyer Mat Eilerts.

b. They just couldn't believe that some people aren't like them.

c. They can't comprehend that some people *follow the law* to get the result they want.

4. As best Petitioner can tell, these crooks and their mysterious criminal defense attorney(s) had hoped that Petitioner would attempt to pull the Children out of school.

5. Unfortunately, we will never know for sure. Until we get our hands on the emails, text messages, Facebook messenger messages, etc. that these fools likely continued to send.

6. Either that, or this was all just a play to show just how concerned all these crooks supposedly were about the fake danger Petitioner poses.

7. It may be that the Court knows the answer to some of this if anything happened in Division 13 this past Friday involving Mr. Fenley.

8. So Petitioner drove to the High School at issue and he asked to see the guidance counselor. *He made NO REQUEST to check C.L.G. out of school.* How could he? Friday is not a day on which he has court-ordered custody of the Children.

a. That is why Petitioner unsuccessfully tried to *indirectly* get a safety concern to the Presiding Judge Hilton in the first place!

i. Remember, the one where Petitioner copied one of his mortal enemies – John Fenley?

28

9. What Petitioner encountered in the school lobby is a scene that is beyond words and still to this day very very difficult to describe.

10. When Petitioner walked in and identified himself as the father of C.L.G., it was as if John Wayne Gacy himself had just walked in that school.[22]

11. The poor welcome receptionist was *visibly shaking and trembling*.

12. She called someone, presumably the superintendent, who knows?

13. But she did contact the Guidance counselor by phone.

14. Petitioner said, something like "I know where her office is, I've met with her before, can I go walk back there and see her?"

15. Wow! Bad idea.

16. The receptionist almost fell over.

17. She said, "**there is no way you are going back through those security doors**."

18. And there it was. On full display. That was what these crooks had done.

19. They have managed to completely destroy Petitioner's reputation. They have convinced everyone they can get to that Petitioner is a very dangerous man.

    a. This isn't new. This has been happening since the March 13, 2024, TRO was entered.

    b. Ms. Copeland paraded that document around town for all to see.

20. Back to the scene at the school, it is a shock that Petitioner was not arrested on the spot. It was likely because he arrived early (around 10:50 a.m.) and not at noon.

    a. Surely, they planned to have the police at the school at noon.

---

[22] Hyperbole to describe in words a situation that can never be fairly described in words.

21. The guidance counselor walked out to the visiting area, outside of the safety of the locked security doors and pretended to know absolutely nothing.

22. She did her best to stay calm and pretend to know nothing and Petitioner cannot imagine how she must have felt in that moment.

    a. Petitioner feels for her. He knows that feeling. She didn't deserve that.

23. The guidance counselor and the other school employees had been placed in an impossibly stressful situation by these horrible people – Rebecca A. Copeland, Maia Brodie, John Fenley and others.

24. But that brings us to what happened that Petitioner *does not know*!

25. Petitioner suspects that 2, 3 or 4 of them appeared before Judge Hilton before 1:00 on January 24th and asked for their own *ex parte* restraining order.

    a. Petitioner is absolutely convinced that they had planned to.

26. Here, Petitioner feared that these crooks were smarter than they are, and he feared that they would go to a "friend" of Commissioner Greaves who wears a black robe.

    a. Or, they were poised to file charges and seek an arrest warrant.

27. Again, it is pure speculation that Petitioner believes that this was a plan made long ago to create a record to be introduced into evidence at a criminal trial that just might raise reasonable doubt in the minds of jurors.

28. If so, this is the worse Hail Mary pass Petitioner has ever seen.[23]

29. Can there be any doubt in this Court's mind as to whether these Children can be entrusted in the care of Ms. Copeland for a single minute longer?

---

[23] The irony of the term Hail Mary in this situation with these crooks, including the purportedly religious Mary W. Greaves, is not lost on Petitioner. He swears that it was only after it was typed that its unique appropriateness dawned upon him. Plus, this is being typed during the Chiefs and Bills game.

**SARAH M. GRANT:**

1. The prior draft of this motion had another twenty-five plus (20+) plus pages explaining why Lawrence Gillespie was in the courtroom on January 21, 2025.

2. The Court's time is valuable, and this Motion is for relief lasting no longer than ten (10) days. As such, this new, shorter version is being submitted.

3. That said, Petitioner wants to put a huge, flaming stake in the ground now and point out that he will be presenting evidence that the conduct of his own sister, Sarah M. Grant, and his own first-cousin, Staci Thomas, was *worse* than what Ms. Copeland did in this case.

4. Among the others, such as Ms. Copeland, Petitioner urges that Ms. Grant and Ms. Thomas should be going to jail or prison for a very, very long time.

   a. Perjury? Of course. But that is just a parking ticket compared to what those two individuals have done.

5. For purposes of this Motion, Petitioner can confirm that both Ms. Grant and Ms. Thomas broke into his home on December 2nd and 3rd, 2024.

6. But how is the Court to believe that?

7. Maybe Petitioner let them in the front door?

8. No way says Petitioner.

9. How does the Court know?

10. Because he had voluntarily checked himself in for medical treatment and was not r *available* to be home on December 2nd or 3rd, 2024.[24]

---

[24] Petitioner and this Court have referenced the Protective Order in this matter. Petitioner wants to confirm that he demands that all information regarding all of his medical conditions is shielded from public view and/or disclosure. As will be discussed below, the breadth of the list of individuals encompassed by this Motion is intentional. Petitioner knows that he is in danger of character

31

11. Also, because *Mr. Gillespie himself produced* the very photographs these crooks took after they broke into Petitioner's home?[25]

12. As one example, Petitioner provides the picture taken by Ms. Grant of the thumb drives Ms. Grant and Ms. Thomas illegally accessed:



13. Next, during a calm encounter with police officers with the Town and Country Police, Ms. Grant *shouted out* with false and extreme concern, and she exclaimed *that Petitioner had a gun*!

14. When Sarah Grant screamed that Petitioner had a gun behind his back, his youngest son C.M.G. in the nearby living room ran to the laundry room, closed the door, and grabbed his Boy Scout knife prepared to defend his own life – from his own father!

15. It is difficult to type.

---

assassination. So be it. However, Petitioner knows that some or all of these individuals plan to disclose his personal medical conditions, including but not limited to his disease of alcoholism, in order to use it against him in the public to discredit him before the full facts are revealed through unsealing of redacted filings in this case. These morally bankrupt individuals will also reveal his brief moments of intense depression. It is from these dangers also that Petitioner seeks protection from this Court.

[25] The full extent of what these two (2) criminals did in Petitioner's home need only continue to be shared with state and/or federal law enforcement. Petitioner represents as an Officer of this Court, that it is utterly unbelievable. What they had planned for Petitioner is mind-blowing.

32

16. Does anyone not realize that these Children have suffered in ways from which they will likely never recover?

17. Every single person connected to this case needs to be locked up for a very, very long time.

18. Did this happen?  Yes.

19. How does the Court know this is true?

20. Because the **RESPONDENT Ms. Copeland pleaded it in her March 12, 2024, Motion to Modify**!

21. Not only that, Ms. Copeland confirmed that she was told the story by Petitioner's youngest son, C.M.G. in her first deposition in this case.

