Electronically Filed - ST LOUIS COUNTY - January 07, 2025 - 01:08 PM

IN THE CIRCUIT COURT OF
ST. LOUIS COUNTY MISSOURI

| | | |
|---|---|---|
| *In Re the Matter of:* | ) | |
| | ) | |
| MATTHEW R. GRANT, | ) | |
| | ) | Case No. 12SL-DR03959-02 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Division 65 |
| | ) | |
| C.M.G. et al, | ) | |
| | ) | |
| Respondent. | ) | |

**PETITIONER'S SUPPLEMENT AND AMENDMENT
BY INTERLINEATION TO MOTION TO DISQUALIFY
COMMISSIONER GREAVES FOR CAUSE, AND
FOR TRANSFER TO THE MISSOURI SUPREME COURT**

COMES NOW, Petitioner, Matthew R. Grant, pursuant to Rule 55.33(a), and hereby supplements and amends his previously filed Motion to Disqualify Commissioner Greaves for Cause, and for Transfer to the Missouri Supreme Court ("Motion to DQ") as follows:

**15.1.   Bias Example #10:**

*Commissioner Greaves' Unsolicited Allowance of the Amendment of Pleadings Without Leave of Court:*

A.  Due to the length of the Motion to DQ and the level of attention that this final example deserves, Petitioner submits this example separately.

B.  In addition to the litany of other examples of the appearance of and *actual bias* demonstrated in this case, Petitioner requests that Presiding Judge Hilton specifically review the series of events leading up to and following Commissioner Greaves December 9, 2024, Pre-Trial Orders that included the following entry:

> All amended pleadings, pre-trial motions and discovery shall be closed on December 17, 2024, which was the first scheduled trial day.

1

**Exhibit H**

Electronically Filed - ST LOUIS COUNTY - January 07, 2025 - 01:08 PM

**Exhibit A**, ¶ 3.

C.  This matter was filed on March 12, 2024.  **Exhibit B**.

D.  Discovery closed on November 25, 2024.  **Exhibit C**, October 2, 2024, Status Conference Order.

E.  A reasonable person investigating whether Commissioner Greaves possesses hatred, prejudice and/or bias towards Petitioner would certainly wonder why any Family Court Judge or Commissioner would *sua sponte* reopen pleadings some thirteen (13) days after the original close of discovery?

F.  That is an oddity to be sure.

G.  Commissioner Greaves ordered the parties to complete reopened discovery on December 17, 2024.

H.  On that very same date the Commissioner allowed the parties to file amended pleadings?

I.  More than three (3) weeks after the close of the original discovery deadline, and on the date the second discovery period closed?

J.  Why?

K.  There must be more to this series of events, right?

L.  Isn't it even more odd that Commissioner's deadline for "amended pleadings" does not appear to require leave of court?

M.  As will be discussed below, nothing done by Respondent's counsel, her client, or Commissioner Greaves in this case is an accident.

N.  Buckle in because it will be yet another bumpy ride with views of actions from individuals involved in this case never seen before in this Circuit, and likely never

Electronically Filed - ST LOUIS COUNTY - January 07, 2025 - 01:08 PM

seen before in the State of Missouri.[1]

### *Commissioner Greaves' Motive and Assistance Revealed:*

***Commissioner Greaves' Intentional and Strategic Allowance of Pleadings To Provide a Window for Respondent to Cure the Fatal Defect in her Motion to Modify in Prejudice to Petitioner***

A. Back when this matter was filed, Respondent pleaded and sought as her relief in the body of her Motion to Modify Custody:[2]

> It is in the minor child's best interest to change the parenting plan and order Petitioner to only have supervised visitation with the minor children *until he has his drinking and mental health under control*.

> **Exhibit B**, ¶ 12 (emphasis added).

B. Under the existing August 5th and October 2nd *Consent* Orders, Petitioner currently has overnight custody of his children each Thursday evening, for a total of *four (4) nights per month*. **Exhibit D**, August 5, 2024, Consent Order; *see also* **Exhibit E**, October 2, 2024, Consent Order.

