2616-CV11773

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

## IN THE CIRCUIT COURT OF JACKSON COUNTY
### STATE OF MISSOURI

| | |
|---|---|
| STATE OF MISSOURI ex rel., Attorney General Catherine L. Hanaway, and the MISSOURI DEPARTMENT OF HEALTH and SENIOR SERVICES, )<br><br>Plaintiffs, )<br><br>v. )<br><br>SHAMAN BOTANICALS, LLC; )<br>CBD AMERICAN SHAMAN, LLC; )<br>STEPHEN VINCENT SANDERS II; )<br>SVS ENTERPRISES, LLC; )<br>AMERICAN SHAMAN ONLINE, LLC; )<br>AMERICAN SHAMAN ECOMMERCE, )<br>LLC; KONIG PRODUCTS, LLC, )<br>d/b/a ADVANCED ALKALOIDS; )<br>TODD GEORGE MARKETPLACE, )<br>INC.; TI – SUMMIT CREST PLAZA, )<br>L.L.C.; JJMAC PROPERTIES LLC; )<br>and BLOCK INCOME FUND II, L.P., )<br><br>Defendants. )<br> ) | Case No.<br><br>Division:<br><br>**Jury Trial Demanded** |

## PETITION FOR INJUNCTION, CIVIL PENALTIES AND OTHER RELIEF

### I.    INTRODUCTION

1.    It's a drug pusher cliché:  The first hit is free.  It's also American Shaman's business model.  But unlike a street dealer, American Shaman and its offshoots operate on an industrial scale, in the open, on the fiction that the products they sell are legal dietary supplements.  This is false.  The drugs they peddle are deadly opioids banned by state and federal law.

2.    Missouri brings this lawsuit because Defendants profit from products containing psychoactive compounds derived from *mitragyna speciosa*—sold as "kratom" to Missouri consumers.  Because these products are new drugs that have not been approved by state or federal

**Exhibit Z**

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

regulators, they are illegal. Even if these products were not drugs, but rather "dietary supplements," as frequently claimed, they would still be illegal, because any supplement containing the deleterious and unapproved kratom alkaloids mitragynine and 7-hydroxymitragynine ("7-OH") would constitute an adulterated food product.

3. These products are also dangerous, as they pose significant risks of addiction, overdose, and other harms. Thus, their sale violates the Missouri Merchandising Practices Act, or "MMPA." Additionally, the purveyors of these opioids fail to adequately warn consumers of the attendant risks and mislead consumers as to the purported benefits of their use. This, too, is unlawful under the MMPA.

4. Finally, because kratom and its alkaloids are analogues or homologues to Schedule I controlled substances under the Comprehensive Drug Control Act, they should be treated as Schedule I substances under that act. Keeping, transporting, distributing, and manufacturing those substances thus creates a *per se* drug den public nuisance.

5. Defendants have exposed Missouri consumers to dangerous drugs without the oversight of state or federal regulators. Defendants have reaped the benefits. Missouri's people have suffered the costs.

6. Plaintiffs, State of Missouri, at the relation of Attorney General Catherine L. Hanaway, and the Department of Health and Senior Services therefore bring this Petition for Injunction, Civil Penalties, and Other Relief against Defendants Shaman Botanicals, LLC; CBD American Shaman, LLC; Stephen Vincent Sanders II; SVS Enterprises, LLC; American Shaman Online, LLC; American Shaman Ecommerce, LLC; and Konig Products, LLC, d/b/a Advanced Alkaloids (together, the "Manufacturer Defendants"). Plaintiffs additionally bring a count against the Manufacturer Defendants' lessors, Todd George Marketplace, Inc.; TI – Summit

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

Crest Plaza, L.L.C.; JJMAC PROPERTIES LLC; and Block Income Fund III, L.P. (the "Property Owner Defendants") for permitting, with actual or constructive knowledge, the drug den nuisance described *supra*. Upon information and belief, Plaintiffs state the following:

## II.    PARTIES

7.    Plaintiff Catherine L. Hanaway is the Attorney General of the State of Missouri and brings this action on behalf of the State of Missouri pursuant to Chapters 195, 196, and 407 of the Revised Statutes of Missouri.

8.    Plaintiff Missouri Department of Health and Senior Services, the State agency that supervises and manages all public health functions and programs in Missouri, § 192.005.1, RSMo., brings this action under its explicit statutory authority to seek injunctions of the sale of unapproved new drugs and adulterated food products. § 196.020, RSMo.

9.    Defendant Shaman Botanicals, LLC is a Missouri limited liability company with a principal office address at 1616 W 45th Street, Kansas City, MO  64111-4340.

10.    Defendant CBD American Shaman, LLC is a Missouri limited liability company with a principal office address at 1616 W 45th Street, Kansas City, MO  64111-4340.

11.    Defendant Stephen Vincent Sanders II, an individual domiciled in Missouri, is the President of Shaman Botanicals, LLC and CBD American Shaman, LLC, and both owns and controls each of the Defendant companies named in this action, including by making day-to-day decisions about operating procedures and approving both the products sold and the marketing of those products.  Sanders performs a substantial portion of his work with Manufacturer Defendants in their facilities in Jackson County.

12.    Defendant SVS Enterprises, LLC is a Missouri limited liability company with a principal office address at 1616 W 45th Street, Kansas City, MO  64111-4340.

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

13.   Defendant American Shaman Online, LLC is a Missouri limited liability company with a principal office address at 1600 Baltimore Avenue, Suite 200, Kansas City, MO 64108.

