**FILED**

IAPR 2 5 2019

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STEVEN V. STENGER, | ) |
| | ) |
| Defendant. | ) |

**4:19CR312 CDP/NCC**

## INDICTMENT

THE GRAND JURY CHARGES:

### COUNTS ONE - THREE
### HONEST SERVICES BRIBERY/MAIL FRAUD

Introduction and Background

At all times material to this Indictment:

1.      The citizens of St. Louis County had an intangible right to the honest services of their public officials.

2.      The St. Louis Economic Development Partnership's (hereinafter "SLEDP") stated purpose was to function as the economic development agency serving St. Louis County and City.

3.      The St. Louis County Port Authority's (hereinafter "Port Authority") stated purpose was to promote general welfare, encourage private capital investment, increase the volume of commerce and promote the establishment of a foreign trade zone within the County port district.

4.      The defendant STEVEN V. STENGER was the elected County Executive for St. Louis County. Defendant STENGER's office vested him with actual and perceived authority and influence over, among other things, the hiring of St. Louis County employees, as well as the hiring

**Exhibit AA**

of SLEDP and Port Authority employees. Defendant STENGER appointed the majority of the Board of Directors for SLEDP, and all of the Board of Directors for the Port Authority.

5. Defendant STENGER's office also vested him with actual and perceived authority and influence over the awarding of certain contracts and grants by St. Louis County, SLEDP, and the Port Authority.

6. Defendant STENGER's office also vested him with actual and perceived authority over certain other public officials, including but not limited to SLEDP Chief Executive Officer, Sheila Sweeney, St. Louis County Chief of Staff, William Miller, St. Louis County Chief of Policy, Jeff Wagener, St. Louis County Director of Administration, Pamela Reitz, St. Louis County Director of Operations, Mike Chapman, St. Louis County Senior Policy Advisor Thomas Curran, Special Assistant to the County Executive Thomas Malecek, and St. Louis County Director of Legislative Affairs, Shannon Weber.

7. Defendant STEVEN V. STENGER served as the St. Louis County Council Member from the 6th District from 2009 through 2014. Defendant STENGER took office as County Executive in January 2015 and was re-elected in November, 2018. As such, STENGER owed the citizens of St. Louis County his honest services.

8. State of Missouri Revised Statute 576.020 (Public Servant Acceding to Corruption) makes it a felony crime for a public servant, such as defendant STENGER, to knowingly solicit, accept, or agree to accept any benefit, direct or indirect, in return for his official recommendation, decision, action or exercise of discretion as a public servant.

9. State of Missouri Revised Statute 576.010 (Bribery of a Public Servant) makes it a felony crime for a person to knowingly offer, confer or agree to confer upon any public servant,

2

such as defendant STENGER, any benefit, direct or indirect, in return for the public servant's official recommendation, decision, action or exercise of discretion as a public servant.

10. Defendant STEVEN V. STENGER used entities controlled by himself and his campaign operatives for campaign fundraising, including Citizens for Steve Stenger, the Missouri Association of Career Fire Protection Districts (hereinafter referred to as "MACFPD"), and the Regional Leadership PAC.

11. Sheila Sweeney was the Chief Executive Officer of SLEDP, having been appointed to that position by defendant STENGER during in or about August, 2015. Sweeney also was the Executive Director of the Port Authority, and she served on the Board of the Land Clearance for Redevelopment Authority for St. Louis County (hereinafter "LCRA"). Sweeney's office vested her with actual authority and influence over, among other things, the hiring of SLEDP employees, as well as the hiring of Port Authority and LCRA employees. Sweeney's office also vested her with actual and perceived authority and influence over the awarding of certain contracts and grants by SLEDP, the Port Authority, and LCRA. Sweeney's office also vested her with actual and perceived authority over certain other officials, including but not limited to SLEDP Vice President and Director of Real Estate, Joseph Bannister, and SLEDP General Counsel, Dustin Allison. In her positions, and because SLEDP, the Port Authority, and LCRA were funded in part by St. Louis County funds, Sweeney owed the citizens of St. Louis County her honest services.

12. John Rallo had a background in the insurance business, and for a period of time owned and operated several St. Louis area bars and nightclubs. During 2006, Rallo started Cardinal Creative Insurance Group (hereinafter "Cardinal Insurance"), an insurance brokerage company located in Clayton, Missouri. Rallo had no background in marketing or consulting.

3

John Rallo

13.     On or about October 23, 2014, Rallo was introduced to STENGER by one of Rallo's closest friends, ("SW") when the three had dinner at Sam's Steakhouse in South St. Louis County.  At that time, STENGER was campaigning for St. Louis County Executive, and SW introduced Rallo to STENGER in the hope that STENGER, if elected County Executive, could help Rallo get insurance contracts with St. Louis County.  SW was a donor to STENGER, and also recruited other individuals to donate to STENGER's campaign.  During the dinner, STENGER accepted a campaign donation of $5,000 from Rallo, and Rallo understood that STENGER would help Rallo get insurance contracts with St. Louis County if STENGER was elected County Executive.  During that dinner, Rallo told STENGER that he was tired of giving money to politicians and not getting anything in return.  STENGER made statements to assure Rallo that, if elected County Executive, he would work to help Rallo get St. Louis County contracts.  In addition to the $5,000, Rallo also paid for STENGER's dinner that evening.

14.     Rallo continued to make political donations to STENGER throughout 2015, 2016, 2017, and into April, 2018, all with the understanding from STENGER that in exchange he would help Rallo and Cardinal Insurance get insurance contracts with St. Louis County and, ultimately, help Rallo get a consulting contract from the St. Louis County Port Authority.  STENGER also helped Rallo and a group known as Wellston Holdings, LLC obtain land in Wellston, Missouri for development purposes.  Rallo also held several fundraisers for STENGER where Rallo invited friends and associates who also made political donations to STENGER.  During 2015, STENGER requested that Rallo become a member of STENGER's "Trustee" program, a group of individuals

4

who agreed to donate $2,500 to STENGER each quarter, for a total of $10,000 per year. Rallo agreed to become a Trustee, and also recruited one other member of Wellston Holdings, LLC to become a Trustee. Together, Rallo and the other member of Wellston Holdings, LLC personally donated approximately $50,000 to STENGER, and obtained additional political donations for STENGER through several fundraisers.

15.    During November, 2014, following STENGER's election as St. Louis County Executive, STENGER visited Rallo at Cardinal Insurance's Clayton office and requested that Rallo recruit other individuals as political donors to STENGER. Rallo agreed and requested STENGER's help in getting Cardinal Insurance the St. Louis County contract for employee voluntary benefits insurance. STENGER agreed to help Rallo and Cardinal Insurance get that contract which, at the time, was held by another insurance company. Rallo stood to earn approximately $50,000 annually in commissions on such an insurance contract with St. Louis County. Rallo and STENGER met several additional times, at the Clayton Ritz Carlton, at the 801 Chophouse, and at Cantina Laredo, and continued to discuss Rallo's desire to obtain the St. Louis County voluntary benefits insurance contract. It was following the meeting at 801 Chophouse that STENGER directed the St. Louis County Director of Administration to meet with Rallo regarding the County's voluntary benefits insurance contract, and communicated his desire that Rallo's company receive the contract. STENGER made statements about the Director of Administration which led Rallo to believe that STENGER had directed the Director of Administration to help Rallo get the insurance contract. At STENGER's direction, Rallo met with the Director of Administration, and two other St. Louis County employees, the Director of Personnel, and the Human Resources Manager, and discussed Cardinal Insurance obtaining the County's voluntary

5

benefits insurance contract.   Rallo kept STENGER apprised of his ongoing meetings and discussions.