22. Petitioner **had _no gun_**.  That is undisputed.  He was holding his iPhone like every other adult would be in that situation.[26]

23. Petitioner is intelligent.  In *no situation* would he think about touching a firearm when any law enforcement was nearby – much less at the bottom of the stairs to his bedroom.

24. Without going into more detail, this Court can imagine why an individual would have made such an extreme, sudden, outlandish and intentional allegation *to armed police officers*.

25. Again, this is why Mr. Gillespie was present in the Court on June 21, 2025![27]

26. Ms. Grant is far from some disinterested fact witness.

---

[26] Keep reading, Ms. Grant did not accidentally overact an unknown object in Petitioner's hand.

[27] There is no doubt that Ms. Sarah M. Grant was referred to Mr. Gillespie as potential counsel by Ms. Brodie.  There is absolutely no doubt about that.  The various witnesses' rights against self-incrimination may prohibit that evidence coming out in testimony.  But subpoenas are amazing tools of discovery.

27. This Court can choose its own term for what that *vile* human being is.

28. Is there more?

29. Always.

30. Ms. Grant still possesses illegal video recording(s) of Petitioner that she refuses to produce.

31. Again, how do we know?

32. Mr. Gillespie, her counsel, is the one assisting his client Sarah M. Grant by withholding the recording(s) despite it/them being responsive to the subpoena duces tecum served upon Ms. Grant as they prove more crimes!

## STACI THOMAS:

1. Now, finally, Petitioner gets to address the ringleader of what took place prior to this situation reaching this courthouse.

2. Staci Thomas.

3. His first cousin.

4. The extreme narcissist.

5. The only *semi*-intelligent individual too dull to realize that she wasn't smarter than Petitioner.

6. Ms. Thomas is so blinded by her own warped view of her own intelligence that she thought she could do all of the things listed below and *not* get caught by Petitioner doing each and every single one.

   a. These are just a few examples, Petitioner, as always, is holding back more so that Ms. Thomas wonders what else he has already provided to the United

34

States Department of Justice:[28]

    i.    She broke into Petitioner's home with Sarah M. Grant;[29]

    ii.    She committed perjury about being present in Petitioner's home with Ms. Grant;

    iii.    She disconnected Petitioner's wireless garage door device to hide notice that it was being opened and closed when Petitioner was not home.

    iv.    Commit perjury about accessing, with Sarah Grant, Petitioner's hard copy files;

    v.    Commit perjury about accessing, with Sarah Grant, Petitioner's *ELECTRONIC data files*;[30]

    vi.    Manipulate text messages;

    vii.    Create and send, via wire, false text messages;

    viii.    Delete text messages responsive to a subpoena duces tecum;

    ix.    Create and send, via wire, false emails making false assertions about Petitioner in order to attempt to document nonexistent danger to the Children from their own father;

    x.    Send, via wire, an email to Aetna on March 11, 2024, at 10:22

---

[28] To be clear, Ms. Grant participated in most of this. Ms. Copeland is liable for everything due to her knowledge and her active participation in the conspiracy.

[29] Isn't it strange that Ms. Copeland suddenly figured out that she should have asked what surveillance footage Petitioner possessed. And now-recused Commissioner Greaves allowed her to serve discovery asking for it. Ms. Thomas figured out to demand that Ms. Brodie make that happen just a bit too late – after she had taken an oath committed perjury.

[30] That's right Ms. Thomas. Both state and federal crimes abound.

a.m. in an attempt to cancel Petitioner's health insurance coverage *before* he could get himself to rehab!;

xi. Then lie under oath and deny that you sent an email, and also lie under oath about what your communication said.[31]

    a. Petitioner begs the Court to read the email Ms. Thomas sent. That is a deranged individual. Ms. Thomas knew that Petitioner would not go to rehab if her plan worked.

        i. What do you think she wanted to happen?

i. She tried to cause Petitioner's now-wife to be fired from her job under *false* claims of insurance fraud;

ii. She falsely claimed under oath that she had no idea who caused ~$1,000.00 worth of damage to Petitioner's irrigation equipment.[32]

iii. Ms. Thomas's lie about Petitioner and his now wife purportedly attempting to poison her dog is so *monstrous* that she testified, under oath:

> "Because his car and his friend's [Petitioner's wife] car were in the neighborhood and **my children told me**

---

[31] Petitioner understands that Ms. Thomas was comfortable that crooked Commissioner Greaves would never allow Petitioner to serve a subpoena on Alphabet, Inc.-Google. But Ms. Thomas seems to have forgotten that Petitioner sent a subpoena to Aetna back on July 8, 2024, and it was still outstanding.

What are the odds that Aetna would provide Ms. Thomas' email to Aetna on December 6, 2024 – after Ms. Thomas had already committed perjury!

[32] Surely, it was only today that Petitioner installed RING brand wireless cameras in the woods surrounding his home as far away as his home wifi could reach.

**that they were down in my area of the subdivision, so...**"

**Exhibit** ___, p. 12:14-19 (emphasis added)

    *iv.*   She testified that her father, Petitioner's own uncle, is "very worried." Because he supposedly "hasn't been a fan of him ever." *Id.*

    *v.*   What sort of *horrendous* individual makes up these lies, cites *her own children* and father, and swears to them under oath?[33]

25. Petitioner can't wait to see what her employer, **Washington University**, will think about the fact that this horrible person is on their staff as a *Professor of Practice. Id.* at p. 27.

## II. The Risk Of Harm From The Remaining Corrupt Individuals

1. Petitioner's Motion includes individuals beyond just Ms. Copeland, Ms. Grant and Ms. Thomas.

    a.   None of those individuals can be allowed anywhere near the Children. That is indisputable.

2. The broader list includes Maia Brodie, Elizabeth Carthen Biscan, C. Curran Coulter, Dzenana Delic, Mat E. Eilerts, John Fenley, Lawrence Gillespie, Laura Gillman, and Commissioner Mary W. Greaves and Elaine Pudlowski.

3. Each and every one of these individuals present an immediate and actual risk to Petitioner, in that, they each had access to Petitioner's sensitive information and they

---

[33] Petitioner seeks leave of court to provide a redacted version of this pleading to the father of Ms. Thomas' children.

still have personal knowledge regarding his personal medical conditions, and they are specifically motivated to engage in character assassination.

    a. The events of January 24, 2025, is an example of the sort of efforts each of these individuals may pursue to discredit Petitioner in order to seek revenge and/or to lay the foundation for their criminal defenses.

4. Because the TRO being requested can last no longer than ten (10) days, and because each of these individuals can appear upon one (1) days' notice and request, ***subject to cross-examination by Petitioner***, that the TRO be dissolved or modified as to them, there is *de minimis* inconvenience to any one of them.[34]

## III. Broad *Ex Parte* Injunctive Relief in the favor the Children and the Petitioner is Appropriate.

1. As discussed below, unfortunately, the evidence shows that Respondent and others' mental health is not temporary and it cannot be resolved with a thirty (30) day visit to a medical facility, Petitioner requests very broad relief.

2. This case presents very unique circumstances in which not only are the Children and Petitioner at risk of physical harm, but also, Petitioner and his personal disability and medical condition are at risk of being improperly exposed for non-legitimate purposes.