C. In addition to the four (4) overnights per month, Petitioner is currently allowed, *by consent*, a five (5) hour visit each Wednesday, and a four (4) hour visit every other Sunday. *Id.*

D. That totals four (4) overnights, four (4) additional Wednesday non-overnight visits, and two (2) Sunday non-overnight visits that Petitioner has managed to cobble together *via consent* in the face of extreme resistance from both the Petitioner and

---

[1] Petitioner has scoured the available historical records of the past in this State and has found nothing similar. He did find some hypotheticals published by BAMSL. This is situation is many, many times worse than scenario 2. https://www.bamsl.org/?pg=BarJournalBlog&blAction=showEntry&blogEntry=82318

[2] As will be discussed *infra*, Respondent did not seek any change to child support as she knew that the existing amount is ***grossly*** inequitable. It is Petitioner that sought and seeks a recalculation of child support. *See* Petitioner's August 14, 2024, Counter Motion to Modify, October 31, 2024, Motion for Leave to File First Amended Counter Motion to Modify, and December 18, 2024, Motion for Leave to File Second Amended Counter Motion.

Electronically Filed - ST LOUIS COUNTY - January 07, 2025 - 01:08 PM

Commissioner Greaves.

E.  On November 26, 2024, Respondent filed her Proposed Parenting Plan in which she sought, among other things:

- Proposing Mother have ***sole legal custody*** of the Children; and

- Proposing Mother have ***sole*** physical custody and that Father have severely reduced "visits," including total overnights with the Children that would be reduced down from the four (4) currently in the Consent Orders, to ***only two (2) nights per month, and with no other visits whatsoever!***

  - The nights that Respondent proposed are Wednesdays and Thursday when the Children would mostly be in school during the calendar year. She did not even propose Petitioner's only two (2) nights *per month* fall on a Friday or a Saturday.

  - Take a moment and let that sink in.

  **Exhibit F**, Parenting Plan Part A, p. 3.

F.  What St. Louis Family Court practitioner would think a reasonable Commissioner would adopt such a baseless attempt to remove existing custody and go backwards to such an extreme?

  a.  Particularly, in a case involving a parent with more than ***915 passing*** Soberlink tests, ***zero*** non-compliant tests, and complete sobriety dating back to March 17, 2024?[3]

G.  What St. Louis Family Court lawyer and practitioner would think a reasonable St. Louis Family Court Commissioner would approve and adopt such a baseless request

---

[3] The total passing test figure continues to grow, and this figure is current as of 2:15 p.m. on January 3, 2025.

Electronically Filed - ST LOUIS COUNTY - January 07, 2025 - 01:08 PM

when Petitioner's voluntary mental evaluation by Dr. Voorhees also showed no concerns?

H.  What St. Louis County Family Court lawyer and practitioner would think a St. Louis County Family Court Commissioner would approve and adopt such an extreme request to take away existing overnights and existing visits that currently take place **by consent**?

    a.  The answer is simple:

        • This Respondent's counsel, Maia Brodie, appearing before this Commissioner, Honorable Mary W. Greaves.[4]

I.  Has the reader(s) figured it out yet?

J.  What more does the objective evidence need to show?

### _A Breakdown Of The Absolute Abomination That Has Occurred In Division 65 Of This Circuit Court On This Issue Alone:_

1.  The filings in this matter objectively demonstrate that Respondent, as the close of discovery approached, had no idea that she **never pleaded** a request for either sole legal custody, or _any_ reduced physical custody by Petitioner.[5]

2.  If she had, she would have moved to amend her Motion to Modify long before discovery closed.

---

[4] Petitioner reiterates the importance of transferring this matter to the Missouri Supreme Court for the assignment of a judge from outside the 21st Judicial Circuit.  The conduct uncovered and placed into the court record in this matter makes it utterly impossible for Petitioner to obtain an unbiased ruling in this Courthouse in this matter.  To be clear, any bias may very well in his favor and against Respondent and her counsel, but the potential for bias, even subconscious bias, is real.  All Petitioner has ever wanted was a fair and unbiased application of the law to the facts.

[5] It will likely never be known just how long ago this specific plan was hatched.  Petitioner intends to prove through additional discovery that it was no sooner than the date that mediation took place in this matter.

Electronically Filed - ST LOUIS COUNTY - January 07, 2025 - 01:08 PM

3. Such an amendment would have led to additional discovery on, among other things, the basis for the *extreme* change in Respondent's request for relief.