14.   Defendant American Shaman Ecommerce, LLC is a Missouri limited liability company with a principal office address at 1616 W 45th Street, Kansas City, MO 64111-4340.

15.   Defendant Konig Products, LLC, d/b/a Advanced Alkaloids, is a Wyoming limited liability company registered to do business in Missouri, with a principal office address of 117 S Lexington Street, Ste. 100, Harrisonville, MO 64701. Konig Products, LLC registered the fictitious name "Advanced Alkaloids" with the Missouri Secretary of State on February 26, 2024. The registration was signed by James McNair, Chief Executive Officer of Defendant Shaman Botanicals, LLC.

16.   Defendant Todd George Marketplace, Inc., is a Missouri corporation with a principal office address at 5600 Speaker Road, Kansas City, KS 66106-1050.

17.   Defendant TI – Summit Crest Plaza, L.L.C., is a Missouri limited liability company with a principal office address at 7611 State Line Road, Suite 303, Kansas City, MO 64114.

18.   Defendant JJMAC PROPERTIES LLC is a Missouri limited liability company with a principal office address at 6606 NE Antioch Road, Gladstone, MO 64119.

19.   Defendant Block Income Fund III, L.P. is a Delaware Limited Partnership with a principal office address at 4622 Pennsylvania Avenue, Ste. 700, Kansas City, MO 64112.

### III.    JURISDICTION

20.   This Court has subject matter jurisdiction pursuant to Article V, § 14 of the Missouri Constitution and § 478.070 RSMo.

21.   This Court has further subject matter jurisdiction over this action pursuant to § 407.100, RSMo, of the Missouri Merchandising Practices Act, which allows the Attorney General to seek injunctive relief, civil penalties and other relief against those who violate § 407.020, RSMo.

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

22.    This Court also has subject matter jurisdiction over this action pursuant to § 196.020, RSMo., which authorizes the Department of Health and Senior Services ("DHSS") to seek a temporary or permanent injunction restraining any person from selling a new drug or adulterated food product that has not been approved by state or federal regulators, as applicable. *See* §§ 196.015(1)–(4), 196.105, RSMo.

23.    Finally, the Court has subject matter jurisdiction over this action pursuant to § 195.253.2, RSMo., which authorizes the Attorney General to seek a court order that premises being used for the possession, keeping, transporting, distributing, or manufacturing of controlled substances not be occupied.

24.    This Court has personal jurisdiction over each Manufacturer Defendant corporation pursuant to Missouri's long-arm statute, § 506.500.1 RSMo, because each such Defendant is a limited liability company with a place of business in Missouri, has transacted such business in Missouri, and has committed tortious acts within Missouri to be performed within Missouri. Specifically, each Defendant has violated Missouri law prohibiting the sale of new drugs and/or dietary ingredients without state or federal approval; and each Manufacturer Defendant has engaged in unfair and deceptive practices by manufacturing kratom and 7-OH products in the State of Missouri and selling them, directly and/or through independent distributors and retailers, to Missouri consumers through misleading claims and with inadequate warnings.

25.    This Court has personal jurisdiction over Defendant Stephen Vincent Sanders II because he has transacted business in Missouri giving rise to this action, and has committed tortious acts within Missouri to be performed within Missouri. § 506.500.1, RSMo. Specifically, Sanders has, through his web of businesses, violated Missouri law prohibiting the sale of new drugs and/or dietary ingredients without state or federal approval; Sanders has also engaged in unfair and

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

deceptive practices by manufacturing kratom and 7-OH products in the State of Missouri and selling them, directly and/or through independent distributors and retailers, to Missouri consumers through misleading claims and with inadequate warnings.

26. The Court has personal jurisdiction over each of the Property Owner Defendants because, as to those Defendants, this action arises from "[t]he ownership, use, or possession of . . . real property located in this state." § 506.500.1(4), RSMo.

### IV. VENUE

27. Venue is proper in this Court pursuant to § 407.100, RSMo, which provides that "[a]ny action under this section may be brought in the county in which the defendant resides, in which the violation alleged to have been committed occurred, or in which the defendant has his principal place of business." § 407.100.7. For actions arising under authorities other than the MMPA, venue is likewise proper pursuant to § 508.010, for the same reason. §§ 508.010.1(3), 508.010.4, RSMo.

28. Each Manufacturer Defendant has a place of business in Jackson County, Missouri, and has there violated Missouri law through the manufacture and sale of kratom and 7-OH products, as detailed throughout this petition.

29. Venue is proper as to the Property Owner Defendants because Defendant TI – Summit Crest Plaza, L.L.C. has a principal place of business in Jackson County, and this action arises out of its ownership of real property in Jackson County. Where, as here, the claims as to a class of defendants do not allege a tort, and "when there are several defendants, some residents and other nonresidents of the state, suit may be brought in any county in this state in which any defendant resides." § 508.010.2(3), RSMo.

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

## V.    FACTS COMMON TO ALL COUNTS

30.    Kratom is a substance derived from the leaves of the plant *mitragyna speciosa* (the scientific name for a plant that itself is also commonly referred to as kratom).

31.    *Mitragyna speciosa* and many products derived from it contain various psychoactive alkaloids, including mitragynine and 7-hydroxymitragynine, or "7-OH."

32.    Kratom is commonly consumed in powder or liquid form.

33.    When kratom products are consumed, certain psychoactive alkaloids bind to the user's opioid receptors.  In other words, kratom is an opioid, and functions like an opiate.

34.    Although naturally occurring in trace amounts in *mitragyna speciosa*, and present in small amounts in many kratom products, 7-OH is sometimes extracted and consumed in more concentrated form through products that seek to magnify kratom's psychoactive effects.