> March 13, 2015:
>
> Rallo:  Steve, just finished a mtg w/ [Director of Personnel] and [Human Resources Manager]...went very well, now that I have a much better idea of where the County's [insurance] program is I can definitely address how we can help.  Are u avail to grab a drink Tues 3/24 after the council mtg (just you and I) or possibly breakfast the morning of 3/25 or 3/26 at the Ritz around 7:30 am.  Let me know. (Was also able to raise a few extra dollars for you)
>
> STENGER:  Yes.  Let me just pick the best date

On March 31, 2015, Rallo made his first "Trustee" political donation to STENGER of $2,500.

> April 1, 2015:
>
> Rallo:  Steve, I spoke w/ [Director of Personnel] as a follow up to the mtg we had w/ he and [Human Resources Manager] & he said that we're on hold until they present it to the employee benefits advisory committee for approval later this Spring....not necessarily the direction we'd like to go.  Any thoughts??
>
> STENGER:  I think I may have a solution.  Hang tight
>
> Rallo:  Roger that...I'm in NY for the rest of the week.  Just wanted to bring it to your attention prior to any mtg.  Sometimes easier to deal with.  Thanks Steve

Over the next week, Rallo continued to reach out to STENGER about the insurance contract, and STENGER continued to assure Rallo that he was working to get Cardinal Insurance the contract:

> April 9, 2015:
>
> STENGER:  John, I'm working on the [insurance contract]
>
> Rallo:  Thanks.  Let me know

16.     During this same time period, STENGER and Rallo discussed the possibility of Rallo getting a consulting contract. Rallo was good friends with the television personality Montel Williams, and Rallo and STENGER discussed teaming with Williams on a consulting contract to purportedly provide marketing to address the negative publicity leftover from the Ferguson unrest following the shooting death of Michael Brown. Rallo had no experience in marketing or consulting, but he continued to make political donations to STENGER, and hold fundraisers for STENGER based upon STENGER's representations that he would work to get Rallo one or more of these contracts. It was during this period of time that STENGER suggested getting Rallo the consulting contract through the St. Louis Economic Development Partnership, and the Port Authority. Based upon his discussions with STENGER, on March 13, 2015, Rallo formed Cardinal Creative Consulting, LLC (hereinafter "Cardinal Consulting") for the specific purpose of obtaining the promised consulting contract. In order to avoid public disclosure, STENGER also directed Rallo to communicate with him through STENGER's former law firm email address, as opposed to his official St. Louis County government email address.

> April 15, 2015:
>
> Rallo: I have a doc that I need to send you that will provide an overview with bullet points as to why this [Cardinal's insurance plan] unequivocally makes sense for the County. Good to use as a reference for our conversation. What address should I send it to??
>
> STENGER: Sstenger@lawsaintlouis.com. Plus I will see u tomorrow night [at a fundraiser].
>
> April 23, 2015:
>
> Rallo: I spoke w/ Pam Reitz yesterday as a follow up, will forward you a copy of the email I sent to keep you in the loop. She still did say that we're waiting for the benefits committee to meet & then she will discuss with [Director of Personnel] & [Human Resources

7

Manager]. Maybe that's the protocol, but I just want to make sure everyone is on board. By the way, great event last Thursday [the fundraiser], glad to be a part of it. John

April 29, 2015:

Rallo: Wanted to follow on the consulting RFP w/ Montel.....any update re: Econ Development. Also, I reached out to Pam Reitz last week, but have not heard back....thoughts??

April 30, 2015:

Rallo: Steve, don't have a good feeling that things are on track with the insurance. Any thoughts?? Also, where do we stand on the consulting, should I be calling someone.

STENGER: I will be calling you later today.

17.     During May, 2015, Rallo and STENGER continued discussions concerning both the potential insurance contract and the potential consulting contract, and STENGER continued to assure Rallo that he was working on both.

May 6, 2015:

STENGER: I'm working on ur issue right now meeting with my top 3 [Chapman, Wagener, and Weber]

Rallo: Let me know if you need anything from me for clarification. Someone's making this a lot more difficult than it should be.

STENGER then directed two of his top executive staff members, Mike Chapman, the Chief of Operations, and Jeff Wagener, the Chief of Policy, to contact Rallo and help Rallo obtain the insurance contract.

May 6, 2015:

Rallo: Just spoke with Mike Chapman, great call....Thanks for the follow up. I know you're being pulled in many directions and am appreciative of your time. JR

8

May 8, 2015:

Rallo:   Did Mike Chapman brief you on our conversation? Anything needed on my end??

May 9, 2015:

Rallo:  It's good to have friends ;-)

On May 20, 2015, Rallo held another fundraiser for STENGER, and also contributed an additional $2,500 of his own funds to STENGER.

May 21, 2015:

Rallo:  I think last night went well, hope you were pleased.

STENGER:  John thank you.  It went really well.  I appreciate it!! Thank you.

Rallo:  Glad to do it…let's keep the train moving.

During June, 2015, STENGER continued to assure Rallo that he was working on getting Cardinal Insurance the insurance contract.

June 2, 2015:

Rallo:  Update??

STENGER:  Pam Reitz is out of town till Friday

Rallo:  Is it going to be a problem with her?  What do we need to do to make this happen?

STENGER:  I'm doing it now

Rallo:  Thanks.  Let me know….

Rallo and STENGER's discussions about the insurance contract continued into July, 2015, with STENGER continuing to assure Rallo that STENGER was working on getting him the contract.

9

Based upon STENGER's representations, Rallo continued to make political donations to STENGER, including delivering a check directly to STENGER's office.

> July 16, 2015:
>
> Rallo: Any update??
>
> STENGER: I'm working it this PM
>
> Rallo: 10-4. Thx
>
> Rallo: Spoke w/ SW, I will personally drop something off to you tomorrow
>
> July 17, 2015:
>
> Rallo: Heading to your office now to drop off a personal envelope. Who should I leave it with?
>
> STENGER: Front desk is fine just mark it confidential
>
> Rallo: It is.

18.    Ultimately, the St. Louis County Administration determined to pull the Request for Proposals for the employee voluntary benefits insurance contract, and stay with the incumbent insurance company for another year. Rallo and STENGER discussed the idea of Rallo getting the insurance contract during 2016, when the contract came up for renewal again. With the insurance contract temporarily off the table, Rallo and STENGER turned their attention to working to get Rallo the consulting contract through SLEDP. While having drinks in the lobby of the Ritz Carlton hotel in Clayton, Missouri, Rallo told STENGER that obtaining a consulting contract would make up for the "insurance mishap." STENGER responded positively. STENGER told Rallo that the Port Authority had money that could be used for the consulting contract. As he promised, STENGER worked to get Rallo the consulting contract through the Port Authority.

10

August 4, 2015:

Rallo: Steve, who should I be reaching out to re: the consulting? Would like to start that process. Also, I know the insurance RFP was stopped, but the goal was to write the business...Any suggestions??

During September, 2015, STENGER directed Jeff Wagener, the St. Louis County Chief of Policy to work with Rallo in getting Cardinal Consulting the consulting contract through SLEDP.

September 17, 2015:

STENGER: Jeff and John: this is a group text with John Rallo and Jeff Wagener. I need to put u guys together for a meeting to discuss Montel acting as a spokesperson and doing pr rehab for county thru Econ council as Jeff and I discussed earlier today. Please set asap.