3. Through the fraud and corruption in this case, Petitioner was improperly coerced into agreeing to, among other things, the October 2, 2024, Interim Consent Order that has unconscionable terms. It must be dissolved, set aside and vacated.[35] *See* Rule

---

[34] Unlike other scenarios, here, each of the individuals in this group is licensed to practice to law in the State of Missouri and can appear *pro se* and use their own legal training to make their own legal arguments – if they want to invoke their 5th Amendment rights on the stand.

[35] Petitioner acknowledges that the TRO terms will accomplish the same thing. He is belt and suspenders type of

74.06(b)(6)(2) (expressly listing fraud as a basis for relieving a party from an "Order").

4. The improper Interim Consent Order allows Respondent Rebecca A. Copeland *de facto* sole custody despite her action and despite the fact that she is hiding her mental health records.

5. Crook John Fenley did not consider requiring Ms. Copeland to undergo a mental evaluation and this Court should order that done immediately.

6. This Court should protect Ms. Copeland from the danger she presents to herself when and if this Motion is granted.

7. Further, Petitioner has been compelled to continue to pay Child Support in an amount that is patently unconscionable, and Respondent should be Ordered to immediately repay all child support amounts paid by Petitioner to her after his initial Counter-Motion to Modify was filed on August 14, 2025, directly or via deposit into this Court.

   a. Further, it is manifestly unjust to require Petitioner to pay Respondent Rebecca A. Copeland any future child support in this matter pending a ruling following the trial of this matter, including the ruling on Petitioner's request for a refund and/or credit of past, overpaid child support.

8. Moreover, the facts of this case justify <u>little or no bond</u> from Petitioner.

---

litigator and this issue will need to be addressed at some point. This issue should be addressed with the parties present, if they choose, at the Preliminary Injunction hearing on this Motion, assuming it is granted, if they dare challenge setting aside and vacating the October 2, 2024, Interim Consent Order. As is clear, Petitioner does *not* seek mere 50/50 joint physical and legal custody, so that Interim Order is a mere distraction.

9. Also, Petitioner has demonstrated why his previously filed consent(s) to this Court's jurisdiction should be delayed until he has had an additional opportunity to retain new counsel before this Court enters a ruling on such filing(s).

10. Finally, all other individuals named in this Motion for *Ex Parte* TRO and Motion for *Ex Parte* Order of Protection, should be prohibited from discussing Petitioner or this case with anyone other than their counsel until further Order of this Court.

WHEREFORE, Petitioner requests that this Court enter an Order granting this Verified Emergency Motion, Affidavit, and Application for *Ex Parte* Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction against Maia Brodie, Elizabeth Carthen Biscan, Rebecca A. Copeland, C. Curran Coulter, Denzana Delic, Mat G. Eilerts, John Fenley, Lawrence Gillespie, Laura Gillman, Sarah Grant, Commissioner Mary W. Greaves, Staci Thomas, and, and, in the alternative, Emergency Motion for Entry of Ex Parte Order of Protection, entering a ***broad*** Temporary Restraining Order pursuant to Rule 92.02 protecting the Children at issue in this matter, and for such further relief as this Court may deem just and proper.

Respectfully submitted,

By: _____

Matthew R. Grant, #50312
Petitioner
1625 Mason Knoll Rd.
St. Louis, MO 63131
T: (314) 412-9112
mattgrant.stl@gmail.com

40

STATE OF MISSOURI    )

COUNTY OF ST. LOUIS )

Comes now Matthew R. Grant, being of lawful age and after being duly sworn, states that affiant has read the foregoing document and that the facts therein are true and correct according to the affiant's best knowledge and belief.

_____
                Affiant

Subscribed and sworn to before me, the undersigned Notary Public, on this 28th day of January 2025.

My Commission Expires: 05/08/2026

_____
             Notary Public

CALEB A. FREEMAN
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
MY COMMISSION EXPIRES MAY 8, 2026
ST. LOUIS COUNTY
COMMISSION #13526616

41

# Message Report

**Generated:** 01/28/2025 at 11:42 AM by Matt Grant
**Number of messages:** 1
**Timezone:** America/Chicago
**Parents:** Matt Grant, Rebecca Copeland
**Child(ren):** Carter Grant, Connor Grant
**Third Party:**

> OurFamilyWizard

OurFamilyWizard
ourfamilywizard.com
info@ourfamilywizard.com
(866) 755-9991

## Message 1 of 1

| | |
|---|---|
| **Sent:** | 01/23/2025 at 03:29 PM |
| **From:** | Matt Grant |
| **To:** | Rebecca Copeland (*First Viewed: 01/23/2025 at 08:33 PM*) |
| **Subject:** | Schedule Change |

As you will hear if you have not already, i am demanding to go to 50/50 immediately with me keeping the boys this weekend.

You should think very carefully about your response as it will have an important long-term impact on you in many ways, including but not limited to your rights with regard to the boys.

Let me know.
Matt

Exhibit A
Case No. 12SL-DR-03959-02

Service E-mail Address    jmahon@bscr-law.com

Party    KATHERINE ELIZABETH HENRY, Attorney - Limited Representation

Service E-mail Address    khenry@lashlybaer.com, kenry@chgolaw.com

Party    LAWRENCE GERARD GILLESPIE, Attorney for Other Party

Service E-mail Address    lgillespie@ghc-law.com

Party    JOHN R FENLEY, Guardian Ad Litem

Service E-mail Address    john@rhflegal.com

Party    SHARON E. REMIS, Attorney for Other Party

Service E-mail Address    sremis@ghc-law.com

Party    MATHEW G EILERTS, Attorney for Petitioner

Service E-mail Address    mat@groweeisen.com

Party    RACHEL MARIE SCHAFER, Attorney - Limited Representation

Service E-mail Address    rachel.schafer@bakersterchi.com

Party    MARK ROBERT FELDHAUS, Attorney - Limited Representation

Service E-mail Address    mfeldhaus@lashlybaer.com

Click to access the Missouri eFiling System.

Click here for Manage My Case.

This e-mail is auto generated. Please do not respond. **If you have a concern with your filing, please contact the court.** If you need technical assistance, please contact the Office of State Courts Administrator Help Desk at osca.help.desk@courts.mo.gov or toll-free by phone at 1(888)541-4894. The Help Desk is available 7:30 a.m. to 5:00 p.m. Monday through Friday, excluding state holidays.

| | |
|---|---|
| **From:** | Missouri Courts eFiling System |
| **To:** | Missouri Courts eFiling Subscriber |
| **Cc:** | Matthew R. Grant; 21st Judicial Circuit (St. Louis County) |
| **Subject:** | Receipt of Submission - 12SL-DR03959-02 - MATTHEW R GRANT V C M G ETAL, St Louis County - Circuit Court |
| **Date:** | Monday, December 23, 2024 1:12:16 PM |

Your submission on **12/23/24** at **1:11 PM** was **RECEIVED** by **St Louis County - Circuit Court** on **12/23/24** at **1:11 PM** but has not been processed.

You will receive notice from the court when the submission is accepted for filing, put on hold, or returned with the reason for the hold or return. You do not need to take action at this time.