4. So why didn't Respondent move to amend earlier in this case?

5. The answer is ***diabolical***.

6. Respondent finally realized that she was headed to trial under her single and operative Motion to Modify filing that ***only sought to add a condition to*** Petitioner's 50/50 joint legal and physical custody, a new component of temporary supervision and that that supervision was to end when Petitioner had "his drinking and mental health under control." **Exhibit B**, ¶ 12 (emphasis added).

7. As the August 5, 2024, Consent Order illustrates, the entirety of the relief sought by Respondent in her Motion to Modify in this matter was accomplished no later than August 5, 2024. **Exhibit D.**

8. Supervised visits ended on August 5, 2024, ***BY CONSENT***. *Id.*

9. Even the "mental health" claimed concern – always false in its nature – it too was resolved ***by consent*** when Respondent agreed to the ***cessation of supervised visits***.

10. Respondent's entire Motion to Modify was mooted as a matter of law on August 5, 2024.

11. So why did this case proceed after August 5, 2024?

12. This entire case has been about delay, running up Petitioner's own attorneys' fees, and running up Respondent's attorneys' fees under the well-based belief that Commissioner Greaves would Order Petitioner to pay Respondent's fees his own funds.[6]

---

[6] As is no coincidence, Respondent had no fear of any consequences for her deletion of specifically requested text messages, her submission of intentionally false income and expense statements, her

Electronically Filed - ST LOUIS COUNTY - January 07, 2025 - 01:08 PM

13. Is there any doubt in anyone's mind that if given the chance Commissioner Greaves would order Petitioner to pay Respondent's attorneys' fees?

14. Does the reader see it now?

15. Respondent's requested relief remained unchanged throughout *the life of this case* and *past the close of discovery*, and even through and past the last ***post-close of discovery*** deposition that was to have been taken in this case which was set on December 4, 2024.

16. Petitioner is observant if nothing more, and as will explained below, he held this final trump card in his pocket and planned to play it at trial.

17. The parties appeared at the final Pre-Trial Conference in this matter and Respondent ***still*** had never filed anything seeking leave, pursuant to Rule 55.33(a), to amend her Motion to Modify in order to allege the relief she requested in her Proposed Parenting Plan.

18. Respondent found herself in quite the pickle as she arrived at the December 2, 2024, pre-trial conference.  Discovery was closed and trial was just fifteen (15) days away. Whether Respondent was aware at that point in time cannot be proven *as of yet*, but the objective evidence shows her Motion to Modify was fatally flawed as a matter of law.

    a. She was poised to seek, at trial, relief that she never pleaded for in her Motion to Modify.

19. As a surprise to Respondent, and certainly to Commissioner Greaves, Petitioner had the *audacity* to make an oral Motion to Disqualify the Commissioner from further

---

knowingly false, sworn testimony, and her litany of sanctionable tactics ***because of the name of her counsel and the name that hangs on door to the chambers of the Commissioner assigned to this case***.

Electronically Filed - ST LOUIS COUNTY - January 07, 2025 - 01:08 PM

handling of this matter.

20. Petitioner proceeded to request the necessary hearing transcripts and what happened next is simply amazing.

21. Certainly, Respondent's counsel did not make ex parte contact with Commissioner Greaves and ask her to issue a *sua sponte* Order on this issue.

22. That would be unethical.

23. Certainly, Commissioner Greaves would not receive such a request and act on it.

24. That would be unethical as well.

25. In fact, Commissioner Greaves would be obligated to report any such ex parte contact by Respondent's counsel to the Office of Chief Disciplinary Counsel of the Missouri Supreme Court.

26. So if the above, didn't happen, then what did?

27. How did the Commissioner know how to assist the Respondent sua sponte without an improper, *ex parte* request from Respondent's counsel?

28. As previously discussed, maybe the Commissioner is clairvoyant?

29. Or, maybe on December 9, 2024, sometime after midnight, an early ***Christmas Miracle*** took place!

30. Out of nowhere, Santa Claus must have made an early trip down from the North Pole and he parked his reindeer and sleigh on the roof of the St. Louis County Circuit Courthouse.  Then, he apparently slid down through the ductwork and into the chambers of Commissioner Greaves in Division 65.

31. There, right there, Santa passed along information to Commissioner Greaves that Respondent's counsel was ethically prohibited from sharing *ex parte*.

Electronically Filed - ST LOUIS COUNTY - January 07, 2025 - 01:08 PM

32. That's right, the explanation is that Santa left a present on the Commissioner's desk, but that present was not for the Commissioner at all.