35.    According to the United States Food and Drug Administration ("FDA"), research consistently shows that the 7-OH molecule is substantially more potent than morphine.  FDA, 7-HYDROXYMITRAGYNINE (7-OH): AN ASSESSMENT OF THE SCIENTIFIC DATA AND TOXICOLOGICAL CONCERNS AROUND AN EMERGING OPIOID THREAT (hereinafter FDA 7-OH REPORT) 18 (2025), https://www.fda.gov/media/187899/download?attachment.

36.    The use of kratom has significantly increased in recent years, in part due to its ease of access relative to other opioids.  Kratom products are commonly available at smoke shops, vape shops, and convenience stores throughout Missouri.

37.    There is no consensus among qualified medical experts that kratom products containing mitragynine or 7-OH are safe for use, particularly when sold over the counter without a prescription.

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

38.     Adverse events from the use of kratom can include respiratory depression, overdose, and death. Indeed, studies show that "7-OH produces respiratory depression with more than 3-fold greater potency than morphine." FDA 7-OH REPORT 5; *see also id.* at 17 ("7-OH may expose individuals to similar risks as classic opioids, including respiratory depression.").

39.     Sustained kratom use can lead to tolerance. Habitual users therefore must use increasing dosages to experience the same effects.

40.     Kratom products are chemically addictive and their habitual use can lead to physical dependence.

41.     The use of kratom products can frustrate the sobriety of individuals addicted to other opioids.

42.     Some first-time kratom users may believe that it is safe or no more addictive than common substances like caffeine because it is so easily available in retail stores.

43.     Kratom dependency is common within Missouri's homeless population and contributes to vagrancy and crime in Missouri's cities.

44.     When an individual addicted to kratom ceases its use, such cessation can lead to withdrawal symptoms. These symptoms are similar to withdrawal from other opiates, and particularly acute from products with high levels of 7-OH.

45.     In recent years, reports of serious physical health effects from kratom exposure have sharply increased, both in Missouri and around the country.

46.     According to a recent report published by the Centers for Disease Control and Prevention, hospitalizations for single-substance kratom exposure reports increased 1,200 percent from 2015 to 2025, and hospitalizations for multi-substance exposures increased by 1,300 percent. Eleanor Blair Towers et al., *Increases in Kratom-Related Reports to Poison Centers—National Poison*

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

*Data System, United States, 2015-2025*, 75 U.S. CENTERS FOR DISEASE CONTROLS AND PREVENTION MORBIDITY AND MORTALITY WEEKLY REPORT 141 (2026), https://www.cdc.gov/mmwr/volumes/75/wr/pdfs/mm7511a1-H.pdf.

47. Missouri consumers have suffered significant adverse events from kratom use, including addiction, withdrawal, and overdose.

48. Overdose from kratom products has caused the death and permanent disability of Missouri residents.

49. Defendant Sanders owns and operates a web of LLCs, including the other Manufacturer Defendants, for the purposes of manufacturing and marketing a variety of kratom products, including 7-OH products, in the state of Missouri. These LLCs share personnel and operate out of the same offices, factories and warehouses.

50. These kratom products are marketed and sold under Manufacturer Defendants' own "Advanced Alkaloids" brands and as a "white label" product for other distributors under those distributors' branding.

51. Manufacturer Defendants sell these kratom products directly to consumers through physical retail locations in the state of Missouri and their website, cbdamericanshaman.com.

52. Defendants have also sold these kratom products to consumers and distributors in multiple states other than Missouri and shipped those products from their Missouri warehouses to those recipients.

53. Manufacturer Defendants operate retail locations at the following Missouri addresses:

   a. 1638 SE Blue Parkway, Lee's Summit, MO 64063; and

   b. 3520 SW Market Street, Lee's Summit, MO 64082.

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

54.   Manufacturer Defendants manufacture and warehouse these kratom products at the following locations in the state of Missouri:

   a.   1501 Iron Street, North Kansas City, MO 64116; and

   b.   2461 NW Tullison Road, Riverside, MO 64150.

55.   The Missouri Attorney General's Office issued civil investigative demands to a number of recipients on November 20, 2025, pursuant to the MMPA, § 407.040, RSMo. Those recipients included Defendants CBD American Shaman, LLC and Shaman Botanicals, LLC. The CIDs indicated that the Attorney General had reason to believe that those Defendants and others involved in the manufacturing, shipping, sale, and distribution of kratom and 7-OH products acted in violation of state law.

56.   The FDA has warned Defendants CBD American Shaman, LLC and Shaman Botanicals, LLC that 7-OH products are unlawful, and the FDA seized thousands of 7-OH products from Manufacturer Defendants' 1501 Iron Street and 2461 NW Tullison Road locations in 2025.

## VI.   CAUSES OF ACTION

### Count I:   Violation of the Missouri Merchandising Practices Act

57.   Plaintiffs incorporate each allegation set out *supra* as if fully set out herein.

58.   The "fundamental purpose" of the Missouri Merchandising Practices Act is "the protection of consumers." *Huch v. Charter Communications, Inc.*, 290 S.W.3d 721, 724 (Mo. banc 2009) (internal citation and quotation omitted).

59.   One provision of the MMPA, § 407.020, RSMo., provides in pertinent part:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice . . . . Any act, use or employment declared unlawful by

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

this subsection violates this subsection whether committed before, during or after the sale, advertisement, or solicitation.