Jeff Wagener: Ok

Rallo: Jeff, I'll reach out to you tomorrow to set something up. Thanks Steve

STENGER also discussed the proposed consulting contract with Sheila Sweeney, the Chief Executive Officer of SLEDP; STENGER made it clear to her that Rallo was a "donor," and directed Sweeney to make sure Rallo and Cardinal Consulting got a consulting contract. Sweeney had been appointed to her SLEDP position at STENGER's recommendation, and STENGER told Rallo that Sheila Sweeney would do what STENGER told her to do. Rallo met with Sweeney in her office during October, 2015 to discuss the consulting contract. SW also attended this meeting, as SW had known Sweeney for many years. Rallo and SW had agreed between themselves that Rallo would share some of the proceeds from the consulting contract with SW as payback for SW originally introducing Rallo to STENGER. The meeting lasted only 10 to 15 minutes and did not involve a substantive discussion of the purported consulting contract. Sweeney asked Rallo what amount he wanted on the consulting contract, and Rallo requested $350,000. Sweeney told Rallo

11

that she did not think she could get him that large a contract, but she would discuss it with STENGER. Rallo, who had made a $2,500 political donation to STENGER on October 19, 2015, then discussed the matter with STENGER.

October 28, 2015:

Rallo: Spoke w/ Sheila re: Montel….sounds like things are not going to move forward. Diametrically different from our conversation in your office. Let me know when you have a min to talk.

STENGER: The 350k won't work for their budget but some other amount would.

Rallo: I understand. What is the number? Would like to discuss with you. You know what we're trying to accomplish…need a 5 min call, I'm avail the rest of today

In further discussions with STENGER and Sweeney, Rallo learned that Sweeney was going to issue the consulting contract through the Port Authority, and that the amount of the contract would need to be $100,000 in order for Sweeney to "push" the contract through the Port Authority Board. Rallo was led to believe that the initial consulting contract would be for a 6 month term at $100,000, and then renewed for an additional 6 months for an additional $100,000, for a total contract value of $200,000. Discussions between Sweeney, STENGER, and Rallo concerning the consulting contract continued throughout fall, 2015 and into 2016.

January 13, 2016:

STENGER: Have you made contact with Sheila at the partnership since we spoke?

Rallo: I have not, I was going to send you a one page bullet pt outline as we discussed. Should I reach out to her again directly?

12

STENGER: Shoot me the one pager when u can. I am meeting with Jeff Wagener now talking about things we need to take care of soon and this was on my agenda

Rallo: Will do....what email address should I send it to

STENGER: Can u send me over a hard copy

Rallo: Yes, will drop it off later today or first thing in the am

STENGER: Perfect. I would like to get that moving :)

January 14, 2016:

Rallo: Did proposal look ok??

January 19, 2016:

Rallo: Any feedback on proposal? Next steps??

January 22, 2016:

Rallo: Steve, let me know where we're at with the proposal....

STENGER: I will advise. I had an initial convo with peep and am having another next week

Rallo: I assume peep is Pam Reitz?

STENGER: Sheila

Rallo: Right...that's who I meant....

19.     Beginning during February, 2016, Rallo and STENGER began discussing the St. Louis County employee voluntary benefits insurance contract again, with the idea that Cardinal Insurance would be awarded the contract later in the year when the current contract expired. The two also continued to discuss the consulting contract. STENGER directed Mike Chapman, the St. Louis County Director of Operations and Jeff Wagener, his Chief of Policy to again assist Rallo in obtaining the insurance contract.

13

February 5, 2016:

Rallo:  Any word?? [regarding the consulting contract]  Also, should I reach out to Mike Chapman directly re: the insurance?

STENGER:  Yes definitely reach out to Mike Chapman and stay on him….In other [consulting contract] I am working on it.  Should be soon

February 15, 2016:

Rallo:  Spoke w/ Jeff Wagener re: insurance…we have a plan of action.  Any update on the Montel piece?

February 17, 2016:

STENGER:  John thank you for the kind giant gift wow!!!! (referring to a family gift)  I will be sending a formal thank you. Wow

February 27, 2016:

Rallo:  Steve, what's the latest on the consulting??  Would like to get some direction.  John

March 3, 2016:

Rallo:  Still going to try & do something with Montel??

STENGER:  Yes I am….I am working on it now

March 15, 2016:

STENGER:  I will have some news on ur project

Rallo:  Sounds great.  See you Friday morning

March 18, 2016:

Rallo:  Great mtg w/ Sheila [Sweeney].  All is well!  Thanks

STENGER:  Great

14

Throughout this time period, STENGER continued to solicit political donations from Rallo while at the same time promising and working to get Rallo contracts with St. Louis County.

March 28, 2016:

STENGER:  John can we receive your trustee check before the end of the quarter so I can count it? :)

Rallo:  Absolutely

STENGER:  John if you would like ou[r] courier will pick it up this week?  Citizens for Steve Stenger

Rallo:  I'll be back in town Thursday, will have it ready for pick up then.

STENGER:  Thank you perfect.  :)

March 31, 2016:

STENGER:  John is there a way we would be able to get your 2500 for the quarter dated 3.31 in the next few days so we could count it for this quarter.  We are trying to hit 300k for the quarter and it would be helpful

Rallo:  Will be at my office by noon.  Will have a check ready by 1:00 for pick up or I could mail it.  Let me know

STENGER:  Perfect thank you we r in building next door

Rallo:  Do you want me to bring it to you?

STENGER:  No but thank you Dave or Anna will get it.  That's what they do :)  [Dave Tilly and Anna Noll were fundraisers for STENGER]

Rallo:  Check is ready!  Need 5 min call to go over a concern I have on the insurance RFP…are u avail later today?

STENGER:  John what is your suite no

Rallo:  850….time for a quick call?

15

> STENGER:  Sure
>
> Rallo:  Spoke with Jeff Wagener & Pam Reitz…think we're on the right path [regarding insurance contract].  Thanks
>
> STENGER:  If it looks off in any way let me know early
>
> Rallo:  Will do.  Be sure and have someone send me info on [upcoming STENGER fundraiser] at the Blues game.  I'm out of town on 4/12 & 4/13, but other than that count me in for at least 1
>
> STENGER:  Will do we have it down

John Rallo did, in fact, make another political donation of $2,500 to STENGER on March 31, 2016 based upon STENGER's promises and representations that he was working to get Rallo St. Louis County contracts.

20.     During April, 2016, Mike Chapman, the Director of Operations for St. Louis County resigned over disagreements with STENGER.  This raised concerns with Rallo, who had been dealing with him at STENGER's direction concerning the promised insurance contract.

> Rallo:  Does the absence of Mike Chapman have any affect on the insurance?
>
> STENGER:  Only in the positive
>
> Rallo:  Rock star!!  Also, let me know about next Mon eve if you are able to meet Montel, Sheila and me for a drink
>
> STENGER:  He [Mike Chapman] was a major pain in the ass….I am working on Monday still

It was at or about this time that Rallo recruited another member of Wellston Holdings, LLC to become a "Trustee," political donor to STENGER.