Below is important information regarding this filing:

| | |
|---|---|
| **eFiling Confirmation Number** | EF37256269 |
| **Filer Reference Number** | None entered by filer |
| **Payment Confirmation Number** | No filing fee or payment information on this filing. |
| **Case Number** | 12SL-DR03959-02 |
| **Case Description** | MATTHEW R GRANT V C M G ETAL |
| **Case Type** | Paternity - Motion to Modify (no open/active case) |

Notes to Clerk:   None Entered by Filer

## Document(s):

| | |
|---|---|
| **Document Category and Type** | Motion to/for - Disqualify |
| **Document Title** | Motion to Disqualify Commissioner Greaves for Cause, and for Transfer to the Missouri Supreme Court |
| **Attachment(s)** | Exhibit A |
| | Exhibit B |
| | Exhibit C |
| | Exhibit D |
| | Exhibit E-1 |
| | Exhibit E-2 |
| | Exhibit E-3 |
| | Exhibit F |
| | Exhibit G |

Exhibit B
Case No. 12SL-DR-03959-02

Exhibit H

Exhibit I

Exhibit J

Exhibit K

Exhibit L

Exhibit M

Exhibit N

Exhibit P

Exhibit O

Exhibit R

Exhibit Q

Exhibit T

Exhibit S

Electronic Filing Certificate of Service

**File On Behalf Of**        **MATTHEW R GRANT**

To view or save a document, click one of the hyperlinks above. The document title hyperlink will open the document directly until the court accepts the document. After that time, you will have to login to Case.net and use the case number link to view the document.

## Service Information:

| | |
|---|---|
| **Party** | ELIZABETH ANNE CARTHEN, Attorney for Respondent |
| **Service E-mail Address** | lcarthen@brodielawstl.com |

| | |
|---|---|
| **Party** | CON CURRAN COULTER, Attorney - Limited Representation |
| **Service E-mail Address** | curran@coultergoldberger.com |

| | |
|---|---|
| **Party** | MAIA BRODIE, Attorney for Respondent |
| **Service E-mail Address** | mbdiscovery@brodielawstl.com |

| | |
|---|---|
| **Party** | JOHN F MAHON, Attorney - Limited Representation |

| | |
|---|---|
| **From:** | Missouri Courts eFiling System |
| **To:** | Missouri Courts eFiling Subscriber |
| **Cc:** | Matthew R. Grant; 21st Judicial Circuit (St. Louis County) |
| **Subject:** | Returned for Filing - 12SL-DR03959-02 - MATTHEW R GRANT V C M G ETAL, St Louis County - Circuit Court |
| **Date:** | Tuesday, December 24, 2024 10:04:09 AM |

Your submission **EF37256269 was RETURNED TO FILER FOR FILING\*** by **St Louis County - Circuit Court** on **12/23/24** at **1:11 PM**.

Below is important information regarding this filing.

This filing was **RETURNED TO FILER** by the court for the following reason(s):

Missing Demographics - Please add case number to the first page of all exhibits.

| | |
|---|---|
| eFiling Confirmation Number | EF37256269 |
| Filer Reference Number | None entered by filer |
| Case Number | 12SL-DR03959-02 |
| Case Description | MATTHEW R GRANT V C M G ETAL |

Any credit card or eCheck transactions associated to this return will be returned, **along with any processing fee**, within five days.

Click to access the Missouri eFiling System.

Exhibit C
Case No. 12SL-DR-03959-02

Click here for **Manage My Case**.

This e-mail is auto generated. Please do not respond. **If you have a concern with your filing, please contact the** court. If you need technical assistance, please contact the Office of State Courts Administrator Help Desk at osca.help.desk@courts.mo.gov or toll-free by phone at 1(888)541-4894. The Help Desk is available 7:30 a.m. to 5:00 p.m. Monday through Friday, excluding state holidays.

| From: | Missouri Courts eFiling System |
|---|---|
| To: | Missouri Courts eFiling Subscriber |
| Cc: | Matthew R. Grant; 21st Judicial Circuit (St. Louis County) |
| Subject: | Receipt of Submission - 12SL-DR03959-02 - MATTHEW R GRANT V C M G ETAL, St Louis County - Circuit Court |
| Date: | Tuesday, December 24, 2024 2:52:31 PM |

Your submission on **12/24/24** at **2:51 PM** was **RECEIVED** by **St Louis County - Circuit Court** on **12/24/24** at **2:51 PM** but has not been processed.

You will receive notice from the court when the submission is accepted for filing, put on hold, or returned with the reason for the hold or return. You do not need to take action at this time.

Below is important information regarding this filing:

| eFiling Confirmation Number | EF37267966 |
|---|---|
| Filer Reference Number | None entered by filer |
| Payment Confirmation Number | No filing fee or payment information on this filing. |
| Case Number | 12SL-DR03959-02 |
| Case Description | MATTHEW R GRANT V C M G ETAL |
| Case Type | Paternity - Motion to Modify (no open/active case) |

Notes to Clerk:   None Entered by Filer

## Document(s):

| Document Category and Type | Motion to/for - Disqualify |
|---|---|
| Document Title | Motion to Disqualify Commissioner Greaves for Cause, and for Transfer to the Missouri Supreme Court |
| Attachment(s) | Exhibit A |
| | Exhibit B |
| | Exhibit C |
| | Exhibit D |
| | Exhibit E-1 |
| | Exhibit E-2 |
| | Exhibit E-3 |
| | Exhibit F |
| | Exhibit G |

Exhibit D
Case No. 12SL-DR-03959-02

Exhibit H

Exhibit I

Exhibit J

Exhibit K

Exhibit L

Exhibit M

Exhibit N

Exhibit O

Exhibit P

Exhibit Q

Exhibit R

Exhibit S

Exhibit T

Electronic Filing Certificate of Service

| File On Behalf Of | **MATTHEW R GRANT** |
|---|---|

To view or save a document, click one of the hyperlinks above. The document title hyperlink will open the document directly until the court accepts the document. After that time, you will have to login to Case.net and use the case number link to view the document.

**Service Information:**

| Party | ELIZABETH ANNE CARTHEN, Attorney for Respondent |
|---|---|
| Service E-mail Address | lcarthen@brodielawstl.com |

| Party | CON CURRAN COULTER, Attorney - Limited Representation |
|---|---|
| Service E-mail Address | curran@coultergoldberger.com |

| Party | MAIA BRODIE, Attorney for Respondent |
|---|---|
| Service E-mail Address | mbdiscovery@brodielawstl.com |

| Party | JOHN F MAHON, Attorney - Limited Representation |
|---|---|

| | |
|---|---|
| Service E-mail Address | jmahon@bscr-law.com |

| | |
|---|---|
| Party | KATHERINE ELIZABETH HENRY, Attorney - Limited Representation |
| Service E-mail Address | khenry@lashlybaer.com, kenry@chgolaw.com |

| | |
|---|---|
| Party | LAWRENCE GERARD GILLESPIE, Attorney for Other Party |
| Service E-mail Address | lgillespie@ghc-law.com |

| | |
|---|---|
| Party | JOHN R FENLEY, Guardian Ad Litem |
| Service E-mail Address | john@rhflegal.com |

| | |
|---|---|
| Party | SHARON E. REMIS, Attorney for Other Party |
| Service E-mail Address | sremis@ghc-law.com |

| | |
|---|---|
| Party | MATHEW G EILERTS, Attorney for Petitioner |
| Service E-mail Address | mat@groweeisen.com |

| | |
|---|---|
| Party | RACHEL MARIE SCHAFER, Attorney - Limited Representation |
| Service E-mail Address | rachel.schafer@bakersterchi.com |

| | |
|---|---|
| Party | MARK ROBERT FELDHAUS, Attorney - Limited Representation |
| Service E-mail Address | mfeldhaus@lashlybaer.com |

Click to access the Missouri eFiling System.