33. No, no.  The present from Santa was intended for Respondent's counsel and her client.

34. Despite all of her false testimony under oath, deletion of evidence, violations of the Court's orders, and refusals to comply with the Guardian *Ad Litem*'s recommendations in this case, right there on Santa's Nice List was "Rebecca A. Copeland."

35. And just a few pages earlier, the name "Maia Brodie" appeared.

    a.  What a surprise considering her direct involvement and her role as director of the shameful activities that have taken place in this case.

36. This new, but certain to be long-recognized Christmas story, gets even better by the moment.

37. When the Commissioner arrived at her chambers on the morning of December 9th, she found Santa's gift right there on her desk.

38. While ultimately for Respondent's counsel and her client, the present had a tag with instructions that said it was for the Commissioner to open.

39. When the red velvet bow was untied, and the box was carefully opened, inside was a handwritten message from Santa to Commissioner Greaves:

> "Please pass along this gift from me to Maia Brodie and Rebecca Copeland:  I want you to enter a *sua sponte* Order that, among other things, allows Maia Brodie the ability to file and amend Rebecca Copeland's Motion to Modify now, at this late stage, even though discovery has closed!  But shhhhh don't tell anyone that I, Santa, asked you to do so."

9

Electronically Filed - ST LOUIS COUNTY - January 07, 2025 - 01:08 PM

40. ***That's right, alert all the little boys and girls of St. Louis County that Santa is real!***

41. He visited Division 65 of this Courthouse less than one month ago!

42. How else could Commissioner Greaves have known that such an Order was needed, and would help Respondent's counsel and her client, and so **severely prejudice** Petitioner?

43. Surely, nothing untoward took place; Petitioner does not suggest that at all.  That would never happen in Commissioner Greave's courtroom in a case where Maia Brodie is counsel.[7]

44. So instead, Petitioner has now had an epiphany, and his eyes have been opened to the fact that **Santa Claus is real** and **Commissioner Greaves is clairvoyant**.

45. Oh, what a day!  Petitioner has been blinded by ignorance all these years.

46. Not only that, but it also appears that Santa is **diabolical**.

47. Santa must also be a lawyer trained in Missouri civil procedure, because he somehow knew that if a *sua sponte* Order purported to allow amendments, any amendments whatsoever of any kind, with no need for a Rule 55.33(a) Motion for Leave, then Petitioner would have **no opportunity to oppose** the normally required Motion for Leave to Amend that should have been filed by Respondent.

---

[7] Wouldn't reopening discovery allowing for Petitioner to issue subpoenas for, inter alia, their cell phone records and maybe third parties in this case be insightful on this topic as it relates to *actual bias*?  And at least the Commissioner's deposition thereafter?  Wouldn't that shake out whether or not Santa is real and whether he is the one that came up with the idea about the need and manner to amend Respondent's Motion to Modify and he passed it along as a gift via Commissioner Greaves all on his own?  Petitioner is prepared to run this issue to the ground via evidence to be placed into the court record.  He already knows what happened as the reader might tell.  Sitting back and letting this play out has been the difficult part, the easy part now commences.

Electronically Filed - ST LOUIS COUNTY - January 07, 2025 - 01:08 PM

48. A Motion for Leave just like the one Petitioner filed on December 17, 2024.[8]

49. That's right, at Santa's ***diabolical*** request, not that of Respondent's counsel, Commissioner Greaves built a complete bypass for Respondent's counsel and her client around the factors and burden of proof under Missouri Law applicable to any Motion for Leave to Amend her Motion to Modify:

> A party [ ] does not have an absolute right to file an amended petition.  The factors to be considered in determining whether to permit an amendment to a pleading include:
>
> 1) hardship to the moving party if leave to amend is not granted;
> 2) reasons for failure to include any new matter in previous pleadings;
> 3) timeliness of the application;
> 4) whether an amendment could cure any defects of the moving party's pleading; and
> 5) injustice to the party opposing the motion.
>
> *Village at Deer Creek Homeowners Ass'n, Inc. v. Mid-Continent Cas. Co.,* 432 S.W.3d 231, 246 (Mo. App. 2014) (citations omitted).[9]