60. "Person" is defined as "any natural person or his legal representative, partnership, firm, for-profit or not-for-profit corporation, whether domestic or foreign, company, foundation, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof." § 407.010.5, RSMo.

61. "Merchandise" is defined as "any objects, wares, goods, commodities, intangibles, real estate, or services." § 407.010.4, RSMo.

62. "Sale" is defined as "any sale, lease, offer for sale or lease, or attempt to sell or lease merchandise for cash or on credit." § 407.010.6, RSMo.

63. "Trade" or "commerce" is defined as "the advertising, offering for sale, sale, or distribution, or any combination thereof, of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situated. The terms 'trade' and 'commerce' include any trade or commerce directly or indirectly affecting the people of this state." § 407.010.7, RSMo.

64. By advertising and selling kratom products, including 7-OH products, Manufacturer Defendants have sold merchandise in trade or commerce within the meaning of § 407.010, RSMo.

65. The General Assembly "granted the attorney general authority to promulgate 'all rules necessary to the administration and enforcement' of the provisions of the [MMPA], which includes the authority to promulgate rules setting out the scope and meaning of the act." *Huch*, 290 S.W.3d at 724–25 (citing § 407.145, RSMo.).

66. The Attorney General has promulgated rules explaining and defining terms used in the MMPA. The relevant rules include, but are not limited to, the provisions of 15 CSR 60-8.010 to 15 CSR 60-9.110. Under 15 CSR 60-8.020(1):

"An unfair trade practice is any practice which –

(A) Either –

    1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

    2. Is unethical, oppressive or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers."

67. "Deception is any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression." 15 C.S.R 60-9.020(1).

68. The MMPA also incorporates the requirements of state and federal law. Under 15 CSR 60-8.090, it is an unfair practice to engage in any practice which:

(A) Violates state or federal law intended to protect the public; and

(B) Presents a risk of, or causes substantial injury to consumers.

69. Due to the physical and psychological harms associated with kratom use, addiction, and abuse, the unregulated sale of such products presents a risk of, and causes, substantial injury to consumers.

70. Defendant Sanders, who among other things, supervised and directed the work of the other Manufacturer Defendants' chemists, factory workers, and other staff, had actual or constructive knowledge of, and participated in, the actionable wrongs described in sections A–C of this count.

**A. Manufacturer Defendant's sale of kratom products without state or federal approval violates the MMPA.**

71. At the federal level, the Food, Drug, and Cosmetic Act ("FD&C Act"), 21 U.S.C. § 355(a) prohibits any person from "introduc[ing] or deliver[ing] for introduction into interstate commerce

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

any new drug, unless an approval of an application [by the Food and Drug Administration] . . . is effective with respect to such drug."

72.     Under federal law, the term "drug" is defined to include "articles (other than food) intended to affect the structure or any function of the body of man or other animals." 21 U.S.C. § 321(g)(1)(C). A "new drug" includes

> [a]ny drug (except a new animal drug or animal or an animal drug or an animal feed containing a new animal drug) the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof, except that such a drug not so recognized shall be deemed to be a "new drug" if at any time prior to June 25, 1938, it was subject to the Food and Drugs Act of June 30, 1906, as amended, and if at such time its labeling contained the same representations concerning the conditions of its use. 21 U.S.C. § 321(p)(1).

73.     "Interstate commerce" is defined to include "commerce between any state or territory and any place outside thereof, and (2) commerce within the District of Columbia or within any other Territory not organized with a legislative body." 21 U.S.C. § 321(b).

74.     Since 1943, Missouri law has prohibited "[t]he sale, delivery for sale, holding for sale, or offering for sale any article in violation of section . . . 196.105." § 196.015(4), RSMO. Section 196.105, in turn, provides that:

> No person shall deliver, offer for sale, hold for sale or give away any new drug unless:
>
> (1) An application with respect thereto has become effective under 21 U.S.C.A. § 355; or
>
> (2) When not subject to the federal act unless such drug has been tested and has not been found to be unsafe for use under the conditions prescribed, recommended, or suggested in the labeling thereof, and prior to selling or offering for sale such drug, there has been filed with the department [of health and senior services] an application setting forth full reports of investigations which have been made to show whether or not such drug is safe for use; a full list of the articles used as components of such drug; a full statement of the composition of such drug; a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and packing of such drug; such samples as such

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

drug and of the articles used as components thereof as the department may require; and specimens of the labeling proposed to be used for such drug. § 196.105.1, RSMO.

75.      Under Missouri statute, "drugs" include "articles, other than food, intended to affect the structure or any function of the body of man or other animals." § 196.010(5)(c), RSMo.

76.      Kratom is a "new" drug under Missouri law because it was not "sold in this state prior to the enactment of sections 196.010 to 196.120" in 1943 or introduced into interstate commerce prior to the enactment of the FD&C Act in 1938. §§ 196.105.3(2); 196.010(6), RSMo.; *see also* FDA, *Import Alert 54-15* (Feb. 21, 2025), https://www.accessdata.fda.gov/CMS_IA/importalert_1137.html ("[T]o the best of the agency's knowledge, there is no information demonstrating that this substance was marketed as a dietary ingredient in the United States before October 15, 1994.").

77.      Because they are psychoactive, and thus, when consumed, are "intended to affect the function of the body" of the person using them, kratom and 7-OH products are "drugs" under both Missouri and federal law.