> April 21, 2016:
>
> Rallo:  I might want to take another Trustee spot…fill you in tomorrow

16

> STENGER: Ok. I like that
>
> Rallo: I figured you wouldn't mind ;-)

Rallo and his business partner in Wellston Holdings, LLC met with STENGER on May 4, 2016, at which time the business partner gave STENGER a $10,000 political donation and agreed to become a regular political donor in STENGER's Trustee program. During this meeting, in addition to discussing the potential insurance contract, and the potential consulting contract, the three men discussed possible land sites in St. Louis County that STENGER could help Wellston Holdings, LLC purchase and develop. Rallo recruited his business partner to make the political donation to STENGER, and to become a Trustee donor, based upon STENGER's representations that he would help Wellston Holdings, LLC obtain property owned by St. Louis County.

> May 4, 2016:
>
> STENGER: Thank you John and please pass my thanks to [Rallo's business partner]. I'm glad u guys came by.
>
> Rallo: Will do. Glad to help. Could you let Sheila [Sweeney] know we spoke....
>
> STENGER: Done it

21. During April, 2016, at STENGER's direction, and based upon the discussions with Rallo, Sheila Sweeney caused the Port Authority to issue a Request for Proposals for Media Consultant ["RFP"]. Responses to the RFP were due April 25, 2016. In addition to being the Chief Executive Officer of SLEDP, Sweeney was also the Executive Director of the Port Authority, an affiliated organization of SLEDP. Sweeney was directed by STENGER to award the Media Consultant contract to Rallo's company, Cardinal Consulting. Sweeney had several

17

discussions with Rallo concerning the proper wording of the Port Authority's RFP, and Sweeney also reviewed and recommended revisions to Cardinal Consulting's responsive bid to the RFP.

April 18, 2016:

Rallo: All is well. Just was following up to see if there was any action required on my end for the RFP and confirm our mtg for next Mon the 25th w/ Montel

Sweeney: No real action but let's chat tomorrow to be sure we have everything covered. Thanks

Rallo: Sounds great. What time is a good time for you?

Sweeney: About 4:00

Rallo: Perfect. Call you on your cell

Sweeney: That's fine.

April 21, 2016:

Rallo: Hi Sheila, I just emailed you a copy of the draft proposal [Cardinal's responsive bid to the RFP]. Let me know if you think we should add anything. Thanks.

Sweeney: I'm good with it.

Rallo: I'll send a formal hard copy tomorrow

April 22, 2016:

Rallo: I just noticed a change that I need to make in the wording of the Proposed Fees sec. Will clarify and submit tomorrow. Thanks Sheila

April 25, 2016:

Rallo: Hi Sheila, just wanted to confirm that you received our RFP [Cardinal's responsive bid to the RFP]. Look forward to seeing you around 2-2:15

Sweeney: Yes. Have the amended one. See you then.

18

As Rallo had been directed by STENGER and Sweeney, Cardinal Consulting's responsive bid called for a six (6) month renewable term at $100,000 per each six (6) month term. Cardinal Consulting's entire responsive bid consisted of a 1 ½ page letter. The Port Authority received other responsive bids to the RFP in addition to Cardinal Consulting's bid. One or more of the other responsive bids were from individuals and companies with actual marketing experience, and the other responsive bids were lower in cost than Cardinal Consulting's bid. Nonetheless, as STENGER had directed her, Sweeney recommended and urged the Port Authority Board to approve Cardinal Consulting's bid as the winning bid, and the Board followed Sweeney's recommendation and approved Cardinal Consulting's consulting contract.

May 10, 2016:

Sweeney: Port passes your contract. Good to go.

Rallo: Great news!! What's the next step? Are you avail for a call sometime tomorrow?

Sweeney: Yes

22.     Following the Port Authority's vote to award the consulting contract to Cardinal Consulting, it took several months for the Port Authority to provide the actual Agreement, or Memorandum of Understanding ["MOU"] between the Port Authority and Cardinal Consulting to Rallo.

June 7, 2016:

Rallo: Anything I need to be doing re: MOU w/ Montel?

STENGER: I think we r good. Let me c what's up

Rallo: Thanks

19

STENGER: No problem. I don't think there is a problem at all. Maybe just normal time frame stuff.

Rallo: I didn't think so, but hadn't heard back from Sheila....

STENGER: You got it. I'm with Jeff Wagener this morning. I'll talk to him and get u some time frame and answers

Rallo: Jeff Wagener has been very helpful w/ the Insurance RFP process.

During this same time period, before Rallo had received the actual consulting contract, Sweeney telephoned him and requested to meet with him in his office, she didn't want to discuss what she needed to tell him over the telephone. When Sweeney arrived at Rallo's office, she explained to him that she had modified the total payments under the Cardinal Consulting contract to $130,000, not the bid upon and requested $100,000. Sweeney had added the additional $30,000 to the consulting contract because STENGER had directed her to give a job or a contract to an individual, JC. JC was a close associate of a public official who had helped STENGER get out the vote in the November, 2014 County Executive election, and STENGER's direction to hire JC or give JC a contract was payback for that. Sweeney determined that paying JC through the Rallo contract would meet STENGER's directive. Sweeney advised Rallo that he should pay JC the $30,000 over the term of the contract. Rallo had no prior knowledge of JC, and understood from Sweeney that JC would not do any actual work under the consulting contract, but needed to be paid the $30,000. JC was anxious to get payback for his and the public official's efforts on behalf of STENGER during the 2014 election, and STENGER continued to put pressure on Sweeney to do something for JC.

20

April 9, 2016:

JC: [Text to Shannon Weber]- I am in DC for a conference and spent the last two nights with [public official] and DP. Both of them asked me a couple of times what happened to our conversations from December. I said nothing ever happened. It's almost four months since I met you and Jeff Wagener. I don't know what ever happened but it's totally rude and disrespectful. When Stenger asked [public official] for help, all of us were there for him, so you know.

Shannon Weber: [forwarded JC's text message to STENGER and Jeff Wagener] That sweet message was from JC.

Jeff Wagener: Let's talk on Monday.

Shannon Weber: I have a plan. :)

STENGER: Items to talk about Monday 4.11….JC.

May 19, 2016:

STENGER: Attorney SS is asking about [JC]. I asked him to do a group text can we get back to him with status

Jeff Wagener: OK. Sheila is working something up with the Port Authority. I'll get an update from her.

STENGER: OK. Please reply on that group text and I will say something encouraging.

Jeff Wagener: (group text to STENGER and attorney SS) I am working with Sheila and we are putting together a contract through the port authority. We should have something in the next week.

STENGER: (group text to Jeff Wagener and attorney SS) Great that sounds great.

STENGER: (text to Jeff Wagener) We need to own the partnership as our own. Today sucked c---.

23.     On or about July 14, 2016, Rallo received the Consulting Agreement which did, in fact, call for total payments of $130,000. Sweeney did not "report" to the Port Authority Board

that she had increased Rallo's consulting contract until December, 2016, when the Port Authority's General Counsel noticed the additional $30,000 had not been disclosed and advised her that it needed to be put in the "report" to the Board. At no time did the Board formally approve the increased contract price. Rallo and Cardinal Consulting did no actual work under the Consulting Agreement. Rallo was required to submit monthly reports to the General Counsel of SLEDP detailing the work purportedly done by Cardinal Consulting, and Rallo simply made up false information to include in each of those monthly reports. During August, 2016, JC contacted Sweeney and asked about his promised payments. Sweeney contacted Rallo, and requested Rallo contact JC and begin paying him.