Click here for Manage My Case.

This e-mail is auto generated. Please do not respond. **If you have a concern with your filing, please contact the court.** If you need technical assistance, please contact the Office of State Courts Administrator Help Desk at osca.help.desk@courts.mo.gov or toll-free by phone at 1(888)541-4894. The Help Desk is available 7:30 a.m. to 5:00 p.m. Monday through Friday, excluding state holidays.

| From: | Missouri Courts eFiling System |
|---|---|
| To: | Missouri Courts eFiling Subscriber |
| Cc: | Matthew R. Grant; 21st Judicial Circuit (St. Louis County) |
| Subject: | Receipt of Submission - 12SL-DR03959-02 - MATTHEW R GRANT V C M G ETAL, St Louis County - Circuit Court |
| Date: | Tuesday, January 7, 2025 1:10:09 PM |

Your submission on **1/7/25** at **1:08 PM** was **RECEIVED** by **St Louis County - Circuit Court** on **1/7/25** at **1:08 PM** but has not been processed.

You will receive notice from the court when the submission is accepted for filing, put on hold, or returned with the reason for the hold or return. You do not need to take action at this time.

Below is important information regarding this filing:

| eFiling Confirmation Number | EF37371026 |
|---|---|
| Filer Reference Number | None entered by filer |
| Payment Confirmation Number | No filing fee or payment information on this filing. |
| Case Number | 12SL-DR03959-02 |
| Case Description | MATTHEW R GRANT V C M G ETAL |
| Case Type | Paternity - Motion to Modify (no open/active case) |

Notes to Clerk:   None Entered by Filer

## Document(s):

| Document Category and Type | Filing - Other/Miscellaneous - Supplemental (other) |
|---|---|
| Document Title | Petitioners Supplement And Amendment By Interlineation To Motion To Disqualify Commissioner Greaves For Cause, And For Transfer To The Missouri Supreme Court |
| Attachment(s) | Exhibit A |
| | Exhibit B |
| | Exhibit C |
| | Exhibit D |
| | Exhibit E |
| | Exhibit F |
| | Exhibit G |
| | Electronic Filing Certificate of Service |
| File On Behalf | MATTHEW R GRANT |

Exhibit E
Case No. 12SL-DR-03959-02

Of

To view or save a document, click one of the hyperlinks above. The document title hyperlink will open the document directly until the court accepts the document. After that time, you will have to login to Case.net and use the case number link to view the document.

**Service Information:**

| | |
|---|---|
| **Party** | ELIZABETH ANNE CARTHEN, Attorney for Respondent |
| **Service E-mail Address** | lcarthen@brodielawstl.com |

| | |
|---|---|
| **Party** | MAIA BRODIE, Attorney for Respondent |
| **Service E-mail Address** | mbdiscovery@brodielawstl.com |

| | |
|---|---|
| **Party** | JOHN F MAHON, Attorney - Limited Representation |
| **Service E-mail Address** | jmahon@bscr-law.com |

| | |
|---|---|
| **Party** | KATHERINE ELIZABETH HENRY, Attorney - Limited Representation |
| **Service E-mail Address** | khenry@lashlybaer.com, kenry@chgolaw.com |

| | |
|---|---|
| **Party** | LAWRENCE GERARD GILLESPIE, Attorney for Other Party |
| **Service E-mail Address** | lgillespie@ghc-law.com |

| | |
|---|---|
| **Party** | MATHEW G EILERTS, Attorney for Petitioner |
| **Service E-mail Address** | mat@groweeisen.com |

| | |
|---|---|
| **Party** | JOHN R FENLEY, Guardian Ad Litem |
| **Service E-mail Address** | john@rhflegal.com |

| | |
|---|---|
| **Party** | RACHEL MARIE SCHAFER, Attorney - Limited Representation |
| **Service E-mail Address** | rachel.schafer@bakersterchi.com |

| Party | SHARON E. REMIS, Attorney for Other Party |
| Service E-mail Address | sremis@ghc-law.com |

| Party | MARK ROBERT FELDHAUS, Attorney - Limited Representation |
| Service E-mail Address | mfeldhaus@lashlybaer.com |

Click to access the Missouri eFiling System.

Click here for Manage My Case.

This e-mail is auto generated. Please do not respond. **If you have a concern with your filing, please contact the court.** If you need technical assistance, please contact the Office of State Courts Administrator Help Desk at osca.help.desk@courts.mo.gov or toll-free by phone at 1(888)541-4894. The Help Desk is available 7:30 a.m. to 5:00 p.m. Monday through Friday, excluding state holidays.

| From: | Missouri Courts eFiling System |
|---|---|
| To: | Missouri Courts eFiling Subscriber |
| Cc: | lcarthen@brodielawstl.com; Matthew R. Grant; jmahon@bscr-law.com; khenry@lashlybaer.com; kenry@chgolaw.com; lgillespie@ghc-law.com; mat@groweeisen.com; rachel.schafer@bakersterchi.com; sremis@ghc-law.com; mfeldhaus@lashlybaer.com; 21st Judicial Circuit (St. Louis County) |
| Subject: | eService - 12SL-DR03959-02 - MATTHEW R GRANT V C M G ETAL, St Louis County - Circuit Court |
| Date: | Wednesday, January 8, 2025 11:38:05 AM |

This e-mail is service upon you under Rule 103.08 of the following document(s).

Maia Brodie submitted the following for filing in the case listed below on **1/8/25** at **11:35 AM**.

| Case Number | 12SL-DR03959-02 |
|---|---|
| Case Description | MATTHEW R GRANT V C M G ETAL |

**Document(s):**

| Document Category and Type | Motion to/for - Memorandum of Withdrawal |
|---|---|
| Document Title | Memorandum of Withdrawal |
| Attachment(s) | |
| Filed On Behalf Of | REBECCA A COPELAND |

To view or save a document, click one of the hyperlinks above. The document title hyperlink will open the document directly until it is accepted for filing by the court. After that time, you will have to login to Case.net and use the case number link to view the document.

NOTE: If the case or document contains confidential information, you may not be able to view the document or case through the links provided. In the event you are unable to view information electronically, the court will provide a paper copy for your records.

Click here for the **Missouri eFiling System**.

Click here for **Manage My Case**.

Exhibit F
Case No. 12SL-DR-03959-02

This e-mail is auto generated. Please do not respond. **If you have a concern with**

**this filing, please contact the** court. If you need technical assistance, please contact the Office of State Courts Administrator Help Desk at osca.help.desk@courts.mo.gov or toll-free by phone at 1(888)541-4894. The Help Desk is available 7:30 a.m. to 5:00 p.m. Monday through Friday, excluding state holidays.