50. Presiding Judge Hilton need not reach the issue of whether Respondent's Motion for

---

[8] Petitioner saw this maneuver for what it was.  He filed a Motion for Leave as is required by Missouri Law.  Not surprisingly, Respondent did not, just as was planned all along.  Commissioner Greaves granted Petitioner's Motion for Leave to Amend believing that Petitioner had been fooled once more.  Because the Court has already granted Petitioner's Motion for Leave, the next jurist assigned to this matter need only address how to handle the proper vacating and setting aside of the Order that allowed Respondent's Amended Motion to Modify in the first place.  Petitioner is well-aware of the fact that the entry of such an Order vacating and setting aside will make his Second Amended Counter Motion to Modify a nullity.  Once the Order vacating and setting aside is entered, Petitioner will refile his Motion for Leave and demonstrate his right to the same amendment under Missouri law as his request is not unfairly prejudicial to Respondent and he was only able to file it because he finally had grounds to Move to Disqualify Commissioner Greaves.  There is zero chance that Commissioner Greaves would have granted the relief that Petitioner now seeks.  For this reason, Petitioner also placed the Children's attendance data on this Court's record on December 16, 2024, via his Opposition to Respondent's Motion to Quash relating to Parkway School District.  Now that a new judge or commissioner should be appointed soon, that Motion to Quash can be denied by an unbiased jurist.

[9] This quote is correct and the *Village at Deer Creek Homeowner's Ass'n Inc.* decision involved a proposed amendment to an Answer. *Id*. at. 247.  Similarly, here, the same standard is general in nature and applies to Respondent's desire to amend her Motion to Modify.

11

Leave to Amend her Motion to Modify would have been granted to resolve the pending Motion to DQ.

    a. Clearly, any such Motion for Leave to Amend by Respondent would have been denied by an unbiased jurist for reasons such as, but not limited to, the fact that it would have been made after the close of discovery and it would have severely prejudiced Petitioner by removing his complete defense in the case.

        i. The ruling, by any fair jurist, would be that any such Motion for Leave to Amend should be denied just like the trial court's denial that was affirmed in *Village at Deer Creek Homeowners Ass'n, Inc.* 432 S.W.3d at 247.

            1. There, similar to the situation here, the moving party sought to amend its answer after the close of discovery and six weeks before trial. *Id.*

51. But, again, Presiding Judge Hilton need not reach that issue at all. The critical issue here is whether Commissioner Greaves' *sua sponte* Order demonstrates that Commissioner's *hatred* for Petitioner as observed by the Guardian *Ad Litem* is real and whether the appearance of and/or actual bias exists.

52. There can be no doubt such bias exists.

53. The Commissioner is entering *sua sponte* Orders the solely benefit Respondent and that severely prejudice Petitioner.

54. As shown by the examples provided over and over again throughout the briefing on the pending Motion to Disqualify Commissioner Greaves for Cause and for Transfer

Electronically Filed - ST LOUIS COUNTY - January 07, 2025 - 01:08 PM

Electronically Filed - ST LOUIS COUNTY - January 07, 2025 - 01:08 PM

to Missouri Supreme Court justify her disqualification and a change of judge for cause, there simply cannot be any doubt that the Motion must be granted.

55. The Commissioner's *bias* and *hatred* shines bright like the Christmas Star.[10] It is obvious to all onlookers to see because the Commissioner, in this instance, *sua sponte* created a right to amend that did not exist, one that was **not even requested on the record**, and she took away Petitioner's **right to even oppose** the amendment to Respondent's Motion to Modify that categorically changed the nature of relief sought – **after the close of discovery**.[11]

   a. The relief went from a worst-case scenario of supervised 50/50 visits – the very supervision that ceased on August 5, 2024 – to a worst-case scenario of two (2) visits per month, in perpetuity!

56. That was the plan you see. That is why the individuals involved engaged in the conspiracy to do it.

57. The plan was for the Commissioner to assist Respondent's counsel and her client by allowing them to seek relief that they had not sought before and that was inconsistent with the existing **Consent Orders**.

58. That was the plan and it seems that Santa Claus was the messenger as any other path of communication would be gravely unethical.

59. As what should be the final citation by Petitioner to evidence on the issue of disqualification in this matter at this stage of the case,[12] Petitioner notes **Respondent's**

---

[10] https://en.wikipedia.org/wiki/Star_of_Bethlehem

[11] It is quite odd that Commissioner Greaves also *sua sponte* reopened discovery. Maybe the request for that order came from an elf?