78.      Because they are not generally recognized by experts as safe, mitragynine and 7-OH are "new drugs" under federal law, and, because Manufacturer Defendants have introduced them into interstate commerce by selling them to other states, "subject to the federal act." 21 U.S.C. § 321(p)(1); *Cf. U.S. v. Undetermined Quantities of Articles of Drug*, 145 F.Supp.2d 692, 696–701 (D. Md. 2001) (herbal products that claimed to mimic the euphoric effects of illegal street drugs were subject to FD&C Act even when labeled as dietary supplements).

79.      Because mitragynine and 7-OH are subject to the federal act, they are not legal to sell in Missouri absent federal approval. § 196.105.1(1)–(2), RSMo. Even if state approval were an available avenue for legal sale, however, Manufacturer Defendants have failed to comply with the process for such approval. §§ 196.105.1(2), 196.105.2, RSMo.

80.     Manufacturer Defendants have never submitted an application for any kratom or 7-OH product to the FDA under 21 U.S.C. § 355, nor has any such application become effective. There are no FDA-approved drugs containing kratom or kratom-derived drug substances such as 7-OH for the treatment or prevention of any medical condition. FDA 7-OH REPORT 5. Neither Manufacturer Defendants nor any other applicant has ever submitted an application for any kratom product to DHSS under § 196.105.1(2), RSMo.

81.     Because Manufacturer Defendants' illicit sale of kratom products, including 7-OH products, offends the public policy of this state and presents a risk of, or causes, substantial risks to consumers, it constitutes an "unfair practice." 15 C.S.R. 90-8.020(1). Unfair practices violate the MMPA, § 407.020, RSMo., and entitle the Attorney General to injunctive relief and civil penalties. § 407.100, RSMo.

**B. By flouting state and federal regulations on food additives and dietary supplements, Manufacturer Defendants violate the MMPA.**

82.     The FD&C Act prohibits "[t]he introduction or delivery of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded" and "the adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce." 21 U.S.C. § 331(a)–(b).

83.     A food product is adulterated under the FD&C Act if it "contains any poisonous or deleterious substance which may render it injurious to health," 21 U.S.C. § 342(a)(1). Additionally, under 21 U.S.C. § 342(f), a dietary supplement is considered an adulterated food product if it:

(A) presents a significant or unreasonable risk of illness or injury under—

(i) conditions of use recommended or suggested in labeling, or

(ii) if no conditions of use are suggested or recommended in the labeling, under ordinary conditions of use;

15

(B) Is a new dietary ingredient for which there is inadequate information to provide reasonable assurances that such ingredient does not present a significant or unreasonable risk of illness or injury;

(C) the Secretary [of the Department of Health and Human Services] declares to pose an imminent hazard to public health or safety . . . ; or

(D) is or contains a dietary ingredient that renders it adulterated under [21 U.S.C. § 342(a)(1)] under the conditions of use recommended or suggested in the labeling of such dietary supplement.

84. Under federal law, any dietary ingredient not marketed in the United States prior to October 15, 1994 is deemed adulterated, except under certain circumstances not present here. 21 U.S.C. § 350b(a), (d).

85. The FDA has determined that "[k]ratom is not appropriate for use as a dietary supplement. FDA has concluded from available information, including scientific data, that kratom is a new dietary ingredient for which there is inadequate information to provide reasonable assurance that such ingredient does not present a significant or unreasonable risk of illness or injury and, therefore, dietary supplements that are or contain kratom are adulterated under section 402(f)(1)(B) of the FD&C Act." FDA, *FDA and Kratom* (Dec. 2, 2025), https://www.fda.gov/news-events/public-health-focus/fda-and-kratom; *see also* FDA, *Import Alert 54-15* (Feb. 21, 2025), https://www.accessdata.fda.gov/CMS_IA/importalert_1137.html ("[I]n the absence of a history of use or other evidence of safety, . . . kratom and kratom-containing dietary supplements . . . are adulterated under Section 402(f)(1)(B).").

86. Similarly, Missouri law prohibits the manufacture, sale, delivery, holding, or offering for sale of any food that is adulterated or misbranded. § 196.015(1)–(3), RSMo.

87. Under Missouri law, "food" consists of "articles used for food or drink for man or other animals, chewing gum, and articles used for components of any such article." § 196.010(7), RSMo. In Missouri, a food is adulterated "[i]f it bears or contains any added poisonous or added

16

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

deleterious substance which is unsafe within the meaning of section 196.085." § 196.070.1(2), RSMo.  Under Section 196.085, such substance consists of "[a]ny poisonous or deleterious substance added to any food," except under certain circumstances not relevant here.

88.     The psychoactive alkaloids present in kratom products are poisonous and deleterious substances because they are hazardous to consumers' health and potentially lethal.  Their addition to any food or drink product is therefore adulteration contrary to Missouri law.

89.     Manufacturer Defendants have added mitragynine and 7-OH to a number of food products, including "gummies," "bars," and liquid "shots" with flavors like grape, mango, sour apple, and lemon.

90.     Because Manufacturer Defendants' adulteration of food products violates state and federal laws intended to protect the public and presents a risk of substantial injury to consumers, it is an unfair practice.  15 CSR 60-8.090.  Unfair practices violate the MMPA, § 407.020, RSMo., and entitle the Attorney General to injunctive relief and civil penalties.  § 407.100, RSMo.

C.  **Even if Manufacturer Defendants' sale of kratom products did not violate the public policy of the state, their unscrupulous, deceptive and misleading marketing would still constitute an MMPA violation.**

91.     Manufacturer Defendants advertise and offer "free samples" of their 7-OH products, knowing that these products are habit forming and addictive.  These marketing practices have included billboards and advertising at events.  This advertising has lacked any disclosure of the addictive nature of the products.  Two examples are reproduced as Exhibit A and B, immediately *infra*.