> August 3, 2016:
>
> Sweeney: Hey John. I'm on vacation but just got a text from JC asking the status of his work. He's the guy I asked about helping out. Please touch base with him. He's close to [Public Official].
>
> Rallo: I don't have any of his contact info. Does Jeff Wagener have it?
>
> Sweeney: I do. Hang on. [Sweeney then forwarded JC's contact information to Rallo]
>
> Rallo: Thanks.
>
> Sweeney: We need to chat as soon as I get back so you know how JC fits in. In the meantime if you can get him calmed down that he is "part of team" that's perfect. I'll be in office the 15th. Or if you prefer to talk prior that will work as well.

Rallo contacted JC and, on or about August 5, 2016, JC came to Rallo's office to pick up his first check. Rallo had JC complete an IRS tax form in order to make the relationship appear legitimate, and gave him the first $5,000 check, made out to JC's company. Rallo and JC did not discuss the Consulting Agreement, or any work JC might do under the contract. Following that date, Rallo

mailed four (4) more $5,000 checks to JC, and JC never did any actual work under the Consulting Agreement. The only communications between Rallo and JC were some text messages from JC when he wanted to get paid. Rallo ultimately only paid JC $25,000, not the $30,000 Sweeney had told Rallo to pay JC.

October 11, 2016:

Rallo:  On a call, will get back to you

JC:  Ok

Rallo mailed JC a $5,000 check which cleared Rallo's business account on October 17, 2016.

November 7, 2016:

JC:  Please call me. Thanks

Rallo:  Check will go out in the next day or so

Rallo mailed JC a $5,000 check which cleared Rallo's business account on November 15, 2016.

December 12, 2016:

JC:  Please let me know when check is going to be in the mail? Thanks

Rallo:  Still have not been paid yet, should hopefully be this week. Also, just FYI, December 1st is our last payment per our contract with the port authority

JC:  Ok. Thanks.

Rallo mailed JC a $5,000 check which cleared Rallo's business account on December 19, 2016.

24.    Rallo submitted false monthly reports to the General Counsel for SLEDP because Rallo was hoping that Cardinal Consulting's contract would be renewed for an additional six (6)

23

months. Rallo's last report, covering November, 2016, was so obviously fake that the SLEDP

General Counsel talked with Sweeney and she requested Rallo submit a different report.

> December 22, 2016:
>
> Sweeney: Can you send a different contract report for the last period? The last two read exactly the same and that's not good!
>
> Rallo: Will do
>
> December 23, 2016:
>
> Rallo: Did u receive the report?
>
> Sweeney: Yes. I didn't get to read it yet but I will. Thanks for sending it.

Of the $130,000 Rallo received in payments on the Consulting Agreement, in addition to paying

JC $25,000, Rallo paid SW $12,000 as a reward for introducing Rallo to STENGER. Rallo noted

"advance" and "consulting fee" on the several checks paid to SW in order to conceal the true nature

of the payments.

25. During 2016, Rallo was still actively attempting to obtain the County's employee

voluntary benefits insurance contract through the help of STENGER. STENGER directed several

of his top staff members, including Jeff Wagener, Shannon Weber, and Thomas Malecek to speak

with the County's Director of Administration, Pam Reitz, to let her know STENGER's preference

that Rallo's company receive the contract. STENGER also directed the County's Chief of Policy,

Jeff Wagener, to assist Rallo in obtaining the insurance contract. On or about May 26, 2016, at

STENGER's direction, Jeff Wagener sent Rallo a draft RFP for the County's employee voluntary

benefits insurance contract for Rallo's review and revisions. Rallo requested changes to the RFP

which would make Rallo's insurance company eligible to bid on the RFP, including adding a

24

process of "face-to-face" enrollment with the County's employees. Jeff Wagener passed Rallo's requested revisions on to the County's Director of Administration who made the requested changes to the final insurance contract RFP. Rallo and STENGER continued to discuss the employee voluntary benefits insurance contract, and STENGER continued to promise Rallo that he would get the contract. During July, 2016, Rallo advised STENGER that it did not look like he would get the contract, despite STENGER's promises and actions. STENGER reached out to Jeff Wagener.

> July 18, 2016:
>
> STENGER: The benefits rfp is in the shitter.
>
> Jeff Wagener: What? Are you referring to Rallo?
>
> STENGER: Yes. Please text or call Shannon Weber
>
> Jeff Wagener: I just spoke with Shannon Weber. Sounds like Rallo is in the top 2. I will call Pam Reitz when they are out of their meeting. I will reinforce our choice with Pam Reitz.
>
> STENGER: Ok
>
> Jeff Wagener: She knows what needs to happen as she has been told numerous times but I will do it again.

Nonetheless, once again the County Director of Administration determined not to award the contract to Rallo's company. Following her failure to award the contract to Rallo's company, STENGER had discussions with several of his top staff members about firing the County Director of Administration because she was not following his directives in awarding various contracts.

> July 24, 2016:
>
> Jeff Wagener: …Pam Reitz is something we need to discuss. If the Rallo thing is the reason for you wanting to get rid of her we might consider how Rallo's team may have failed to legitimately compete.

25

STENGER: Rallo is not the reason solely. I don't want to deal with her any longer....She is either tired or just not our friend. Either way I really want her gone ASAP....I agree on the Rallo thing whatever but whatever needed to be done to make that happen needed to be done obviously it didn't so I am not going to blame Rallo. This was a year in the making. If his submission needed clarification then he should have been given the opportunity to do so and I think he did clarify. Same shit happened with [    ]....Coincidence? I am absolutely done with her. As soon as a replacement can be found I want her gone.

26.    During 2016, in discussions with STENGER, Rallo and two other investors had identified two parcels of vacant property located in Wellston, Missouri which they desired to purchase and develop, "Wellston Industrial" and "Plymouth Industrial." The properties were held by LCRA, and STENGER directed Sheila Sweeney to work with Rallo and his partners to make sure that they could purchase the properties from the LCRA. The LCRA is affiliated with SLEDP, and Sweeney also served on the Board of LCRA. Rallo and his partners, one of whom was also a political donor in STENGER's Trustee program, formed Wellston Holdings, LLC for the sole purpose of purchasing and developing the Wellston properties. St. Louis County had spent several million dollars in clearing, grading, and preparing the two Wellston properties for sale over the years. In carrying out STENGER's direction to make sure Rallo and his group were able to purchase and develop the properties, Sweeney directed SLEDP's Director of Real Estate to assist Rallo and his partners in purchasing the Wellston properties; and she directed SLEDP's General Counsel to put together RFPs for the sale of the two properties. Sweeney set the minimum bid on Plymouth Industrial at "must exceed" $250,000 and the minimum bid on Wellston Industrial at "must exceed" $255,499, believing that Rallo's group might be the only group to bid on the properties. Following a September 15, 2016 meeting at Café Napoli between Sweeney, Rallo, and

26

one of Rallo's partners, Sweeney began providing information concerning the Wellston properties to Rallo and his group.

> September 19, 2016:
>
> Rallo: Did you have a chance to send the Wellston info? Not trying to rush you, just wanted to make sure you had the correct email [     ] Thanks
>
> Sweeney: I sent Friday. Will again.
>
> Sweeney: Just sent. Interactive map not online yet.
>
> Rallo: Got it. Thanks
>
> September 20, 2016:
>
> Sweeney: Just sent drawings.

The bid response date on Plymouth Industrial was September 26, 2016, and it required a 1% earnest money deposit to accompany any bids. Rallo's group's bid, however, was for $250,000, with an earnest money deposit of $2500 which did not meet the requirement that the bid "must exceed" $250,000. Sweeney reviewed Rallo's group's bid response to the RFP, and directed Rallo to make certain revisions and edits before submitting their final bid.