Exhibit G
Case No. 12SL-DR-03959-02

## IN THE CIRCUIT COURT OF SAINT LOUIS COUNTY
## STATE OF MISSOURI

| | | |
|---|---|---|
| *In Re the Matter of*: | ) | |
| | ) | |
| **MATTHEW R. GRANT,** | ) | |
| | ) | |
| **PETITIONER,** | ) | |
| | ) | **Cause No.: 12SL-DR03959-02** |
| **vs.** | ) | |
| | ) | **Division: 65** |
| **C.M.G., ET AL,** | ) | |
| | ) | |
| **RESPONDENT.** | ) | |

### MEMORANDUM OF WITHDRAWAL

COMES NOW Elizabeth Carthen, and having left her previous firm, provides notice to the Court and all parties of her withdrawal of her appearance in the above-captioned matter as co-counsel for Respondent, Rebecca Copeland, who remains represented by counsel of record.

By: _Elizabeth Carthen_

**ELIZABETH CARTHEN, #73658**
8909 Ladue Road
St. Louis, Missouri 63124
(314) 726-6242
(314) 726-5155 (Fax)
lcarthen@brodivlawstl.com

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing notice was served by the undersigned to all attorneys of record via the Missouri electronic case filing system.

_Elizabeth Carthen_

# Message Report

OurFamilyWizard
ourfamilywizard.com
info@ourfamilywizard.com
(866) 755-9991

**Generated:** 01/28/2025 at 11:54 AM by Matt Grant

**Number of messages:** 1

**Timezone:** America/Chicago

**Parents:** Matt Grant, Rebecca Copeland

**Child(ren):** ████████████████

**Third Party:**

**Exhibit H**
**Case No. 12SL-DR-03959-02**

---

**Message 1 of 1**

| | |
|---|---|
| **Sent:** | 01/02/2025 at 10:04 AM |
| **From:** | Matt Grant |
| **To:** | Rebecca Copeland (*First Viewed: 01/02/2025 at 12:23 PM*) |
| **Subject:** | Re: Fri morning / Sunday |

---

No lies on my end. I probably have used Maia's first name. Your problem is you lied to the boys and told them that your lawyer wont let agree to extensions of times.

Seems you wised up but the damage is done. Too late. These boys know you have been lying to them. Same with Sarah, same with Staci. You 3 will reap what you sow.

I realize you are upset that your judge will be gone soon. Changes everything doesn't it?

You bet on Staci, Maia, and Sarah, oh what a mistake.

Holla when you are ready to surrender and stop making things worse in yourself.

---

### On 01/02/2025 at 09:19 AM, Rebecca Copeland wrote:

| | |
|---|---|
| **To:** | Matt Grant (*First Viewed: 01/02/2025 at 09:20 AM*) |
| **Subject:** | Re: Fri morning / Sunday |

Yes, by you. As they don't know her name. I confirmed it. Just want to "document" yet another lie of yours.

---

### On 01/01/2025 at 11:31 PM, Matt Grant wrote:

| | |
|---|---|
| **To:** | Rebecca Copeland (*First Viewed: 01/02/2025 at 09:16 AM*) |
| **Subject:** | Re: Fri morning / Sunday |

Maia's first name wasn't used.

---

### On 01/01/2025 at 09:34 PM, Rebecca Copeland wrote:

| | |
|---|---|
| **To:** | Matt Grant (*First Viewed: 01/01/2025 at 09:50 PM*) |
| **Subject:** | Re: Fri morning / Sunday |

This entire email is ridiculous.

You want more time b/c boys want to sleep in. Ask. But don't make up lies the boys said about Maia. They dont even know my attorneys name. And please stop telling boys lies about me & this case.

With regard to Friday, that's fine. I just want them home by 11. A Saturday visit will not work. If it snows on Sunday we can address it then.

On 01/01/2025 at 06:48 PM, Matt Grant wrote:

To:          Rebecca Copeland (*First Viewed: 01/01/2025 at 09:01 PM*)
Subject:     Fri morning / Sunday

Boys are having sleepover here tomorrow night.  I am sure you will say no but im documenting my request that you allow the boys and their guests to sleep in and i'll drop them off right after they wake.  You telling them that Maia wont allow you to extend visits is a lie.  You are the client and you can do what you want.  There is no reason the boys and their friends shouldn't be able to sleep in.  This is just more of your vengeance towards me for god knows what.

Plz me know.

On Sunday, we will be getting snow.  Looks like 8"-9".  I propose we move my visit to Sat instead of Saturday.  It will be safer for the boys and i being able to avoid being on the road on Sunday.  Im sure the answer is no.  Plz confirm.

Another option is to move Sunday visit to a weeknight next week (Mon or Tuesday).  Plz let me know if that works.

The above "Sunday options" are just a way to make the boys safer.  If i have to rent a 4 wheel drive truck to make the Sunday visit happen, i will.  So get your hope of me missing a visit out of your head.

Plz let me know on all of the above.

Thx

# Message Report

⌐ OurFamilyWizard

OurFamilyWizard
ourfamilywizard.com
info@ourfamilywizard.com
(866) 755-9991

**Generated:** 01/28/2025 at 12:00 PM by Matt Grant

**Number of messages:** 1

**Timezone:** America/Chicago

**Parents:** Matt Grant, Rebecca Copeland

**Child(ren):** ▮▮▮▮▮▮▮▮▮▮

**Third Party:**

---

## Message 1 of 1

**Sent:**      01/10/2025 at 12:04 PM

**From:**      Matt Grant

**To:**        Rebecca Copeland (*First Viewed: 01/10/2025 at 12:08 PM*)

**Subject:**   Re: Signed Up! indoor soccer

---

None of this started up. He lost hos spot because he didnt show the entire 2nd session last Spring. John has the texts that ▮▮▮▮ sent me about you not willing to take him and him fearing everyone would be mad at him. You need to wake up to reality to how bad your situation really is. I have no clue what Maia has been telling you that didnt already share with sarah and Staci via text bit your situation is very very bad now.

Lying about facts more will not help you.

You will have to get a new lawyer, i assume you know that. One of yours already withdrew from the case. Maia will be next.

---

### On 01/10/2025 at 11:37 AM, Rebecca Copeland wrote:

**To:**        Matt Grant (*First Viewed: 01/10/2025 at 11:59 AM*)

**Subject:**   Signed Up! indoor soccer

---

Well shoot! I was going thru the process & it signed him up already! I didn't know I had a card on file. Ryan stated he sent the link to both of us so I wanted to let you know so you don't sign him up too. Or if you do, I'll try to get my money back. Also, he said they'll send a link for jerseys. I'm going ot jump on that b/c I want ▮▮▮▮ to be #23 (which Ryan approved) so he can carry on my sister's tradition. I'm a little upset that all this started up w/out any notification to me. Or maybe even you.

---

### On 01/10/2025 at 11:28 AM, Rebecca Copeland wrote:

**To:**        Matt Grant (*First Viewed: 01/10/2025 at 11:59 AM*)

**Subject:**   Re: ▮▮▮r - indoor soccer

---

I will sign him up.

---

### On 01/10/2025 at 10:49 AM, Rebecca Copeland wrote:

**To:**        Matt Grant (*First Viewed: 01/10/2025 at 10:55 AM*)

**Subject:**   Re: ▮▮▮ - indoor soccer

---

Per usual, your entire email is ridiculous & false.