[12] Petitioner intends to seek leave to conduct additional discovery to uncover the full extent of the woeful

Electronically Filed - ST LOUIS COUNTY - January 07, 2025 - 01:08 PM

*own words* that she conveyed to the two (2) fact witnesses, the false testimony of which she so heavily relies upon:[13]

> Rebecca Copeland
>
> OH! N she also said they can't change the judge again. So they're stuck w/ this new one. Which is GREAT for us!

*See* **Exhibit G**.

60. The new Commissioner, Greaves, is "GREAT" in all caps and an exclamation point at the end of the sentence!

61. Whatever could have been so great about having Maia Brodie as your counsel before Commissioner Greaves?

62. Does the reader see the answer now?

63. Indeed, Respondent's statement now *speaks volumes* from when it was exclaimed by text back on April 5, 2024. *Id.*

64. Ms. Brodie was certainly being truthful with her client, Ms. Copeland, when she conveyed just how 'fortunate' of a situation her having her as her counsel appearing before Commissioner Greaves would turn out to be - in the *short term*.

65. Just look at the way Commissioner Greaves has bent over backwards to *severely bias and prejudice* Petitioner and to give Respondent every advantage.

---

misconduct in this case just as soon as a new judge or commissioner is appointed. Commissioner Greaves made a weak effort to deny his motion on this topic that was never directed to her as she lacked and lacks any jurisdiction to rule.

[13] This is just one example of Respondent's waiver and conveyance of her and her counsel's otherwise privileged communications.

Electronically Filed - ST LOUIS COUNTY - January 07, 2025 - 01:08 PM

66. The Commissioner has made the Children at issue in this case suffer just to prejudice Petitioner.

67. That is the legacy of Commissioner Greaves now.

68. Unfortunately for Ms. Brodie, she failed to consider the legal capabilities and fearlessness of the opposing party and counsel of record, Mr. Grant, and just how his involvement in this matter would play out for her, her client, and the Commissioner in the *long run*.[14]

69. Petitioner, you see, is not Family Court practitioner.  Improper activity that may be condoned and swept under the rug by some in that arena will not survive Petitioner's spotlight before this Circuit Court.

70. In sum, exactly what Ms. Brodie, Ms. Copeland and Commissioner Greaves (and Santa) sowed throughout this case, is now being reaped.

WHEREFORE, Petitioner requests that Presiding Judge Hilton enter an Order granting his Motion to Disqualify Commissioner Greaves and for such further relief as the Court deems just and proper.

---

[14] If this diabolical scheme was perpetrated against Petitioner, a Member of the Missouri Bar and an experienced litigator, just how many St. Louis County residents - non-lawyers - have been the victim of similar activities?  A review of cases in which Ms. Brodie appeared before Commissioner Greaves certainly seems necessary.  How many others suffered and are now suffering because of final judgments entered in favor of Ms. Brodie's clients?
Every single case that was before Commissioner Greaves involving Ms. Brodie is now tainted and presumptively based upon improper bias against the parties that were adverse to Ms. Brodie's clients.  Quite a task lies ahead for this Circuit Court due to the conduct that seems acceptable to some of the individuals involved in this case.  The immense mess cannot be ignored, the manner of cleaning it up is what remains.

Electronically Filed - ST LOUIS COUNTY - January 07, 2025 - 01:08 PM

Respectfully submitted,


By: _____*/s/Mathew R. Grant*_____
Matthew R. Grant, #50312
Petitioner
1625 Mason Knoll Rd.
St. Louis, MO 63131
T: (314) 412-9112
mattgrant.stl@gmail.com


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served in accordance with Rule 103.08 of the Missouri Rules of Civil Procedure, through the electronic filing system of the State of Missouri, this 7th day of January 2025 to:

Maia Brodie
Elizabeth Carthen
Brodie Law
8909 Ladue Road
St. Louis, Missouri 63124
(314) 726-6242
(314) 726-5155 (Fax)
mbrodie@brodielawstl.com
lbiscan@brodielawstl.com
*Attorneys for Respondent*


John R. Fenley
Reinker, Hamilton & Fenley, LLC
2016 South Big Bend Blvd.
St. Louis, MO 63117
(314) 333-4140
(314) 754-2701 (Fax)
john@rhflegal.com
Guardian *Ad Litem*


_____*/s/ Matthew R. Grant*_____

16