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM



**Exhibit A**

**Exhibit B**

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

92.    The most popular search on Manufacturer Defendants' website, cbdamericanshaman.com, and recommended to viewers of that website, is "2 pack sample – 7-OH Chewable Tablets – Advanced Alkaloids."

93.    Manufacturer Defendants offer "free samples" of their 7-OH products for the purpose of addicting potential customers, which grows Manufacturer Defendants' consumer base and sales volume.

94.    Manufacturer Defendants have engaged and currently engage in deception because the packaging of its kratom products misleads consumers as to the risks of using those products. Notably, Manufacturer Defendants have misled consumers by selling 7-OH products with psychoactive alkaloid content significantly higher than indicated on the product packaging. This practice necessarily increased consumers' risks of overdose and addiction. Additionally, Manufacturer Defendants' packaging downplays the risk of addiction by stating that "there aren't studies conclusively showing addiction related to alkaloids," and describing reports of such addiction as "anecdotal." *See* Ex. C, *infra*. No mention is made of the risk of overdose. *Id.*



**Exhibit C**

95.     Manufacturer Defendants' marketing is similarly deceptive.  Manufacturer Defendants have suggested that drinking products containing 7-OH is "like happy hour, but without the hangover;" that 7-OH products do not result in a "crash;" and that their brands offer "predictability and safety."  The use of 7-OH products can result in significant withdrawal symptoms and carries a risk of overdose.  The suggestion that using such products will not cause consumers to "crash" or experience "hangover" symptoms is misleading.

96.     Manufacturer Defendants' advertising also suggests that its "naturally occurring alkaloids" are "carefully studied."  Both of the foregoing quotations are misleading.  7-OH is generally present in only trace amounts in its natural form.  Further, no researcher has conducted human studies of 7-OH, and both DHSS and the FDA have warned against its use.  Neither kratom generally nor 7-OH is generally recognized as safe in the scientific literature.

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

97.    In addition to their own products, Manufacturer Defendants manufacture kratom products for third parties with misleading packaging. This includes products that fail to list the active ingredients therein, those that exaggerate the benefits and/or downplay the risks of consumption, and those that recommend or facilitate consuming an unsafe dosage.

98.    Manufacturer Defendants' product packaging is similarly deceptive because it exaggerates the benefits of the products to consumers and suggests that kratom products have benefits unsupported by any scientific or medical research. This tends to mislead, deceive, and create a false impression in the minds of consumers in violation of § 407.020, RSMo.; *see also* 15 C.S.R. 60-9.020(1).

99.    For the foregoing reasons, both Manufacturer Defendants' product packaging and their advertising tend to mislead, deceive, and create a false impression in the minds of consumers in violation of § 407.020, RSMo.; *see also* 15 C.S.R 60-9.020(1).

100.    Because Manufacturer Defendants' misleading claims and inadequate disclosures are deceptive, they are unfair practices under the MMPA. § 407.020, RSMo. Further, Manufacturer Defendants' practice of advertising and offering "free samples" of highly addictive drugs is an "unethical" or "unscrupulous" practice that "presents a risk of, or causes substantial injury to consumers" and therefore an unfair practice under the MMPA. 15 CSR 60-8.020.

101.    Unfair practices violate the MMPA, § 407.020, RSMo., and entitle the Attorney General to injunctive relief and civil penalties. § 407.100, RSMo.

102.    Plaintiffs are entitled to preliminary and permanent injunctive relief on this count. *See State el rel. Director of Revenue v. Gabbert*, 925 S.W.2d 838, 839–40 (Mo. banc 1996). The State of Missouri and its citizens are irreparably harmed by the continued sale of unregulated, addictive, and dangerous drugs in violation of the law. *Cf. Maryland v. King*, 567 U.S. 1301, 1303 (2012)

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

(Roberts, C.J., in chambers); *Labrador v. Poe by and Through Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, joined by Thomas and Alito, JJ., concurring); *id.* at 929 (Kavanaugh, joined by Barrett, JJ., concurring).  The availability of these drugs has created a public health crisis, burdening publicly funded services, including medical services caring for persons suffering from addiction and overdoses, and law enforcement dealing with the vagrancy and crime that flows from such addiction.  Equally, the State has a *parens patriae* interest in the wellbeing of its citizens, and the harms flowing from these drugs thus irreparably impact the State.  *See In re Care and Treatment of Norton*, 123 S.W.3d 170, 174 (Mo. banc 2003) ("The State has a compelling interest in protecting the public from crime.").  That Manufacturer Defendants continue to manufacture, distribute, and sell these products after repeated warnings from state and federal agencies that doing so is unlawful demonstrates the need for judicial intervention.  *See* ¶¶55–56, *supra*.  For these same reasons, the balance of the equities and the public interest favor preliminary injunctive relief.

### Count II:  Violation §§ 196.015(1), (4), and 196.105.1, RSMo.

103.    Plaintiffs incorporate each allegation set out *supra* as if fully set out herein.

104.    By selling kratom products, including 7-OH, without first obtaining the required regulatory approvals, Manufacturer Defendants have violated 196.015(1)–(4) and 196.105.1, RSMo.  *See* ¶¶ 71–80, 82–89, *supra*.  This analysis applies regardless of whether the Court determines that Defendants' kratom products are new drugs, adulterated food products, or both.