> September 23, 2016
>
> Rallo: Just sent you a draft copy of the [response to the RFP], let me know your thoughts.
>
> Sweeney: K. I read it. I'm in office so can do in the next few minutes.
>
> Rallo: You're the best! Thanks. Also, sorry to keep you on the phone earlier, I know you were in a hurry
>
> Sweeney: No worries

27

September 26, 2016:

Rallo: Did u have a chance to look at the response to the RFP I emailed you on Friday?

Sweeney: Yes. It looks fine.

Rallo: I'm going to hand deliver it before noon. We need to submit a check for $2,500 with the RFP correct?

Sweeney: No need for check until chosen.

Rallo: Thanks

Sweeney: Make your minimum price $2501, Not 2500 even. Change the figure in your letter.

Sweeney: Had a chance to look at [response to RFP]. You didn't address the financing portion of it. #8. And a little more detail on #4.

Rallo: Can [response to RFP] be emailed, or does it need to be hand delivered?

Sweeney: Can be emailed.

Sweeney: Did you send updated info?

Rallo: Final touches now, will forward to [General Counsel] before 3

Rallo actually missed the 3:00 p.m. deadline for submitting responses to the RFP, and general counsel for SLEDP raised the deadline issue with Sweeney. Rallo was also in communication with SLEDP's Director of Real Estate, Joseph Bannister, during this time, as Sweeney had directed him to assist Rallo in obtaining the properties.

September 26, 2016:

Rallo: Are we good to go w/ the RFP deadline? Call when u get a chance.

Joseph Bannister: Hey you are good. What happened was we got a second proposal. So the lawyer is figuring out exactly what we do now to award to you. Relax. Sheila knows to handle it. Understand?

Rallo: Got it. Thanks Joe.

Joseph Bannister: Dustin [Allison] sending you email in 20 min. Wed[nesday] you will control the property. You need to clean up 2 answers [in Wellston Holdings' response bid].

Rallo: Call me

Joseph Bannister: Ok. I'm sitting w lawyer now. Can't yet.

Rallo's late bid was allowed at Sweeney's direction. SLEDP's General Counsel did, in fact, have some questions concerning Wellston Holdings, LLC's bid, and he emailed his questions to Rallo. Rallo sought Sweeney's review and advice in responding to the General Counsel's inquiry.

September 27, 2016:

Rallo: Got a sec?

Sweeney: I'm at a happy hour. Can we text. I can't hear!

Rallo: I'll send you a draft of our response to Dustin Allison's email, just wanted to get your thoughts prior to us submitting...

Sweeney: Send the response. And forward his email. Send it to smsco@sbcglobal.net

Rallo: Is smsco@sbcglobal.net your personal email?

Sweeney: Yes

Rallo: Perfect! Have one for me

September 28, 2016:

Rallo: Any feedback??

Sweeney: Give me 10.

29

> Sweeney: Good, Send it.
>
> Rallo: Thank you my dear!! Btw, are you going to the event [fundraiser] for Steve tomorrow at Napoli?
>
> Sweeney: Yes. I'll be there.
>
> Rallo: Perfect. I'll buy you a drink....Emailed u copy of what was sent.

Rallo's group was awarded the option to purchase Plymouth Industrial, over a second bidder. As to the second Wellston property, Wellston Industrial, it had a bid response date of April 3, 2017 and, again, a minimum bid which "must exceed" $255,499. Rallo's group originally bid $256,000. In a telephone call, Sweeney advised Rallo that his group should bid $275,000 for the property, not the minimum bid of $256,000 because there was another bidder for the property. Sweeney said it would be better to give the contract to the highest bidder, since Rallo was a STENGER political donor. Rallo's group then submitted a revised and increased bid of $275,000, which was accepted over the second bidder. The total purchase price for the two Wellston properties was approximately $525,000.

27.    Throughout this period, Rallo continued to make political donations to STENGER, in exchange for STENGER's help and assistance regarding the Consulting Agreement, and the Wellston property purchases. STENGER continued to solicit the political donations from both Rallo and Rallo's business partner in Wellston Holdings, LLC during this period as well.

> December 19, 2016:
>
> Rallo: Trustee checks mailed to 1505 Big Bend Blvd. 63117??
>
> STENGER: Thank you!!! Yes. South Big Bend. South.

Rallo: In the mail. How about a little holiday cheer late next week out at Annie Gunn's?

STENGER: Yes. I would love that. I need it.

Rallo made a $2,500 political donation to STENGER on December 29, 2016, based upon STENGER's continued representations that he would help close the Wellston property sales.

January 12, 2017:

Rallo: Sorry, bad reception I'm skiing in Utah....Absolutely count me in as a trustee, glad to support! Might not be a bad idea to reach out to [Rallo's Business Partner], I'll forward you his number. Talk to you when I get back in town

STENGER: Ok would u mind talking to him first to see if its possible?

Rallo: Sure, no problem

January 18, 2017:

Rallo: Spoke w/ [Rallo's Business Partner], he's in for Trustee

STENGER: U r a beautiful man and so is [Rallo's Business Partner]

February 20, 2017:

STENGER: Thanks for drinks it was good to spend some time together

Rallo: Enjoyed it as well! We're here to help in any way we can!

March 16, 2017:

Rallo: Trustee check has been cut, but is at the office, will go out no later than Monday.

On or about March 23, 2017, both Rallo and his Wellston Holdings, LLC business partner each made $2,500 political donations to STENGER, based upon STENGER's continued representations that he would help close the Wellston property sales.

31

28.    Issues arose which delayed the formal real estate closing of the second Wellston property, and Rallo sought STENGER's assistance once again.

July 7, 2017:

Rallo: Can you help me out w/ Wellston? There's some things that Dustin Allison has really fumbled the ball on…We still haven't closed on the second property. I appreciate it

STENGER: Sure. Let's talk. I'll call. I'm handling a 911

July 11, 2017:

STENGER:   John I'm going to be calling later today and Jeff Wagener is calling in the meantime

Rallo: Thanks

August 1, 2017:

Rallo: Can u talk? Need your help on Wellston property….Very important!! I need 2 minutes. Thx

STENGER: U should be getting a call shortly
Rallo: Thanks

August 2, 2017:

Rallo: I appreciate you intervening on Wellston. Looks like things are back on track!!

29.    On August 8, 2017, a reporter with the St. Louis Post Dispatch submitted a Missouri Sunshine Law request to SLEDP for information regarding Wellston Holdings, LLC and the sale of the Wellston properties. The reporter also contacted one of Rallo's partners in Wellston Holdings, LLC for information. In an effort to conceal the schemes, Sweeney directed Rallo not to speak with the Post Dispatch reporter.

32

August 8, 2017:

Rallo:  Jacob Barker from the Post contacted [Wellston Holdings, LLC partner] and was asking a bunch of questions about Wellston & wants to meet tomorrow morning and go to the site....thoughts??? Call when free.  Thx

Sweeney:  I have Port meeting at 4:00.  Just got Post Sunshine request on Wellston Holdings....Don't talk if they call you.  F---. No don't meet him.  Trying to make the Steve & you connection. What did [Wellston Holdings, LLC partner] say?  F---.  I'm in Port meeting.  Can't talk.  Shit.  I hope he didn't say anything.

Due to an ongoing series of investigative stories in the St. Louis Post Dispatch highlighting the political donor connection between Rallo and STENGER, and the Cardinal Consulting contract, Sweeney, in a further effort to conceal the schemes, directed Rallo to remove his name as Registered Agent for Cardinal Consulting from the Missouri Secretary of State records.