My last email exchange w/ Ryan was dated June 13, 2024 with ME asking about soccer & he states they aren't having a team due to lack of players. If he restarted a team, I was never notified. I have ZERO emails from him after. So, ▮▮▮ never "lost" his spot, the team dissolved. If Ryan is restarting a team, of coarse I'd love ▮▮▮ to be on it! Please add me on the Vetta email so I can actually get the schedule. It's embarrassing emailing the coaches all the time asking for it b/c you refuse to include me - on anything.

Exhibit I
Case No. 12SL-DR-03959-02

**On 01/09/2025 at 03:38 PM, Matt Grant wrote:**

**To:**         Rebecca Copeland (*First Viewed: 01/10/2025 at 10:26 AM*)

**Subject:**       ▮▮▮▮ indoor soccer

As you know, ▮▮▮▮ lost his spot on the team because he no-showed last session of indoor for all games.

Ive been in touch with Ryan Bouchard and I was able to get him on the spot that just opened.

Before i confirm with ▮▮▮▮ and commit to the team, i want to be sure you are in board and will take him to all of his games.

Let me know.

# Message Report

> OurFamilyWizard

**Generated:** 01/28/2025 at 12:06 PM by Matt Grant

**Number of messages:** 1

**Timezone:** America/Chicago

**Parents:** Matt Grant, Rebecca Copeland

**Child(ren):** ▨▨▨▨▨▨▨▨▨ Grant

**Third Party:**

OurFamilyWizard
ourfamilywizard.com
info@ourfamilywizard.com
(866) 755-9991

---

## Message 1 of 1

**Sent:**       01/13/2025 at 03:44 PM

**From:**       Matt Grant

**To:**         Rebecca Copeland (*First Viewed: 01/13/2025 at 04:57 PM*)

**Subject:**    ▨▨▨▨▨ air Cut

I didnt realize they have 1/2 days all week.  Of course you wont let them ride bus here.  So you can handle haircut on your time.  I dont have enough time with the boys to spare any when you act like that.

You might want to read the motion i filed today.  Pack your bags as you and your entire crew are going to jail.  What fun!

---

On 01/13/2025 at 03:05 PM, Rebecca Copeland wrote:

**To:**         Matt Grant (*First Viewed: 01/13/2025 at 03:05 PM*)

**Subject:**    ▨▨▨▨▨ ut

▨▨▨ informed me you are taking him to his haircut on TH. Which is at 2:40 - 30 minutes away.  Which means you'll need to leave about 2:10.  Please remember your time w/ the boys start at 3:00.  Therefore, if you agree to take him somewhere prior to 3:00, please run it by me.  Since you already worked this out w/ ▨▨▨▨ t's fine.  However, you must blow at 1:30 prior to the 2:00ish pickup.  If I do not receive your blow I will drive him to his appt & drop at your place after.

Exhibit J
Case No. 12SL-DR-03959-02

# Message Report

> OurFamilyWizard

**Generated:** 01/28/2025 at 12:13 PM by Matt Grant

**Number of messages:** 1

**Timezone:** America/Chicago

**Parents:** Matt Grant, Rebecca Copeland

**Child(ren):** ██████████████████

**Third Party:**

OurFamilyWizard
ourfamilywizard.com
info@ourfamilywizard.com
(866) 755-9991

---

## Message 1 of 1

**Sent:** 01/17/2025 at 10:12 PM

**From:** Rebecca Copeland

**To:** Matt Grant (*First Viewed: 01/17/2025 at 10:14 PM*)

**Subject:** Re: Tomorrow - 11:00

What's "documented" is the fact you didn't have the boys here at 9:00 as the court order states. And you clearly had zero intention of doing so. I had to text ██████

---

### On 01/17/2025 at 09:13 AM, Matt Grant wrote:

**To:** Rebecca Copeland (*First Viewed: 01/17/2025 at 10:13 AM*)

**Subject:** Re: Tomorrow - 11:00

Your lie to ██████ is documented. We are on our way.

---

### On 01/17/2025 at 09:11 AM, Rebecca Copeland wrote:

**To:** Matt Grant (*First Viewed: 01/17/2025 at 09:13 AM*)

**Subject:** Re: Tomorrow - 11:00

Just confirming w/ you I just text ██████ & said you guys; don't need to rush out but need them here by 10.

---

### On 01/17/2025 at 09:06 AM, Matt Grant wrote:

**To:** Rebecca Copeland (*First Viewed: 01/17/2025 at 09:10 AM*)

**Subject:** Re: Tomorrow - 11:00

You are unbelievable. ██████ knows you are a liar! Keep it up!

---

### On 01/17/2025 at 09:00 AM, Rebecca Copeland wrote:

**To:** Matt Grant (*First Viewed: 01/17/2025 at 09:02 AM*)

**Subject:** Re: Tomorrow - 11:00

Stick to court order

---

### On 01/16/2025 at 06:28 PM, Matt Grant wrote:

**To:** Rebecca Copeland (*First Viewed: 01/17/2025 at 09:00 AM*)

**Subject:** Tomorrow - 11:00

Confirming that you told boys that drop off at 11:00 is approved. Let me know if that is incorrect.

**Exhibit K**
**Case No. 12SL-DR-03959-02**

# Message Report

> OurFamilyWizard

Generated: 01/28/2025 at 12:16 PM by Matt Grant

**Number of messages:** 1

**Timezone:** America/Chicago

**Parents:** Matt Grant, Rebecca Copeland

**Child(ren):** ██████████████

**Third Party:**

OurFamilyWizard
ourfamilywizard.com
info@ourfamilywizard.com
(866) 755-9991

---

## Message 1 of 1

| | |
|---|---|
| **Sent:** | 01/22/2025 at 03:04 PM |
| **From:** | Matt Grant |
| **To:** | Rebecca Copeland (*First Viewed: 01/22/2025 at 03:26 PM*) |
| **Subject:** | Re: Test? |

You need to focus on hiring a criminal defense lawyer asap. Dont worry about my sobriety. No one has any concerns about that, including you. Give Maia a call and ask her how yesterday went.

---

### On 01/22/2025 at 03:02 PM, Rebecca Copeland wrote:

| | |
|---|---|
| **To:** | Matt Grant (*First Viewed: 01/22/2025 at 03:02 PM*) |
| **Subject:** | Re: Test? |

Please set an alarm to do this so you're not stressing out everyone else.

---

### On 01/22/2025 at 02:57 PM, Matt Grant wrote:

| | |
|---|---|
| **To:** | Rebecca Copeland (*First Viewed: 01/22/2025 at 03:01 PM*) |
| **Subject:** | Re: Test? |

Sending now

---

### On 01/22/2025 at 02:52 PM, Rebecca Copeland wrote:

| | |
|---|---|
| **To:** | Matt Grant (*First Viewed: 01/22/2025 at 02:57 PM*) |
| **Subject:** | Test? |

Test???

Exhibit L
Case No. 12SL-DR-03959-02

| From: | Missouri Courts eFiling System |
|---|---|
| To: | Missouri Courts eFiling Subscriber |
| Cc: | Matthew R. Grant; 21st Judicial Circuit (St. Louis County) |
| Subject: | Recalled for Filing - 12SL-DR03959-02 - MATTHEW R GRANT V C M G ETAL, St Louis County - Circuit Court |
| Date: | Thursday, January 23, 2025 5:02:07 AM |

Your submission **EF37555998 was RECALLED BY FILER FOR FILING\*** by **St Louis County - Circuit Court** on **1/22/25** at **5:01 PM**.