105.    Regardless of whether it gives rise to a cause of action under the MMPA, the violation of § 196.015, RSMo. independently entitles DHSS "to apply to the circuit court for, and such court shall have jurisdiction upon hearing and for cause shown, to grant a temporary or permanent

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

injunction restraining any person from violating any provision of section 196.015; irrespective of whether or not there exists an adequate remedy at law." § 196.020, RSMo.

106.   In this context, "the term 'person' includes individual, partnership, corporation, and association." § 196.010(13), RSMo.  Easch Defendant is thus a "person" subject to injunction under the statute.  As a result, an injunction is available against each Manufacturer Defendant if the other statutory requirements are satisfied, as they are here.

107.   The Attorney General may bring this action on behalf of DHSS under her explicit statutory authority.  § 27.060, RSMo.; *State ex rel Hawley v. Pilot Travel Centers, LLC*, 558 S.W.3d 22, 30–31 (Mo. banc 2018).

108.   Plaintiffs are entitled to preliminary and permanent injunctive relief on this count.  *See Gabbert*, 925 S.W.2d at 839–40.  The State of Missouri and its citizens are irreparably harmed by the continued sale of unregulated, addictive, and dangerous drugs in violation of the law.  *Cf. King*, 567 U.S. at 1303; *Labrador*, 144 S. Ct. 921 at 923; *id.* at 929.  The availability of these drugs has created a public health crisis, burdening publicly funded services, including medical services caring for persons suffering from addiction and overdoses, and law enforcement dealing with the vagrancy and crime that flows from such addiction.  Equally, the State has a *parens patriae* interest in the wellbeing of its citizens, and the harms flowing from these drugs thus irreparably harms the State.  *See Norton*, 123 S.W.3d at 174.  That Manufacturer Defendants continue to manufacture, distribute, and sell these products after repeated warnings from state and federal agencies that doing so is unlawful demonstrates the need for judicial intervention.  *See* ¶¶55–56, *supra*.  For these same reasons, the balance of the equities and the public interest favor preliminary injunctive relief.

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

**Count III:  Statutory Drug-Den Public Nuisance**

109.   In Missouri, drug dens are, by statute, *per se* public nuisances.  Under § 195.253.1, RSMo., "[a]ny store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place, which is resorted to for the purpose of possessing, keeping, transporting, distributing or manufacturing controlled substances shall be deemed a public nuisance."

110.   For purposes of Section 195.253, a "controlled substance" is "a drug, substance, or immediate precursor in Schedules I through V listed in" Chapter 195 of the Revised Statutes of Missouri.  § 195.010(6).

111.   Under § 195.022, RSMo., "[a]ny analogue or homologue of a schedule I controlled substance shall be treated, for the purposes of any state law, as a controlled substance in schedule I."

112.   A "controlled substance analogue" is defined to include:

a substance the chemical structure of which is substantially similar to the chemical structure of a controlled substance in Schedule I or II and:

(a) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system substantially similar to the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance included in Schedule I or II[.]  § 195.010(7), RSMo.

113.   Mitragynine and 7-OH have substantially similar chemical structures, and cause similar stimulant and depressant effects on the central nervous system, as compared to various schedule I controlled substances—specifically those listed as "opiates" and "opiate derivatives."  *See* 19 CSR 30-1.002(1)(A).1–.2.

114.   Missouri law defines "opiate" or "opioid" as including "any substance having an addiction-forming or addiction-sustaining liability similar to morphine," with certain exceptions not relevant here.  § 195.010(32).

24

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

115.   Because kratom alkaloids mitragynine and 7-OH are agonists of the *mu* opioid receptor and are similarly addictive to morphine, they constitute opiates/opioids under Missouri law.

116.   Manufacturer Defendants manufacture kratom, extracted mitragynine, and extracted 7-OH products in the premises located at 1501 Iron Street, North Kansas City, MO  64116; and 2461 NW Tullison Road, Riverside, MO  64150.

117.   Manufacturer Defendants keep kratom, extracted mitragynine, and extracted 7-OH products in the premises located at 1501 Iron Street, North Kansas City, MO  64116; 2461 NW Tullison Road, Riverside, MO  64150; 1638 SE Blue Parkway, Lee's Summit, MO  64063; and 3520 SW Market Street, Lee's Summit, MO  64082.

118.   Manufacturer Defendants transport and distribute kratom, extracted mitragynine, and extracted 7-OH products from the premises located at 1501 Iron Street, North Kansas City, MO  64116; 2461 NW Tullison Road, Riverside, MO  64150; 1638 SE Blue Parkway, Lee's Summit, MO  64063; and 3520 SW Market Street, Lee's Summit, MO  64082.

119.   Missouri law authorizes the Attorney General to "prosecute a suit in equity to enjoin" such a drug den public nuisance.  § 195.253.2, RSMo.

120.   "If the court finds that the owner of the . . . . building or structure knew or had reason to believe that the premises were being used for the illegal use, keeping or selling of controlled substances, the court may order that the premises shall not be occupied or used for such period as the court may determine, not to exceed one year."

121.   Defendant Todd George Marketplace, Inc. owns the property located at 1638 SE Blue Parkway, Lee's Summit, MO  64063.

122.   Defendant TI – Summit Crest Plaza, L.L.C. owns the property located at 3520 SW Market Street, Lee's Summit, MO  64082.

123.    Defendant JJMAC PROPERTIES LLC owns the property located at 1501 Iron Street, North Kansas City, MO  64116.

124.    Defendant Block Income Fund III, L.P. owns the property located at 2461 NW Tullison Road, Riverside, MO  64150.

125.    Property Owner Defendants knew or should have known that their respective real property was being used for the illegal keeping or selling of controlled substances, to wit kratom and its alkaloids mitragynine and 7-OH.  Manufacturer Defendants' activities are public, and have enjoyed significant notoriety through advertising and media coverage.  Further, as lessors, Property Owner Defendants doubtless did (or should have done) some form of due diligence into the business model of their respective lessees prior to executing a lease agreement therewith.