December 16, 2017:

Rallo:  My attorney is out of town, but will work on it this weekend. It will be taken care of

Sweeney: Thanks.

Rallo:  No problem.

Sweeney:  Got to cover him [STENGER]!  And me too!!!!

Rallo:  I know, I've got you covered.

On December 19, 2017, per Sweeney's direction to Rallo, Rallo's attorney filed paperwork with the Missouri Secretary of State's Office changing the Registered Agent for Cardinal Consulting from Rallo's name to the attorney's name.  The St. Louis Post Dispatch continued its series of investigative stories into 2018, alleging STENGER had provided St. Louis County and Port Authority contracts to political donors, including Rallo and Wellston Holdings, LLC.  In order to

33

further conceal his schemes, STENGER directed Rallo not to talk with the Post Dispatch reporters who were writing the investigative stories.

May 11, 2018:

STENGER: You can't talk to the f---ing press. I bent over f---ing backwards for you, and I asked you one simple f---ing thing, don't talk to the f---ing press. And I'm telling you, you're gonna f---ing kill yourself, alright, you're gonna kill yourself with this shit.

June 6, 2018:

STENGER: Jacob Barker [Post Dispatch reporter] telephoned Sheila, who is out of town. Jacob Barker is going to submit questions by email and the County will respond.

Our goal is not to give him anything. This is just a rehash of what he already has. Rehash of that same old story.

It's gonna pass in August, because the reason for what they're doing is gonna die…I'm winning in the polls…It'll go away.

I'm sure we'll get that [question as to how the contract went from 100 to 130] and we'll have a plausible, legitimate answer to that. When we get these [questions] and we answer them, I'll let you know what we said, so you'll know where we're going with it….

Company One

30.    As publicly stated, Company One is a Missouri lobbying firm. Company One had been awarded contracts from SLEDP to provide state lobbying work for many years. During November, 2018, Company One's contract with SLEDP was set to expire, and SLEDP issued an RFP for bids in order to hire a company to perform its state lobbying efforts going forward. In response to the RFP, SLEDP received two competitive bids; one bid from Company One, and one bid from Company Two.

34

31.    Company One and its principal owner made political contributions to STEVEN V. STENGER in support of both his November, 2014 election and his November, 2018 re-election as St. Louis County Executive.  For example, during September and October, 2014, leading up to STENGER's first election for County Executive, Company One contributed approximately $17,000 to the Citizens for Steve Stenger campaign committee.  Even before STENGER had been sworn in as County Executive in January, 2015, he took steps to direct the SLEDP lobbying contract to Company One.

> November 25, 2014:
>
> STENGER to Jeff Wagener:  Would you tell Denny Coleman [then Chief Executive Officer of SLEDP] to move forward with extending [Company One's] contract for lobbying with Econ council.  High priority.
>
> Jeff Wagener:  I'm on it.
>
> Jeff Wagener:  Denny said "consider it done."
>
> STENGER:  Thanks man
>
> Jeff Wagener:  My pleasure

During 2015 and 2016, Company One contributed an additional approximately $32,000 to STENGER, through both the Citizens for Steve Stenger campaign committee, and the MACFPD PAC.  Through November 20, 2018, Company One and its principal owner contributed a total of approximately $59,000 to STENGER.  Company One's principal owner also recruited additional STENGER donors, and held fundraisers for STENGER.

32.    Relative to the November, 2018 RFP for the SLEDP lobbying contract, in private conversations with his staff, STENGER spoke about how important Company One's principal owner's political contributions were to him.

35

November 19, 2018:

STENGER:    But, look, [Company One's principal owner], clearly a big supporter of mine, guess what, he's been the mother f---in' one of the biggest supporters of every County Executive, including the person I was running against last time.  He supports whoever's in power, that's what he does.

33.    When STENGER learned that the SLEDP lobbying contract was going out for bids, he directed his top staff members to contact Sheila Sweeney to insure that Company One was awarded the contract.

October 30, 2018:

William Miller:    So, I met with Steve today.  Partnership is going out for a lobbyist.  Steve's like, this is real important....[Company One's principal owner] called, wants some consideration.  Steve's like, this can't be f---ed up, it's got to happen.  So, in other words, some message has to be delivered to Sheila.  We need to talk to Sheila.  I'll do it, but wanted to touch base with you.

Jeff Wagener:    Because Steve wants [Company One] to get it?

William Miller:    Steve's like, you don't f---ing understand, this is how this works.  I'm like, yeah I get it.  It's not a problem, we'll take care of it....Steve wants it, let's get it done.

STENGER's staff continued to discuss the issue.

November 16, 2018:

William Miller:    I mean, Jeff, I'm just gonna tell you that, I wouldn't say anything to her [Sweeney], or maybe you should say something to her.  If [Company One] doesn't get that, that's gonna be disastrous for Sheila.

36

Jeff Wagener:    Well, Sheila indicated she's gonna play it straight up, and she's gonna start looking at it next week or whenever. The numbers are going to be important to her, so whoever's cheaper is gonna...even though she acknowledged that [Company One] has done a good job and had it for a long time, she's just like, I've got to look after my budget. So I thought I better tell you that. I think she likes [Company One], she's got nothing against [Company One], but she's thinking...the budget's an important issue this year....so that's going to weigh heavily on her she said. She sort of indicated the bid by [Company Two] was very competitive, so I think she's going to look seriously at it.

William Miller:    All I'm telling you is, Steve had lunch with [Company One's principal owner] today.

Jeff Wagener:    You might want to let him [STENGER] know that there's a possibility there. See what he wants us to do, if he wants us to do anything.

William Miller:    Yeah...so...yeah...you know, he's gonna not be happy.

William Miller did, in fact, speak with Sheila Sweeney and advise her that STENGER wanted Company One to receive the SLEDP lobbying contract.

34.    STENGER ultimately directed his three top staff members, William Miller, Jeff Wagener, and Thomas Curran, to personally meet with Sheila Sweeney about the SLEDP lobbying contract to insure that Company One was awarded the contract.

November 19, 2018:

STENGER:    Why don't the three of you [Miller, Wagener, and Curran] go over there and talk to her [Sweeney]. Have, not a pressure, twist your arm shit, but talk to her and say, look at, Sheila, there are some real reasons why we can't see this go the wrong way. Because this will f--- everything in the world up. You can't do that. I mean, what is wrong with her?

William Miller:    She'll say, I'm about to get my budget cut....

37

STENGER:    Who cares, as long as this happens….I'm about this close to just pulling the trigger and saying get the f--- out of here.

\*     \*     \*     \*     \*

STENGER:    [Sweeney's] a political creature, she was appointed by a politician, and by people who were appointed by politicians to take this role.  She took the role.  Now you're in it.  You're either going to do it or you're not.  Get the f--- out.  You're a political person.

Every one of our department heads is a political person.  You two [Miller and Wagener] are political people, I am a political person, I have to be, I'm in politics.  That's what we do.  It's not the art of f---ing over your friends.  It's the art of how do I work with people I trust and know.

William Miller:    It's the art of staying in power.

STENGER:    It's the art of staying in power.  It's about your agenda, and your administration, and [Company Two's] not in my administration.  Never got there.  They're an ancillary player.

And [Company One] knows our issues, can get shit done….

I mean, she's a f---ing [      ] person.