Below is important information regarding this filing.

| eFiling Confirmation Number | EF37555998 |
|---|---|
| **Filer Reference Number** | **None entered by filer** |
| Case Number | 12SL-DR03959-02 |
| Case Description | **MATTHEW R GRANT V C M G ETAL** |

Any credit card or eCheck transactions associated to this return will be returned, **along with any processing fee**, within five days.

Click to access the **Missouri eFiling System**.

Click here for **Manage My Case**.

This e-mail is auto generated. Please do not respond. **If you have a concern with your filing, please contact the court**. If you need technical assistance, please contact the Office of State Courts Administrator Help Desk at osca.help.desk@courts.mo.gov or toll-free by phone at 1(888)541-4894. The Help Desk is available 7:30 a.m. to 5:00 p.m. Monday through Friday, excluding state holidays.

Exhibit M
Case No. 12SL-DR-03959-02

**In the**

# CIRCUIT COURT
## of St. Louis County, Missouri

Plaintiff(s) _Matthew Grant_

vs:

Defendant(s) _C.M.G, et al_

Date _11/7/2024_

Case Number _12SL-DR-63959-02_

Division _65_

For File Stamp Only

# FILED
NOV 07 2024

**JOAN M. GILMER**
CIRCUIT CLERK, ST. LOUIS COUNTY

### Order on Motion to Compel

Petitioner's Motion to Compel an answer to interrogatory #3, propounded on Respondent July 3, 2024 is granted. Respondent is granted 10 days, or until 11/17/2024, to provide her written response.

Petitioner's Motion to be provided mental health and medication information for Respondent is passed until the parties have provided the court with a protective order related to the release of that information.

**SO ORDERED**

Judge 65 _Mary Ohearts_

ENTERED: _11/7/2024_
(Date)

CCOPR47-WS  Rev. 02/14

Attorney _M. Grant, M. Eilerts_   Bar No.

Address

Phone No.   Fax No.

Attorney _C.M.G., et al_   Bar No.

Address

Exhibit N
Case No. 12SL-DR-03959-02

Phone No.   Fax No.

## STATE OF MISSOURI

Matthew Grant,                       )
                                     )
                                     )
                    Petitioner,      )        Cause No: 12SL-DR03959-02
                                     )
v.                                   )
                                     )        Division: 65
CMG, et al,                          )
                                     )
                                     )
                    Respondents,     )

## NOTICE OF DEPOSITION

TAKE NOTICE, the custodial deposition of the MO Department of Social Services-

Children's Division will be taken on May 22, 2024, at 12:00 pm. at the law offices of Reinker,

Hamilton & Fenley, L.L.C. 2016 S. Big Bend Boulevard, St. Louis, MO 63117.

This is a custodial deposition only. Copies of any and all records received will be forwarded to all attorneys of record.


Respectfully submitted,

REINKER, HAMILTON & FENLEY, L.L.C.


*/s/ John R. Fenley*
John R. Fenley, MBEN 63810
Guardian ad Litem
2016 S. Big Bend Blvd.
St. Louis, Missouri 63117
Telephone (314) 333-4140
Facsimile: (314) 754-2685
john@rhflegal.com


Exhibit O
Case No. 12SL-DR-03959-02

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served via US Mail and/or the Court's Electronic filing system on the 30th day of April 2024 to all parties of record.


__John R. Fenley_____



In the

# CIRCUIT COURT
## Of St. Louis County, Missouri

Matthew Grant
_____
Plaintiff(s)

vs.

CMG, et al.
_____
Defendant(s)

April 30, 2024
_____
Date
12SL-DR03959-02
_____
Case Number
65
_____
Division

For File Stamp Only

## SUBPOENA FOR TAKING DEPOSITION*

[FOR USE PURSUANT TO RULES **57.09** & **58.02** IN AN ACTION PENDING IN THE CIRCUIT COURT OF ST. LOUIS COUNTY]

THE STATE OF MISSOURI to:

MO Dept. of Social Services- Children's Division
_____
9900 Page Avenue
_____
St. Louis, MO 63132
_____

YOU ARE HEREBY COMMANDED TO:

☒ APPEAR at the following place on the date and at the time indicated below:

Place of deposition: Reinker, Hamilton & Fenley
2016 SOUTH BIG BEND BOULEVARD
SAINT LOUIS, MISSOURI 63117

Date of deposition: May 22, 2024

Time of deposition: 12:00 pm

☐ CONTACT _____ (name) or _____ (telephone) who will advise of the place to appear.

☐ On behalf of _____

☐ To give testimony in the above cause pending in the Circuit Court of St. Louis County.

☒ To produce the following books, papers, documents, or tangible things:** SEE ATTACHED AS IF MORE FULLY SET OUT HEREIN.

_____
_____
_____

**SPECIAL NEEDS:** If you have special needs addressed by the Americans with Disabilities Act, please notify the party in whose office you are to appear for the deposition

WITNESS, Joan M. Gilmer, Clerk of the Circuit Court, with the seal thereof hereto affixed, at Clayton, in the County of St. Louis, this 30th day of April 2024
_____

_JOAN M. GILMER, Circuit Clerk_

* For depositions attach a list of all attorneys of record and self-represented parties. Include the name, address and telephone number.
** With the agreement of all parties, the non-party may be excused from appearance at the location specified for document production and may produce the subpoenaed items to the party responsible for issuance and service of the subpoena, who shall then offer to all other parties the opportunity to inspect or copy the subpoenaed items. The party responsible for issuance and service of the subpoena is responsible for obtaining the agreement of all parties and advising the non-party in writing of the agreement, with a copy to all attorneys of record and self-represented parties. Absent such an agreement, the subpoenaed items shall only be produced at the place, date and time specified by the subpoena for all parties to inspect or copy.

CCCDT37    Rev 08/12

# RETURN

Executed within the County of St. Louis and State of Missouri, by leaving a true copy of the same with the within named_____

_____

_____
Sheriff of the County of St. Louis

By _____
Deputy

ST. LOUIS COUNTY CIRCUIT COURT

Case Number_____

Division _____

SUBPOENA FOR TAKING DEPOSITION

VS.

WITNESSES

Set for _____ 201___

The attorney or party requesting attendance of witness is: _____

CCCDT37  Rev. 06/12

## ATTACHMENT TO SUBPOENA DUCES TECUM

*Re:*        *Matthew Grant v CMG, et al.*

## RECORDS TO BE PRODUCED ARE AS FOLLOWS:

1. Entire file, including but not limited to any and all information, records, reports, hotlines, journals, notes, time logs, emails, correspondence, communications, recordings, tapes, cds, dvds, videos, photos and/or medical records, relating to **Matthew Grant, DOB: August 13, 1975; Rebecca Copeland, DOB: May 27, 1975; Connor Grant, DOB: June 10, 2009, and/or Carter Grant, DOB: June 6, 2011**; from January 1, 2019, to and including the present date when responding to this Subpoena.