126.    Plaintiffs are entitled to preliminary and permanent injunctive relief on this count.  *See Gabbert*, 925 S.W.2d at 839–40.  The State of Missouri and its citizens are irreparably harmed by the continued sale of unregulated, addictive, and dangerous drugs in violation of the law.  *Cf. King*, 567 U.S. at 1303; *Labrador*, 144 S. Ct. 921 at 923; *id.* at 929.  The availability of these drugs has created a public health crisis, burdening publicly funded services, including medical services caring for persons suffering from addiction and overdoses, and law enforcement dealing with the vagrancy and crime that flows from such addiction.  Equally, the State has a *parens patriae* interest in the wellbeing of its citizens, and the harms flowing from these drugs thus irreparably harms the State.  *See Norton*, 123 S.W.3d at 174.  That Manufacturer Defendants continue to manufacture, distribute, and sell these products after repeated warnings from state and federal agencies that doing so is unlawful demonstrates the need for judicial intervention.  *See* ¶¶55–56, *supra*.  For these same reasons, the balance of the equities and the public interest favor preliminary injunctive relief.

26

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

## RELIEF

WHEREFORE, Plaintiffs pray this Court enter Judgment:

127.    Finding Manufacturer Defendants violated the Missouri Merchandising Practices Act, § 407.020, RSMo.

128.    Finding Manufacturer Defendants violated §§ 196.015(4), and 196.105.1, RSMo.

129.    In the alternative, finding Manufacturer Defendants violated §§ 196.015(1)–(3), and 196.105.1, RSMo.

130.    Issuing a preliminary injunction, pursuant to § 407.100, RSMo, prohibiting and enjoining Manufacturer Defendants and their agents, employees, members, representatives, and other individuals acting at their direction from advertising, soliciting, selling, providing, or accepting payment for any kratom product, including any 7-OH product.

131.    In the alternative, issuing a preliminary injunction, pursuant to § 196.020, RSMo., prohibiting and enjoining Manufacturer Defendants and their agents, employees, members, representatives, and other individuals acting at their direction from advertising, soliciting, selling, providing, or accepting payment for any kratom product, including any 7-OH product, until such product is subject to an effective application under 21 U.S.C. § 355 and legal for sale under 196.105.1, RSMo.

132.    Issuing a permanent injunction, pursuant to § 407.100, RSMo, prohibiting and enjoining Manufacturer Defendants and their agents, employees, members, representatives, and other individuals acting at their direction from advertising, soliciting, selling, providing, or accepting payment for any kratom product, including any 7-OH product.

133.    In the alternative, issuing a permanent injunction, pursuant to § 196.020, RSMo., prohibiting and enjoining Manufacturer Defendants and their agents, employees, members,

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

representatives, and other individuals acting at their direction from advertising, soliciting, selling, providing, or accepting payment for any kratom product, including any 7-OH product, until such product is subject to an effective application under 21 U.S.C. § 355 and legal for sale under 196.105.1, RSMo.

134.   Requiring Manufacturer Defendants, pursuant to § 407.140.3, RSMo, to pay the State of Missouri a civil penalty of up to $1,000.00 per violation of Chapter 407 that the Court finds to have occurred.

135.   Requiring Manufacturer Defendants, pursuant to § 407.130, RSMo, to pay all court, investigative, and prosecution costs of this case.

136.   Requiring Manufacturer Defendants, pursuant to § 408.040, RSMo, to pay pre- and post-judgment interest.

137.   Finding that Manufacturer Defendants' keeping, transporting, distributing, and manufacturing of kratom, mitragynine, and 7-OH products constitutes a public nuisance under § 195.253.1, RSMo.

138.   Ordering that the following premises not be occupied or used for one year, pursuant to § 195.253.2, RSMo.:

   a.   1638 SE Blue Parkway, Lee's Summit, MO  64063;

   b.   3520 SW Market Street, Lee's Summit, MO  64082;

   c.   1501 Iron Street, North Kansas City, MO  64116; and

   d.   2461 NW Tullison Road, Riverside, MO  64150.

139.   Granting any additional relief this Court deems just and proper.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

Respectfully submitted,

**CATHERINE L. HANAWAY**
Attorney General

/s/ *Louis J. Capozzi III*
Louis J. Capozzi III, #77756 (MO)
  *Solicitor General*
Samuel C. Freedlund, #73707 (MO)
Patrick Sullivan, # 42968 (MO)
  *Deputy Solicitors General*
Alex R. Buttram, #77676 (MO)
  *Assistant Solicitor General*
Bryan Stevenson, #51885 (MO)
Kaitlin Rhodes, #70867 (MO)
  *Assistant Attorneys General*
Missouri Attorney General's Office
815 Olive St., Suite 200
St. Louis, MO 63101
(314) 340-4754
Samuel.Freedlund@ago.mo.gov
Alex.Buttram@ago.mo.gov

*Counsel for Plaintiffs*

Electronically Filed - Jackson - Kansas City - March 31, 2026 - 08:54 AM

**CERTIFICATE OF SERVICE**

I certify that on March 31, 2026, I filed this paper through the Court's electronic-filing system. This filing effects service on all parties of record.

*/s/ Louis J. Capozzi III*
Solicitor General