\*     \*     \*     \*     \*

STENGER:    Dude, we've got to know too.  Is she going the wrong way on this f---ing thing.  Because if she's going the wrong thing on this, I'm firing her before she makes the decision.  Seriously, we can't have that.  And look, if she comes forward with [Company Two], the Board's going to reverse her.  We've got too many people on the Board.

Ugh, God, she gives me a f---ing headache.  If she f---s that up, I don't know.  Who's on the selection committee for that piece of shit?  What a nightmare b---- she is, man.

\*     \*     \*     \*     \*

STENGER:    My point is, if [the federal lobbying firm] came up, you know what she'd be saying, "oh we have to have them."  I mean,

38

do you think that's politics? Is it politics? Of course it is, but it's always different when it's her politics these days, as opposed to our politics, and we're the ones who f----ing put her there. It's just crazy.

Following STENGER's directive to meet with Sweeney about the lobbying contract, his staff discussed how best to approach her.

November 20, 2018:

William Miller: [STENGER] wants the three of us to go over there. I think it's overkill, but he wants it. I told him as well that there are some delicacies, going over there and throw her down in a wrestling move, which is what he wants, maybe not a good idea either....If she perceives us saying you hire him or else, I'm not sure how that's going to play.

Jeff Wagener: That's what Steve wants us to do?

William Miller: That's what he said before you came in here.

Jeff Wagener: Are you going to make clear what Steve wants?

William Miller: I don't know Jeff, I think it's risky....If it was just me and her, in some dark room somewhere, I might make it a little bit more forceful. But with all of us there, I think....

Jeff Wagener: Do you think she knows what Steve wants?

William Miller: I've already told her, Jeff, I sent the message.

35.    As directed by STENGER, William Miller, Jeff Wagener, and Thomas Curran met with Sheila Sweeney at the Starbucks coffee shop in Clayton, Missouri on November 20, 2018. During the meeting, they discussed the SLEDP lobbying contract.

William Miller: So, how's [Company One] been for you guys?

Sheila Sweeney: He's very responsive. Introduced us to any legislator when we had an issue. I'd say he's been good. I just don't know, weighing them both. Your input, knowing what Steve likes, is important.

39

William Miller:    Well, Steve's going to say [Company One]....

Immediately following the Starbucks meeting, STENGER's staff had further discussions concerning the lobbying contract, and which company Sweeney would decide to award the contract to.

Jeff Wagner:    I think she's going to let the process go forward.

William Miller:    I don't have a problem with that, as long as the outcome is the right outcome, guys.  She did ask about Steve's input, what he wants.  I already told her, she already knew that.

Jeff Wagener:    I think she's going to let the process go forward, we can't tell her what to do.

William Miller:  I don't know, Jeff, I think, she said she'd take into consideration what Steve wanted, she did make that concession.  But to say, well, what does Steve want, she knows what f---ing Steve wants, I told her, Jeff....I will say this, there's no way she did not get the message.  She can never say I wasn't sure what he wanted.  Right?

Jeff Wagener:    No, I think she got that message.

Following the Starbucks meeting with Sweeney, the staff members met directly with STENGER.

STENGER:    Sounds like it went alright.  What was your sense, did you gather she's going to choose [Company One]?

Jeff Wagener:    I just gathered that she was willing to hear what we had to say about [Company One], but I didn't gather, I think she's going to....

William Miller:    I think she will.....I think she's gonna go with [Company One].  I think she is.  And if she doesn't, we know where we stand.

On December 12, 2018, based upon Sheila Sweeney's recommendation, the SLEDP Board

40

awarded the state lobbying contract to Company One. The contract for the year 2019 was for $149,000.

The Charge

36.     From on or about October 23, 2014 through on or about December 31, 2018, in St. Louis County, in the Eastern District of Missouri, and elsewhere, the defendant,

STEVEN V. STENGER,

John Rallo, and others known and unknown to the grand jury, devised and intended to devise a scheme and artifice to defraud and deprive the citizens of St. Louis County, Missouri of their right to the honest and faithful services of STEVEN V. STENGER and Sheila Sweeney through bribery and the concealment of material information.

Purpose of the Scheme

37.     The purpose of the scheme and artifice was for STEVEN V. STENGER, a public official, to secretly use his official position to enrich himself through soliciting and accepting campaign contributions from John Rallo and his companies, along with other individuals and entities, in exchange for favorable official action, and for John Rallo and other individuals to enrich themselves and their companies by secretly obtaining favorable action for themselves and for their companies, through corrupt means.

Manner and Means

38.     The scheme and artifice was carried out in the following manner and means, among others:

41

a.     The defendant, STEVEN V. STENGER, a public official, solicited and accepted campaign contributions from John Rallo and his companies, as well as from other individuals and companies.

b.     The defendant, STEVEN V. STENGER, a public official, provided favorable official action on behalf of John Rallo and his companies, as well as on behalf of other individuals and their companies, including, but not limited to: directing St. Louis County employees and officials to award one and more St. Louis County insurance contracts to Cardinal Insurance Group, LLC, one of John Rallo's companies; directing Sheila Sweeney to award a Port Authority consulting contract to Cardinal Creative Consulting, LLC, one of John Rallo's companies; directing Sheila Sweeney to award one and more LCRA land sale contracts to Wellston Holdings, LLC, one of John Rallo's companies; and, by directing Sheila Sweeney to award a SLEDP lobbying contract to [Company One].

c.     STEVEN V. STENGER, Sheila Sweeney, and John Rallo took steps to hide, conceal, and cover up their activities and the nature and scope of STENGER's and Sweeney's dealings with John Rallo and other individuals, including: failing to advise the St. Louis County Port Authority Board that John Rallo was a campaign contributor to STEVEN V. STENGER; failing to advise the St. Louis County Port Authority Board that STENGER had directed Sweeney to help Cardinal Creative Consulting obtain a Port Authority consulting contract; failing to advise the St. Louis County Port Authority Board that the Cardinal Creative Consulting contract was increased by $30,000 in order to pay JC; failing to advise the St. Louis County Land Clearance

42

for Redevelopment Authority Board that John Rallo was a campaign contributor to STEVEN V. STENGER; failing to advise the St. Louis County Land Clearance for Redevelopment Authority Board that STENGER had directed Sweeney to insure Wellston Holdings, LLC obtained land sales contracts; directing John Rallo to remove his name as registered agent for Cardinal Consulting Group, LLC; failing to advise the St. Louis Economic Development Partnership that STENGER had directed Sweeney to insure [Company One] obtained a lobbying contract; and, by making false public statements.

### Execution of the Scheme

39.    On or about the dates listed below, in the Eastern District of Missouri and elsewhere, defendant STEVEN V. STENGER, John Rallo, and one or more other individuals, aiding and abetting one another, for the purpose of executing the above-described scheme and artifice to defraud and deprive, caused to be used, the mail in furtherance of, or in an attempt to carry out, some essential step in the scheme:

| Count | Date | Mailing |
|-------|------|---------|
| 1 | 10/17/2016 | $5,000 check from Cardinal Creative Consulting, LLC to JC |
| 2 | 11/15/2016 | $5,000 check from Cardinal Creative Consulting, LLC to JC |

43

3          12/19/2016              $5,000 check from Cardinal Creative Consulting, LLC to JC

All in violation of Title 18, United States Code, Sections 1341, 1346, and 2.

A TRUE BILL.

_____

FOREPERSON

REGINALD HARRIS
Attorney for the United States
Acting Under Authority Conferred by
28 U.S.C. Section 515

_____
HAL GOLDSMITH, #32984MO
Assistant United States Attorney
Senior Litigation Counsel

44